**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JAMES W. LUCE,                    :

                                 :

    Plaintiff,                  :

                                 :

v.                              :      Civ. Action No. 05-cv-1996(RJL)

                                 :

ULLICO INC. PENSION PLAN    :

AND TRUST, et al.            :

                                 :

    Defendants.            :

**MEMORANDUM OF POINTS AND AUTHORITIES
OF JAMES W. LUCE IN OPPOSITION TO THE
DEFENDANTS' MOTION TO DISMISS**

**SUMMARY OF ARGUMENT**

This action does not duplicate related litigation pending in this Court. The

Defendants' Motion to Dismiss is unfounded and, with the exception of the alternative

argument related to the individual defendants, has already been denied by Judge Hilton of

the Eastern District of Virginia.

This Court decided not to exercise supplemental jurisdiction over the vast majority of

counterclaims originally asserted by the ULLICO Defendants in *Carabillo I* and

ULLICO refiled those corporate governance claims in the District of Columbia Superior

Court, where they are now proceeding.  This appeal of a "Plan interpretation" by the

Qualified Plan Administrator is not part of the case or controversy pending before this

Court. Luce's appeal from a denial of his Qualified Plan benefits is not the "mirror

image" of any counterclaims asserted in Carabillo II or the Consolidated Answer and

Counterclaim, because the self-help benefit reduction made by the Plan Administrator of

the Qualified Plan mooted the sole declaratory judgment and breach of fiduciary duty

counterclaims related to the Qualified Plan that it belatedly asserted in *Carabillo II*.

Moreover, the Plan and Plan Administrator are judicially estopped from asserting that

Luce's claim is a compulsory counterclaim.

<u>INTRODUCTION</u>

James W. Luce ("Luce") retired as Vice-President of ULLICO Inc. ("ULLICO"),

after decades of dedicated service, on June 1, 2003. Luce thereby acquired a vested

interest in retirement benefits payable by three retirement benefit plans created and

sponsored by ULLICO and its subsidiaries. Those three plans are:  (1) the ULLICO Inc.

Pension Plan and Trust, (the "Qualified Plan"), (2) the Union Labor Life Auxiliary

Retirement Benefits Plan (the "Auxiliary Plan"), and (3) the ULLICO Inc. Non-Qualified

Deferred Compensation Plan (the "Deferred Comp. Plan"). Despite numerous assurances

from ULLICO officials that ULLICO and its benefit plans would honor their obligations

to Luce, only the Qualified Plan did so after he retired.

ULLICO's Board of Directors ordered the Auxiliary Plan and the Deferred Comp.

Plan to withhold benefits from Luce. On September 11, 2003, Theodore Green, General

Counsel of ULLICO, wrote to Luce advising him that ULLICO had decided not to pay

any of his retirement benefits under the Auxiliary Plan or the Deferred Comp. Plan

because ULLICO claimed Luce had received a windfall in 2000 and 2001 as a result of

"deemed" purchases and sales of ULLICO stock permitted by the Deferred Comp. Plan.

Green also claimed that Luce's benefits under the Auxiliary Plan and the Deferred Comp.

Plan "… may be subject to forfeiture or be set off against any liability that you have to

2

ULLICO [for breach of fiduciary duty as an officer]." First Amended Complaint, *Luce v. The Union Labor Life Auxiliary Retirement Benefits Plan, et al.*, United States District Court for the Eastern District of Virginia, Civil Action No. 3-cv-1014 ¶¶ 41-43. (Exhibit 1 to this Memorandum.)

ULLICO did not withhold Luce's Qualified Plan benefits because the anti-alienation provisions of ERISA, 29 U.S.C. § 1056(d)(4)(1) permit a Qualified Plan to offset benefits only when the participant is ordered to pay the plan under a judgment of conviction for a crime involving the plan, or under a civil judgment entered by a court in an action brought in connection with a violation of Part 4 of ERISA. Consequently, the Qualified Plan began paying Luce his full plan benefit in July, 2003, and continued to do so monthly through January 2005.

In the meantime, numerous lawsuits involving multiple parties, claims and counterclaims were filed in various jurisdictions by ULLICO, its benefit plans and its former officers. None of those lawsuits involved the interpretation of the Qualified Plan or determination of benefits due to Luce or anyone else under the Qualified Plan. Memorandum Order and Opinion, *Carabillo v. ULLICO Inc.*, United States District Court for the District of Columbia, Civil Action No. 03-cv-1556 (R.J.L.) at 14 ("... none of the reasons alleged by ULLICO regarding the Counterclaim-Defendants' ineligibility for benefits bears any relation to the interpretation of the terms of the Plans. Instead, these claims focus on whether the *establishment and amendment of the Plans* constitute a breach of the Counterclaim-Defendants' fiduciary duties to the corporation and thus

would result in unjust enrichment if benefits were paid.") (Exhibit 2 to this Memorandum.)

A BRIEF HISTORY OF THE ULLICO LITIGATION

**A. Luce I.**

Luce filed a complaint in the United States District Court for the Eastern District of Virginia on August 8, 2003. In an action styled *James W. Luce v. The Union Labor Life Auxiliary Retirement Benefits Plan and Union Labor Life Insurance Company*, United States District Court for the Eastern District of Virginia, CA No. 03-cv-1014, Luce sought a declaration that he was entitled to be paid Auxiliary Plan benefits and a judgment for those benefits which had thus far gone unpaid. (Exhibit 3.)

After receiving Theodore Green's letter dated September 11, 2003, Luce filed a First Amended Complaint on October 7, 2003. In that Amended Complaint he joined the ULLICO Non-Qualified Deferred Compensation Plan and its sponsor ULLICO Inc. as Defendants. Luce then asserted the same claims for a declaratory judgment of entitlement to Deferred Comp. Plan benefits and payment of past due benefits against these new Defendants. (Exhibit 1).

**B.** Carabillo I.

In July 2003, Carabillo filed a complaint against ULLICO Inc. for wrongfully terminating him in order to prevent him from qualifying for retirement benefits. Carabillo's action, styled *Joseph A. Carabillo v. ULLICO Inc.*, United States District Court for the District of Columbia, Civil Action No. 03-cv-1556 was assigned to United States District Judge Richard J. Leon.

