UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES W. LUCE                                          :
10712 Milkweed Drive                                  :
Great Falls, Virginia  22066                          :
                                                      :
        Plaintiff,                                    :
                                                      :
v.                                                    :
                                                      :
ULLICO INC. PENSION PLAN & TRUST,                     :
Serve: Mark Singleton, Member of the                  :
ULLICO Inc. Employee Benefit Plans                    :
Administrative Committee                              :
1625 Eye Street, N.W.                                 :
Washington, D.C.  20006                               :
                                                      :
                                                      :
and                                                   :
                                                      :
ULLICO INC. EMPLOYEE BENEFIT                          :
PLANS ADMINISTRATIVE COMMITTEE                        :
Serve:  Mark Singleton, Member                        :
1625 Eye Street, N.W.                                 :
Washington, D.C.  2006                                :
                                                      :
MARCELLUS DUCKETT, Member                             :      Civil Action No.: 05-1996-RJL
   Employee Benefit Plans                             :
   Administrative Committee                           :
ULLICO Inc.                                           :
1625 Eye Street, N.W.                                 :
Washington, D.C.  20006                               :
                                                      :
PETER HALEY, Member                                   :
   Employee Benefit Plans                             :
   Administrative Committee                           :
ULLICO Inc.                                           :
1625 Eye Street, N.W.                                 :
Washington, D.C.  20006                               :

JOSEPH L. LINEHAN, Member          :
  Employee Benefit Plans            :
  Administrative Committee           :
ULLICO Inc.                        :
1625 Eye Street, N.W.              :
Washington, D.C.  20006            :
                                  :

JAMES PAUL, Member                 :
  Employee Benefit Plans            :
  Administrative Committee           :
ULLICO Inc.                        :
1625 Eye Street, N.W.              :
Washington, D.C.  20006            :
                                  :

MARK E. SINGLETON, Member          :
  Employee Benefit Plans            :
  Administrative Committee           :
ULLICO Inc.                        :
1625 Eye Street, N.W.              :
Washington, D.C.  20006            :
                                  :
     Defendants,                  :

## FIRST AMENDED COMPLAINT

1.     Plaintiff James W. Luce ("Luce") is, and at all relevant times has been, a Participant in the ULLICO Inc. Pension Plan & Trust.  29 U.S.C. § 1002(7) (Supp. II 2003).  Luce resides in this judicial district.

2.     Defendant ULLICO Inc. Pension Plan & Trust (the "Plan") is, and was, at all relevant times an "employee pension benefit plan," an "employee benefit plan," and a "defined benefit plan," within the meaning of ERISA, 29 U.S.C. §§ 1002(2)(A), 1002(3), 1002(35). ULLICO Inc. ("ULLICO") is the Plan Sponsor within the meaning of ERISA, 29 U.S.C. §§ 1102(a). *See* Plan § 2.43.[1]

---

[1]  Unless other specified, all references to the "Plan" are to the Plan as amended and restated effective February 28, 2002, and as further amended on April 23, 2003, by the addition of the "June 1, 2003 Early Retirement Program."  These versions of the Plan, and

Defendant, ULLILCO Inc. Employee Benefit Plan Administrative Committee (referred to herein as the "Administrative Committee") is the Plan Administrator, Plan § 2.42, 2.13, and has primary responsibility for review of claims for benefits under the Plan, Plan §§ 8.1-9.5.

3.     Defendants Marcellus Duckett, Peter Haley, Joseph L. Linehan, James Paul and Mark E. Singleton are all Members of the ULLICO Inc. Employee Benefit Plans Administrative Committee.

<u>**Jurisdiction and Venue**</u>

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.  Specifically, this action is brought under ERISA § 502(a)(1)(B), (a)(3), 29 U.S.C. § 1132(a)(1)(B), (a)(3).

5.     This Court has personal jurisdiction over the Defendant Plan and the Defendant Plan Administrative Committee, because the Plan's principal place of business is maintained in the District of Columbia, and because ERISA provides nationwide service of process.  *See* Va. Code Ann. § 8.01-328.1.A (2004); ERISA § 502(a)(2), 29 U.S.C. § 1132(e)(2) (Supp. II 2003).

6.     This Court has personal jurisdiction over the individual Defendants pursuant to D.C. Code Ann. § 13-423(a)(1) and (3).

---

other earlier versions of the Plan, are lengthy documents not attached as an exhibit to this Complaint.  Nevertheless, they are incorporated herein by reference in their entirety.  *See* Fed. R. Civ. P. 10(c).

7.    Venue is proper in this judicial district pursuant to 29 U.S.C.

§ 1132(e).  The Plan is administered in this judicial district and this is the judicial

district in which the Plan resides.

### Statement of Facts

8.    The Plan at issue in this case was adopted by ULLICO Inc., as Plan

sponsor, to provide retirement benefits for employees of sponsoring employer

ULLICO Group and Zenith Central.  The current Plan was originally effective

December 31, 1994.  It replaced the retirement plan of the Union Labor Life

Insurance Company and the Zenith Administrators, Inc. Central Region Pension

Plan.  The ULLICO Inc. Pension Trust, which is set forth in Article 14 of the Plan,

forms an integral part of the Plan.  Together, the Plan and Trust were intended to

meet the requirements of Sections 401(a) and 501(a) of the Internal Revenue Code

of 1986, as amended.

9.    At the time of the adoption of the Plan, the Plan sponsor, ULLICO

Inc. reserved the right to make amendments to the Plan.  *See* Plan § 11.1.

10.    ULLICO Inc. is a Maryland corporation.  Under Maryland corporate

law, the corporation is governed by its Board of Directors.  Maryland law

explicitly permits the delegation of the powers of the full Board of Directors to

various committees of the Board.

11.    In large modern corporations, delegation of special functions to

specialized committees of the Board of Directors is very common.  Most large U.S.

corporations are in fact run by committees of the board of directors, not by the

3

boards themselves. The executive committee is the most ubiquitous of those committees. In very large corporations, 97% had executive committees as of 1974. J. McMullen, *Committees of the Board of Directors*, 29 Bus. Law 755 (1974). "[T]he principal role played by the executive committee is to relieve the full board of time-consuming detail and repetitive tasks, leaving the board free to concentrate on unique problems and major issues." *Id.*

12.    As of May of 1997, the Board of Directors of ULLICO had several standing committees including an Executive Committee, a Finance and Investment Committee, an Auditing Committee and a Welfare Committee that had not met in fourteen years.

13.    The Welfare Committee of the Board of Directors had been charged with creation and operation of all welfare activities and plans for the benefits of the employees of ULLICO Inc. However, by 1997, ULLICO Inc. had acquired a number of subsidiaries that complicated the planning and administration of the various benefit plans established for the employees of ULLICO and its operating subsidiaries.

14.    On May 5, 1997, Robert Georgine, then Chairman of the Board and Chief Executive Officer of ULLICO Inc. addressed the Executive Committee of ULLICO Inc. and the Union Labor Life Insurance Company regarding a proposal to eliminate the Welfare Committee of the Board and replace it with a Benefit Committee. Georgine commented:

> We have a Welfare Committee of the Board, but it has not
> met in over 14 years. There is a need for more hands-on

4

management of benefit programs within our family of
companies.  Therefore, we are proposing a restructuring.
Eliminating the Welfare Committee of the Board in favor
of a Benefit Committee made up of senior management.
The Management Committee will meet regularly to
administrator <u>and effect changes in our benefit plans</u>.
This is also a reflection of management's desire to become
more hands-on in the management of costs.  I do not have
to tell all of you how significant a factor benefits are in
any operation. (Emphasis added).

15.    After discussion, a vote was taken, and a resolution of the Executive

Committee was passed adopting an amendment of the Corporation's By-Laws and

the creation of a Benefits Committee.  A copy of that Resolution is attached as

Exhibit 1.[2]

16.    The clear purpose of the May 5, 1997, resolution of the Executive

Committee of the Board of Directors of ULLICO Inc. was to delegate to the

Benefits Committee various powers of the Board, including the power to amend

any of the many employee welfare benefit plans that ULLICO Inc. had created or

of which it was the Plan sponsor.

