UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH A. CARABILLO,<br><br>Plaintiff,<br><br>v.<br><br>ULLICO INC. PENSION PLAN<br>AND TRUST, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NUMBER:  1:04CV00776 (RJL)

Judge: Richard J. Leon

| | |
|---|---|
| ULLICO INC., THE ULLICO INC.<br>PENSION PLAN AND TRUST,<br>ULLICO INC. EMPLOYEES' LIFE<br>AND HEALTH WELFARE PLAN,<br>THE UNION LABOR LIFE<br>AUXILIARY RETIREMENT<br>BENEFITS PLAN and MARK<br>SINGLETON, in his capacity as a member<br>of the Employee Benefit Plans<br>Administrative Committee,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>JOSEPH A. CARABILLO,<br>ROBERT A. GEORGINE,<br>JOHN K. GRELLE,<br>and JAMES W. LUCE,<br><br>Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF COUNTERCLAIM DEFENDANTS CARABILLO, GRELLE AND
LUCE IN SUPPORT OF THEIR MOTION TO DISMISS THE COUNTERCLAIMS**

Counterclaim defendants Joseph A. Carabillo, John K. Grelle and James W. Luce submit this memorandum in support of their motion, made pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss all counterclaims asserted against them. As described more fully below, the three counterclaims asserted against them suffer from numerous procedural defects and fail to state claims under which relief can be granted. For these and the other reasons discussed below, the counterclaims should be dismissed against Carabillo, Grelle and Luce in their entirety with prejudice.[1]

## FACTS ALLEGED

Plaintiff Carabillo was employed by ULLICO Inc. ("ULLICO") from 1987 until 2003. (Counterclaim ¶ 9; Compl. ¶ 32). While employed by ULLICO, he became eligible for and elected to participate in an Early Retirement Program, which promised to provide him with enhanced pension and welfare benefits under several ULLICO-sponsored pension and welfare benefit plans effective June 1, 2003. (Compl. ¶¶ 25-31.) Despite confirmation from the plan administrator that his retirement election was in order (id. ¶ 30), those benefits have never been paid.

Accordingly, after pursuing administrative remedies, plaintiff Carabillo filed a two-count complaint on May 13, 2004 [Dkt. #1], seeking an award of benefits to which he was entitled pursuant to the Early Retirement Program. Carabillo named as defendants three ERISA-covered employee benefit plans in which he participated while employed, and from which he demanded benefits – the ULLICO Inc. Pension Plan and Trust (the "Qualified Plan"), the ULLICO Inc. Employees' Life and Health Welfare Plan (the "Welfare Plan"), and the Union Labor Life Auxiliary Retirement Benefits Plan (the "Auxiliary Plan") (together, the "Defendant Plans") – as well as four separate entities responsible for the administration of those plans. (Compl. ¶¶ 6-13.)

---

[1] The fourth counterclaim defendant, Robert A. Georgine, is not a movant here.

1

On July 26, 2004, the three Defendant Plans, plus two additional entities *not named as defendants* in the complaint by plaintiff Carabillo, filed a document captioned "Answer and Counterclaims" [Dkt. # 24], which answered the claims asserted in Carabillo's complaint and asserted a three-count "Counterclaim." These three counterclaims, however, were asserted not only against plaintiff Carabillo, but were also asserted against three additional individuals who are *neither plaintiffs nor defendants* in this action. These three newly named individuals –John K. Grelle, James W. Luce and Robert A. Georgine – are alleged in the Counterclaim to be former employees and executives of ULLICO who, along with plaintiff Carabillo, allegedly breached fiduciary duties owed to the three ERISA-covered plans at issue. As a result of these alleged breaches, according to the Counterclaim, the four counterclaim defendants have "forfeited" their benefits under the Qualified Plan and are jointly and severally liable "for all loses" [sic] sustained. (Counterclaim ¶¶ 27, 30.) In addition, the Counterclaim seeks a declaration that the four counterclaim defendants are "not entitled to any benefits" payable under the Welfare Plan or Auxiliary Plan. (*Id.* ¶¶ 37, 46.)

