00001

```
 1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA
 2  JOSEPH A. CARABILLO, et al.,  :  Docket No. CV03-1556
                             :  (RJL)
 3         Plaintiffs,     :   April 25, 2005
                             :
 4                        :   2:30 p.m.
   v.                     :
 5                        :

 6  ULLICO, INC., et al.,        :

 7         Defendants.    :

 8  . . . . . . . . . . . . . . . :

 9         TRANSCRIPT OF STATUS CONFERENCE

10      BEFORE THE HONORABLE RICHARD J. LEON

11          UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiff      DAVID S. PREMINGER, ESQ.

14  Joseph Carabillo        Rosen, Preminger & Bloom, LLP

15  (Affirmative Claims):    703 Third Avenue, Suite 1600

16              New York, New York 10017

17  For the Defendants and    ANTHONY J. TRENGA, ESQ.

18  Counterclaim Plaintiffs:   BRIAN HILL, ESQ.

19             Miller & Chevalier

20             655 Fifteenth Street, NW

21             Washington, D.C. 20005

22  For the Counterclaim      KAREN WAHLE, ESQ.

23  Defendants James Luce and   O'Melveny & Myers, LLP

24  Joseph Carabillo:       1625 Eye Street, N.W.

25             Washington, D.C.  20006
```

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 1**

00002
```
 1  For the Counterclaim       ROBERT E. SCULLY, JR., ESQ.
    Defendant James Luce:         Rees, Broome & Diaz, P.C.
 2                             8133 Leesburg Pike, 9th Floor
                               Vienna, Virginia 22182
 3  For the Counterclaim       ALISON N. DAVIS, ESQ.
    Defendant John Grelle:        Krupin O'Brien
 4                             1156 15th Street, NW, Suite 200

 5                             Washington, D.C. 20005

 6  For the Counterclaim       BRYAN ERMAN, ESQ.

 7  Defendant Robert Georgine:   Baker Botts, LLP

 8                             1299 Pennsylvania Avenue, NW

 9                             Washington, D.C. 20004

10  For the Trustee Ann O'Brien: JEFFREY A. LIESEMER, ESQ.

11                             Liesemer Law Firm, PLLC

12                             524 King Street

13                             Alexandria, Virginia 22320

14  For the Counterdefendant    WILLIAM GLENN MERTEN, ESQ.

15  Pacific Life Insurance Co.:  Jorden Burt, LLP

16                             1025 Thomas Jefferson Street, NW

17                             Suite 400 East

18                             Washington, D.C. 20007

19  Court Reporter:            PATTY ARTRIP GELS, RMR

20                             Official Court Reporter

21                             Room 4800-C, U.S. Courthouse

22                             Washington, D.C. 20001

23                             (202) 962-0200

24  Proceedings reported by machine shorthand, transcript produced

25  by computer-aided transcription
```

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 2**

00003

1          P R O C E E D I N G S

2          COURTROOM CLERK:  Civil Action 03-1556.  Joseph A.

3    Carabillo, et al., versus Ullico, Inc., et al.

4          Will counsel please stand and identify yourselves for

5    the record.

6          MR. PREMINGER:  David Preminger, Rosen, Preminger &

7    Bloom, for Plaintiff Joseph Carabillo on his affirmative claims.

8          THE COURT:  All right.

9          MS. WAHLE:  Good afternoon, your Honor.  Karen Wahle

10   from O'Melveny and Myers.  I am here for two of the Counterclaim

11   Defendants.  That's James Luce and Joseph Carabillo.

12          MR. ERMAN:  Good afternoon, your Honor.  Bryan Erman of

13   Baker Botts for Counterclaim Defendant Robert Georgine.

14          THE COURT:  All right.

15          MR. SCULLY:  Good afternoon, your Honor.  Robert

16   Scully, co-counsel for Counterclaim Defendant James Luce.

17          THE COURT:  All right.

18          MS. DAVIS:  Good afternoon, your Honor.  Alison Davis

19   of Krupin O'Brien for Counterclaim Defendant John Grelle.

20          THE COURT:  All right.

21          MR. LIESEMER:  Good afternoon, Your Honor.  Jeffrey

22   Liesemer appearing on behalf of Ann O'Brien in her capacity as

23   trustee of the Georgine Insurance Trust.

24          THE COURT:  All right.

25          MR. MERTEN:  Good afternoon, your Honor.  Glen Merten

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 3**

00004

1  of Jorden Burt representing Pacific Life Insurance Company, a

2  Counterclaim Defendant.

3      MR. TRENGA:  Good afternoon, your Honor.  Tony Trenga

4  on behalf of the Defendants and Counterclaim Plaintiffs in what

5  we are referring to as Carabillo 1.  With me is my colleague

6  Brian Hill.  We are both from the law firm of Miller &

7  Chevalier.  Your Honor, it is my understanding that this status

8  conference has been scheduled in each of the related cases.  Is

9  that correct?

10     THE COURT:  Well, I think we basically invited

11 everyone, so I wanted to first address the people who

12 participated in the amended joint conference report, which I

13 don't believe goes to -- Pacific Life, I don't think, was

14 involved.  Let's see.  We have got you here.

15     Of course, we have Carabillo, Luce, Grelle, Georgine,

16 and Ullico, of course.

17     MR. TRENGA:  There are four related cases, your Honor,

18 and perhaps -- Mr. Hill can correct me if I am wrong, but I

19 understand that there has been a joint conference report filed

20 in three of those.