ULLICO Inc., the Union Labor Life Insurance Company, the Auxiliary Plan and the Deferred Comp. Plan, decided not to assert their counterclaims, initially, against Luce in Luce's Virginia civil action. Instead, on October 17, 2003, the Union Labor Life Insurance Company, the Auxiliary Plan and the Deferred Comp. Plan along with Mark Singleton, in his capacity as a Plan Administrator, without leave of court, joined as Counterclaim-Plaintiffs to file a massive counterclaim in *Carabillo I* in which they joined James W. Luce and several other former executives of ULLICO Inc. as additional Counterclaim-Defendants. The pleading that accomplished this mess was styled "Amended Answer and Counterclaim" (Exhibit 4). In that counterclaim, the ULLICO Plans asserted three claims for relief against Luce. In Count IV, they alleged that he had breached his fiduciary duty to ULLICO Inc., as an officer, by engaging in acts of self-dealing including adopting amendments to the Qualified Plan that entitled him to enhanced benefits under both the Auxiliary Plan and the Deferred Comp. Plan. In Count VI, the Auxiliary Plan sought a declaratory judgment that Luce's alleged misconduct forfeited his Auxiliary Plan benefits. Likewise, in Count VII, the Deferred Comp. Plan

sought a declaratory judgment that Luce had forfeited his right to payment of Deferred

Comp. Plan benefits.[1]

**C.** Judge Ellis Transferred Luce I to the District of Columbia.

On November 4, 2003, Luce filed a Motion for a Preliminary Injunction in *Luce I* to

prevent the ULLICO Defendants from prosecuting their counterclaim against Luce in

*Carabillo* I in the United States District Court for the District of Columbia. (Exhibit 6.)

The ULLICO Defendants opposed that motion and on November 21, 2003, United States

District Judge T.S. Ellis, III entered an Order denying the Motion for Preliminary

Injunction and stating his intention to transfer *Luce* I to the United States District Court

for the District of Columbia if the United States District Court for the District of

Columbia did not transfer *Carabillo I* to the Eastern District of Virginia. (Exhibit 7.)

When Judge Leon did not transfer *Carabillo I* to the Eastern District of Virginia, Judge

Ellis transferred *Luce I* to the United States District Court for the District of Columbia on

January 9, 2004. (Exhibit 8.)

**D.** This Court Declined to Exercise Supplemental Jurisdiction Over ULLICO's State
Law Based Counterclaims.

Luce moved to dismiss the counterclaims against him in *Carabillo I* for lack of

subject matter jurisdiction and improper joinder. On September 30, 2004, this Court

entered a Memorandum Opinion and Order granting Luce's motion in part and denying it

in part. (Exhibit 2.) The Order dismissed "Count IV Breach of Fiduciary Duty, Aiding

---

[1] On December 3, 2003, the Auxiliary Plan and Deferred Comp. Plan filed a similar but not identical counterclaim in *Luce I.* That counterclaim was subsequently voluntarily dismissed before an Answer was filed. (Exhibit 5.)

and Abetting Breaches of Fiduciary Duty and Unjust Enrichment" for improper joinder of
parties and lack of subject matter jurisdiction. (Exhibit 2 at 7-9.) This Court declined to
dismiss "Counts VI and VII:  Declaratory Judgments Regarding the Auxiliary Plan and
Deferred Compensation Plan." Despite finding that there was no federal question
jurisdiction because those counterclaims did not arise under federal common law, this
Court concluded that they shared a common nucleus of operative fact with Carabillo's
claim and therefore supplemental jurisdiction was properly invoked.  (Exhibit 2 at 16.)

The September 30, 2004 opinion substantially narrowed the scope of the litigation:

> Although the Court does not believe that these counterclaims can be
> asserted under 'federal common law,' the Court does find that there is a
> factual nexus between Carabillo's ERISA claim and ULLICO's
> counterclaims that benefits cannot be paid under the Auxiliary and Deferred
> Compensation Plans because such Plans were improperly established,
> amended or implemented. The misconduct alleged in Counts VI and VII,
> unlike the conduct alleged in several other of ULLICO's counterclaims,
> appears to bear upon whether Carabillo, Luce and the other Counterclaim-
> Defendants can properly claim the retirement benefits to which they believe
> they are entitled. While the Court will not now evaluate whether the
> misconduct alleged renders Carabillo, Luce and the other Counterclaim-
> Defendant officers ineligible to receive retirement benefits, it does find that
> for the purpose of evaluating jurisdiction, these claims are part of the same
> 'case or controversy' as Carabillo's claims.
>
> Furthermore, the Court believes that its stated focus with regard to the
> scope of this litigation, i.e., including only claims and counterclaims that
> relate to the claims of Carabillo and the other officers for benefits under the
> retirement plans, will alleviate some of the Luce's concerns regarding the
> complexity and breadth of factual and legal issues in this case.  See, e.g.,
> Luce Reply, 19-21. Accordingly, the Court denies Luce's Motion to
> Dismiss Counts VI and VII for lack of subject matter jurisdiction.

(Exhibit 2 at 16-18.)

This Court subsequently entered a Memorandum Opinion and Order on March 29, 2005, addressing similar Motions to Dismiss filed by Robert A. Georgine ("Georgine") and Carabillo, which were granted in part and denied in part. The Court took the opportunity to reiterate its decision in the "Luce Opinion" about the appropriate scope of the litigation:

> On that occasion, the Court considered whether Counts VI and VII of ULLICO's Amended Answer properly fall within its supplemental jurisdiction. *Id.* at *7. The Court concluded that these Counts (seeking a declaratory judgment regarding the Auxiliary Plan and Deferred Compensation Plan, respectively) were within the scope of the litigation because they appear to bear upon whether the counterclaim defendants can properly claim the retirement benefits to which they believe they are entitled under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1140.

Memorandum Opinion and Order, March 29, 2005 at 3. (Exhibit 9 to this Memorandum.)

Once again, this Court observed that it was exercising supplemental jurisdiction only over counterclaims asserting that Luce had engaged in breach of fiduciary duty to ULLICO, as a corporate officer, in the adoption, implementation or amendment of the "top hat" Auxiliary Plan or the Deferred Compensation Plans.

E. Carabillo II.

On May 13, 2004, Carabillo filed a second civil action in the United States District Court for the District of Columbia styled *Joseph A. Carabillo v. ULLICO Inc. Pension Plan and Trust, Administrator of the ULLICO Inc. Pension Plan and Trust, Plan Administration Committee of the ULLICO Inc. Pension Plan and Trust, John Does Nos. 1-20 in Their Capacities as Members or Former Members of the Plan Administration Committee of the ULLICO Inc. Pension Plan and Trust, ULLICO Inc. Employees' Life*

*and Health Welfare Plan, Administrator of the ULLICO Inc. Employees' Life and Health Welfare Plan, The Union Labor Life Auxiliary Retirement Benefits Plan, and Administrator of the Union Labor Life Auxiliary Retirement Benefits Plan*, United States District Court for the District of Columbia, Civil Action No. 04-cv-776 (R.J.L.). In that Complaint, Carabillo sought, for the first time, a declaration of entitlement to payments of Qualified Plan benefits directly from the ULLICO Inc. Pension Plan and Trust and its Administrative Committee as named Defendants. On or about July 26, 2004, the Defendants, again without leave of court, joined Luce as an additional Counterclaim-Defendant, along with John K. Grelle and Georgine and asserted a counterclaim for declaratory relief against Luce on behalf of the Qualified Plan. (Counterclaim in Civil Action No. 04-cv-776 (R.J.L.)) (Exhibit 10 to this Memorandum.)