17.    On October 7, 1997, the Director of ULLICO Inc.'s Department of

Human Resources, Richard Silas, wrote a memo to the Benefits Committee

requesting a delegation of authority from the Benefits Committee to the ULLICO

Inc.  Human Resources Department with respect to certain plan administration

functions.  Attached to that memo is a schedule of actions with respect to the

Plan.  The schedule clearly reveals the understanding of Richard Silas, as

---

[2] The By-Laws of ULLICO Inc. delegated the full authority of the Board of Directors to the
Executive Committee with certain exceptions not relevant here.  By-Laws (Adopted
October 14, 1987, with versions through May 5, 1987), Art. VI, § 2.

Director of ULLICO Inc. Human Resources Department, that the power to

approve Plan amendments had been delegated by the Executive Committee to the

Benefits Committee. (Exhibit 2.)

18.     Beginning in May 1997, and continuing through May 2003, the

Benefits Committee of ULLICO Inc. adopted numerous amendments to the Plan

and other employee benefit plans sponsored by ULLICO Inc.

19.     On October 18, 1999, in anticipation of an October 20, 1999, meeting

of the Benefits Committee, Louis Hejl prepared a Benefits Committee meeting

agenda. Attached to that agenda, under the category of "New Business," were two

memoranda prepared by the Human Resources Department. Each memorandum

recommended an amendment to the Plan. (Exhibit 3.)

20.     The first memorandum, captioned "Tab C," addressed the current

definition of compensation in the Plan, which excluded incentive compensation.

The memorandum observed that ULLICO Inc. had begun to link pay to

performance and to reward employees for their contributions with incentive

compensation bonus arrangements. As a result, in the future a greater portion of

employee compensation would be in the form of incentive compensation. The

memorandum observed that excluding incentive pay as eligible pension

compensation unfairly penalized employees who might have a significant portion

of their compensation during a plan year paid in the form of incentive payments.

The report included an analysis of the additional cost to ULLICO of adopting a

change in the definition of compensation. Hejl concluded that due to the current

6

over funding position of the Plan, no additional cash funding would be required for the foreseeable future in order to pay the additional benefits. The memorandum concluded by recommending that the Plan's definition of compensation be amended to include incentive compensation up to a maximum of $50,000.00 per Plan year effective with the Plan year beginning on January 1, 2000.

21.    The second memorandum, captioned "Tab D," recommended improvements in the benefit computation formula for the Plan. The memorandum summarized a recent study done by the Human Resources Department of the possibility of increasing the pension formula percentage factor for year of benefit service from the current 2% to as much as 2.75% in order to remain competitive in the labor markets. The memorandum contained a comparative chart detailing the current Plan provisions and comparing them with the pension plans of the Bridge and Ironworkers Staff Retirement Plan and the AFL-CIO Staff Employees Retirement Plan. The Human Resources Department recommended that the Benefits Committee authorize an increase of the Plan's percentage factor to 2.5%, an increase of the spousal death benefit to 75%, and an amendment to permit employees who had attained age 62 with at least ten years of service to elect early retirement.

22.    On October 20, 1999, the Benefits Committee approved the proposal to amend the Plan, effective January 1, 2000, to modify the definition of "Sponsoring Employer ULLICO Group Compensation" to include all regularly

established annual incentive compensation. (Exhibit 4.) The other proposals were not adopted at that time.

23.    On July 17, 2001, Hejl once again presented the Benefits Committee with an updated memorandum "review[ing] the status of the funding of the Union Labor Life Insurance Company Retirement Plan (sic) and to discuss potential enhancements should the Benefits Committee desire to consider any changes." Hejl attached an actuarial staff evaluation of the cost to the company of an increase in pension accrual rates above 2% as well as a comparison between ULLICO's retirement benefits and those of "other union affiliated organizations." (Exhibit 5.) This analysis mirrored the comparison made almost two years earlier in the October 1999 memorandum.

24.    Based on Hejl's updated analysis and recommendations, at its July 2001 meeting, the Benefits Committee resolved to increase the pension accrual rate under the Plan from 2% to 2.5% effective for certain ULLICO Inc. employees retiring on or after January 1, 2002. (Exhibit 6.)

25.    Over the years, the Benefits Committee adopted numerous additional amendments to the Plan: (a) On October 28, 1998, the Benefits Committee adopted a resolution to restore to the Plan document the unreduced benefit for a sponsoring employee ULLICO group participant who is eligible for an early retirement pension and could attain age 60 and earn 40 years of benefit service prior to his or her normal retirement date.  The amendment was effective for Plan years beginning after 1994; (b) The Benefits Committee adopted a

8

resolution at its July 24, 2001 meeting to amend Section 5.3(a)(2) of the Plan to provide an unreduced early retirement benefit for a sponsoring employer ULLICO group participant who had attained the age of 62 and earned 15 years of benefit service. The amendment was effective for Plan years beginning after 2001; (c) The Benefits Committee adopted several other amendments necessary to comply with the applicable provisions of the federal income tax laws and the governing provisions of ERISA.

26.    As a result of the numerous amendments made to the Plan by the Benefits Committee between May 5, 1997 and December 23, 2002, ULLICO Inc. as Plan sponsor, adopted an amended and restated Plan document which was duly acknowledged by its authorized officer, agent and attorney, Jacqueline J. Wong, effective February 28, 2002.

27.    The Plan as amended and restated effective as of February 28, 2002, contains the increased pension contribution rate amendment first adopted by the Benefits Committee in July 2001. *See* Plan § 5.1(a)(5).  The Amended and Restated Plan also included the modification of the definition of contribution to include incentive compensation adopted by the Benefits Committee in October 1999. *See* Plan § 2.61.

28.    Subsequently, ULLICO as Plan sponsor, submitted the Plan, as amended and restated as of February 28, 2002, to the United States Internal Revenue Service with an application for a determination letter that it remained a "Qualified Plan" under the Internal Revenue Code.

29.    The Internal Revenue Service issued a favorable determination on the Plan "based on the information you have supplied." *See* letter dated September 25, 2002 from the Internal Revenue Service to ULLICO Inc. (Exhibit 7.)

30.    On April 1, 2002, Lou Hejl, Director of Corporate Benefits for ULLICO, acting as an agent of the Plan Administrator of the Plan, issued a "Summary of Material Modifications to the ULLICO Inc. pension plans and the ULLICO Inc. 401(k) plans." A Summary of Material Modifications to the Plan is required to be furnished by the Plan Administrator within 210 days after the end of the Plan year in which the material modification is made, and to contain any material changes and information required to be included in the summary plan description for the Plan. *See* 29 C.F.R. § 2520.104b-3(a). The Plan Administrator was required to send a copy of this Summary of Material Modifications to each participant covered under the Plan and each beneficiary receiving benefits under the Plan.

31.    Upon information and belief, Hejl sent a copy of this Summary of Material Modifications to each participant and beneficiary on behalf of the Plan Administrator. Luce received a copy.

32.    The Summary of Material Modifications stated in pertinent part:

> The ULLICO Inc. Benefits Committee has recently approved a number of significant amendments to the pension plans as well as the 401(k) plans. These amendments were enacted to improve the benefits available under these plans as well as comply with recently passed legislation collectively known as GUST

and EGTRRA. Following is a summary of how these changes affect your plans. Except where otherwise noted, all amendments are effective immediately . . . .

Pension Plan.

- Effective January 1, 2000, the definition of compensation in the ULLICO Inc. Pension Plan was amended to include all regularly established annual incentive compensation.

- Effective for those retirement on or after January 1, 2002, the percentage of final average compensation used in the calculation of pension benefits for ULLICO Group participants, who are not part of OPEIU, Local 153, is increased from 2% to 2.5% for all years of service.

- The Qualified Pre-retirement Survivor Annuity for the surviving spouse of an eligible ULLICO Group participant, who is not covered by the collective bargaining agreement with OPEIU Local 153, is increased from 50% to 75%.

- ULLICO Group participants, except participants covered by the collective bargaining agreement with OPEIU Local 153, may elect to retire early with an unreduced benefit upon attainment of age 62 and completion of 15 years or more of service.

Exhibit 8.