Not only did three of the four "counterclaim defendants" appear out of thin air in the counterclaim, but so did two of the five "counterclaim plaintiffs." In addition to the three Defendant Plans, the two other entities purporting to assert counterclaims in the Answer and Counterclaim document are ULLICO, alleged to be Carabillo's employer and the sponsor of the three Defendant Plans (*id.* ¶¶ 4-6, 9), and Mark Singleton, Chief Financial Officer of ULLICO and a member of the "Employee Benefit Plans Administrative Committee," the entity alleged to be the Plan Administrator of each of the three Defendant Plans (*id.* ¶ 7).

For the reasons set forth below, the three counterclaims must be dismissed in their entirety against counterclaim defendants Carabillo, Grelle and Luce.

2

## ARGUMENT

### I.    STANDARD OF REVIEW

A district court may grant a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if it is clear that no relief can be afforded to a plaintiff based on the allegations set forth in the complaint. *See Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996). A court must accept as true the factual allegations presented in the complaint and draw all reasonable inferences in favor of the non-movant. Nevertheless, "the court need not accept inferences drawn by [a plaintiff] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citation omitted).

### II.   COUNTERCLAIM PLAINTIFFS FAILED TO PROPERLY JOIN BOTH (1) THE NEW COUNTERCLAIM DEFENDANTS AND (2) THE NEW COUNTERCLAIM PLAINTIFFS

#### A.    Grelle and Luce Were Not Properly Joined as Counterclaim Defendants and Should be Dismissed

Each of the three counterclaims is asserted against Carabillo – the only plaintiff – as well as against Grelle and Luce, who are not plaintiffs in this action but were simply inserted into the Answer and Counterclaim as "counterclaim defendants." (Counterclaim ¶¶ 10-11.) Because Grelle and Luce were not properly joined as parties under the applicable Federal Rules of Civil Procedure, all claims against them must be dismissed.

Fed. R. Civ. P. 13(a) and (b) permit counterclaims to be asserted only against an "opposing party." *Kaempfer v. Brown*, 1987 U.S. Dist. LEXIS 16025, at *4 (D.D.C. 1987) ("Counterclaims may only be asserted against an 'opposing party'" (citation omitted)). The language of this Rule is unambiguous, and the concept is not a difficult one. Counterclaims cannot be asserted against strangers to the litigation, and Grelle and Luce must be dismissed

3

from this action. *FNMA v. Cobb*, 738 F. Supp. 1220, 1224 (N.D. Ind. 1990) (dismissing counterclaims against newly added defendants because Rule 13 "does not authorize the assertion of counterclaims against strangers to the litigation"); *Federal Land Bank v. Cupples Bros.*, 116 F.R.D. 63, 65 (E.D. Ark. 1987) (discussing application of Rule 13 as precluding counterclaims asserted against "strangers to the litigation"), *aff'd*, 871 F.2d 1092 (8th Cir. 1988).

Fed. R. Civ. P. 13(h) allows that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Rule 19, "Joinder of Persons Needed for Just Adjudication," provides the standard by which persons needed for just adjudication may be joined in an action. Rule 20, "Permissive Joinder of Parties," provides the mechanism by which additional permissive defendants may be joined. Counterclaim plaintiffs here, however, have made no motion to join Grelle or Luce under either Rule, and the Court should not *sua sponte* take up this task for them. It is not possible to know under which of Rules 19 or 20 Grelle and Luce would be sought to be joined, and plaintiffs have made no showing that any of the Rules' requirements have been met.

For the reasons set forth above, Grelle and Luce must be dismissed from this action because they are not "opposing parties" under Rule 13 and have not been properly joined pursuant to Rules 19 or 20.

**B.    ULLICO and Singleton Were Not Properly Joined as Counterclaim Plaintiffs and Should be Dismissed**

Counterclaim plaintiffs ULLICO and Mark Singleton were not named as defendants in this action. They simply appear in the Answer and Counterclaim. As discussed above, Fed. R. Civ. P. 13(h) provides that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Defendants have not, however, made any motion to join ULLICO or Singleton as

4

counterclaim plaintiffs, and have not suggested what the basis for such a joinder would be. Nor have ULLICO and Singleton moved to join the litigation themselves, and such a motion would not be permissible in any event. *See Thompson v. Boggs*, 33 F.3d 847, 858 n.10 (7th Cir. 1994) (concluding that non-party's motion for joinder was impermissible under Rule 20). Accordingly, ULLICO and Singleton should be dismissed from this action.