21     MR. HILL:  Correct.

22     MR. TRENGA:  Luce -- what we are referring to as

23 Luce 2, 041830, being the sole exception.

24     THE COURT:  All right.  Well, basically, it begs the

25 first question, which is what about the idea of consolidating

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 4**

00005

1  all these cases for Discovery purposes?  And I wanted to give

2  the parties a chance to address the pros and cons, from their

3  perspective, as to the value of consolidating the cases for

4  Discovery purposes and moving the cases forward under one

5  umbrella, so to speak.  And then when Discovery is over and any

6  Motions are filed, whatever they may be, then deal with any

7  issues separately as it relates to any possible trials and the

8  sequencing of trials or any resolutions that are short of a

9  trial.  Of course, we will probably dispose of them by Motions,

10  but I wanted to give the parties a chance to speak to those

11  issues.  And then I have a bunch of other questions that the

12  amended joint conference report and Discovery plan that I

13  alluded to a moment ago raised.

14        So why don't we start off with the issue of the

15  consolidation for the purposes of Discovery in all these cases.

16  I don't particularly care what order you all go in.  I am glad

17  to hear from all of you.

18        MR. PREMINGER:  Thank you, your Honor.  David Preminger

19  again for Joseph Carabillo on his affirmative claims in both

20  Carabillo 1 and Carabillo 2.  Other counsel will speak with

21  respect to the counterclaims.

22        In Carabillo 1, Carabillo, I believe, has no objection

23  to consolidation of Discovery with respect to the counterclaims

24  in the two actions, although there are -- there is a Motion --

25  actually, all of the Counterclaim Defendants will have a pending

00006

1  Motion to dismiss those counterclaims.  And no Discovery may be

2  required, depending on your Honor's ruling.

3         With respect to Mr. Carabillo's affirmative claims,

4  there is not a great deal of Discovery which will be required.

5  They cover -- both of them, actually, cover a span of only a

6  couple of months in 2003, and I would really hate to see them

7  get bogged down in what is undoubtedly going to be fairly

8  extensive Discovery with respect to numerous state law

9  counterclaims and potential ERISA breach of fiduciary duty

10  counterclaims.  And it is for that reason that we have set forth

11  the -- actually, the report that we filed concerning scheduling

12  Discovery before a Rule 26(f) report was filed took the position

13  that the Discovery on Mr. Carabillo's affirmative claim should

14  proceed on a separate and expedited track.  Thank you.

15         THE COURT:  That's for both Carabillo 1 and 2?

16         MR. PREMINGER:  That's correct.

17         THE COURT:  All right.

18         MR. SCULLY:  Good afternoon, your Honor.  Robert Scully

19  for James W. Luce.  Mr. Luce is the other Plaintiff claimant who

20  is seeking to recover the pension benefits that he has been

21  deprived by his former employer in its related pension plans.

22  As you will recall, your Honor, there is a case called Luce

23  versus Union Labor Life Auxiliary Retirement Benefits Plan and

24  Nonqualified Deferred Compensation Plan which began in Virginia.

25         THE COURT:  Right.

00007

1        MR. SCULLY:  That was transferred here in January of

2  2004.  That lawsuit seeks to have Mr. Luce obtain his

3  nonqualified pension benefits; that is, his deferred

4  compensation, the money he earned, the money he put away until

5  his retirement and deferred for taxation, a considerable amount

6  of money, which Ullico refuses to give to him, as well as his

7  nonqualified excess benefit over the qualified benefit; that is,

8  the plan benefit that's allowed to be -- qualifies for tax

9  deductibility to the payor and tax deferral to the payee.

10        Mr. Luce also, unfortunately, due to the passage of

11  time, has become subject to a sort of effort by Ullico to take

12  the law into its own hands and decide some of the issues before

13  you for itself.  You may recall that Ullico sought a declaratory

14  judgment in its counterclaim in Carabillo 1 that Mr. Luce

15  participated in improper amendments of the benefit plan

16  documents to allow himself to obtain a benefit.

17        Apparently not content to await your ruling on that, in

18  January Ullico's Board of Directors instructed its General

19  Counsel to reduce Mr. Luce's benefit unilaterally.  That's his

20  qualified plan benefit.  That's the benefit Congress has

21  instructed cannot be messed with and a benefit which is payable

22  by the plan, not by Ullico.

23        THE COURT:  What was it reduced from?  From what to

24  what?

25        MR. SCULLY:  It was reduced about $2,000 a month based

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 7**

00008

1  on the claim that it should have been computed on a basis of

2  2.5 percent of his annual compensation during the three-year

3  maximum period rather than 2-1/2 [sic], which was the amount

4  that was determined during a plan amendment in 2001.

5      THE COURT:  So how much is he receiving now a month?

6      MR. SCULLY:  Right now he gets about $5,000 a month,

7  and it should be about $2,000 more.  He was receiving the full

8  benefit for the first 18 months of this litigation.

9      THE COURT:  Right.

10     MR. SCULLY:  For some reason, Ullico decided they

11  weren't content with the status quo and decided to alter it.  We

12  have filed an appeal to the benefits committee.  They gave us a

13  hearing, which was very nice of them.  But, of course, they are

14  all employees of Ullico, and we are not terribly optimistic that

15  those gentlemen -- and they are all gentlemen, and I mean no

16  personal aspersions on them, but I wonder whether they will have

17  the courage to tell the General Counsel of their employer that

18  he is just flat wrong and he has intentionally violated a

19  Federal statute.  I hope they do; I hope there are still men of

20  that type around, but I wonder.