Count I of the Counterclaim in *Carabillo II* asserted that Luce breached a fiduciary duty he owed to the Qualified Plan. The Qualified Plan alleged that Luce and the other Counterclaim-Defendants were fiduciaries of the Qualified Plan under ERISA. (Exhibit 10 at ¶ 15.) As such, they allegedly had the duty to act solely in the interest of the Plans' participants and beneficiaries; to act with the care, skill, prudence and diligence under the circumstances then prevailing; to make appropriate disclosures of material information; and to act in accordance with the documents and instruments governing the Plans. (Exhibit 10 at ¶ 16.) The Qualified Plan alleged that on July 24, 2001, Luce, as a member of the Benefits Committee of ULLICO Inc., purported to amend the terms of the Qualified Plan by increasing the percentage of a participant's average salary used to determine his normal retirement benefit from 2 to 2-1/2%, a 25% increase, applicable to

any participant that retires effective on or after January 1, 2002, including Luce. (Exhibit 10 at ¶ 18.) The Qualified Plan acknowledged that it continued to pay Luce benefits. (Exhibit 10 at ¶ 24.) However, the Qualified Plan claimed that as a result of the foregoing breach of fiduciary duty to the Plan, Luce had forfeited all or part of his rights to benefits under the Qualified Plan. (Exhibit 10 at ¶ 27.) Finally, the Qualified Plan sought as relief:

> A Declaration that the amendments to the Qualified Plan purportedly adopted on or about October 20, 1999 and July 24, 2001 are invalid as to counterclaim defendants and that counterclaim defendants are not entitled to receive benefits thereunder, … and disgorge to the Qualified Plan an amount equal to the benefits they received in violation of their fiduciary duties owed to the Qualified Plan." (Exhibit 10 at ¶ 30.)

Luce, along with the other former officers of ULLICO Inc., promptly moved to dismiss the counterclaims filed against them in *Carabillo II*. The Memorandum in support of that Motion to Dismiss observed that not only had the ULLICO Counterclaimants again failed to seek leave of court to file a counterclaim against Luce, the counterclaim failed to state a claim for which relief could be granted because the adoption and amendment of ERISA plans are "settlor functions" not fiduciary conduct. See Motion to Dismiss in Civil Action No. 04-cv-776 (R.J.L.) at 8-10 (Exhibit 11 to this Memorandum). That motion was opposed by the Counterclaim-Plaintiffs. It is now fully briefed and pending for decision before this Court.

**F.** <u>The Qualified Plan Reduced Luce's Benefits in January 2005.</u>

On January 14, 2005, Luce received a letter from Theodore T. Green, Senior Vice-President and General Counsel of ULLICO Inc. stating:

> Prospectively, your monthly benefit from the ULLICO Inc. Pension Plan and Trust ("Plan") will be paid at $5,879.70. This benefit amount has been

calculated based upon 2% of your high three years of service for each year of service under the Plan.

Green explained the reason for this reduction in Qualified Plan benefits as follows:

After investigation, it has been recognized that the Plan was being administered in accordance with unauthorized amendments that increased the compensation taken into account and provided for an accrual of benefits at a rate that was twenty-five percent greater than authorized by the Board of Directors. While your benefit was not directly affected by the change of compensation taken into account to determine benefits for purposes of this Plan, your unauthorized action that changed the rate of benefit accrual, increased your benefit by twenty-five percent. The current recalculation simply returns your benefit to the amount that was properly authorized.

See Amended Complaint, ¶¶ 55-56; January 14, 2005 Letter from Theodore Green, (Exhibit 12 to this Memorandum).

On February 1, 2005, Luce notified Green and the Administrative Committee, as Plan Administrator for the Plan, that the reduction in retirement benefits was a denial of vested benefits to which Luce was entitled under the Plan. Luce also gave notice of his intent to appeal from that adverse benefit decision as required by Article 9.3 of the Plan and the Department of Labor Regulations, 29 C.F.R. § 2560.503-1(h). Luce also exercised his right to review the relevant documents and to submit a written statement to the Plan Administrator after his counsel had an opportunity to review the record upon which the Plan Administrator acted in deciding to reduce Luce's benefits.

After much delay, on March 11, 2005, Theodore T. Green responded on behalf of the Plan Administrative Committee. Green specifically cited the Department of Labor Regulation, 29 C.F.R. § 2560.503-1(h)(2)(iii) as governing the administrative appeal and identified a single document as the only information upon which the Administrative

Committee relied and which, consequently, was the sole document "relevant" to Luce's

claim for denial of benefits. That document consisted of a set of resolutions adopted by

the ULLICO Board of Directors on September 9, 2004. See Amended Complaint, ¶ 61;

March 11, 2005 Letter from Theodore Green, Exhibit 13 to this Memorandum.

On March 30, 2005, Luce filed his summary of the grounds for reversal of the

Committee's denial of retirement benefits to Luce.

On May 20, 2005, the Administrative Committee, acting as Plan Administrator for the

Qualified Plan, denied Luce's appeal by written opinion. See Amended Complaint, ¶ 65;

May 20, 2005 Opinion of the Administrative Committee, Exhibit 14 to this Memorandum

(the "Opinion").

Two provisions of the Opinion are particularly relevant to the Motion to Dismiss.

First, the Administrative Committee noted in footnote 4 of the Opinion:

> Mr. Green's letter also noted the continued payment of pension benefits at
> the reduced level announced in his letter should not be taken as a waiver of
> "the Company's position that the Plan should be made whole for the
> unauthorized liability your actions caused, or of any other claim now being
> considered in pending litigation. Further, the Company reserves for the
> benefit of the Plan the right to set off the excess payments received to date
> against future payments." While your March 30, 2005 letter addresses these
> reservations of rights, the Administrative Committee **does not view them
> as relevant to the central issue presented by Mr. Luce's appeal** which is
> whether his monthly pension benefit was properly reduced to reflect a 2%
> accrual rate. As you have observed, these issues are currently pending in
> litigation, and will not be addressed here.

Exhibit 14 at 7 n. 4.

Second, the Committee clearly stated that the fiduciary duty breach alleged in

*Carabillo II* was completely irrelevant to the issue presented in the denial of benefits

appeal. In the view of the Committee:

> . . . the reduction in his benefit based on the application of a 2% rate of
> accrual is [not] a violation of ERISA's anti-alienation rule. 29 U.S.C.
> § 1056(d)(1). . . . Because the Plan was never validly amended to increase
> the accrual rate, Mr. Luce was never entitled to the higher benefit that
> originally paid to him. Consequently, the Plan's present refusal to pay a
> benefit that is not owed is not an "alienation" of Mr. Luce's benefits.