33.    The following year, on April 23, 2003, the Board of Directors of

ULLICO adopted a resolution creating a "June 1, 2003 Early Retirement

Program" effective April 16, 2003. The resolution added Article 16 to the Plan,

which read as follows:

**Article 16. June 1, 2003 Early Retirement Program**

16.1    Eligibility. Effective April 16, 2003, all employees of the Sponsoring Employer ULLICO Group, as such term

11

is defined in Section 2.59 of this Plan, that have attained age 55 with 15 years of service, or who have attained age 65 with 5 years of service by June 1, 2003. Such Sponsoring Employer ULLICO Group Employees must elect to retire by submitting a properly completed Election and Release Agreement to ULLICO Inc.'s Director of Corporate Benefits by no later than June 1, 2003, and retire effective June 1, 2003. The Chairman of the Board, President and Chief Executive Officer of ULLICO Inc.. [sic] shall not be eligible to participate in the June 1, 2003 early retirement program.

16.2    Calculation of Benefits.  Notwithstanding any other provision of the Plan, employees who meet the eligibility requirements as contained in Section 16.1 **shall receive an unreduced retirement benefit, calculated in accordance with Section 5.1 of the Plan.**  (Emphasis added)

Exhibit 9.

34.    Luce was over the age of 55 years of age and had completed over 20 years of service with ULLICO by April 16, 2003.  Consequently, Luce was eligible for early retirement under the June 1, 2003 Early Retirement Program.

35.    On May 5, 2003, Luce wrote a memo to Louis J. Hejl, Director of Corporate Benefits for ULLICO, requesting confirmation of the pension benefits to which he would be entitled if he accepted the offer of early retirement and completed an Election and Release Agreement.

36.    On May 6, 2003, Hejl wrote Luce a memorandum assuring him that if Luce elected to accept the June 1, 2003 Early Retirement Program offer, Luce would be paid "monthly pension benefit[s] payable to you beginning June 1, 2003 of approximately $7,306.00 from the ULLICO Inc. Pension Plan and Trust based upon a 50% joint and survivor election."  (Exhibit 10.)

37.     After receiving assurances from Hejl, who was acting as an agent of the Plan Administrator, that he would receive his Qualified Plan benefits under the June 1, 2003 Early Retirement Program, Luce elected to retire as Executive Vice President of ULLICO as of June 1, 2003, and chose the 50% joint and survivor annuity benefit option.   On that date, his right to benefits under the Plan became vested.

38.     Luce submitted the required Election and Release Agreement to Louis J. Hejl, ULLICO Inc.'s Director of Corporate Benefits, prior to June 1, 2003, and retired effective June 1, 2003, thereby meeting the requirements of Article 16 of the Plan.

39.     On July 1, 2003, Luce received his first post-retirement payment from the Qualified Plan.  For the next eighteen (18) months, Luce received the full monthly Qualified Plan benefit payments of $7,349.62 (less $1,134.24 withheld as federal income tax and $387.17 withheld as Virginia state income tax) to which he is entitled under the 50% joint and survivor annuity election.

40.     Upon information and belief, several other qualified employees of ULLICO Inc. accepted the offer of early retirement and retired under the June 1, 2003 Early Retirement Plan.  Those employees also received their full retirement benefits calculated using the 2.5% contribution rate set forth in Section 5.1(a)(5) of the Plan.

41.     On October 15, 2003, the Board of Directors of ULLICO Inc. purported to amend the Plan to delete incentive compensation from the definition

of compensation in the Plan, effective December 15, 2003. (Exhibit 11.) The amendment purported to add a new Section 2.61(a) to existing Section 2.61 defining "Sponsoring Employer ULLICO Group Compensation." This was an obvious attempt by ULLICO Inc. to reverse the October 20, 1999 amendment of Section 2.61 by the Benefits Committee described in Paragraph 20, *supra*.

42.    On January 29, 2004, the Board of Directors of ULLICO Inc. purported to further amend the Plan to delete incentive compensation paid to employees of Zenith Central in the same way. (Exhibit 12.) This was another obvious reversal of the earlier amendment of Section 2.75 of the Plan by the Benefits Committee.

43.    The ULLICO Inc. Board did not immediately move to change the 2.5% contribution rate used to calculate Luce's vested retirement benefits.

44.    On the contrary, the Board embraced that Plan provision and retained it as the contribution rate for retirement benefits of the new managers hired to run the company after Luce's retirement.

45.    In April of 2004, the ULLICO Inc. Board of Directors approved and issued a proxy statement, soliciting voting proxies for the election of the directors at the May 2004 annual meeting. That document reiterated the validity of the 2.5% contribution rate. The proxy statement stated, in pertinent part:

### Retirement Plan Benefits

Messrs. Grebow, Green, Kennedy, Paul, and Singleton participate in the Company's ERISA defined benefit plan and the Company's tax-qualified 401(k) plan, each of which are described in summary fashion below.

14

The Company's ERISA defined plan is the ULILCO Inc. Pension Plan and Trust (the "Pension Plan"). The formula for determining benefits at normal retirement age under the Pension Plan is 2.5% of an individual's final average annual eligible compensation multiplied by his or her credited years of benefit service. Benefits payable under the Pension Plan are subject to the maximum compensation limits and the annual benefit limits for a tax-qualified defined benefit plan as prescribed and adjusted from time to time under the Internal Revenue Code. Each of Messrs. Grebow, Green, Paul, and Singleton have less than one year of benefit service under the Pension Plan. As the result of his prior employment with the Company and its subsidiaries, Mr. Kennedy has ten years of benefit service under the Pension Plan.

46.    Not until September 9, 2004, did the ULLICO Inc. Board of Directors reverse field and try to reduce Luce's vested retirement benefit by claiming that the Benefit Committee's adoption of the 2.5% contribution rate was never authorized by the prior Board of Directors.

47.    The Board chose to attack Luce and other former ULLICO Inc. officers using a set of purported "resolutions." In the recitals prefacing those resolutions, the Board acknowledged and recited the source of its power to amend the Plan:

Whereas, the ULLICO Inc. Pension Plan and Trust (the "Qualified Plan") was amended and restated effective February 28, 2002, and pursuant to Article 11, Section 11.1 of such Plan, the Board of Directors (the "Board") has the right to amend the Plan as it deems advisable.

48.    It then resolved that some, but not all, amendments adopted by the Benefits Committee, which were incorporated and adopted by the prior Board of

15

Directors of ULLICO Inc. into the Plan when it was amended and restated effective February 28, 2002, were the product of alleged Benefit Committee member misconduct and were not properly authorized.

49.    Therefore, the Board of Directors ordered that Georgine's and Luce's (but no other retiree's) qualified plan retirement benefits, ". . . shall be recalculated as of the first payment date following adoption of this Resolution, to reflect that any further payments under the Qualified Plan shall not include the unauthorized benefit increases that the Benefits Committee purported to adopt during their employment with ULLICO." (Exhibit 13, Fourth Resolution.)

50.    On September 9, 2004, the Board of ULLICO Inc. also purported to amend the Plan by adopting "Amendment Number 7" to include "Incentive Compensation for Salespersons" within the definition of "Sponsoring Employment ULLICO Group Compensation." (Exhibit 14.)

51.    On September 9, 2004, the Board of ULLICO Inc. purported to further amend the Plan to impose a "Prospective Benefit Calculation Reduction" as "Amendment Number 8." (Exhibit 15.)

52.    Most amazingly, cynically, and illegally, on September 9, 2004, the Board of ULLICO Inc. purported to amend the Plan to reduce the vested retirement benefits of Luce, who had retired over a year earlier, by reducing the contribution rate used to calculate his benefits from 2.5% to 2.0%, in blatant violation of the anti-cutback provisions of ERISA § 204(g), 29 U.S.C. § 1054(g). (Exhibit 16.)

53.    The Board purported to accomplish this by adopting "Amendment Number 9," "Benefit Calculations of Former Officers" which supposedly added to the Plan Article 5, Section 5.1(a)(7) as follows:

> (7) Notwithstanding any provision herein to the contrary, the Pension Benefit Calculations of former ULLICO Inc. Officers, who served as members of the Employee Benefit Plans [sic] Administrative Committee, Robert A. Georgine, Joseph A. Carabillo, John Grelle and James Luce shall be calculated under subsections (1) through (3) above.

54.    Prior to the adoption of the illegal Amendment Number 9, Luce's retirement benefits were calculated under Section 5.1(a)(5) of the Plan which provides in pertinent part:

> (5) Effective with respect to any Participant who retires on or after January 1, 2002, the percentage of such Participant's Average Salary used to determine his Normal Retirement Benefit in (1), (2) and (3) above shall increase from two percent (2%) to two and one-half percent (2-1/2%) for all Sponsoring Employer ULLICO Group Years of Benefit Service....