### C.    Count III is an Omitted Counterclaim in Luce's Action in the Eastern District of Virginia and Must be Dismissed as Against Luce

Count III alleges that Luce (and the other counterclaim defendants) violated fiduciary duties owed to the Auxiliary Plan, and are therefore "not entitled to any benefits under the plan." (Counterclaim ¶ 44.) Such a claim, as asserted against Luce, is an improper attempt to revive a compulsory counterclaim that was brought and dismissed against him in an action in the United States District Court for the Eastern District of Virginia, Case No. 03-cv-1014 (transferred to this Court on Jan. 14, 2004 and now captioned as Case No. 04-cv-00118-RJL). Accordingly, Count III must be dismissed as against Luce and taken up – if at all – as a counterclaim in the other action.

In Case No. 04-cv-00118-RJL, Luce filed suit against the Auxiliary Plan, claiming that he was wrongfully denied retirement benefits under that plan. Here, the counterclaim plaintiffs (including the Auxiliary Plan) assert that Luce breached his fiduciary duties to the Auxiliary Plan, and are seeking a declaration that he is thus "not entitled to benefits" from it. (Counterclaim ¶ 46.) Fed. R. Civ. P. 13(a) provides that a "pleading *shall* state as a counterclaim any claim . . . [arising] out of the transaction or occurrence that is the subject matter of the opposing party's claim . . ." (emphasis added). It is well-settled that counterclaims seeking a recoupment of moneys owed are compulsory in nature. *See In re Gober*, 100 F.3d 1195, 1208 (5th Cir. 1996) (noting compulsory nature of recoupment counterclaim). Therefore, any claim

5

against Luce seeking recoupment or set-off of Auxiliary Plan benefits owed to Luce must be brought in the Case No. 04-cv-00118-RJL action.

It is also well-settled that compulsory counterclaims that are not brought are "thereafter barred." *United States v. Intrados/Int'l Mgmt. Group*, 277 F. Supp. 2d 55, 66 (D.D.C. 2003) (*quoting Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1985)). This means that where a party fails to plead a counterclaim, it is precluded from asserting that claim in future litigation. *See Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766, 769 n.3 (5th Cir. 1977) (discussing "bar resulting from failure to bring a compulsory counterclaim"); Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d §1417. Accordingly, because Count III seeks recoupment and setoff of Auxiliary Plan benefits owed to Luce, it must be asserted against Luce as a counterclaim in Case No. 04-cv-00118-RJL, if at all, and should be dismissed here.

## III.    THE COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.    The Counterclaim Plaintiffs Lack Standing to Assert Claims Under ERISA

ERISA's civil enforcement provision, ERISA § 502(a), 29 U.S.C. § 1132(a), confers standing on certain enumerated parties to bring a civil action to enforce provisions of ERISA or of the terms of an ERISA plan. All federal courts, including this one, have strictly construed this provision and limit standing to only those entities enumerated in the relevant ERISA § 502(a) provision. *See Systems Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 27 (D.D.C. 1997) (refusing to grant standing to non-enumerated party), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998).[2]

---

[2]      *See also Coleman v. Champion Int'l Corp.*, 992 F.2d 530, 533 (5th Cir. 1996) (holding that plaintiff lacked standing because it was not one of the enumerated parties in ERISA § 502); *Chemung Canal Trust Co. v. Sovran Bank*, 939 F.2d 12, 14 (2d Cir. 1991) (holding that § 502(a) specifies those "who may bring actions under ERISA and the types of actions each may pursue. The statute names only three classes of persons who may commence an action . . . [t]hose who can sue are: (1) a participant or beneficiary, (2) the Secretary of Labor, and (3) a fiduciary").