21     So Mr. Luce finds himself in a very difficult position.

22  He has been waiting now for many, many months to have his

23  affirmative claims heard.  And just like Mr. Carabillo, he would

24  like those claims heard and not have them lost in this mountain

25  of allegations of fiduciary misconduct that Ullico has managed

00009

1  to file now in four different lawsuits in this Court and one in

2  the District of Columbia Superior Court, which brings me to the

3  other issue about consolidation vis-a-vis Mr. Luce.

4        As the Court recalls, you have dismissed most of the

5  state law-based fiduciary duty counts from the ERISA-based

6  claims and have decided not to exercise supplemental

7  jurisdiction over them. Mr. Luce was the first one out. The

8  first opinion dealt with Mr. Luce's Motion of challenging

9  jurisdiction. As a result of that ruling, Mr. Luce was sued

10  alone by Ullico in this court, another case that's been assigned

11  to you called Ullico, Inc., versus Luce, in which he is the sole

12  Defendant accused of aiding and abetting breaches of fiduciary

13  duty by others and of committing fiduciary duty breaches of his

14  own.

15        All of the other claims for breach of fiduciary duty

16  are pending in the District of Columbia Superior Court against

17  the other Defendants. And a Motion has been recently filed in

18  the District of Columbia Superior Court to lift the stay of

19  proceedings pending in that Court to allow those claims to go

20  forward against those Defendants in State Court.

21        It makes no sense to me to have Jim Luce defending

22  alone, as a sole Defendant, the identical claims arising out of

23  the identical facts with all the same witnesses and evidence

24  here while some poor Judge in the D.C. Superior Court has to do

25  the same thing. So I think we have to ferret that out as part

00010

1    of this decision regarding consolidation.

2         I don't have any problem with consolidating Discovery.

3    I want Discovery to be done so we can get to the merits of this

4    thing so Mr. Luce can get the retirement benefits he needs, but

5    I also don't think in the rush to get some movement in this case

6    we overlook this very serious problem of misalignment of

7    resources between the State and Federal Courts.

8         THE COURT:  Has there been any Motion filed in the

9    Superior Court about transferring the case over there or vice

10   versa?  Has there been any litigation around the issue of

11   removing a case from this Court or from the Superior Court to

12   this Court?

13        MR. SCULLY:  I don't think the D.C. case is removable,

14   frankly.  I can't remember my analysis, but I remember at one

15   time I looked at the issue and certainly decided, for my

16   purposes, it wasn't removable.

17        THE COURT:  All right.

18        MR. SCULLY:  But I don't know of any Motions to

19   transfer here.

20        THE COURT:  Well, the one thing you can take to the

21   bank is that I am not looking for more Motions.  In fact, if I

22   could admonish all parties at least once, I would say too many

23   Motions have already been filed in this case.  And it certainly

24   doesn't help move things along to file too many Motions.

25        So -- I mean, as you are probably all well aware, and

00011

1    if you are not, you ought to become aware, we are under siege in

2    this Court with criminal cases.  I have had 14 trials in the

3    last 12 months.  And trust me, by the standards of this Court,

4    that's pretty high.  And only one of -- I have had 15 trials in

5    total, and only one of which was civil.  And I am constantly

6    cancelling and rescheduling civil trials to accommodate the

7    Speedy Trial Act.

8        So we are under siege, and it is very hard to juggle

9    250-plus civil cases when ou are constantly under siege with

10   criminal trials.

11       MR. SCULLY:  I wasn't the one who decided to be here,

12   your Honor.  I was happy to stay across the river in the verdant

13   pastures of Virginia.

14       THE COURT:  I know.

15       MR. SCULLY:  And if the Court wants to send it back to

16   Alexandria, I would be happy to go.

17       THE COURT:  I know.  I understand that, but I just

18   thought I would take the opportunity to make sure everyone

19   appreciates that more Motions is not the answer, in this Court's

20   judgment.  More settlements and more arbitrations is better than

21   more Motions, so -- but anyway, we will get through it.  Thank

22   you, Mr. Scully.

23       MR. SCULLY:  Thank you, your Honor.

24       THE COURT:  Who is next?

25       MR. TRENGA:  Good morning, your Honor.  For the record,

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 11**

00012

1 Tony Trenga.  We concur with the Court's view that these ought

2 to be consolidated.  That was what we had proposed in the very

3 first status conference that we appeared at.  And it has been

4 always our intention to try to consolidate these in a way that

5 allowed them to proceed as quickly and as efficiently as

6 possible.  And as the Court observed, that's been made

7 impossible through a series of Motions that have delayed these

8 cases for now almost 18 months.

9        In fact, we had proposed that the parties undertake

10 some Discovery, and we had sent out some -- I think it is

11 probably eight or nine months ago, just simple Document Requests

12 to try to get things moving, and they were met with either being

13 completely ignored or actively resisted.

14        So we are in favor of doing whatever we can to get

15 these moving.  And in fact, it would make no sense because,

16 contrary to what Mr. Preminger would suggest to the Court, as

17 much as the Plaintiffs would like to go forward unencumbered by

18 any of these breach of fiduciary duty claims, they are just

19 simply inseparable.

20        The facts relating to the breach of fiduciary duty

21 claims, both in their capacity as officers to Ullico, what are

22 referred to as the state law breach of fiduciary duty claims,

23 but also in their capacity as fiduciaries to the plans

24 themselves because of their membership on the benefits

25 .committee, those breaches of fiduciary duty, irrespective of

00013

1  whatever affirmative claims we have that this Court may or may

2  not have supplemental jurisdiction over -- those breach of

3  fiduciary duty claims are going to be defenses to their benefits

4  claims.