Exhibit 14 at 14-15.

The Plan Administrative Committee clearly stated that its Plan interpretation decision

is completely unrelated to the allegations of ERISA fiduciary misconduct that it raised in

its Counterclaim against Luce in *Carabillo II*.

**G.** Luce Promptly Advised this Court of the "Administrative" Reduction of his
Qualified Plan Benefit at a Status Conference on April 25, 2005.

On April 25, 2005, this Court called a status conference of the parties in the various

ULLICO related cases pending before it. At the conference the parties were invited to

address issues relating to case management and potential consolidation.

Counsel for Luce immediately advised the Court that the Qualified Plan had

unilaterally reduced Luce's Qualified Plan benefits:

> MR. SCULLY: [*Luce I*]was transferred here in January of
> 2004. That lawsuit seeks to have Mr. Luce obtain his
> nonqualified pension benefits; that is, his deferred
> compensation, the money he earned, the money he put away
> until his retirement and deferred for taxation, a considerable
> amount of money, which Ullico refuses to give to him, as
> well as his nonqualified excess benefit over the qualified
> benefit; that is, the plan benefit that's allowed to be --

qualifies for tax deductibility to the payor and tax deferral to the payee.

Mr. Luce also, unfortunately, due to the passage of time, has become subject to a sort of effort by Ullico to take the law into its own hands and decide some of the issues before you for itself. You may recall that Ullico sought a declaratory judgment in its counterclaim in Carabillo 1 that Mr. Luce participated in improper amendments of the benefit plan documents to allow himself to obtain a benefit.

Apparently not content to await your ruling on that, in January Ullico's Board of Directors instructed its General Counsel to reduce Mr. Luce's benefit unilaterally. That's his qualified plan benefit. That's the benefit Congress has instructed cannot be messed with and a benefit which is payable by the plan, not by Ullico.

THE COURT: What was it reduced from? From what to what?

MR. SCULLY: It was reduced about $2,000 a month based on the claim that it should have been computed on a basis of 2.5 percent of his annual compensation during the three-year maximum period rather than 2-1/2 [sic], which was the amount that was determined during a plan amendment in 2001.

THE COURT: So how much is he receiving now a month?

MR. SCULLY: Right now he gets about $5,000 a month, and it should be about $2,000 more. He was receiving the full benefit for the first 18 months of this litigation.

THE COURT: Right.

MR. SCULLY: For some reason, Ullico decided they weren't content with the status quo and decided to alter it. We have filed an appeal to the benefits committee. They gave us a hearing, which was very nice of them. But, of course, they are all employees of Ullico, and we are not terribly optimistic that those gentlemen -- and they are all gentlemen, and I mean no personal aspersions on them, but I

wonder whether they will have the courage to tell the General Counsel of their employer that he is just flat wrong and he has intentionally violated a Federal statute.  I hope they do; I hope there are still men of that type around, but I wonder.

So Mr. Luce finds himself in a very difficult position.  He has been waiting now for many, many months to have his affirmative claims heard.  And just like Mr. Carabillo, he would like those claims heard and not have them lost in this mountain of allegations of fiduciary misconduct that Ullico has managed to file now in four different lawsuits in this Court and one in the District of Columbia Superior Court, which brings me to the other issue about consolidation vis-a-vis Mr. Luce.

As the Court recalls, you have dismissed most of the state law-based fiduciary duty counts from the ERISA-based claims and have decided not to exercise supplemental jurisdiction over them.  Mr. Luce was the first one out.  The first opinion dealt with Mr. Luce's Motion of challenging jurisdiction.  As a result of that ruling, Mr. Luce was sued alone by Ullico in this court, another case that's been assigned to you called Ullico, Inc., versus Luce, in which he is the sole Defendant accused of aiding and abetting breaches of fiduciary duty by others and of committing fiduciary duty breaches of his own.

All of the other claims for breach of fiduciary duty are pending in the District of Columbia Superior Court against the other Defendants.  And a Motion has been recently filed in the District of Columbia Superior Court to lift the stay of proceedings pending in that Court to allow those claims to go forward against those Defendants in State Court.

It makes no sense to me to have Jim Luce defending alone, as a sole Defendant, the identical claims arising out of the identical facts with all the same witnesses and evidence here while some poor Judge in the D.C. Superior Court has to do the same thing.  So I think we have to ferret that out as part of this decision regarding consolidation.

I don't have any problem with consolidating Discovery.  I want Discovery to be done so we can get to the merits of this

thing so Mr. Luce can get the retirement benefits he needs, but I also don't think in the rush to get some movement in this case we overlook this very serious problem of misalignment of resources between the State and Federal Courts.

THE COURT:  Has there been any Motion filed in the Superior Court about transferring the case over there or vice versa?  Has there been any litigation around the issue of removing a case from this Court or from the Superior Court to this Court?

MR. SCULLY:  I don't think the D.C. case is removable, frankly.  I can't remember my analysis, but I remember at one time I looked at the issue and certainly decided, for my purposes, it wasn't removable.

THE COURT:  All right.

MR. SCULLY:  But I don't know of any Motions to transfer here.

THE COURT:  Well, the one thing you can take to the bank is that I am not looking for more Motions.  In fact, if I could admonish all parties at least once, I would say too many Motions have already been filed in this case.  And it certainly doesn't help move things along to file too many Motions.

So -- I mean, as you are probably all well aware, and if you are not, you ought to become aware, we are under siege in this Court with criminal cases.  I have had 14 trials in the last 12 months.  And trust me, by the standards of this Court, that's pretty high.  And only one of -- I have had 15 trials in total, and only one of which was civil.  And I am constantly canceling and rescheduling civil trials to accommodate the Speedy Trial Act.

So we are under siege, and it is very hard to juggle 250-plus civil cases when you are constantly under siege with criminal trials.

MR. SCULLY:  I wasn't the one who decided to be here, your Honor.  I was happy to stay across the river in the verdant pastures of Virginia.

THE COURT:  I know.

MR. SCULLY:  And if the Court wants to send it back to Alexandria, I would be happy to go.

THE COURT:  I know.  I understand that, but I just thought I would take the opportunity to make sure everyone appreciates that more Motions is not the answer, in this Court's judgment. More settlements and more arbitrations is better than more Motions, so -- but anyway, we will get through it.  Thank you, Mr. Scully.

Transcript of April 25, 2005 Hearing at 7:01-11:22, Exhibit 15 hereto.