55.    On or about January 14, 2005, Luce received a letter from Theodore T. Green, Senior Vice President and General Counsel of ULLICO Inc. stating:

> Prospectively, your monthly benefit from the ULLICO Inc. Pension Plan and Trust ("Plan") will be paid at $5,879.70. This benefit amount has been calculated based upon two percent of your high three years of service for each year of service under the Plan.

56.    Green explained this reduction of benefits as follows:

> After investigation, it has been recognized that the Plan was being administered in accordance with unauthorized

amendments that increased the compensation taken into account and provided for an accrual of benefits at a rate that was twenty-five percent greater than authorized by the Board of Directors. While your benefit was not directly affected by the change of compensation taken into account to determine benefits for purposes of this Plan, your unauthorized action that changed the rate of benefit accrual, increased your benefit by twenty-five percent. The current recalculation simply returns your benefit to the amount that was properly authorized.

Exhibit 17.

57.     On February 1, 2005, Luce notified Green and the Administrative Committee, as Plan Administrator for the Plan, that this reduction in retirement benefits was a denial of vested benefits to which Luce was entitled under the Plan. Luce also gave notice of his intent to appeal from that adverse benefit determination under Article 9.3 of the Plan and the Department of Labor Regulations, 29 C.F.R. § 2560.503-1(h). Luce also exercised his right to review the relevant documents and to submit a written statement to the Plan Administrator after counsel had an opportunity to review the record of the Plan Administrator's decision to reduce the benefits. Luce requested copies of all documents, records or other information relevant to that decision. (Exhibit 18.)

58.     On February 21, 2005, Luce again requested the relevant documents upon which the Plan Administrator relied in reducing his vested Qualified Plan benefit. Luce also requested the forms necessary to reverse the spousal annuity election he had made at the time of his retirement in May 2003, because he would have not made the spousal annuity election in May 2003, if he had known that the Plan Administrator and ULLICO Inc. would refuse to honor the obligations

18

created by the Plan amendments adopted by the Benefits Committee.
(Exhibit 19.)

59.    Luce received no response from the Plan.

60.    Therefore, on March 10, 2005, counsel for Luce reminded the Plan
Administrator and Green that they had failed to provide the information and
documents necessary to appeal the denial of vested benefits. (Exhibit 20.)

61.    On March 11, 2005, Theodore T. Green, Senior Vice President and
General Counsel of ULLICO Inc. finally responded to Luce on behalf of the Plan
Administrative Committee. Green specifically cited the Department of Labor
Regulation 2560.503-1(h)(2)(iii) and identified **a single document** as the only
information the Administrative Committee considered "relevant" to Luce's claim.
That document consisted of the "resolutions" adopted on September 9, 2004, by
the ULLICO Inc. Board of Directors ordering the recalculation of Luce's benefits.
(Exhibit 21.)

62.    The Board Resolution that Green provided specifically ordered the
Plan Administrator to "recalculate" the benefits payable to Luce under the terms
of the Qualified Plan based on the Board of Directors' erroneous decision that the
amendments to the Plan made by the Benefits Committee had not been
authorized by the previous Board of Directors and that the amendments were
"*ultra vires.*"

63.    The Board did not order all retiree's qualified plan benefits
"recalculated" as a result of its decision that two of the Benefits Committee's

19

several amendments were unauthorized. It only ordered recalculation of Georgine's and Luce's qualified plan benefits.

64.     On March 30, 2005, Luce filed his summary of the grounds for reversal of the denial of retirement benefits to Luce announced in Green's letter dated January 14, 2005. (Exhibit 22.)

65.     On May 20, 2005, the Administrative Committee, acting as Plan Administrator for the Plan, denied Luce's appeal by written opinion (hereafter the "Opinion"). (Exhibit 23.) The Opinion stated that the decision was final and advised Luce of his rights to bring this action to recover benefits under ERISA.

66.     On May 24, 2005, Counsel for Luce wrote to the Plan Administrator requesting all documents relevant to Luce's Claim for benefits, including, but not limited to, the documents recited in the Opinion, which had never been provided to Luce by the Plan Administrator in response to his previous requests for the documents relevant to the original decision to reduce his vested Qualified Plan benefits. (Exhibit 24.)

67.     On June 30, 2005, Counsel for Luce received approximately one thousand pages of documents identified as ". . . the bulk of the documents." However, most Resolutions of the Board, the Benefits Committee or the Administrative Committee were not provided and more than 60 pages of relevant documents were withheld on grounds of attorney-client privilege. On July 7, 2005, Counsel for Luce wrote to Counsel for the Plan to advise the Plan that the

withholding of relevant documents was a violation of the regulations and
demanded immediate production.  (Exhibit 25.)

68.    On July 13, 2005, counsel to the Plan produced heavily redacted
resolutions and stated that it would submit its privilege claims for adjudication in
this proceeding. (Exhibit 26.)

**The Plan Administrator's Denial of Luce's Appeal is Clearly Wrong,
Not Entitled to Judicial Deference and Must be Reviewed De Novo**

A.    The Members of the Plan Administrative Committee Operated Under a
Disqualifying Conflict of Interest Because They Were Ordered by the Board
to "Recalculate" Luce's Benefits.

69.    The following individuals attended the hearing on Luce's appeal from
denial of benefits at the offices of ULLICO Inc. on March 31, 2005: (a) Joseph
Linehan; (b) James Paul; (c) Mark Singleton; (d) Peter Haley; and (e) Marcellus
Duckett.  Upon information and belief, these men ( the "Hearing Committee")
were properly appointed and authorized to act as a hearing subcommittee of the
Administrative Committee. *See,* Plan § 8.2.

70.    The Hearing Committee was represented by Counsel at the hearing.
Counsel to the Hearing Committee, who attended in person, were Joseph Semo,
and Howard M. Bard.  Both are members of Feder Semo & Bard, P.C.

71.     Mr. Semo and Mr. Bard are the same attorneys who, as counsel to
ULLICO Inc., drafted the June 3, 2003 Early Retirement Program and the April
23, 2003 Resolution of the Board of Directors of ULLICO that amended the Plan
to include the June 1, 2003 Early Retirement Program.

72. Consequently, Mr. Semo and Mr. Bard had personal knowledge of the material facts regarding the legal and factual disclosures made to the ULLICO Board of Directors, regarding the provisions of Section 5.1 of the Plan and the Board's ratification of the provisions of Section 5.1 when it adopted the June 1, 2003 Early Retirement Program. Semo and Bard drafted the corporate resolutions that specifically provided that the Early Retirement Benefit would be calculated pursuant to Section 5.1 of the Plan, which contained the 2.5% contribution rate.

73. At the hearing, Counsel for Luce suggested the Hearing Committee interview Mr. Semo about his personal knowledge of the facts relating to the process that led to the adoption of the Amendments that created the June 1, 2003 Early Retirement Program.

74. Shortly after the hearing, Mr. Semo advised Luce's Counsel that the Administrative Committee had hired new Counsel.

75. Upon information and belief, each Hearing Committee member is a employee of the Union Labor Life Insurance Company or ULLICO Inc.

76. Mark Singleton is the Chief Financial Officer of ULLICO Inc.

77. James Paul is the Senior Vice-President of Human Resources of ULLICO Inc.

78. Upon information and belief, each member of the Hearing Committee and the Administrative Committee completely abdicated their

responsibility to independently review the Board of Directors order to "recalculate" Luce's Qualified Plan benefits.

79.    Theodore Green's letter dated March 11, 2005, stated that the sole document relevant to the decision of the Administrative Committee to reduce Luce's Qualified Plan benefits was the series of resolutions of the Board of Directors of ULLICO Inc. purportedly adopted on September 9, 2004.

80.    Green's letter makes it clear that the Administrative Committee did what they were ordered to do by the Board when they reduced Luce's Qualified Plan benefits in January of 2005.

81.    The Administrative Committee's receipt of an express order from the Board of Directors of ULLICO Inc. to reduce Luce's Qualified Plan Benefits set up a disqualifying conflict of interest.  Any decision favorable to Luce would have been disobedient to the express directive of the Board of Directors of ULLICO Inc. – the company that employed each of the members of the Committee.