Because the counterclaim plaintiffs do not fit within the definition of these enumerated parties, they lack standing to pursue claims under ERISA, and all counterclaims should be dismissed.

There are five counterclaim plaintiffs asserting the three counterclaims. They are as follows: (1) the three ERISA-covered plans – the Qualified Plan, the Welfare Plan, and the Auxiliary Plan (Counterclaim ¶¶ 4-6); (2) ULLICO, alleged to be the former employer of the counterclaim defendants and the plans' sponsor (*id.* ¶ 3); and (3) Mark Singleton, the Chief Financial Officer of ULLICO, Inc. and a member of the Employee Benefit Plan Administrative Committee, the current plan administrator for the Qualified Plan, the Welfare Plan and the Auxiliary Plan (*id.* ¶ 7). Based on clear precedent, the three employee benefit plans do not have standing to assert claims under ERISA's civil enforcement provisions. *See Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983) (as non-enumerated parties, pension funds do not have standing to sue under ERISA); *see also Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 983 (9th Cir. 1999) ("ERISA plans[] are not fiduciaries entitled to sue under ERISA"). Accordingly, the three plans lack standing to assert claims under ERISA and their claims must be dismissed.

Similarly, ULLICO, pled as the plans' sponsor and former employer of the counterclaim defendants (Counterclaim ¶¶ 3-6), also lacks standing as an enumerated party. In *Grand Union Co. v. Food Employers Labor Relations Assoc.*, 808 F.2d 66, 71 (D.C. Cir. 1987), then-Judge Ginsburg affirmed the dismissal of a claim for breach of fiduciary duty under ERISA asserted by an employer on the ground that employers are not listed as enumerated parties authorized to bring a civil action under ERISA § 502(a), and thus lack standing to do so. Accordingly, ULLICO lacks standing to assert any ERISA claims here.

7

Finally, the final counterclaim plaintiff, Mark Singleton, is named in the Counterclaim in his capacity as "Plan Administrator." Although a plan administrator, as a fiduciary, has standing to assert ERISA claims under ERISA §§ 502(a)(2) or (a)(3), Mr. Singleton, for the reasons stated above (*supra* at 4-5), is an improper counterclaim plaintiff. Accordingly, his standing is irrelevant.

**B.    The Counterclaims Fail to State a Claim and Must be Dismissed**

       **1.    Count I, Based Solely on the Performance of Allegedly "Unauthorized Settlor Functions," Does Not Allege Fiduciary Conduct and Must be Dismissed**

Counts I asserts that Carabillo, Grelle and Luce (as members of the Benefits Committee) breached their fiduciary duties under ERISA by "purport[ing] to amend" the Qualified Plan on two separate occasions. (Counterclaim ¶¶ 17-18.) On October 20, 1999, the Benefits Committee "purported to amend" the Qualified Plan by changing its definition of "compensation." (*Id.* ¶ 17.) On July 21, 2001, the Benefits Committee again "purported to amend" the Qualified Plan by modifying its benefit formula. (*Id.* ¶ 18.) These amendments were attempted, the Counterclaim alleges, "without authority" and "without appropriate disclosures to the [ULLICO] Board." (*Id.* ¶ 19.) As a result, Carabillo, Grelle and Luce are alleged to have breached fiduciary duties owed under ERISA to the Qualified Plan. (*Id.* ¶¶ 19, 27.) The two "unauthorized" amendments to the Qualified Plan (as alleged in paragraphs 17 and 18) are the *entire* extent of the conduct being challenged in Count I.

This claim is completely without merit, since the Benefits Committee, including Carabillo, Grelle and Luce as members, did not act as a fiduciary in amending the Qualified Plan (or when attempting to amend it). Accordingly, the conduct at issue is not subject to ERISA's fiduciary standards and cannot result in fiduciary liability under ERISA. The Supreme Court has recognized on several occasions that a person becomes a fiduciary under ERISA "only when