5        With respect to Mr. Carabillo, for example, he has

6  filed for a package of benefits under an early retirement

7  program.  There are two issues there.  One is whether he

8  qualified to participate in that program -- and that's one issue

9  as to which there are defenses, including whether he was fired

10  for cause or whether his termination was a pretext for denying

11  him benefits.  So you can't separate the underlying conduct that

12  justified our terminating him from his affirmative claim even as

13  to whether he qualified for those benefits in the first

14  instance.

15        Even if he had qualified, then the issue is, what is he

16  entitled to receive by virtue of his conduct?  His early

17  retirement program consists of a qualified plan benefit -- and

18  this parallels what the other benefit packages are for the

19  others, although in Carabillo's case, it was accelerated under

20  the early retirement provisions.  There is a qualified plan

21  benefit, and then there are two nonqualified plan benefits.  The

22  first is referred to as the auxiliary plan, otherwise --

23  typically referred to as a Top Hat plan.  And then there is a

24  welfare plan.

25        Now, significant is that the state law breach of

**Joint Status Conf., Leon, J., 4/25/05**                     **Page 13**

00014

1 fiduciary duty claims will be defenses to the nonqualified

2 benefit plans because under the case law that we have cited in

3 these Motions, the breach of a state law fiduciary claim will

4 subject nonqualified benefits to the normal rule of forfeiture

5 that accompanies a breach of fiduciary duty precisely because,

6 under ERISA, while it provides protections to the qualified

7 portion from anti-alienation or anti-forfeiture, it doesn't

8 provide specifically in the statute to these kinds of Top Hat

9 plans and welfare plans.

10        So the breach of fiduciary duty, the state law breach

11 of fiduciary duty, is inextricably intertwined in the resolution

12 of these claims because it is a fundamental defense to whether

13 they can recover.

14        Likewise, with respect to the qualified plan, even

15 though they are immune from a general anti-forfeiture provision

16 because of their state law conduct, they nevertheless are

17 subject to some forfeiture, partial or complete, in the

18 discretion of the Court, based on breaches of fiduciary duty in

19 their capacity as fiduciaries to the plans themselves.

20        I say all this simply because this notion that the

21 affirmative claims can march off unencumbered by all the breach

22 of fiduciary duty claims is simply wrong-headed.  And to the

23 extent that the Plaintiffs would suggest that the Court fashion

24 a Discovery schedule or a trial schedule around this notion that

25 somehow you can parse out these claims between their affirmative

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 14**

00015

1 claims and our defenses is simply wrong-headed, and we would ask

2 the Court not to even begin to go down that road.  All of these

3 are -- all of these are intertwined in Discovery, and each of

4 the four cases all relate to a core set of facts, common nexus

5 as to which all these claims relate.

6       The Court found that there was not supplemental

7 jurisdiction as to claims against Mr. Georgine, affirmative

8 counterclaims against some of Mr. Georgine's claims and some of

9 Carabillo's claims and some of Luce's claims.

10       With respect to Luce, we chose to simply file that as

11 an independent Federal action and was assigned to this Court as

12 a related action simply on the basis of diversity jurisdiction.

13 The facts in that independent action nevertheless are going to

14 be bound up in the defense to the Luce affirmative claim for

15 benefits.  So it made sense to keep it here.

16       The Court found that there was no supplemental

17 jurisdiction for Georgine, so we had no choice but to go to

18 Superior Court where there was a protective action filed.

19       We have removed the stay.  Carabillo and Georgine -- we

20 decided lift the stay as to both of them.  And so out of

21 necessity but certainly not of choice or desire, we are forced

22 to litigate those affirmative claims in Superior Court.  That

23 says nothing about -- that does nothing to lessen the scope of

24 what needs to be tried here in terms of the underlying facts

25 because the breach of fiduciary duty claims remain as a

**Joint Status Conf., Leon, J., 4/25/05**          **Page 15**

00016

1  fundamental defense here.

2       With respect to Mr. Luce and the recent events that

3  Mr. Scully referred to, the fact of the matter is when this new

4  board took over, it set about the rather challenging task of

5  sifting through the long period of self-dealing by management

6  and dealt with situations as they came to know them. After this

7  lawsuit was filed, the board learned that among the breaches of

8  fiduciary duty that these members of the benefits committee

9  engaged in, including Mr. Luce, who was one of the members of

10  that committee, they passed a second amendment that wasn't

11  appreciated by the board when the lawsuit was originally filed

12  that increased his benefits by 25 percent under an amendment

13  that was not authorized, was never approved by the Board. And

14  as the Court may remember in the pleadings that we have filed,

15  the plan specifically reserves to the board, as you would

16  expect, the ability to amend the plan when you are trying to

17  increase benefits.

18       That was ignored. The plan did it on its own. Our

19  claim in the case is, in doing so, they breached their fiduciary

20  duties and they can't recover under it. There is nothing in

21  ERISA that prevents a company from stopping improper benefits to

22  breaching fiduciaries under improper, invalid amendments. And

23  that's what the board did. When it found out that it was paying

24  improperly benefits under an invalid amendment to a fiduciary

25  that breached its duty and self-dealt in passing the amendment

**Joint Status Conf., Leon, J., 4/25/05**                **Page 16**

00017

1  in the first place, it exercised its right to stop those

2  payments. In fact, they probably had an obligation to do that.