Counsel for the Qualified Plan, Mr. Trenga, responded as follows:

With respect to Mr. Luce and the recent events that Mr. Scully referred to, the fact of the matter is when this new board took over, it set about the rather challenging task of sifting through the long period of self-dealing by management and dealt with situations as they came to know them.  After this lawsuit was filed, the board learned that among the breaches of fiduciary duty that these members of the benefits committee engaged in, including Mr. Luce, who was one of the members of that committee, they passed a second amendment that wasn't appreciated by the board when the lawsuit was originally filed that increased his benefits by 25 percent under an amendment that was not authorized, was never approved by the Board.  And as the Court may remember in the pleadings that we have filed, the plan specifically reserves to the board, as you would expect, the ability to amend the plan when you are trying to increase benefits.

That was ignored.  The plan did it on its own.  Our claim in the case is, in doing so, they breached their fiduciary duties and they can't recover under it.  There is nothing in ERISA that prevents a company from stopping improper benefits to breaching fiduciaries under improper, invalid amendments. And that's what the board did.  When it found out that it was paying improperly benefits under an invalid amendment to a fiduciary that breached its duty and self-dealt in passing the

amendment in the first place, it exercised its right to stop those payments. In fact, they probably had an obligation to do that.

The fact of the matter is the Supreme Court has recognized that the precise reason you have these kinds of specified methods for amending a plan is so that when the benefits are challenged, a plan administrator can decide which amendments are valid and he has to pay under and which ones are invalid and he is not obligated or can't pay under -- and that's precisely what happened here.

The board made clear that this was an invalid, improper amendment, and Mr. Luce and the other members of that benefits committee, including Mr. Georgine who was also receiving benefits, would no longer receive these improper benefits, and the plan administer [sic] so administered the plan. It is perfectly legal. This notion that we are in violation of Federal statutes I will just attribute to overzealous observations and advocacy.

But the fact of the matter is there is nothing improper about it. Mr. Luce is now pursuing his remedies. They have that appealed. And I suspect it will work its way through the process.

Transcript of April 15, 2005 Hearing at 16:02-17:20, Exhibit 15. (emphasis added).

Counsel for the Plan and the Plan Administrator did not ask this Court to order Luce to file any appeal of the denial of his Qualified Plan benefits in the United States District Court for the District of Columbia. This Court did not elect to do so *sua sponte* either.

Counsel for Luce, having brought the facts to the attention of the Court, accepted the Court's admonition not to file additional pre-trial motions. Consequently, Luce did not file a formal Motion to Dismiss Count II of the Qualified Plan's counterclaim against Luce as moot in light of the Plan's decision to reduce his benefits.

**H.** **This Court Specifically Stated on May 16, 2005 that the Consolidated Pleadings it Intended to Order Could not be Used to Add New Claims or Counterclaims to the Pending Cases.**

At the status conference held on May 16, 2005, this Court heard arguments regarding the provisions of a proposed Consolidation Order and ultimately decided upon its final form. The Court announced that consolidation would, for purposes of pre-trial, coordinate the pleadings and responses for three of the four actions: *Carabillo I, Carabillo II* and *Luce I* (hereinafter, "Consolidated Actions"). Consistent with the Court's decision, the parties were instructed by the Court to "tak[e] what we have already and boil[ ] it down into . . . a consolidated format." May 16, 2005 Status Conference Hearing Transcript ("Transcript of May 16, 2005"), at 15:9-16:4, Exhibit 16 hereto. The Court clearly stated that the purpose of filing consolidated pleadings was to simplify the parties' and court's ability to manage the case and to narrow the pre-trial issues, not expand them. The Court admonished the parties that the consolidation process was not intended to allow new claims or counterclaims to be added to the litigation. Additions to the pleadings or additional claims could only be made by motion for leave to amend.

The Court was quite clear about the intent of the Consolidation Order:

> THE COURT: What I thought we were doing here was basically taking what we have already and boiling down into, you know, into a consolidated format, not like we're adding more things in. That's a whole different deal, and while I am not saying, ruling, that if there's an absolute prohibition on adding things in, it would seem to me that coming up with adding new claims and new counterclaims at this point would have to be done in virtually the same way we would do it under any scenario, which is you have to seek leave of the court. The other side would be in a position to oppose or vice versa, and then I'd have to make to ruling.

> Now, again, I'd rather not be in a position where I have to make more rulings on these things, because we've already got plenty of that going on in this case. *But it just seems to me at this point that the effort to consolidate is to consolidate when it's already extant, not to add more things in to either side. Just take what we got and get it all under, so to speak, one roof.*

Transcript of May 16, 2005 at 15:8-16:4, Exhibit 16. (emphasis added).

Counsel for the Counterclaim-Plaintiffs clearly understood this Court's ruling that the filing of consolidated pleadings would not trigger the application of the rules regarding responsive pleadings, such as Fed. R. Civ. P. 12 and 13. When counsel for the Counterclaim-Plaintiffs asked the Court whether the Consolidation Order should reflect that no further Rule 12 motions should be filed, the Court was quite clear:

> THE COURT:  No. We don't want unless new claims are filed because – because that's like inviting it. I'd just leave it, "No further 12 motions shall be filed." *I mean, obviously, if there's some need for new claims to be filed at a later time, and they get a [sic] leave of the court, then we'll deal with that at that point.*

Transcript of May 16, 2005 at 55:02-08, Exhibit 16 hereto. (emphasis added).

The Court's subsequent Consolidation order embodied these directions. June 1, 2005 Consolidation Order ¶ 3, Exhibit 17 hereto.

**I.** **Judge Hilton Transfers Luce's Benefits Denial Claim to the District of Columbia District Court.**

On July 21, 2005, Luce filed suit in the Eastern District of Virginia for a determination of whether the May 20, 2005 Opinion of the Plan Administrative Committee is correct or whether it was unreasonable, arbitrary and capricious and must be set aside.  James W. Luce v. ULLICO, Inc. Pension Plan and Trust, et al., United States District Court for the Eastern District of Virginia, C.A. No. 05-851-A.

The ULLICO Inc. Pension Plan and Trust and the ULLICO Inc. Employee Benefit Plan Administration Committee moved to dismiss Luce's Complaint on the grounds that (1) it was filed in violation of this Court's June 1, 2005 Consolidation and Scheduling Order, (2) that it was barred by the first-filed rule and (3) because it was a compulsory counterclaim to ULLICO's Consolidated Counterclaim.

On September 23, 2005, Judge Hilton denied the Defendants' Motion to Dismiss and transferred Luce's claim to this Court.  September 23, 2005 Transfer Order, Exhibit 18 hereto.  On October 13, 2005, Luce filed an Amended Complaint in this Court, which added the individual committee members as defendants ("Amended Complaint").