82.    Indeed, the entire appeal was prejudged, and thus the outcome was preordained.  The Committee knew that the Board of Directors of ULLICO Inc. had ordered it to reduce Luce's Qualified Plan benefits based on the Board's own internal adjudication of the issues as reflected in its July 22, 2003 resolution directing the Plan to "suspend" benefit payments to Luce and its September 9, 2004 resolution ordering "recalculation" of Luce's vested benefits.

83.    The Administrative Committee carried out the orders of the ULLICO Inc. Board.  It actually sued Luce, as a party to a Counterclaim it

23

originally filed in <u>Joseph A. Carabillo v. ULLICO Inc. Pension Plan and Trust, *et*</u> *al*. Civil Action No. 4-cv-776 (RJL) in the United States District Court for the District of Columbia, to reduce his Qualified Plan vested benefits.

84.    The Administrative Committee alleged in its Counterclaim against Luce that the Benefits Committee amendment of July 21, 2001 was "without authority" and "without disclosures to the [ULLICO] Board" and it sought relief including damages and a declaratory judgment that the amendment was void and that Luce was not entitled to benefits at the 2.5% contribution rate.

85.    That Counterclaim was filed on July 26, 2004, in compliance with the order of the ULLICO Inc. Board adopted July 22, 2003, directing ULLICO Inc. and the Plan to "suspend" Luce's benefits and file suit against Luce and others.  It was still pending when the Administrative Committee decided Luce's Appeal.

86.    The most basic principle of due process was violated in Luce's Appeal.  No man may be the judge of his own case.  If he is, the result is not respected by any reviewing court as consistent with "due process of law."

87.    That bedrock principle was violated in Luce's Appeal because the Administrative Committee charged with adjudicating the appeal was an adverse party who had prejudged the facts and the law at the direction of the ULLICO Inc. Board of Directors.

88.    The members of the Administrative Committee had an additional conflict of interest. As employees of ULLICO Inc., they were required to obey the orders of the Board of Directors of ULLICO Inc., or face discipline or termination.

Therefore they had a direct pecuniary interest in deciding Luce's Appeal in the way they had been ordered by their employer.

89.    This Court owes no judicial deference to the Opinion because it is the product of an unconstitutional quasi-administrative process. See, *Gibson v. Berryhill*, 411 U.S. 564, 578-80 (1973); *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583, 589-92 (D.C. Cir. 1970).

90.    The Board of Directors demonstrated, by adopting its September 2004 resolutions, that the reduction of Luce's vested benefits was part and parcel of the bitter litigation campaign it launched against the former managers of ULLICO Inc. in July of 2003.  Indeed, the Board's adoption of the conclusions of the "Thompson Report" as a key factual basis for both the July 22, 2003 and September 9, 2004 resolutions reveals the true motivation for reducing Luce's benefits – to obtain self-help relief for ULLICO Inc. and the Plan rather than await the adjudication of the breach of fiduciary claims currently being asserted by them against Luce in *In re ULLICO Inc. Litigation*, 1:03-CV-01556 (RJL) United States District Court for the District of Columbia.[3]

B.    The Administrative Committee had no Power or Competence to Decide the Validity of the Plan Amendments.

---

[3]    On June 1, 2005, four related actions styled *Carabillo v. ULLICO Inc.*, Case No. 1:03cv1556-RJL ("*Carabillo I*"), *Luce v. Union Labor Life Auxiliary Retirement Benefits Plan*, Case No. 1:04cv-00118-RJL *("Luce I")*, *Carabillo v. ULLICO Inc. Pension Plan and Trust*, Case No. 1:04-cv-00776-RJL *("Carabillo II")*, and *ULLICO Inc. v. Luce*, Case No. 1:04-cv-1830—RJL *("Luce II")* were consolidated for discovery purposes only.  All pleadings, orders and other documents filed after June 1, 2005 are filed in a master docket and case file under the style *In re ULLICO Inc. Litigation*.  (Exhibit 27.)

91.     The validity of the Benefit Committee's amendment of the Plan to increase the contribution rate is a legal issue for plenary or *de novo* review by the District Court. The decision of the Administrative Committee to "recalculate" Luce's benefits using the 2.0% contribution rate was not an interpretation of the Plan.

92.     In deciding to ignore the Benefit Committee's amendment, the Administrative Committee merely adopted the conclusion of the current Board of Directors of ULLICO Inc. that the prior Board of Directors never authorized, adopted, acknowledged, applied, or ratified the prior amendments to the Qualified Plan made by the Benefits Committee.

93.     Plan Administrators do not have authority to ignore Plan amendments which are at least ostensibly made in conformance with the procedure provided for in the Plan document. Such decisions are legal decisions, not Plan interpretation decisions.  As such, they are beyond the competence of Plan Administrators, and, therefore, are not entitled to the deference ordinarily given to their decisions "interpreting" provisions of a Plan.

94.     The Administrative Committee's decision not to honor the Plan Amendment that increased the contribution rate to 2.5%, therefore, is not entitled to any judicial deference.

C.      The Plan Administrator Ignored the Express Non-Discrimination Rule in the Plan and Discriminated in Favor of Retirees Other than Luce by Paying them Benefits Based on the 2.5% Contribution Rate while "Recalculating" Luce's Benefits Using the 2.0% Rate.

95.     Section 8.3 of the Plan document expressly provides:

> Except as otherwise herein expressly provided, the
> Committee shall have the exclusive right in its reasonable
> discretion to interpret the Plan and to decide any matters
> arising hereunder in the administration or operation of
> the Plan. It shall endeavor to act by general rules so as to
> not discriminate in favor of any person. (Emphasis
> added).

96.     On information and belief, all Sponsoring Employer ULLICO Group

employees who retired after January 1, 2002, or who accepted early retirement

under the June 1, 2003 Early Retirement Plan have been paid and currently are

being paid retirement benefits calculated using the 2.5% contribution rate

adopted by the Benefits Committee. Luce is unable to specifically identify the

Plan beneficiaries receiving benefits calculated using the 2.5% contribution rate,

because the Administrative Committee refused to reveal the identity of those

individuals to Luce. *See* Opinion at 13-14.

97.     The Administrative Committee vainly attempted to justify the

unlawful discriminatory treatment of Luce by claiming that he was treated the

same as other members of the Benefits Committee. *See* Opinion at 14 n.5.

However, no provision in the Plan authorizes the Plan to treat the members of the

Benefits Committee differently than any other Plan participant or beneficiary.

Even purported Plan Amendment Number 9 does not create a special benefits

calculation method for all former members of the Benefits Committee. It targeted

only four specifically identified individuals who were also former members of the

Benefits Committee for special treatment.

98.    The decision of the Administrative Committee to use the 2.5%
contribution rate to continue to calculate and pay benefits to other retirees, whose
circumstances for purposes relevant to Plan interpretation and administration are
indistinguishable from Luce's, violates the express non-discrimination provision of
the Plan.

99.    On June 17, 2005 the ULLICO Inc. Pension Plan and Trust, the
Administrator of the ULLICO Inc. Pension Plan and Trust, the Plan
Administration Committee of the ULLICO Inc. Pension Plan and Trust, and Mark
Singleton in his capacity as Plan Administrator and as a member of the Employee
Benefit Plans Administrative Committee and Trust, all of whom who are among
the Counterclaim Plaintiffs in *In re ULLICO Inc. Litigation,* 1:03-CV-01556 (RJL)
United States District Court for the District of Columbia, served their Initial
Disclosures required by Fed. R. Civ. P. 26 (a)(1)(C). They claimed as damages
against Luce: "Those increased amounts ULLICO will be required to pay under
the Qualified Plan and the Auxiliary Plan as a result of unauthorized and
improper Amendments to the Qualified Plan plus pre- judgment interest in an
amount to be determined at trial. This amount is presently believed to be at least
$10,450,263."

100.    If the amendments to the Qualified Plan are invalid, the Plan cannot
pay, and cannot be required to pay, any retiree any "increased amounts"
computed using the invalid 2.5% contribution rate.

101.    The Administrative Committee's assertion that the Plan is paying "increased amounts ...under the Qualified Plan ...as a result of the allegedly unauthorized and improper Amendments to the Qualified Plan" demonstrates the Plan's recognition that the amendments are valid.