fulfilling certain defined functions." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). As the Court said in *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000), "[i]n every case charging breach of ERISA fiduciary duty, then, the threshold question [is] whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Federal courts have uniformly and consistently held that an individual or entity is *not* acting in a fiduciary capacity when it considers, make decisions concerning, or takes steps to amend an employee pension benefit plan. *Lockheed Corp.*, 517 U.S. at 891 ("the act of amending a pension plan does not trigger ERISA's fiduciary provisions"); *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 286 F.3d 598, 599 (D.C. 2002) ("The Supreme Court made it clear . . . that employers and plan sponsors do not act in a fiduciary capacity when they modify, adopt or amend plans."). Accordingly, regardless of whether Carabillo, Grelle and Luce were fiduciaries under ERISA in other capacities, they were *not* acting as fiduciaries when "purport[ing] to amend" the Qualified Plan and are thus not subject to fiduciary standards (or to fiduciary liability) when engaging in that conduct.

Nor does the result differ if Carabillo, Grelle and Luce attempted these amendments "without authority." (Counterclaim ¶ 19.)[3] If amending a plan cannot result in fiduciary liability, then attempting and failing to amend a plan also can not result in fiduciary liability, and courts have so held. *See, e.g., Siskind v. Sperry Retirement Prog.*, 47 F.3d 498, 506 (2d Cir. 1995) (amendment, even in violation of a plan's amendment provisions, is not a fiduciary act). A settlor function does not transform into a fiduciary function simply because the plan contains

---

[3]    If required to defend these counterclaims on the merits, the counterclaim defendants will vigorously argue that, not only were the challenged actions here fully disclosed and authorized, but in fact the full Board of Directors of ULLICO later adopted an amended Qualified Plan incorporating the amendments at issue. (*See* Declaration of Joseph A. Carabillo in Support of his Motion for Injunctive Relief, Ex. 2 [Dkt. #5].)

directions for its performance. The Counterclaim seems to acknowledge this, referring to the challenged conduct as "unauthorized settlor functions." (Counterclaim ¶ 40.) ERISA does not, however, authorize a cause of actions challenging "unauthorized settlor functions."

Nor is it of any consequence that the amendments were allegedly attempted "without appropriate disclosures to the Board." (Counterclaim ¶ 19.) ERISA contains comprehensive and detailed requirements for reporting and disclosures that must be made to participants and beneficiaries, *see* ERISA §§ 101-111, none of which is alleged to have been violated here, and none of which concern themselves with fiduciaries' disclosures to boards of directors or other corporate bodies. Any allegation that Carabillo, Grelle and Luce violated fiduciary duties they may have had to the corporation or to the board of directors by failing to disclose their actions is of no relevance to their fiduciary responsibilities to participants under ERISA, and does not convert the settlor function of plan amendment into ERISA fiduciary conduct.

Accordingly, because plan amendment is not a fiduciary function, Count I alleging violations of ERISA's fiduciary duties based on this conduct must be dismissed.

### 2. Count II, Based Solely on Conduct "Damaging" the Plan Sponsor, Does Not Allege Fiduciary Conduct and Must be Dismissed

Count II asserts that Carabillo, Grelle and Luce breached their fiduciary duties under ERISA owed to the Welfare Plan by "engag[ing] in a course of conduct that damaged ULLICO Inc. and thereby threatened to impair and, in fact, did impair, ULLICO Inc.'s ability to continue its financial support for the Welfare Plan." (Counterclaim ¶ 34.) No further detail – or even generalizations – describing this "course of conduct" is given, nor is any additional information provided as to how the course of conduct impaired the Welfare Plan, other than that it allegedly affected ULLICO's ability to "continue its financial support" of the plan. (*Id.*) Basically, Count

II alleges that the counterclaim defendants were bad business managers, ultimately resulting in harm to the company's ability to fund Welfare Plan benefits.

Such allegations fail to allege a violation of fiduciary conduct. A company official – even one that has fiduciary responsibilities under ERISA – is simply not acting as an ERISA fiduciary unless that individual is performing fiduciary functions. When individuals wear "two hats" as employers and administrators, "they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Systems Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 30 (D.D.C. 1997) (quotation omitted), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998). When an individual is performing business management functions, he has no obligation to any ERISA plans. As the Supreme Court has noted, individuals "can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when [they] act as employers [or] plan sponsors." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (internal quotations and citation omitted).