3      The fact of the matter is the Supreme Court has

4  recognized that the precise reason you have these kinds of

5  specified methods for amending a plan is so that when the

6  benefits are challenged, a plan administrator can decide which

7  amendments are valid and he has to pay under and which ones are

8  invalid and he is not obligated or can't pay under -- and that's

9  precisely what happened here.

10     The board made clear that this was an invalid, improper

11  amendment, and Mr. Luce and the other members of that benefits

12  committee, including Mr. Georgine who was also receiving

13  benefits, would no longer receive these improper benefits, and

14  the plan administer so administered the plan. It is perfectly

15  legal. This notion that we are in violation of Federal statutes

16  I will just attribute to overzealous observations and advocacy.

17     But the fact of the matter is there is nothing improper

18  about it. Mr. Luce is now pursuing his remedies. They have

19  that appealed. And I suspect it will work its way through the

20  process.

21     Let me just mention one other matter that I think bears

22  on what the Court may want to do in the short term. As part of

23  the Carabillo 2 case, Mr. Carabillo took an interlocutory appeal

24  from this Court's denial of his Preliminary Injunction Motion.

25  And that matter is pending before the D.C. Circuit.

00018

1        There is a briefing schedule that has been issued, but

2   the Court has also now appointed a mediator to try to resolve

3   the claim, and the mediator, brave man that he is, has announced

4   that he is going to explore whether he can mediate a resolution

5   on a global basis.  And the Court has given him until June 1 to

6   work his magic.

7        I would suggest -- and counsel are now scheduled to

8   appear before the mediator for an initial conference on May 19.

9   What I would suggest is that between now and June 1, when we

10  will know whether there is going to be any progress in getting

11  this resolved, that we do some of these housekeeping matters

12  that will allow the case to move forward on a consolidated basis

13  in Discovery, and I would say that now that we have four cases

14  with overlapping or identical claims and defenses, and some

15  similar or identical affirmative counterclaims after the Court

16  has ruled, that there be a consolidated complaint filed and a

17  consolidated pleading and response.  At least that would

18  eliminate some of the duplication; it would focus the pleadings,

19  focus the effort going forward.  And that way we could proceed

20  under one case number, if nothing else, and allow this matter to

21  be dealt with in as efficient as possible a way under, arguably,

22  challenging circumstances.

23        So we would ask that the Court do that, and we are

24  eager to move forward as quickly as we possibly can through

25  Discovery and to get a trial date as quickly as possible.  And

**Joint Status Conf., Leon, J., 4/25/05**        **Page 18**

00019

1   it may be that some of these cases can be resolved or some of

2   the claims can be resolved by way of Motions, but we are eager

3   to move forward.

4       THE COURT:  And you would advocate, as I understand it

5   from this pleading here -- you would additionally advocate a

6   consolidated trial?

7       MR. TRENGA:  I think so, yes, absolutely, because as I

8   say, for the same reasons that I mentioned, you can't adjudicate

9   their entitlement without adjudicating our defenses.

10      THE COURT:  Okay.  Thank you.

11      MR. PREMINGER:  Your Honor --

12      THE COURT:  Hold on now.  I haven't heard from Georgine

13  and Grelle's people.

14      MR. PREMINGER:  I understand that, your Honor.  I ask

15  if I could hop back in here for a second just to address

16  something that Mr. --

17      THE COURT:  No, no, no.  First I want to hear from

18  Georgine and Grelle.

19      MR. PREMINGER:  Okay.

20      THE COURT:  Where do you stand on consolidation?

21      MR. ERMAN:  Mr. Georgine has no objection to

22  consolidation, your Honor.  As he has taken the position in the

23  Discovery report, he would like to see the affirmative claims

24  proceed on a separate track from the counterclaims, but he has

25  no objection to consolidation for the purposes of Discovery, or

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 19**

00020

1  trial for that matter.

2       THE COURT: All right. Grelle.

3       MS. DAVIS: Mr. Grelle does not object to consolidation

4  for purposes of Discovery. We share some of Mr. Scully's

5  concerns about the fact that there is a separate action pending

6  in the Superior Court and there are still some claims pending

7  here that overlap, but otherwise as to consolidating Discovery,

8  we do not object.

9       THE COURT: All right. Does Pacific Life have a

10  position in all this?

11       MR. MERTEN: Your Honor, Glen Merten for Pacific Life.

12  We do not -- Pacific Life does not have any objection to

13  consolidating Discovery. We don't expect that we will be

14  heavily involved in the Discovery. We do share some of the

15  concerns that have been expressed before about the cases

16  proceeding on two tracks, both in Superior Court and in this

17  Court. But beyond that, there is really -- we have no objection

18  to the Discovery consolidation.

19       THE COURT: All right.

20       MR. LIESEMER: Your Honor, just for the record, my

21  client, Ms. O'Brien, takes no position.

22       THE COURT: All right. She has taken no position. All

23  right. Sound fine. Who else do we need to hear from besides

24  going back to our --

25       MS. WAHLE: Your Honor, Karen Wahle for Counterclaim

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 20**

00021

1  Defendants Luce and Carabillo, and with respect to the 04776

2  case, Grelle as well.  From the Counterclaim point of view, we

3  have no objection to consolidation of Discovery, although we

4  would like the Court -- if Discovery is, in fact, bogged down,

5  we would like the Court to reconsider whether bifurcation of the

6  affirmative claims at some point in the future would be prudent.

7        One other point is that I don't believe there is a

8  June 1 deadline for the D.C. Circuit mediation, and we expect

9  that to go on for some time.  We would like the Court to begin

10  Discovery immediately.  In fact, we have Discovery with us today

11  we are prepared to serve, if the Court allows us to do that --

12        THE COURT:  Goodness gracious.

13        MS. WAHLE:  -- rather than postpone Discovery until

14  mediation begins or ends or works out.  Thank you.