<u>ARGUMENT</u>

**1.** Luce was Not Ordered to Pursue his Denial of Qualified Plan Benefits Claim in the Consolidated Litigation.

Judge Ellis transferred *Luce I*, in which Luce sought benefits from the Auxiliary Plan and the Deferred Comp Plan, to the United States District Court for the District of Columbia on January 9, 2004. The Qualified Plan and the Plan Administrative Committee were not parties to *Luce I*. It was not until a year later, in January 2005, that the Qualified Plan, through the Plan Administrative Committee, decided that the 2.5% annual salary contribution rate at which Luce's Qualified Plan Benefits had been paid for over 18 months was never actually adopted and, therefore, was not part of the Qualified Plan. Judge Ellis' transfer order did not direct and could not have required Luce to file a claim for benefits against the Qualified Plan, that did not yet exist, in the United States District Court for the District of Columbia.

This Court's Consolidation Order dated June 1, 2005, also did not require Luce to appeal the denial of benefits by the Qualified Plan in the consolidated cases. The Court was explicit in its admonition that the consolidated complaint it ordered was designed to narrow, rather than to expand, the claims in that litigation. The Court ordered that the consolidated complaint should include only ". . . any claims [the former officers] intend to pursue that have been asserted in the original and amended complaints and claims they have or would assert in reply to the original and amended counterclaims already filed in those actions." (Exhibit 17 at ¶3.a.)  This Court clearly explained the meaning of the text of its Order at the Status Conference Hearing on May 16, 2005. The Court specifically told counsel for the Defendants that any party seeking to assert additional or supplemental claims beyond those already filed would have to seek leave of Court to do so. Exhibit 16, Transcript of May 16, 2005 at 15:8-16:4.

Defendants' claim that Luce initiated a duplicative proceeding in Virginia in contravention of and in an attempt to avoid this Court's Consolidation Order, is nonsense. (Memorandum in Support of Motion to Dismiss at 7.) The Qualified Plan Administrator's Opinion, which finally denied Luce's appeal, held that there was no relationship between the pending litigation and the issue of Plan interpretation that it decided. Counsel for the Qualified Plan and the Plan Administrative Committee took the same position in oral argument in front of this Court on April 25, 2005.  Transcript of April 25, 2005, Exhibit 15, at 16:02-17:20.

For a second time, the Qualified Plan and Plan Administrative Committee attack
Luce's litigation conduct without regard of the relevant facts or the patent inaccuracy of
their argument.

**2.** Luce's Appeal from a Denial of his Qualified Plan Benefits by the Plan
Administrator is not a Compulsory Counterclaim in the Consolidated Action.

    **(a)**    Luce's Appeal from the Denial of Benefits does not Arise out of the Same
Transaction or Occurrence as the Claim in *Carabillo II*

Luce's appeal of the Plan Administrator's denial of his Qualified Plan benefits does
not meet the test for a compulsory counterclaim cited by the Qualified Plan in its
Memorandum. (Memorandum in Support of Motion to Dismiss at 7.)  The Defendants
cite *Columbia Plaza Corporation v. Security National Bank*, 525 F.2d 620 (D.C. Cir.
1975), in support of their argument that Luce's denial of benefits appeal should have
been a compulsory counterclaim to the Consolidated Counterclaim.  *Columbia Plaza*
involved a dispute related to financing for a commercial construction project. The Court
of Appeals considered whether an action pending in the Southern District of New York to
recover on three short-term notes executed in anticipation of the enlargement of a
construction loan was so logically related to a lawsuit pending in the District of Columbia
challenging various aspects of that construction loan that it was error for the District
Court to deny a motion for a preliminary injunction restraining prosecution of the New
York action.  In determining whether the New York claim was properly a compulsory
counterclaim in the D.C. lawsuit the court looked at the degree to which the same issues
and the same evidence would be considered in both actions, and determined that the two
matters could not appropriately be addressed in different courts.  Because "[a]n

adjudication pursuant to Rule 13(a) that two actions are parts of a single controversy should lead to resolution of both in a single forum," 525 F.2d at 626, the court directed the District Court to either allow Security National Bank to amend its answer to add a counterclaim or to transfer the New York action to D.C. for consolidation with the D.C. action, 525 F.2d at 629 n.65.

Columbia Plaza does not require dismissal of Luce's benefits denial appeal claim. Although it may be argued that a logical relationship exists between the claim and counterclaim because both address the validity and consequences of invalidity of the 2.5% contribution rate amendment, the degree of that logical relationship does not support a finding that Luce's claim should have been a compulsory counterclaim to the Consolidated Counterclaim.

First, the issues of fact and law raised by Luce's claim are not the same as the issues raised by Count I of the Consolidated Counterclaim. There is no live case or controversy regarding whether Luce should be barred from receiving benefits from the Qualified Plan by virtue of his alleged breach of fiduciary duty to the Plan. That issue was foreclosed by the Plan Administrative Committee's Opinion that the Plan simply does not contain the 2.5% contribution rate provision which is the subject of Count I of the Consolidated Counterclaim. There is no need to declare Luce unable to collect a benefit which is not included in the Plan. The Qualified Plan and the Plan Administrative Committee obtained the relief they sought in Count II of their counterclaim in *Carabillo II,* now Count I of the Consolidated Counterclaim, through the alternative vehicle of an administrative

interpretation of the Plan.[2] Thus, the declaratory judgment claims in Count II of the

*Carabillo II* counterclaim, and their counterparts in Count I of the Consolidated

Counterclaim are now moot. Moreover, the issues of fact and law raised by Luce's claim

are heavily constrained by Department of Labor Regulations and decisional law; they are

limited to whether the Plan Administrator's decision is entitled to deference and, if so,

whether it made an arbitrary and capricious decision to deny Luce benefits based on an

interpretation of the Plan.  See 29 CFR 2560.503-1; *Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989).  That is a completely different issue from

whether Luce was a fiduciary of the Qualified Plan and breached his fiduciary duty to the

Qualified Plan and/or ULLICO Inc., as the Plan's sponsor, by attempting to adopt the

contribution rate amendment.

    Second, *res judicata* would not bar a subsequent suit on the claim absent the

compulsory counterclaim rule. No decided case shows support for the argument that a

claim against a party in his capacity as an alleged ERISA Plan fiduciary would be *res*

*judicata* in an action in which the same individual sought benefits as a Plan participant.

That is especially the case when the later proceeding is an appeal from a denial of

benefits based on the administrative record developed by the Plan Administrator. Indeed,

several courts have held that ERISA is a carefully reticulated statute that impliedly

overrules the compulsory counterclaim rule in Fed. R. Civ. P. 13(a) to the extent an

---

**[2]** **The implication that any Counterclaims asserted in the *Carabillo I* action are relevant to this analysis, (Memorandum in Support at 6), is completely wrong. Neither the Qualified Plan, nor the Plan Administrative Committee were parties to the Counterclaims asserted in *Carabillo I*.**

application of that rule would infringe upon the various independent rights of action created by ERISA. *See Pension Benefit Guaranty Corp. v. AlloyTek, Inc.*, 924 F.2d 620, 624 (6th Cir. 1991) (application of Rule 13(a)) would upset the statutory scheme in ERISA governing independence of various claims belonging to the PBGC); *Cf. Arch Mineral Corp. v. Lujan*, 911 F.2d 408, 414 n.3 (10th Cir. 1990) (elaborate administrative scheme for claim assertion authorized by Congressional action indicates Rule 13(a) should not be applied).