102.    The Administrative Committee admits and acknowledges the Benefit Committee amendments are valid and binding on it for purposes of computing the "increased amounts" of benefits it must pay to other retirees (and for which it alleges Luce is liable to the Plan).  Yet it denied Luce's Appeal on the grounds that the amendments are invalid and void for purposes of computing Luce's own retirement benefits.

103.    The Administrative Committee's "disclosure" statement is additional compelling evidence that it has failed and refused to make consistent and nondiscriminatory decisions about the validity of the Benefit Committee amendments.

104.    Clearly, the officials responsible for administering the Plan have applied the Plan in a manner that discriminates against Luce in violation of the clear non-discrimination mandate of the Plan.

105.    An "interpretation" of the Plan that rests on such impermissible discrimination is clearly unreasonable and it is, therefore, entitled to no judicial deference.

D.    The Plan Administrator's Decision Violates Applicable Department of Labor Regulations.

106.    Even if the Plan did not contain the express non-discrimination rule in Section 8.3, the recently adopted Department of Labor Regulations mandate non-discriminatory claim processing as a matter of law.  The Department of Labor's Claims Procedures Regulation sets minimum standards for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries.  29 C.F.R. § 2560.503-1.  A Plan's claims procedures are not reasonable unless they contain processes and safeguards designed to ensure that the Plan provisions are applied consistently with respect to similarly situated claimants.  *See* § 2560.503-1(a)(5).  The Administrative Committee's refusal to treat Luce the same as all other individuals who have retired from the Sponsoring Employee ULLICO Group since January 1, 2002, and who have been paid retirement benefits computed using the 2.5% contribution rate pursuant to Article 5, Section 5.1(a)(5) of the Plan, constitutes a clear violation of the claims procedure regulation, in addition to being an express violation of Section 8.3 of the Plan.

107.    The decision of the Administrative Committee to deny Luce's appeal violated the claims procedure regulation and the express language of Plan Section 8.3.  It is, therefore, unreasonable *per se*, and entitled to no judicial deference.

E.    The Plan Administrator's Decision that the July 21, 2001 Plan Amendment was not Made Pursuant to a Resolution Adopted by the Board of Directors of the Plan Sponsor is Clearly Unreasonable.

108.    The Administrative Committee denied Luce's appeal on the grounds that Section 11.1 of the Plan requires that: "Any Amendment shall be made

pursuant to a resolution adopted by the Board of Directors of the Plan Sponsor."
In doing so, it ignored settled Maryland law that the Board of Directors may act
by Committee, and the incontrovertible fact that the ULLICO Inc. Board has done
so since the organization of the company.

109.    The Board of Directors of a Maryland corporation may appoint "an
Executive Committee and other committees" and delegate to them any of the
powers of the board except certain fundamental ones.  Maryland Code Ann.
*Corporations & Assn's* § 2-411(a) (2003).

110.    A properly appointed committee may also be delegated the power to
appoint other committees of the board of directors.  *See* James J. Hanks, Jr.,
*Maryland Corporation Law* § 6.16, 197 (Aspen 2004).

111.    The By-Laws of ULLICO Inc. delegate the full power of the Board of
Directors (with certain exceptions not relevant here) to the Executive Committee,
including the power to appoint other committees.  By-Laws of ULLICO Inc.,
Article VI, Section 2.

112.    On May 5, 1997, the Executive Committee of ULLICO Inc. exercised
its power and appointed a Benefits Committee.

113.    The Benefits Committee was authorized to administer, plan and
"effect changes in the benefit plans sponsored by ULLICO Inc."

114.    Indeed, the resolution appointing the Committee charged the
Benefits Committee ". . . with reporting any and all material changes in each and

every plan created for the benefit and welfare of the employees of the Corporation
. . . on at least an annual basis to the Corporation's Executive Committee."

115.    The Executive Committee resolution makes no sense if, as the
Administrative Committee concluded, only the full Board of Directors could adopt
amendments to the Plan.

116.    The "material changes" reporting obligation imposed by the
Executive Committee resolution appointing the Benefits Committee was
consistent with the Plan's obligation to issue a "Summary of Material
Modifications" containing information about significant Plan amendments that
must be disclosed to participants and beneficiaries and incorporated by reference
in the summary plan description for the Plan on an annual basis.

117.    The subsequent conduct of the agents and representatives of both the
Plan and ULLICO Inc. as Plan Sponsor confirm Luce's interpretation of the
Executive Committee resolution and refute the Administrative Committee's. *See* ¶¶
16-36 above.

118.    For that reason, the Administrative Committee chose to ignore that
compelling evidence and looked only at the language of the Executive Committee
resolution in its Opinion denying Luce's Appeal.  Opinion 11.

119.    The Administrative Committee's decision to ignore the abundant and
compelling evidence of the subsequent custom and practice of the Plan and the
Plan Sponsor, as disclosed in the relevant documents, on the grounds it was
irrelevant to whether the power to amend the Plan was delegated to the Benefits

Committee by the Executive Committee, was illogical, arbitrary and capricious and, therefore, unreasonable.

120.    Under well-established Maryland corporate law, custom, usage or acquiescence may acquire the force of a bylaw and must be considered in interpreting the scope of delegated powers. *See Poole v. Miller*, 128 A.2d 607, 611 (Md. 1957). The federal common law of ERISA also required the Administrative Committee to consider historical practice when deciding whether the Benefits Committee was given the power to amend the Plan. *See Johannssen v. District No. 1 – Pac. Coast Dist.*, 292 F.3d 159, 173 (4th Cir. 2002) ("The historical practice of the Plan shows that MEBA/NMU gained the power to amend the plan in 1988 as either the "Employer," "Contract Holder," or both.")

121.    The decision of the Administrative Committee is, therefore, unreasonable and entitled to no judicial deference.

F.    The Plan is Estopped to Deny that the Plan was Amended and Restated Effective January 28, 2002.

122.    Incredibly, the Administrative Committee denied Luce's appeal in part, because it claimed it could find no evidence that the ULLICO Pension Plan and Trust, as amended and restated effective January 28, 2002, had ever been properly adopted. Opinion 12.

123.    However, effective March 1, 2005, ULLICO Inc. again amended and restated the Plan and in doing so stated the following facts:

ULLICO INC. PENSION PLAN

The Retirement Plan of The Union Labor Life Insurance Company became effective January 1, 1962, and was amended and restated effective January 1, 1976. The Retirement Plan of The Union Labor Life Insurance Company was renamed the ULLICO Inc. Pension Plan and Trust and was amended and restated effective December 31, 1994. <u>The ULLICO Inc. Pension Plan and Trust was further amended and restated effective February 28, 2002.</u>

Effective March 1, 2005, this Plan amends and restates the ULLICO Inc. Pension Plan and Trust. The Plan is intended to meet the requirements of the Code Section 401(a). Unless otherwise specifically provided herein, the provisions of this Plan shall apply only to an Employee who terminates employment on or after March 1, 2005. **The rights and benefits (if any) of a former employee shall be determined in accordance with the prior provisions of the Plan in effect on the date his employment terminated, except to the extent of any prior operational compliance required by statute or regulation.** The benefit payable to, or on behalf of, a Participant included under the terms of the Plan shall not be affected by the terms of any amendment to the Plan adopted after such Participant's employment terminates, unless the amendment expressly provides otherwise. <u>A Participant's Accrued Benefit under the terms of this amended and restated Plan shall not be less than his Accrued Benefit under the terms of the Plan in effect as of February 28, 2005.</u>

(Bold in original. Underlining added for emphasis).

124.    The Administrative Committee's conclusion that there is no evidence that the Plan was ever properly amended and restated effective February 28, 2002, ignores the foregoing recent, unequivocal statement of the Plan Sponsor to the contrary.

34

125.    Moreover, in 2002, ULLICO, as Plan sponsor, submitted the Plan, as amended and restated as of February 28, 2002, to the United States Internal Revenue Service with an application for a determination letter that it remained a "Qualified Plan" under the Internal Revenue Code.

126.    The Internal Revenue Service issued a favorable determination on the Plan "based on the information you have supplied." *See* letter dated September 25, 2002, from the Internal Revenue Service to ULLICO Inc. (Exhibit 7.)

127.    The Administrative Committee decided that this evidence might prevent ULLICO Inc. from denying the validity of the amendments, but that it did not estopp the Plan from doing so.