Accordingly, Carabillo, Grelle and Luce had no ERISA fiduciary obligations to the Welfare Plan (or any other plan) when performing their regular day-to-day responsibilities for their employer, and cannot be held liable under ERISA for actions that may have harmed the Welfare Plan as a result of that conduct. *Pegram*, 530 U.S. at 225-26 (ERISA liability arises only from actions taken or duties breached in the performance of ERISA obligations). Count II therefore fails to state a claim and should be dismissed.

### 3. Count III, Whether Asserted Under ERISA, State Law or the Federal Common Law, Fails to State a Claim

Count III alleges that the counterclaim defendants breached their fiduciary duties to the Auxiliary Plan, an ERISA-covered employee benefit plan that is also a "top hat" plan (Counterclaim ¶ 41), within the meaning of ERISA §§ 201(2), 301(a)(3) and 401(a)(1), 29

11

U.S.C. §§ 1051(2), 1081(3) and 1101(a)(1). Under ERISA, a "top hat" plan is an unfunded plan "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Id.* "Top Hat plans clearly are subject to ERISA," *Kemmerer v. ICI Americas, Inc.*, 70 F.3d 281, 286 (3d Cir. 1995), but are exempt from many of its provisions, including its fiduciary provisions. *See Reliable Home Health Care v. Union Cent. Ins. Co.*, 295 F.3d 505, 512 (5th Cir. 2002) (top hat plans are "exempt from ERISA's fiduciary provisions as well as its participation, vesting, and funding provisions"). Accordingly, Carabillo, Grelle and Luce – or anyone else for that matter – cannot owe fiduciary duties *under ERISA* to the Auxiliary Plan, and cannot be subject to liability under ERISA for a breach of any such duties. *See Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 290 (2d Cir. 2000) (dismissing fiduciary claims because "fiduciary responsibility provisions of ERISA do not apply to top hat plans"). To the extent Count III asserts a violation of ERISA, it must be dismissed on this ground.

Apparently aware that "top hat" plans are exempt from ERISA's fiduciary provisions, the Counterclaim does not allege that Carabillo, Grelle and Luce have violated these ERISA provisions, but rather alleges that they have violated vague and unspecified "fiduciary duties" to the Auxiliary Plan without specifying the source of these duties. (Counterclaim ¶ 44.) However, any claim asserted under *state law* alleging that the counterclaim defendants breached fiduciary duties to the Auxiliary Plan would clearly be preempted by ERISA. *See Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242 (1st Cir. 2002) (holding that state law claims for breach of contract are preempted with respect to top hat plans); *Reliable Home Health Care*, 295 F.3d at 516 (holding that state law claims for fraud with respect to management of a top hat plan were

preempted).  Accordingly, no state law claims alleging breach of fiduciary responsibilities to the

Auxiliary Plan can survive.

In enacting ERISA, Congress made regulation of employee benefit plans an exclusively

federal concern and displaced almost all state regulation of employee benefit plans.  Recognizing

that the "economic impact of [employee benefit] plans is increasingly interstate," Congress

sought to relieve plans of the burdens of complying with multiple state laws.  *See* ERISA § 2(a),

29 U.S.C. § 1001(a).  To that end, § 514(a) of ERISA provides that:

> Except as provided in subsection (b) of this section, the provisions of this
> title and title IV shall supersede any and all State laws insofar as they
> may now or hereafter relate to any employee benefit plan described in
> section 4(a) . . .

29 U.S.C. § 1144(a).  Thus, any state law that "relates to" an "employee benefit plan" is

preempted, unless it fits within one of the "very limited exceptions to pre-emption" contained in

ERISA's various savings clauses in § 514(b) (and which are not applicable here).  *Shaw v. Delta*

*Air Lines, Inc.*, 463 U.S. 85, 104 (1983).