15        THE COURT:  Well, let me tell you something, Counsel.

16  I have got a ten-week trial this summer, Washington Teachers

17  Union public corruption trial.  I have got a ten-week trial this

18  fall, Colombian drug gang.  I am very busy with criminal stuff,

19  so I would like see this thing get going.

20        And I think it makes sense -- I have done this in the

21  Fannie Mae security litigation which I have been dealt and the

22  nifedipine multi-district litigation which I have been dealt, so

23  why not in Carabillo versus Ullico?  Why don't we get a

24  consolidated complaint, a consolidated answer, and then do a

25  Discovery schedule to get everyone moving?  Now, I realize there

00022

1  is some difference of opinion here as to how many depositions

2  need to be taken, how many interrogatories need to be taken, and

3  I can resolve that kind of thing. I mean, you can put in your

4  differences of opinions. I have got some of it already here in

5  writing. There may be some more differences of opinion, but I

6  think we are pretty much all on the same page, the consolidation

7  for the purposes of at least Discovery.

8         Now, trying the case later, or trying cases later, that

9  to me is a different issue. It may be there should be one

10  consolidated trial. I am not saying there should be or

11  shouldn't be. I am not taking a position on that. But it seems

12  to me that ultimately we have to get the Discovery moving in the

13  most efficient manner possible for everyone. And time -- you

14  know, time is important. You know, memories fade, et cetera.

15  We need to move things forward.

16         So my suggestion is -- there is an awful lot of talent

17  sitting in this room right now and an awful lot of experience

18  sitting in this room right now. My guess is if you all got a

19  nice cozy conference table somewhere in one of these law offices

20  represented here, you could sit down and hammer out an agreement

21  between you as to a joint proposed Consolidation Order, and with

22  that joint proposed Consolidation Order, we could move forward

23  with a date and a proposed date for a consolidated complaint, we

24  could move forward with a date for a consolidated answer, and

25  then we could start the process of having a Discovery schedule

00023

1  specific time -- and I would like to get all this worked out

2  with you all before I start Washington Teachers' Union on

3  June 6th.

4       Now, that doesn't give us a whole heck of a lot of

5  time. It is about six weeks, seven weeks. But I think -- you

6  all know this case a thousand times better than I know it today

7  and probably will know it a thousand times better than I will

8  ever know the case, notwithstanding all my hard work. I think

9  you all are in the best position to put your considerable

10  experience and minds together to come up with a proposed

11  consolidated order everyone can live with. Let's get a

12  consolidated complaint, consolidated answer in there.

13       And then ideally -- and again, this is ideal; it may

14  not be realistic, a proposed joint consolidated Discovery

15  schedule. I mean, if we are all going to be doing this under

16  one umbrella, so to speak, let's have some realistic time tables

17  and move the thing forward.

18       Now, there may differences. Someone wants 25

19  depositions, someone wants 15. Somebody wants 50

20  interrogatories, some want 22, whatever. Expert reports, when

21  are they going to be due? There could be some differences of

22  opinion on that, and I appreciate that. So if you come up with

23  a consolidated proposed joint Discovery schedule, if there's one

24  or two or three or four issues that you can't come to agreement

25  on, maybe -- just set forth what the various positions are,

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 23**

00024

1  which you sort of already did, to a certain extent anyway, in

2  the amended joint conference report here that I have in front of

3  me.

4      And that way, come the beginning of June, you are all

5  off to the races, so to speak.  You are all out there doing

6  your -- exchanging documents and answering interrogatories and

7  taking depositions and scheduling depositions of the -- not only

8  of the principals, but of the other people who know things, and

9  hopefully, come fall, you will have made some substantial

10  progress in that Discovery.  And when we do a conference in the

11  fall, you will be in a better position to give me some sense of

12  how it is progressing and, like you said a minute ago, are there

13  certain aspects to these cases that can actually be broken off

14  or maybe in some way resolvable, just by some type of a Motion,

15  dispositive Motion or something like that.

16      So I will hear everyone's reaction to what I just said.

17      MR. PREMINGER:  Your Honor, I just have a couple of

18  questions about how this will actually --

19      THE COURT:  I hope I am not being Pollyanna-ish.

20      MR. PREMINGER:  By means of a consolidated complaint --

21  there are several different Plaintiffs here.

22      THE COURT:  Right.

23      MR. PREMINGER:  Now, I assume Mr. Carabillo and

24  Mr. Luce could easily write a complaint which sets forth both of

25  their affirmative allegations.  Ullico is also a Plaintiff in

00025

1 one of these cases.

2      THE COURT: Right.

3      MR. PREMINGER: Now, obviously, they could make

4 counterclaims as opposed -- we could readjust those, you know,

5 realign those parties. But your Honor already dismissed those

6 claims qua counterclaims once.

7      THE COURT: Right. Well, I mean of what's remaining.

8 Obviously, there was a premise in what I was saying of what's

9 left now, after the rulings that have come down --

10      MR. PREMINGER: I understand that.

11      THE COURT: I am not going to come up with something to

12 reinsert those. That wouldn't be appropriate.

13      MR. PREMINGER: Okay. And Mr. Trenga may be able to

14 address this better than I, but as I understand it, you

15 dismissed certain counterclaims which Ullico has now reasserted

16 as affirmative claims in their diversity action against

17 Mr. Luce. If we realign the parties for the purposes of a

18 consolidated complaint and answer, those claims would again be

19 reasserted as counterclaims and subject to dismissal for the

20 same reason you dismissed them the first time.