Third, the same evidence will not support or refute the Qualified Plan's claim against Luce for breach of fiduciary duty and Luce's claim that the Plan Administrator's interpretation of the Plan was invalid. The Qualified Plan's breach of fiduciary duty claim depends upon proof that Luce was engaged in self-dealing instead of acting in the interest of Plan participants when he voted to adopt the Plan amendment. Luce's claim merely challenges the Plan Administrator's written Opinion that the putative amendment did not comply with the Plan's procedures for adopting amendments. The latter issue is much more constricted and, consequently, the evidence will be focused on compliance with corporate formalities and interpretation of ULLICO Inc.'s corporate minutes and corporate governance practices regarding delegation of authority to adopt amendments from the Board to the Benefits Committee.

Because Luce's appeal from a denial of benefits by the Plan Administrative Committee is not a compulsory counterclaim under Fed. R. Civ. P. 13(a), this action cannot be dismissed on that basis.

    **(b)**    The Qualified Plan and the Plan Administrator are Equitably and Judicially Estopped to Claim that Luce's Claims are Related to the Consolidated Counterclaim.

The Plan Administrative Committee decided not to address Luce's claims that the Plan was exercising self-help to resolve various claims in the pending litigation. The Committee decided:

> "While you're March 30, 2005 letter addresses these reservations of rights, the Administrative Committee does not view them as relevant to the central issue presented by Mr. Luce's appeal which is whether his monthly pension benefit was properly reduced to reflect a 2% accrual rate."

Exhibit 14, Opinion at 7 n.4.

Moreover, the Committee clearly stated that the fiduciary misconduct it alleged against Luce in *Carabillo* II was not considered as part of the grounds for its denial of benefits and therefore the reduction in his benefit could not violate ERISA's anti-alienation rule. Opinion, Exhibit 14 at 14-15.

Having clearly stated that the Plan interpretation decision was completely unrelated to the allegations of ERISA fiduciary misconduct that it raised in its counterclaim against Luce in *Carabillo II*, the Plan Administrative Committee and the Qualified Plan cannot now contend that those issues are so closely related that Luce's appeal is a compulsory counterclaim to the Consolidated Counterclaim.

The Plan Administrator's Opinion brings this case squarely within the doctrines of equitable and judicial estoppel.

Federal principles of equitable and judicial estoppel provide the rule of decision in this case. *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 n. 4 (4th Cir. 1982). Equitable

estoppel and judicial estoppel are closely related doctrines. Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation in which it prevailed. A party asserting judicial estoppel does not have to prove detrimental alliance because judicial estoppel is designed to protect the integrity of the courts rather than the interests of the litigants. *Lowery v. Stovall*, 92 F.3d 219, 223 n. 3 (4th Cir. 1996).

Judicial estoppel and equitable estoppel both are applicable to conduct occurring in a prior administrative proceeding. *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998) (judicial estoppel arises out of prior social security benefits proceeding); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982) (judicial estoppel not applicable only because the particular Veteran's Administration proceeding at issue resulted in a settlement rather than an adjudication).

The requirements for judicial estoppel arising out of a prior quasi-administrative proceeding are present here. First, the Qualified Plan and Plan Administrative Committee are seeking to adopt a position that is inconsistent with the findings made in the prior administrative appeal. Second, the prior inconsistent position was accepted by the decision maker – the Plan Administrative Committee. Third, the party asserting the position, the Qualified Plan, must have intentionally taken the factual position. That is, its prior position must not have been based upon inadvertence or mistake.

The Qualified Plan's Administrative Committee found as a matter of fact that Luce's conduct at issue in the *Carabillo II* litigation was irrelevant to the narrow Plan interpretation decision facing them. That was an issue of fact rather than one of law or legal theory. Consequently, it is a proper basis for judicial and equitable estoppel.

Second, the prior inconsistent position was clearly accepted by the Plan Administrative Committee in its Opinion. Third, the position was not based on inadvertence or failure to understand the nature of the proceedings. The Plan Administrative Committee was represented by counsel at the appeal hearing and was represented by additional counsel in connection with the preparation of its Opinion.

The Qualified Plan and the Plan Administrative Committee cannot decide Luce's appeal of a denial of benefits on the grounds that his alleged fiduciary misconduct is irrelevant, thereby mooting the issue, and then turn around and repudiate that finding in order to win a further victory here. *Ladd*, 148 F.3d at 756. The Qualified Plan and Plan Administrative Committee's contention that Luce's claims in this action are barred by the compulsory counterclaim rule in Fed. R. Civ. P. 13(a) is clearly barred by the doctrine of equitable and judicial estoppel.

Luce relied on the Opinion in deciding whether to bring this action in the Eastern District of Virginia or in the United States District Court for the District of Columbia. The Qualified Plan and Plan Administrative Committee cannot induce Luce to reasonably rely upon their Opinion that there is no relationship between the facts asserted in Count II of their counterclaim in *Carabillo II* (now Count I of the Consolidated Counterclaim) and the issue of Plan interpretation presented in Luce's appeal and then turn around and claim the contrary in not their motions to dismiss this action.

3.    The Amended Complaint States a Claim Against The Committee and Committee Members.

(a)    Count I States a Valid Claim against the Committee and Its Members for Failure to Provide All Documents Relevant to Luce's Claim for Benefits.

In Count I[3] of the Amended Complaint Luce seeks an assessment of statutory penalties against the Plan Administrator Committee and its individual members for their failure to provide all documents relevant to Luce's claim for benefits.  Section 503 of ERISA, 29 U.S.C. §1133(2), provides that, "*in accordance with regulations of the Secretary* every employee benefit plan shall … (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  That section does not define "full and fair review."  Rather, in accordance with the authority of 29 U.S.C. §§1133 and 1135, the minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants are set forth in 29 C.F.R. §2560.503-1.

Every plan must establish and maintain a procedure by which a claimant has a reasonable opportunity to appeal an adverse benefit determination and under which there will be a full and fair review of the claim and adverse determination.  29 C.F.R. §2560.503-1(h)(1).  "Full and fair review" requires that the claims procedures provide that a claimant shall be given reasonable access to and copies of all documents, records and other information relevant to the claimant's claim for benefits.  29 C.F.R. §2560.503-1(h)(2)(iii).    A document, record or other information is "relevant" to a claim for

_____

3    The undersigned recognizes that there is a word-processing error in the Amended Complaint such that the paragraphs leading into and contained within Count I do not follow sequentially, this error was realized for the first

benefits if, among other things, it was relied upon in making the determination or it was submitted, considered or generated in the course of making the determination.  29 C.F.R. § 2560.503-1(m)(8)(i) and (ii).