128.    That decision is clearly wrong.  Plan amendment is a settlor function.  The validity of a plan amendment depends solely on the conduct of the settlor. ULLICO Inc.'s conduct clearly estopped it, and thus the Plan, to deny the validity of the Benefit Committee's amendments.  The Administrative Committee's decision to the contrary was clearly erroneous.

G.    The ULLICO Inc. Board Ratified the Amendment to the Plan Contribution Rate by Adopting the Amended and Restated Plan effective February 28, 2002, and Including the Rate in the June 1, 2003 Early Retirement Program.

129.    The Board of Directors of ULLICO and the Executive Committee knew all of the material facts regarding the increase in the contribution rate in the Qualified Plan when the Plan was Amended and Restated in early 2002 and when it adopted the June 1, 2003 Early Retirement Program in April of 2003.

130.    The Executive Committee of the Board reviewed and authorized distribution of an annual report and proxy statement to the Shareholders each year in advance of the Annual Meeting of the Shareholders of ULLICO Inc. in early May.

131.    The audited financial statements included in the Annual Reports and summarized in the proxy statements for 2002 and 2003 clearly disclosed the increase in the Plan contribution rate and reported on the increase in Qualified Plan benefit obligations created thereby.

132.    On September 10, 2002 Chairman Georgine briefed the Executive Committee on the "significant increase" in the ULLICO employee's pension benefit effective January 1, 2002.  He gave his briefing during the Executive Session portion of an Executive Committee meeting which was held at The Greenbrier.

133.    No member of the Executive Committee objected or questioned how the pension plan benefits had been increased without the action of the full Board or the Executive Committee.  They knew and understood that they had previously delegated to the Benefits Committee the authority to amend the plans.

134.    The Administrative Committee withheld these important Minutes of the Executive Session of the Executive Committee on September 10, 2002 from Luce until after it had rendered its Opinion denying Luce's Appeal.  That was a material violation of the relevant regulations.

135.    The Minutes were not produced to Luce until July 13, 2005 – long after the Administrative Committee had rendered its Opinion. Even then the Minutes were produced only in heavily redacted form.

136.    The reason for withholding the document is obvious.  Even the redacted version of the document refutes the Administrative Committee's conclusion that the Board and Executive Committee were never informed of the amendments made by the Benefits Committee and therefore could not have ratified them in 2002 or 2003.

137.    Moreover, as noted above, at ¶¶ 68-69 the Board was fully briefed by its pension counsel, in April 2003, about the provisions of the Plan, as amended by the Benefits Committee, before it adopted the June 1, 2003 Early Retirement Program.

138.    Two months later, on July 22, 2003, the newly-elected Board of Directors of ULLICO Inc. adopted a resolution that acknowledged the Benefit Committee had adopted an amendment in 2000 that included overtime in the definition of compensation.  It resolved to "restore the previous definition" of compensation. However, the resolution made no mention of any purported invalidity or lack of authority of the Benefit Committee to adopt the prior plan amendment.

139.    The Administrative Committee's Opinion finding there was no disclosure of the relevant facts, and thus ratification of the Benefits Committee's

(Supp. II 2003). No plan may make an offset or reduction of a qualified plan benefit as a remedy for beneficiary misconduct unless it has obtained a civil judgment meeting the requirements of 29 U.S.C. § 1056 (d)(4)(A).

144.    The Administrative Committee's Opinion that the "recalculation" of Luce's qualified plan benefit was solely a result of plan interpretation and was not caused by the clearly illegal "suspension" and "recalculation" orders contained in the Resolutions of the ULLICO Inc. Board is incredible. It completely ignores the fact that the Administrative Committee originally identified the September 9, 2004 resolution as the **only document relevant to its decision to reduce Luce's benefits**.

145.    The Opinion ignores the substantial weight of the evidence that Luce's benefits were reduced on the orders of the plan sponsor in retaliation for alleged fiduciary misconduct in violation of the anti-alienation provisions of ERISA. As such it is arbitrary, capricious and is entitled to no judicial deference.

I.    The Denial of Benefits Clearly Violates the Anti-Cutback Provision of the Act.

146.    On September 9, 2004, the Board of ULLICO Inc. purported to amend the Plan to reduce the vested retirement benefits of Luce, who had retired over a year earlier, by reducing the contribution rate used to calculate his benefits from 2.5% to 2.0%, in blatant violation of the anti-cutback provisions of ERISA § 204(g), 29 U.S.C. § 1054(g).

plan amendments was not possible, is clearly contrary to the evidence and, therefore, is unreasonable.

H.    The Denial of Benefits Violates the Anti-Alienation Provisions of the Act.

140.    The ULLICO Inc. Board of Directors resolutions of July 22, 2003 and September 9, 2004 clearly direct the Plan not to pay vested qualified plan benefits to Luce pending litigation of claims that ULLICO Inc. claims it has against him.

141.    The first resolution recorded in the Minutes of the Meeting of the Board of Directors of ULLICO Inc. of July 22, 2003 directed:

> **"Suspend all payments into or out of benefit plans relating to...Luce ... pending further analysis,** and make demand for payment and other appropriate relief from ...Luce...for, in addition to those claims set forth in Recommendations 1-4 stated above, [which "Recommendations" were redacted by the Administrative Committee from the document produced to Luce] all compensation and benefits they received in violation of law and, if adequate payment or agreement is not received within a reasonable time, proceed to file a lawsuit or lawsuits for payment, damages and other appropriate relief concerning the foregoing and setting forth all other reasonable claims which the Company has against one or more of them."

(Emphasis added).

142.    The second resolution adopted on September 9, 2004, specifically ordered the "recalculation" of Luce's benefits as retribution for his alleged breach of fiduciary duty to ULLICO Inc. by participating in the Benefits Committee's allegedly "improper" and "unauthorized" plan amendments.

143.    The Administrative Committee's decision to follow these orders clearly violated the anti-alienation provisions of ERISA. 29 U.S.C. § 1056 (d)(1)

calculate his retirement benefits using the 2.5% contribution rate because he was receiving the same treatment as the other members of the Benefits Committee. Opinion at 14 n.5. While that justification is obviously false it is just as obviously based on the terms of Plan Amendment Number 9. The Administrative Committee's conclusion that the nondiscrimination provisions of the plan were met because the undisclosed and illegal amendment created the authority for different treatment of members of the Benefit Committee, was just an indirect way to accomplish the illegal objective of Plan Amendment Number 9.

151.    The Board of ULLICO Inc. acted illegally by attempting to amend the Plan to require or authorize the calculation of Luce's benefits in the manner set forth in Amendment Number 9, because any such amendment, interpretation or application of the Plan would result in a cutback of benefits which accrued prior to the adoption of the amendment in violation of ERISA, § 204(g), 29 U.S.C. § 1054(g).

152.    The Administrative Committee decision approving a discriminatory reduction of Luce's vested benefits is the obvious product of ULLCIO Inc.'s illegal Plan Amendment Number 9 and therefore is entitled to no judicial deference.

## Count I
### (Denial of Right to Review Pertinent and Relevant Documents and Information)

153.    Plaintiff repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 150 above.

154.    ERISA § 503(a)(2), 29 U.S.C. § 1133(a)(2) provides:

147.   The Board purported to accomplish this by adopting "Amendment Number 9," "Benefit Calculations of Former Officers" which supposedly added to the Plan Article 5, Section 5.1(a)(7) as follows:

> (7) Notwithstanding any provision herein to the contrary, the Pension Benefit Calculations of former ULLICO Inc. Officers, who served as members of the Employee Benefits Plan Administrative Committee, Robert A. Georgine, Joseph A. Carabillo, John Grelle and James Luce shall be calculated under subsections (1) through (3) above.

148.   Prior to the adoption of the illegal Amendment Number 9, Luce's retirement benefits were calculated under Section 5.1(a)(5) of the Plan which provides in pertinent part:

> (5) Effective with respect to any Participant who retires on or after January 1, 2002, the percentage of such Participants Average Salary used to determine the Normal Retirement Benefit in (1), (2) and (3) above shall increase from two percent (2%) to two and one-half percent (2½%) for all Sponsoring Employer ULLICO Group Years of Benefit Service.

149.   The Administrative Committee never provided a copy of Amendment Number 9 to Luce prior to the hearing on his Appeal and made no mention in its Opinion of the fact that ULLICO Inc. had illegally adopted a Plan amendment that attempted to reduce the retirement benefits of four of the former members of the Benefits Committee.  However, the Committee's decision to approve the "recalculation" of Luce's vested benefits was influenced directly and improperly by the illegal Plan Amendment.