The federal courts have uniformly held that state law claims challenging the management

of "top hat" plans are preempted by ERISA.  *See, e.g., Demery*, 216 F.3d at 290; *Moore v.*

*Raytheon Corp.*, 314 F. Supp. 2d 658, 660 (N.D. Tex. 2004) (dismissing state law fiduciary

claims against "top hat" plan as preempted by ERISA).  Because the allegations at issue in Count

III clearly "relate to" the Auxiliary Plan (Counterclaim ¶ 44 ("counterclaim defendants breached

their fiduciary duties with respect to the Auxiliary Plan")), Count III, to the extent it asserts a

state law claim, must be dismissed as preempted.

Finally, as this Court has already held in its September 30, 2004 decision in *Carabillo v.*

*ULLICO Inc.*, Civ. No. 03-1556 [Dkt. #91] (slip op. at 11-15), the federal common law does not

13

provide a cause of action for claims by a plan sponsor seeking to establish a set-off or

recoupment of a participant's entitlement to benefits under a "top hat" plan.

Accordingly, the counterclaim plaintiffs fail to state a claim in Count III that the

counterclaim defendants have breached fiduciary duties to the Auxiliary Plan, and Count III must

be dismissed.

### C.    The ERISA Fiduciary Claims are Time-Barred

ERISA contains an express statute of limitations in § 413 applicable to claims for breach

of fiduciary duties.  *See Larson v. Northrop Corp.*, 21 F.3d 1164, 1168 (D.C. Cir. 1994) (section

413 establishes a combination of limitations provisions to govern breach of fiduciary duty

claims).  That provision reads as follows:

> No action may be commenced under this title with respect to a fiduciary's
> breach of any responsibility, duty, or obligation under this part, or with
> respect to a violation of this part, after the earlier of --
>
> (1) six years after (A) the date of the last action which constituted a part of
> the breach or violation, or (B) in the case of an omission, the latest date on
> which the fiduciary could have cured the breach or violation . . .
>
> (2) three years after the earliest date on which the plaintiff had actual
> knowledge of the breach or violation
>
> except that in the case of fraud or concealment, such action may be
> commenced not later than six years after the date of discovery of such
> breach or violation.

29 U.S.C. § 1113.  Here, the application of the three-year statute of limitations in ERISA § 413

easily bars the claims of breach of fiduciary duty asserted against the counterclaim defendants.

Thus, ERISA fiduciary breach claims will be time-barred if they are brought more than

three years after actual knowledge of the underlying conduct giving rise to the alleged violation.

*Larson v. Northrop Corp.*, 21 F.3d at 1172 ("statute of limitations is triggered by actual

knowledge of the breach or violation"); *Wright v. Heyne*, 349 F.3d 321, 331 (6th Cir. 2003) ("it

is only the plaintiff's actual knowledge of the underlying conduct giving rise to the alleged violation that is required [to trigger the three-year statute], rather than the knowledge that the underlying conduct violates ERISA").[4] Here, the alleged fiduciary violations are the amendments to the Qualified Plan, which took place on October 20, 1999 and July 24, 2001. (Counterclaim ¶¶ 17-18.) The Answer and Counterclaim was not filed until July 26, 2004, more than three years after these actions took place.

Because the counterclaim plaintiffs had actual knowledge of the amendments to the Qualified Plan (*i.e.*, the underlying conduct giving rise to the alleged fiduciary violations) for more than three years before bringing suit, their ERISA fiduciary breach claims are time-barred pursuant to ERISA § 413(2).

## CONCLUSION

For the reasons set forth above, all counterclaims should be dismissed against Carabillo, Grelle and Luce with prejudice.

---

[4]     *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) ("[t]he relevant knowledge for triggering the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation"); *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996) ("[w]e have defined 'actual knowledge'. . . as knowledge of the 'essential facts of the transaction or conduct constituting the violation,' and have explained that this means it is 'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality' " (internal citations omitted)).

Date:  October 29, 2004

Respectfully submitted:

_____/s/_____
Robert N. Eccles (Bar No. 355479)
Karen M. Wahle (Bar No. 440517)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4001
(202) 383-5300
(202) 383-5414 (fax)
beccles@omm.com
kwahle@omm.com

Attorney for Counterclaim Defendants
Joseph A. Carabillo, John K. Grelle and
James W. Luce

DC1:603378.3

16