21      THE COURT: All right. I have a thought for you.

22      MR. PREMINGER: Okay.

23      MR. TRENGA: I think it is easily dealt with.

24      THE COURT: But I can assure you, if you all think this

25 is complicated, then you have to multiply it times ten for me.

00026

1  Because, remember, I am juggling 249 other cases including all

2  the Fannie Mae security fraud litigation in the country and the

3  derivative suits, and huge, complex criminal cases and

4  multi-district litigation.  You all know this so much better

5  than anyone else in the world, and I think if you sit down with

6  that as a goal, to stick this under an umbrella, in talking it

7  through, you will be in a better position -- I was going to set

8  a Status Hearing in a couple weeks -- and that way you could

9  come back -- you might even have in hand a document, but at a

10  minimum, you will have a document, or at least a proposed

11  document, and you will also be in a position, having been

12  talking it through, to report to the Court on, here is what we

13  could accomplish -- hopefully it's most of it -- but here are

14  the things we really couldn't accomplish, Judge, and we are

15  going to need your help on sort of resolving these things.

16       Does that make sense?

17       MR. PREMINGER:  Yes, it does, your Honor.  The other

18  thing I would want to make sure of -- and I would assume is --

19  is that the pending Motions to Dismiss won't be affected by the

20  filing of a consolidated complaint --

21       THE COURT:  No.

22       MR. PREMINGER:  -- and a consolidated answer.

23       THE COURT:  No, no.  We will just leave those extant.

24  We are not going to --

25       MR. PREMINGER:  Thank you.

00027

1       THE COURT:  You know, unless I happen to rule on them

2   in the next two weeks, which -- I will try, but if I were to

3   promise you, I would be a fool.  So I am not going to promise

4   you that I can do it, especially with a trial scheduled and a

5   whole host of other things scheduled.

6       Mr. Trenga, does that ring like it might work to you?

7       MR. TRENGA:  I think it does, and I think -- at least

8   as to the one issue that Mr. Preminger mentioned, I think that's

9   easily dealt with.  So I think once we get together, we can work

10  through that and present something that substantially

11  consolidates matters for you.

12      THE COURT:  Yes.  I think if we can get to a point

13  where I can issue a Consolidation Order, we can get a

14  consolidated complaint or complaints and answers -- consolidated

15  answers and consolidate complaints -- and a Discovery schedule,

16  we could get all of this done by the beginning of June, then I

17  am off to Washington Teachers' Union and you are off to the

18  races to get your stuff done.

19      And then we get back together in the fall.  You will

20  have made some progress.  You might not be done, but let's say

21  in October or something, you will have had a whole series of

22  months to be actually productively pursuing Discovery, document

23  exchange, depositions, interrogatories, whatever.  When we get

24  back together in the fall, you will be in a position to report,

25  to some extent, how things are shaping up and where you see it

00028

1  going.  Whereas now it is still in this state of kind of limbo.

2  It is not really -- it is not moving, and it should move.  It is

3  not fair to the parties that it not be moving.

4      So I will take -- you know, I will take judicial notice

5  of that.  I think we just need to move it along.

6      MR. TRENGA:  Yes, sir.

7      THE COURT:  All right.  So why don't we do this.  Get

8  your calendars, Counsel, if you could.  Let's see here.  I was

9  going to suggest May 12th.  Is that a day that hopefully most of

10  you will be available in the afternoon?

11      MR. TRENGA:  That's fine for us, your Honor.

12      MR. SCULLY:  I have got a problem, your Honor.  I have

13  got a Discovery cutoff on the 13th in a Federal case across the

14  river.  And as the Court knows, lawyers always wait until the

15  end of the Discovery period --

16      THE COURT:  Isn't that the truth.  I understand.  How

17  about the 16th of May?  That gives you a whole extra week.

18      MR. SCULLY:  16th is fine.

19      MR. TRENGA:  The 16th is fine.

20      MS. DAVIS:  At what time, your Honor?

21      THE COURT:  Well, I was thinking of about 2:30.

22      MS. WAHLE:  That's fine, your Honor.

23      MR. PREMINGER:  That's fine.

24      THE COURT:  All right.  Very good.  Here is what we

25  will do.  You all do however many meetings you feel you need

**Joint Status Conf., Leon, J., 4/25/05**          **Page 28**

00029

1 among yourselves.  Okay?  Let me give you a goal to shoot for.

2 Submit before the 16th, if you can, a joint proposed

3 Consolidation Order with a schedule as to the filing of

4 consolidated complaint -- apostrophe-S, close apostrophe --

5 consolidated answer -- apostrophe-S -- close.  You might need

6 both.  And then when we meet on the 16th, if you haven't been

7 able to come up with that -- hopefully you will.  I would love

8 to get it by the 12th.  Then I would have a chance to read it on

9 the 12th and the 13th.  I mean, I will take it home and read it

10 over the weekend, if I have to, but coaching my son's lacrosse

11 team, it might be tough to do all that.

12     MR. TRENGA:  12th is fine.

13     THE COURT:  But in any event, if you could get

14 something like that in, after meeting with one another, I will

15 look it over.  When we meet on the 16th, we can talk through any

16 issues we have, and then I think it becomes a question of

17 setting a joint consolidated Discovery schedule.