In turn, on review, the plan administrator must notify the claimant of its determination and, in the case of an adverse benefit determination on review, "the *plan administrator* shall provide such access to, and copies of, documents, records, and other information described in paragraphs (j)(3), (j)(4) and (j)(5) of this section as is appropriate. 29 C.F.R. § 2560.503-1(i)(5) (emphasis added).  Paragraph (j)(3) then describes "all documents, records and other information relevant to the claimant's claim for benefits" as defined by paragraph (m)(8).  Thus, after review of the adverse benefit determination, the Plan Administrative Committee became responsible for providing access to all documents and information relevant to Luce's claim.  29 C.F.R. § 2560.503-1(i)(5); *see also Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 10647, *7 (S.D.N.Y. May 31, 2005) ("When there is an adverse benefit determination on review, the Plan Administrator (as opposed to the Plan) shall provide access to, and copies of, documents, records, and other information described in paragraph (j)(3) or the regulation.").  Despite demand by Luce, the Plan Administrative Committee failed and refused to provide access to and copies of all documents relevant to Luce's claim.

---

time in preparing this Opposition and, should the Defendants' motion be denied in whole or in part, counsel for Luce would request leave to amend the Complaint to correct the error.

A participant or beneficiary may bring a civil action pursuant to 29 U.S.C. §1132(a)(1)(A) for an administrator's refusal to supply requested information. Any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary … may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B).

There are no decisions in this Circuit that address the issue of whether "this title" as used in 29 U.S.C. § 1132(c)(1)(B) includes the implementing regulations, such as 29 C.F.R. § 2560.503-1. The Defendants urge this court to adopt the position of the Third Circuit in *Groves v. Modified Retirement Plan for Hourly Paid Employees of Johns Manville Corp. and Subsidiaries*, 803 F.2d 109 (3rd Cir. 1986). In *Groves*, the Third Circuit held that, because it found § 502(c) to be a penal provision, it should be leniently and narrowly construed to preclude the imposition of sanctions for violation of agency regulations. *Groves*, 803 F.2d 109, 117. The Third Circuit acknowledged that "by authorizing the imposition of sanctions for breach of duties imposed by 'this subchapter,' section 502(c) could be understood to include both the provisions of ERISA itself and the regulations promulgated pursuant to that statute." *Id.* It also recognizes that the penalties paid by the administrator will be received by the complaining plan participant, from which fact one "might conclude that the statute was intended as a remedy for the participant not as a penalty for derelict plan administrators." *Id.* But, the Third Circuit nonetheless concludes, "although it is a very close question," that the imposition of

personal liability on plan administrators is a penal provision which should not be construed to include violations of the implementing regulations. *Id*.

On the other hand, other courts have held that the recovery of up to $100.00 per day provided by 29 U.S.C. 1132(c) is not a penalty or forfeiture, but is instead a remedy sought by an individual as compensation to address a private wrong. *See Stone v. Travelers Corp.*, 58 F.3d 434, 438-39 (9th Cir. 1995) (holding that recovery provided by 29 U.S.C. 1132(c) is not a penalty because it seeks to redress a wrong to an individual, not the public, in a situation where the individual's damages may be obscure and difficult to prove). This Court too should find that 29 U.S.C. 1132(c)(1)(B) is remedial and not punitive in nature, and as such, that it encompasses the statutory provisions of ERISA as well as the regulations promulgated pursuant thereto, such regulations having been incorporated into the statutes and made a part thereof as intended by the very language of 29 U.S.C. 1133 ("in accordance with regulations of the Secretary").

Luce asks that this Court permit him the full range of remedies contemplated by the elaborate scheme for claim assertion inder ERISA, and deny the Defendants' Motion to Dismiss.

(b)    The Plan Administrator is a Proper Defendant to a Claim to Recover Benefits.

The Plan Administrator has decided that Luce is not entitled to all of his vested benefits under the Qualified Plan. Luce, in turn, seeks a court order requiring the Plan to pay him the full amount of his vested benefits. A court order to pay benefits from an

ERISA plan must issue against a party capable of providing the relief requested, such as the Plan Administrator.

There is a split among the circuits concerning whether a party other than the ERISA plan itself is a proper party defendant to a claim pursuant to ERISA § 502(a)(1)(B). In contrast to the Second, Seventh and Ninth Circuit opinions cited by the Defendants, the Third, Sixth, Eighth, and Eleventh Circuits have all held that a potential defendant can be either the plan itself or the plan administrator. *See Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998) (section 502(a)(1)(B) action permitted against plan administrator but not the employer); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (holding that the proper defendant in a section 502(a)(1)(B) action is the party who administers the plan); *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) (holding that an employer is only liable in an action for benefits when it is shown they administered the plan); *Hall v. LHACO, Inc.*, 140 F. 3d 1190, 1194 (8th Cir. 1998) (holding that the proper defendant in an ERISA section 502(a)(1)(B) action is either the plan as an entity or the administrator of the plan); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3d Cir. 1997) (entertaining an action against the plan administrator to recover benefits under section 502(a)(1)(B)); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (acknowledging that ERISA allows suits to recover benefits against the plan as an entity and against the fiduciary of the plan, and finding that a plan administrator is such a fiduciary); *Penrose v. Hartford Life Accident Ins. Co.*, No. 02 C 2541, 2003 U.S. Dist. LEXIS 13497, *14 (N.D. Ill. Aug. 4, 2003) ("§ 1132(d) merely provides that a plan can be sued and was not intended to limit § 1132(a)(1)(B) suits to

plans"); see also *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 756 (9th Cir.

2001) (broadening holding in *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir.

1985) to allow suits against plan administrators).

Although the Act is clear with respect to who may bring an action under ERISA

section 502(a)(1)(B), it is not clear with respect to whom the claim may be brought

against.  From a practical perspective, it makes sense that any claim requiring payment of

plan benefits be directed at an entity capable of providing the relief requested. In light of

ERISA's goal of providing protection to plan participants and their beneficiaries, this

Court should join those circuits that have held both the plan and plan administrator may

be sued under section 502(a)(1)(B), and it should deny the Defendants' motion to dismiss

Counts II and III as against the plan administrator.

<u>CONCLUSION</u>

For the reasons stated, the Motion to Dismiss is without merit and must be denied.

JAMES W. LUCE
By Counsel

_____/S/_____
Robert E. Scully, Jr.
Virginia State Bar No.:  19218
REES, BROOME & DIAZ, P.C.
8133 Leesburg Pike, Ninth Floor
Vienna, Virginia  22182
(703) 790-1911
Facsimile No. (703) 790-5249
*Counsel for James W. Luce*

C:\Documents and Settings\edh\Local Settings\Temporary Internet Files\OLKB1\Opposition Luce.doc