150.   Without disclosing the existence of the document, the Committee fatuously opined that it was not discriminating against Luce by refusing to

> In accordance with regulations of the Secretary, every
> employee benefit plan shall . . . afford a reasonable
> opportunity to any participant whose claim for benefits has
> been denied for a full and fair review by the appropriate
> named fiduciary of the decision denying the claim.

The regulation applicable to Luce's claim states that any Plan's claims review

procedure must:

> [p]rovide that a claimant shall be provided, upon request
> and free of charge . . . copies of, all documents, records,
> and other information relevant to the claimant's claim for
> benefits. Whether a document, record or other
> information is relevant to a claim for benefits shall be
> determined by reference to Paragraph (m)(8) of this
> section.

29 C.F.R. § 52560.503-1(h)(2)(iii). Paragraph (m)(8) provides, in pertinent part:

> A document, record, or other information shall be
> considered "relevant" to a claimant's claim if such
> document, record or other information: (i) Was relied upon
> in making the benefit determination; (ii) Was submitted,
> considered or generated in the course of making the benefit
> determination, without regard to whether such document,
> record or other information was relied upon in making the
> benefit determination; (iii) Demonstrates compliance with
> the administrative processes and safeguards required
> pursuant to Paragraph (b)(5) of this section in making the
> benefit determination.

29 C.F.R. § 52560.503-1(m)(8).

155.   The opportunity to review the relevant documents and other

information is critical to a full and fair review, because only then does a claimant

have access to the evidence upon which the decision-maker relied in denying the

claim and, thus, the opportunity to challenge its accuracy and reliability. Review

of the "relevant" documents, and other information in this case is additionally

important, because it will help Luce establish that the Administrative Committee's denial of his claim lacked any rational basis, was the product of a conflict of interest, blindly followed direct orders from the Plan Sponsor to "suspend" and "recalculate" Luce's benefits, violated the Plan's express mandate of non-discriminatory treatment of retirees under the Plan, and ignored unequivocal evidence that the Benefits Committee amendments were valid.

156.    Plaintiff Luce has been denied his right to review the "relevant" documents, records and "other information" as those terms are defined in the applicable claims regulations.  The Plan should be ordered to produce all relevant documents, records and other information forthwith and reject the Plan's unfounded claims of attorney-client privilege.

## Count II
## (Denial of Claim for Benefits)

157.    Plaintiff repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 150 above.

158.    The ULLICO Inc. Pension Plan and Trust, as amended and restated as of February 28, 2002, and as further amended by the adoption of the July 31, 2003 Early Retirement Program, entitled Luce to retirement benefits calculated under the terms of the Plan as in effect on the date he retired.

159.    The prior amendments of the Plan had been acknowledged, adopted and incorporated into the Amended and Restated Plan effective as of February 28, 2002, by the Board of Directors of ULLICO Inc. as Plan Sponsor.

160.    The relevant Plan amendments were adopted "pursuant to a resolution of the Board of Directors," as that term is used in the Plan because the Benefits Committee exercised the power of the Board of Directors of ULLICO Inc., properly delegated to it by the Executive Committee of the Board of Directors of ULLICO Inc., which was itself authorized to exercise the full powers of the Board of Directors under the applicable By-Laws.

161.    Nothing in the Plan authorizes the disfavored treatment of Luce as approved by the Plan Administrator in this case. There is no authority for "suspending" or "recalculating" Luce's benefits by ignoring the 2.5% contribution rate which is used to calculate the retirement benefits of all other retirees who retired from ULLICO Inc. after January 1, 2002, or under the June 1, 2003 Early Retirement Program.

162.    The July 22, 2003 and September 9, 2004 resolutions of the Board of Directors of ULLICO Inc. adopted after Luce's retirement and the vesting of his retirement benefits do not authorize the Plan Administrator to "suspend" or "recalculate" his benefits. The "suspension" and "recalculation" was illegal under controlling law. Consequently, such a "suspension" and "recalculation" lacks any reasonable basis, and is inconsistent with the terms of the Plan.

163.    Plaintiff Luce is entitled to have his retirement benefits restored to the amounts properly calculated by the Plan and paid to Luce for the 18 months immediately following his retirement from ULLICO, and he is entitled to an order directing the Plan Administrator to use the 2.5% contribution rate in determining

the benefits due him under the Plan, and to have his past due and unpaid benefits paid to him, with interest.

**Count III**
**(Violation of ERISA § 204(g), 29 U.S.C. § 1054(g) – Anti-Cutback Rule)**

164.    Plaintiff repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 150 above.

165.    To the extent that the September 9, 2004 purported Plan Amendment Number 9 could be read as requiring or authorizing the Plan to calculate the retirement benefit payable to Luce pursuant to Plan § 5.1(a)(1-3), rather than Plan § 5.1(a)(5), as in effect on the date of Luce's retirement, no such retroactive effect can be given to the September 9, 2004 amendment.

166.    The Board of ULLICO Inc. acted illegally by attempting to amend the Plan to require or authorize the calculation of Luce's benefits in the manner set forth in Plan Amendment Number 9, because any such amendment, interpretation or application of the Plan would result in a cutback of benefits which accrued prior to the adoption of the amendment in violation of ERISA, § 204(g), 29 U.S.C. § 1054(g).

**Prayer for Relief**

WHEREFORE, Plaintiff James W. Luce prays that judgment be entered against the Plan and that the Court award the following relief:

A.      Declare that the Amendment to § 5.1(a) of the ULLICO Inc. Pension Plan and Trust adopted by the Benefit Plan Committee was a valid Plan Amendment, and that the retirement benefits of James W. Luce must be calculated

45

in compliance with those provisions of the Plan; Declare that any calculation of benefits that treats Plaintiff Luce differently than similarly situated retirees of ULLICO Inc. who retired after January 1, 2002, or pursuant to the June 1, 2003 Early Retirement Program, violates the Plan and the Department of Labor Claim Regulations; Declare that the September 9, 2004 Plan Amendments cannot be construed as requiring or authorizing the Plan to calculate vested benefits payable to Luce other than in accordance with the Plan as amended and restated effective as of February 28, 2002; and that such Amendments to the Plan may not be given effect to participants who retired prior to September 9,2004 since to do so would violate ERISA § 204(g);

B.    Order the Qualified Plan to pay qualified benefits to Plaintiff Luce at the rate of at least $7,349.62 under the 50% joint and survivor annuity election initially calculated by the Plan Administrator and paid to him for the 18 months immediately following his retirement from ULLICO Inc., and to pay the additional benefits owed to Luce which have not been paid in accordance with the terms of the Plan plus interest from January 14, 2005;

C.    Order the Plan to immediately permit Plaintiff Luce the right to review the documents relevant to his claim for benefits as set forth above, and award Luce $100 per day from May 20, 2005 through the date of judgment, to be paid jointly and severally by the individual members of the ULLICO Inc. Employee Benefit Plans Administrative Committee, for their refusal and the Administrative

Committee's refusal to supply requested information in violation of 29 U.S.C. § 1132(c)(1)(B) (Supp. II 2003);

D.    Award Plaintiff Luce the costs of his appeal to the Administrative Committee and of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and allow reasonable attorneys' fees as appropriate;

E.    Award, declare or otherwise order all relief available under ERISA § 502(a)(1)(b), (a)(3), 29 U.S.C. § 1132(a)(1)(b), (a)(3), that Plaintiff may subsequently seek and/or that the Court may deem appropriate.

JAMES W. LUCE
By Counsel

Robert E. Scully, Jr.
REES, BROOME & DIAZ, P.C.
8133 Leesburg Pike, Ninth Floor
Vienna, Virginia 22182
(703) 790-1911
Fax No.  (703) 790-5249
Counsel for James W. Luce
Virginia State Bar No. 19218

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this First Amended Complaint was sent via FEDEX Priority Overnight to:

> Brian A. Hill, Esquire
> Miller & Chevalier, Chartered
> 655 15th Street, N.W., Suite 900
> Washington, D.C.  20005-5701

this __13th__ day of October, 2005.

_____
Robert E. Scully, Jr.

K:\12\12410\00003\PLDNGS\USDC EDVA to USDC DC  First Amended Complaint.doc

48