18     Now, the home run -- I mean, gland slam home run would

19 have it all -- to come up with a proposal for everything by the

20 12th, but that might be not realistic.  So I am not saying -- if

21 you can do it, I mean, if you all could agree to it and at least

22 have something for me to look at -- and I appreciate there might

23 be some pieces of it that you can't agree on -- I mean, let's

24 say you could agree to 90 percent of it, but there's 10 percent,

25 we need to hear from the Court on this 10 percent of these

**Joint Status Conf., Leon, J., 4/25/05**                    **Page 29**

00030

1 issues, whatever they may be.  Then fine.  Then on the 16th we

2 can talk about the things that no one can agree on, and I can

3 hear a little argument from both sides as to why there is

4 disagreement and how it should be resolved.

5          But the goal will remain the same, which is come the

6 end of the month, of May, beginning of June, we have got a game

7 plan here, we have got a Consolidation Order in place and we

8 have got a joint proposed Discovery schedule in place that the

9 Court has either ruled on or is considering, is under advisement

10 and we can get you all going on this.  Sound realistic?

11      MR. TRENGA:  Yes, sir.

12      THE COURT:  All right.  Thank you for your patience,

13 Counsel.

14      MR. SCULLY:  May I be heard briefly, your Honor?

15      THE COURT:  Of course you may.  Come on up, Mr. Scully.

16      MR. SCULLY:  Mr. Trenga knows we well enough to know

17 that I can't let the shot he took go unanswered.  He also knows

18 me well enough that I don't make statements in court or anyplace

19 else accusing people of things without authority.  So I would

20 like to read into the record, if I might, the authority for the

21 accusation of misconduct that I charged the Ullico General

22 Counsel with.

23          The case is Johannssen versus District No. 1 - Pacific

24 Coast District, 292 F.3d 159, Fourth Circuit, 2004 [sic], in

25 which the Fourth Circuit made quite clear that, in their

**Joint Status Conf., Leon, J., 4/25/05**                     **Page 30**

00031

1  opinion, the determination of the proper method to resist a

2  claim for benefits which a plan administrator believes to the

3  product of an illegitimate attempt to amend the plan is to apply

4  to the Federal Courts for resolution of the issue:  "Such legal

5  questions are appropriate terrain for the Courts, not the plan

6  administrators."

7        THE COURT:  All right.

8        MR. SCULLY:  Thank you.

9        THE COURT:  I understand your position, Mr. Scully.

10  Were it will all get resolved -- who knows at what point, but I

11  appreciate your wanting to put it on the record.

12        All right.  Well, look, this is one of those cases,

13  Counsel -- I am stating the obvious here, but sometimes it is

14  worth stating it.  This is one of those cases, because of the --

15  well, let's just say the Court's perceived complexity of it --

16  we will leave it at that.  You all might not think it is that

17  complex, but at least at this point you have to concern yourself

18  with what I think, so I am giving you what I think.  I think it

19  is pretty complex.

20        So from my vantage point, anything you all can do

21  collectively to make it less complex and make the resolution of

22  the Discovery process and make the ultimate decisions that have

23  to be made, whether they are made by me in the form of Motions,

24  or a jury in the form of a trial in this courtroom or whatever,

25  anything you all can do in that regard through your collective

00032

1  efforts will be greatly appreciated by this Court and, I might

2  add, is in your clients' interests and, I might add, I don't

3  think it can be done -- and again, I am stating the obvious --

4  if you all can't work in an approach with the highest amount of

5  civility or whatever.

6      I think -- and as I said before, we have here quite a

7  collection of talent and experience, and it is very impressive

8  to the Court.  Would that I had this collection every day and in

9  every case, and I don't.  So when I have it and I see it, I

10  certainly want to applaud that kind of horsepower, so to speak,

11  and ability.  And hopefully it will -- the civility with which

12  you interact will be commensurate with that talent.

13      So that's my prayer to you all, and I hope you will

14  work well together.

15      MR. TRENGA:  If I just may state, no matter how high

16  the emotions have run among the parties, I will say there has

17  been no shortage of civility among counsel, and I would expect

18  that to continue.

19      THE COURT:  Good.  Well, I appreciate that.  That's

20  good to hear.  I suspect that it were true, frankly.  And having

21  been in your shoes for about a 13-year period in my career, I

22  appreciate how important it is for you all to make sure your

23  clients maintain that same equilibrium as well.  And I know that

24  is a challenging part of your job, too, so I appreciate that.

25  And I wanted you to know in advance that I appreciate your

00033

1  ongoing efforts to do that as well.

2       There is a lot at stake here for everyone involved.

3  These are major issues in the lives not only of these

4  individuals but of this institution, and the Court is painfully

5  aware that there is a lot of -- you know, there is a lot of

6  grave concern on both sides.  So I would like to see counsel to

7  continue to work together to the fullest extent possible,

8  because I really do believe it is in your clients' interest, and

9  it is certainly in the interest of bringing this whole thing to

10  fruition.

11       And whether it is decided ultimately by a jury or by me

12  or by the Court of Appeals, it is going to happen quicker, it is

13  going to happy, I think, more efficiently, at less cost to your

14  clients, not only financially, but emotionally, and I think it

15  is going to really be in everyone's interest for you to keep

16  doing what you are doing in that regard, and then even maybe a

17  little more so.

18       So thank you for your all your efforts so far, Counsel.

19  I appreciate your help.  We will stand in recess.

20       (Whereupon, at 3:33 p.m., the proceedings were

21  concluded.)

22

23

24

25

**Joint Status Conf., Leon, J., 4/25/05**          **Page 33**

00034
1                    CERTIFICATE OF REPORTER

2

3        I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6

7

8                    _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25