UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
:
JOSEPH A. CARABILLO,            :
                                :
        Plaintiff,              :
                                :
    v.                          :   CV 03-1556
                                :
ULLICO, INC.,                   :
                                :
        Defendant.              :
                                :
- - - - - - - - - - - - - - - - x
                                :
JAMES W. LUCE,                  :
                                :
        Plaintiff,              :
                                :
    v.                          :   CV 04-118
                                :
UNION LABOR LIFE AUXILIARY      :
RETIREMENT BENEFITS PLAN, et al,:
                                :
        Defendants.             :
                                :
- - - - - - - - - - - - - - - - x
                                :
ULLICO, INC.,                   :
                                :
        Plaintiff,              :
                                :
    v.                          :   CV 04-1830
                                :
JAMES W. LUCE,                  :
                                :
        Defendant,              :
                                :
- - - - - - - - - - - - - - - - x
                                :
JOSEPH A. CARABILLO,            :
                                :
        Plaintiff,              :
                                :
    v.                          :   CV 04-776
                                :
ULLICO, INC., PENSION PLAN &    :
TRUST,                          :
                                :
        Defendant.              :
                                :

50aae970-dc1d-4bd3-9604-47122298dbc4

Page 2

```
                        --------x
                        Washington, D.C.
                        May 16, 2005
                        2:50 p.m.
                Transcript of Status Hearing
                Before the Honorable Richard J. Leon
                    United States District Judge
APPEARANCES:
For the Plaintiff
Joseph A. Carabillo:       DAVID S. PREMINGER, ESQ.

For the Defendant
Ullico, Inc.,
Ullico, Inc. Pension
Plan & Trust, and Union
Labor Life Auxiliary
Retirement Benefits
Plan, et al:               ANTHONY TRENGA, ESQ.
                           BRIAN A. HILL, ESQ
For the Plaintiff
James W. Luce, CV04-118
& Defendant James W. Luce,
CV04-1830:                 ROBERT SCULLY, JR., ESQ.

For Plaintiff
John Grelle:               KARA MATHER MACIEL, ESQ.
For Plaintiffs Carabillo,
Luce & Grelle on their
Counterclaims:             KAREN M WAHLE, ESQ.
For Robert Georgine:       BRYAN A. ERMAN
For Pacific Life
Insurance Company:         W. GLENN MERTEN, ESQ.

Court Reporter:    SUSAN HARRIS
                   Miller Reporting Company
                   735 8th Street, S.E.
                   Washington, D.C. 20003
                   (202) 546-6666
```

Page 3

1           PROCEEDINGS
2      THE CLERK: This is the matter of Joseph
3  A. Carabillo versus Ullico, Inc., Civil Action 03-1556; also
4  James W. Luce versus Union Labor Life
5  Auxiliary Retirement Benefits Plan, et al, Civil
6  Action 04-118; also Ullico, Inc., versus James W.
7  Luce, Civil Action 04-1830; and Joseph A. Carabillo
8  versus Ullico, Inc., Pension Plan & Trust, Civil
9  Action 04-776.
10     Will counsel come forward and state your
11 appearances for the record, please?
12     MR. PREMINGER: Good afternoon, Your
13 Honor. David Preminger for Plaintiff Joseph
14 Carabillo on his affirmative claims.
15     THE COURT: Welcome back.
16     MS. MACIEL: Good afternoon, Your Honor.
17 Kara Maciel for John Grelle.
18     THE COURT: Welcome back.
19     MS. WAHLE: Good afternoon, Your Honor.
20 Karen Wahle for Joseph Carabillo, James Luce, and
21 John Grelle on their counterclaims.
22     THE COURT: All right. Welcome back.
23     MR. ERMAN: Good afternoon, Your Honor.
24 Bryan Erman for Robert Georgine.
25     THE COURT: The last name again?

Page 4

1      MR. ERMAN: Erman.
2      THE COURT: How do you spell that?
3      MR. ERMAN: E-R-M-A-N.
4      THE COURT: Welcome.
5      MR. SCULLY: Good afternoon, Your Honor.
6  Robert E. Scully, Jr., for James W. Luce.
7      THE COURT: Welcome back, Mr. Scully.
8      MR. MERTEN: Good afternoon, Your Honor.
9  Glenn Merten for Pacific Life Insurance Company,
10     THE COURT: And over there?
11     MR. TRENGA: Good afternoon, Your Honor,
12 Tony Trenga on behalf of the Ullico defendants, and
13 the counterclaim plaintiffs, and with me is my
14 colleague Brian Hill.
15     THE COURT: All right, counsel, I have
16 already denied counterclaim Defendant Georgine's
17 Motion to Stay, so let's go through this joint
18 consolidation scheduling order with that knowledge
19 in hand.
20     There are a few points in here I'd like to
21 hear argument briefly on, and I mean a matter of
22 minutes from each side on where there's contentions
23 that, at first blush, I'm not sure I have a
24 complete appreciation of the reasoning behind why
25 you want to do what you want to do.

Page 5

1      Start on page 3 with this dispute over
2  "Master" versus "Consolidated." Luce requests
3  "master;" Ullico requests "consolidated." I'll
4  hear a few minutes from Luce and a few minutes from
5  Ullico.
6      MR. SCULLY: Thank you, Your Honor. I
7  take the blame. I'm the one who created the
8  problem. It was proposed to be Consolidated
9  because that's the precise term you used when we
10 were here last. I don't like "consolidated"
11 because I don't like the possibility that with the
12 fading of memories and the passage of time, the
13 term "consolidated" comes to mean this is the
14 pleading for which--on which we will have a trial.
15 I think at this stage we're trying to get a set of--a
16 pleading, a master pleading or a consolidated
17 pleading--call if what it is so that we know what
18 the claims and defenses are, so we can know how to
19 take care of the discovery disputes. That's--
20     THE COURT: Isn't there a specific
21 provision here about this will not--does not
22 necessarily constitute a decision--
23     MR. SCULLY: That's correct, Your Honor.
24     THE COURT: --with regard to the trial of
25 the case? I mean we got to get the cart before we

Page 6

1  get the horse.
2      MR. SCULLY: I agree.
3      THE COURT: We'll put the horse first,
4  then we'll get to the cart.
5      MR. SCULLY: But I'm trying to get to the
6  next stage which is "what if?" Or "what happens
7  when?" When we finish discovery and we get ready
8  to have a trial, what are the claims and defenses
9  that are going to be tried in each trial? And I
10 don't want to be told, "Well, Mr. Scully, the
11 claims and defenses that are going to be tried are
12 those in the consolidated complaint," because I
13 think that is both unwieldy because it is too
14 broad; there will be claims that I don't intend to
15 assert on behalf of my client; and it'll be easier
16 to say now we expect that after we finish all of
17 the discovery on all the claims under a master
18 pleading, that each party will be expected to say
19 at some point, you know, these are the portions of
20 that master pleading that are not a part of my
21 affirmative claim for relief, and these are the
22 defenses in the master defensive pleading that are
23 not part of my defenses. And if you don't do that,
24 then you get the whole thing.
25      But I don't--

Page 7

1      THE COURT: Well, for a trial,
2  hypothetically speaking down the road, I mean I
3  don't know if you all envision a jury trial, or a
4  judge's trial or whatever. I don't know what
5  you've got envisioned.
6      MR. SCULLY: I don't think most of these
7  claims are triable by right to a jury. Certainly
8  not the statutory ERISA claims, and I think the
9  rest of them you've declined supplementary
10 jurisdiction over. So I certainly envision a bench
11 trial, and I don't think there's been a jury
12 demand.
13     Has there by anybody?
14     MR. TRENGA: Well, I don't remember seeing
15 one. Was there? I didn't see one.
16     MR. SCULLY: I'd agree with Anthony. Some
17 one or the other.
18     THE COURT: Whatever. I mean, obviously--well,
19 we'll state the obvious first: If it's a
20 bench trial, then
21 obviously keeping it segregated, keeping it boxed
22 off while the trial's proceeding maybe a little
23 less fraught with risk from your point of view than
24 if it's a jury trial. I appreciate that in a jury
25 trial context it might be a little harder to expect

Page 8

1  jurors to keep segregated the defenses and the
2  evidence as it relates to each separate set of
3  claims and parties and all that.
4      But nonetheless they do it. I mean I'm
5  not saying it can't be done; I'm just saying I
6  could understand how you might think it will be
7  harder to do that than if it were a bench trial.
8  And you all have to make your own decision as to
9  how--which appeals to you the more and how you want
10 to proceed.
11     MR. SCULLY: Well, that's the logic behind
12 it.
13     THE COURT: Well, under any scenario,
14 then, obviously the court would be working with all
15 the parties to try to ensure to the maximum extent
16 possible that it was not only an efficient trial
17 but a fair trial so that the risk of harm befalling
18 any of the parties as a result of confusion wold
19 be, hopefully, completely eliminated. But, if not,
20 certainly minimized to a point where it wouldn't be
21 anything of any substantial, you know,
22 consideration.
23     So I wouldn't want you to think that by
24 using the word "consolidated" today that it would
25 necessarily place your client at some--and again I

Page 9

1  stress the word "necessarily"--place your client at
2  some risk at a later time.
3      MR. SCULLY: Well, that's the precise
4  fear, and, actually, that's exactly what he
5  articulated to me, his one question--because he was
6  here last--was, "Well, wasn't the whole point of
7  going to Virginia in the first place to get a trial
8  on my benefits claim?" You know, "And not have it
9  confused with all the rest of this stuff?" You
10 know. And, practically speaking--I know that you
11 don't want to hear a lot of--but, you know,
12 practically speaking, all of these defenses of
13 ultra vires can't be raised as defenses under
14 Maryland law. I've been arguing that for the last
15 three years.
16     MR. PREMINGER: Well, he's not the only
17 one who wishes was all in Virginia, so--
18     (Laughter.)
19     MR. SCULLY: But the point is under
20 Maryland law ultra vires has to be brought as a
21 claim by the corporation. It literally is an
22 affirmative claim for relief. It cannot be
23 asserted by way of defense. You know, that's the
24 old, you know, ultra vires fell into disrepute, and
25 the Model Business Corporation Act was amended, and

3 (Pages 6 to 9)

50aae970-dc1d-4bd3-9604-47122298dbc4

Page 10

1  now you can't defend on the ground of ultra vires.
2  And so that's going to be a big issue.
3       When I'm trying to get my benefits, and
4  Mr. Trenga's up here saying it's ultra vires, it's
5  ultra vires, I'm going to be saying that's not even
6  in this case. That's the affirmative claim in
7  another case under state law called Ullico versus
8  Luce. And so I think that's where I foresee
9  possibility of confusion of having everything
10 consolidated, and Mr. Trenga says, "Well, sorry,
11 Bob, but you lost that argument two years ago when
12 this order was entered." You know, "The ultra
13 vires is obviously a defense in this case."
14      THE COURT: All right.
15      MR. SCULLY: Thank you, Your Honor.
16      THE COURT: All right, Mr. Trenga, or Mr.
17 Hill. Who is the designated hittee or hitter--I
18 don't know. Whatever it is.
19      MR. HILL: Your Honor, I had the
20 distinction of being the principal scrivener of the
21 order, so Mr. Trenga's delegated the authority in
22 the nonultra vires matter to make the argument.
23      Really, our objection here is this notion
24 of "master versus individual complaints" is drawn
25 from the complex manual on litigation. You use it

Page 11

1  in mass tort cases. We think it's just going to
2  add a level of complexity that';s not necessary
3  here. There are at most four potential claimants
4  for benefits in the case. We don't think it's
5  unfair to ask them to file a single complaint. If
6  that's slightly different claims, they can
7  delineate, you know, this claim's brought on behalf
8  of Mr. Luce, this one's brought on behalf of Mr.
9  Carabilla. We think it's just going to simplify
10 things to have a streamlined set of consolidated
11 pleadings.
12      THE COURT: Would you disagree or agree
13 with Mr. Scully that when the time comes to try the
14 case, then we can, you know, weigh in at that time.
15 You all can weigh in with me to figure out whether
16 they should all be tried together, or they should
17 be tried separately, or in some combination to
18 ensure that there's no undue prejudice to either
19 side or both sides, under the circumstances.
20      MR. HILL: I would agree, absolutely, Your
21 Honor. And the reason we would oppose this is
22 because it's going to create am ambiguity about
23 what the claims are. I think it's easier just to
24 make everybody get on the same page.
25      THE COURT: All right. Well, as much as I

Page 12

1  like that title "Master and Commander," we're going
2  to go with "Consolidated." So let's assume we got
3  that problem solved for now, gang.
4       All right, now let's get to the next page
5  here. There's another dispute here between you
6  all. I see it's the same parties dispute in this
7  one. "Response" versus "Reply." Let's see,
8  "Reply," as I recall Ullico like that one, I think.
9  Yeah, and I think it was Carabillo, Luce, Grelle,
10 Georgine, and Pacific Life don't like a
11 consolidated reply; they request individual
12 responses. So I'm assuming that the Carabillo,
13 Luce, Grelle--however they pronounce it--Georgine,
14 and Pacific Life are taking this position for
15 essentially the same reason. So let's have one
16 spokesman for that team, and then one spokesperson
17 for the Ullico team. I'm assuming you all have the
18 same reasoning for it, so--
19      MS. WAHLE: Thank you, Your Honor. Karen
20 Wahle. I think we do have the same reason.
21      THE COURT: Okay.
22      MS. WAHLE: If the--if Ullico chooses to
23 assert the counterclaims against the same parties
24 which it's already asserted, there'll be six
25 different counterclaim defendants which are

Page 13

1  represented by five different counsel. These six
2  counterclaim defendants are all in somewhat
3  different positions, they have somewhat different
4  defenses, their response to the allegations will be
5  different, and they'll have different affirmative
6  defenses. And I just think there's no reason to
7  get five different counsel together to come up with
8  one page of one document which will say, "Carabillo
9  says in response to Number 2; Luce says in response
10 to Number 2."
11      THE COURT: Well, what if it was styled as
12 a consolidated reply, but it had subsections within
13 it, maybe an introductory paragraph with some kind
14 of, you know, kind of something that everyone can
15 be very comfortable with, let's say, and then
16 subsections, you know, for each of the various
17 parties so that there's some clarity when you look
18 at it that this is what--this is what the Luce and
19 this is what the Carabillo, and this is what the
20 Georgine and people feel at the--
21      MS. WAHLE: I think that would--it sounds
22 like that would require just minimum coordination,
23 and it would not require any consistency among the
24 different counterclaim defendants in their
25 responses, and that would probably be okay.

Page 14

1     Let me point out one other thing which is
2  that some of the counterclaim defendants may choose
3  to submit a Rule 12 motion. Now, I know Ullico is--if in
4  fact Ullico asserts the very same claim
5  against the very same counterclaim defendants,
6  we've already either have our Rule 12 on file in
7  the case of the 04-776 matter, or Your Honor has
8  already adjudicated all the Rule 12 submitted with
9  respect to the 03- --
10    THE COURT: Now, we're not looking for any
11 more motions in this case, guys.
12    MS. WAHLE: Although--
13    THE COURT: I want to keep the motions
14 down.
15    MS. WAHLE: No, we understand that, but if
16 Ullico has not committed to asserting just the same
17 counterclaims that they're already asserted. If
18 they assert new counterclaims, then, obviously,
19 we'll want to reserve our option to challenge the
20 legal insufficiency of any new counterclaims.
21    THE COURT: Well, I would have thought
22 they'd have to seek leave to file new counterclaims
23 at this point. I mean at least that's what I would
24 have thought. So--
25    MS. WAHLE: There's a provision in the

Page 15

1  proposed order that states, essentially, that the
2  new consolidated complaint and the new consolidated
3  answer and counterclaim are deemed to have leave to
4  amend. So I--perhaps we should ask Ullico that--but I read
5  this as meaning they want the
6  flexibility to add new counterclaims, and if they
7  don't, that's wonderful.
8     THE COURT: Yes. What I thought we were
9  doing here was basically taking what we have
10 already and boiling it down into, you know, into a
11 consolidated format, not like we're adding more
12 things in. That's a whole different deal, and
13 while I'm not saying, ruling, that if there's an
14 absolute prohibition on adding things in, it would
15 seem to me that coming up with adding new claims
16 and new counterclaims at this point would have to
17 be done in virtually the same way we would do it
18 under any scenario, which is you have to seek leave
19 of the court. The other side would be in a
20 position to oppose or vice versa, and then I'd have
21 to make a ruling.
22    Now, again, I'd rather not be in a
23 position where I have to make more rulings on these
24 things, because we've already got plenty of that
25 going on in this case. But it just seems to me at

Page 16

1  this point that the effort to consolidate is to
2  consolidate when it's already extant, not to add
3  more things in to either side. Just take what we
4  got and get it all under, so to speak, one roof.
5     MS. WAHLE: And if that's the case, Your
6  Honor, I think the counterclaim defendants have no
7  intention of asserting additional arguments for
8  insufficiency that they have not already. But
9  perhaps Ullico, when they come up here, can address
10 whether they intend to add any new claims.
11    THE COURT: We'll see what they got.
12    MS. WAHLE: But those are the reasons why
13 we did not want to commit to having a single
14 document.
15    THE COURT: All right.
16    MS. WAHLE: Just more coordinated,
17 considering how long it took to do this.
18    THE COURT: We can solve that. We can
19 solve that problem, and you're going to be okay
20 with a consolidated reply, then, huh? All right,
21 good.
22    Mr. Hill, are you still in the batter's
23 box here? Come on up.
24    MR. HILL: I think I'll be on deck most of
25 the day today, Your Honor. We don't presently

Page 17

1  intend to assert new theories that we haven't
2  previous asserted. There may be some tweaking at
3  the margins in terms of, you know, precisely which
4  defense is and so forth, but we're not expecting to
5  truck in a whole set of new counterclaims at this
6  point.
7     THE COURT: You'd have to file for leave
8  of the court to do it.
9     MR. HILL: Yeah. The one exception, I
10 suppose, would be Luce 2, where as of yet there's
11 been no answer. So we could still, technically,
12 amend under Rule 15 until that's answered. But as
13 far as the other three, at this point I don't think
14 we anticipate pleading any new counterclaims that
15 haven't been previously exposed.
16    If I may, I did have one question for the
17 court in light of your ruling.
18    THE COURT: Go ahead.
19    MR. HILL: With respect to denying Mr.
20 Georgine's motion to dismiss, we had proposed that
21 Mr. Georgine also be required to file any further
22 claims--
23    THE COURT: Under the motion to stay.
24    MR. HILL: I'm sorry, motion to stay, I
25 beg your pardon. That's what I meant to say, it

Page 18

1  just came out the wrong way.
2         THE COURT: Motion to stay.
3         MR. HILL: Since that motion has been
4  denied, we would also request at this point that
5  Mr. Georgine assert any affirmative claims for
6  benefits that he intends to assert, and that's what
7  we'd put in the proposed order as well.
8         THE COURT: Where did you put that?
9         MR. HILL: That's under--on page 3,
10 paragraph 3-A.
11        THE COURT: 3-A. This footnote 4 thing
12 here?
13        MR. HILL: Correct, Your Honor.
14        THE COURT: Well, yeah. I mean I would--it seemed
15 to me that if I deny the--once I denied
16 the stay, this, you'd have to join in with
17 everybody else, so to speak.
18        MR. HILL: Thank you.
19        THE COURT: To move things forward, so,
20 yeah, that makes perfect sense.
21        MR. HILL: Well, with that point of
22 clarity, then, I think it sounds like we're all in
23 agreement that everybody can file a consolidated
24 reply as Your Honor has delineated it where each
25 counterclaim defendant can show disagreements

Page 19

1  amongst themselves, if they need to.
2         THE COURT: Good. All right, and then
3  this "D" paragraph's out. I've struck that. I
4  don't think I need to hears any argument on that
5  one.
6         And I thought I'd hear a little argument
7  on "E." It looks like you got contending positions
8  on this. Luce's is requesting E, and Carabillo and
9  Ullico are opposing it. So I thought I'd hear from
10 Luce on this one, and then either Carabillo or
11 Ullico. I mean it's kind of interesting that
12 they're on the same side on this one.
13        MR. HILL: Well, I guess this is just
14 another example of my inability to play well with
15 others. I don't know.
16        THE COURT: I don't know. The bow-tie
17 wearers are notoriously--
18        MR. HILL: Well, I hope the court will
19 recognize my transparent and obsequious attempt to
20 curry favor with the court by wearing a bow tie
21 today.
22        THE COURT: Duly noted.
23        MR. HILL: Obviously, I suggested "E" is
24 which is copied directly from the manual on
25 "Complex Litigation for Mass Tort Cases" because in

Page 20

1  my experience it's a lot easier to--and one of--the
2  3rd and 4th line which refers to products liability
3  cases obviously should be deleted.
4         THE COURT: Right.
5         MR. HILL: It's just an example of, you
6  know--this is a good example of the motions
7  regarding exercising supplemental jurisdiction over
8  the state law claims, you know. If this order had
9  been entered, there only would have had to have
10 been one motion on the supplemental jurisdiction
11 issue, probably, unless some other defendant said,
12 "Well, my facts are actually different, and my
13 claims are different. And therefore, the
14 supplemental jurisdiction law is significantly
15 different." And I think this kind of a motion or
16 this kind of an order with respect to future
17 motions is useful.
18        For instance, a motion to compel. Why
19 should there be five motions to compel? The answer
20 is insufficient answer to a single interrogatory.
21 There is a separate provision later on in the order
22 that says, you know, everybody can file motions to
23 compel, you know, with respect to any one answer.
24 But why should we do it? It's just a waste of
25 time, I think, when it's an obvious answer, an

Page 21

1  obvious question where everybodies' interests are
2  the same. One person can take the lead and file
3  the motion and get an opposition and get a ruling.
4  So that's my approach.
5         THE COURT: Someone from the Ullico or
6  Carabillo team, or both want to take a minute or
7  two to say why they don't like this, or why I
8  shouldn't agree to it?
9         MR. PREMINGER: David Preminger for Mr.
10 Carabillo on his affirmative claims, Your Honor.
11        My concern here is not so much with
12 respect to discovery, although it could be the same
13 problem. There could be a time when one person
14 doesn't feel the need to seek to compel a
15 particular answer but may later in discovery and,
16 therefore, if there has been a prior motion to
17 compel which has been denied for some reason and
18 then later on you would choose to make the same
19 motion, but think there are arguments that should
20 have been made which weren't raised the first time,
21 are you bound by the first motion?
22        I'm just concerned that what this
23 particular paragraph would do is require everyone
24 to load up the first motion on any subject,
25 everything that they can possibly think of. And

50aae970-dc1d-4bd3-9604-47122298dbc4

Page 22

1 it's just something, especially if you get to
2 summary judgment motions where certain claims, or
3 at least certain legal principles, may overlap.
4 And one plaintiff may be in a position to move for
5 summary judgment but another may not. But a ruling
6 on the first motion could cause a problem for
7 another plaintiff.
8     THE COURT: Well, what if there's a
9 provision in this proposal here that says at the
10 end, last sentence: "Orders resolving such motions
11 shall likewise be deemed as made with respect to
12 all parties similarly situated unless the order
13 indicates otherwise."
14     Now, why couldn't that concept be
15 incorporated into the--when the motion is filed,
16 the party filing the motion has to indicate which
17 of the other parties he or she has received assent--not
18 assent but who join in, so to speak. So that,
19 say there's a footnote right up front, or it could
20 be in the first paragraph that says, you know, Luce
21 hereby filed this with the knowledge and support of
22 JRBO (PH), Gray A (ph), whatever, and so, in other
23 words, it's so, when the motion's filed, it's clear
24 among the similarly situated on whose behalf it's
25 being filed, and, of course, any order that would

Page 23

1 be issued one would think would also be clear at
2 the other end as to who this order is applying to.
3     Why couldn't we kind of have a--work the
4 language out so that there's a requirement that if
5 a motion's filed by a similarly situated party,
6 that he or she check first with all the other
7 parties to see if they're going to assent to it to
8 being, you know, having these issues proposed. And
9 then, of course, and that also gives the opposing
10 party, you know, a chance to know what they're
11 dealing with, too, without my help.
12     MR. PREMINGER: I think you probably would
13 help, yes, as long as it's understood that a ruling
14 with respect to a motion to which, in which someone
15 did not participate allows that person--and I
16 understand this can create more work for Your
17 Honor--to come back and--
18     THE COURT: Or a magistrate.
19     MR. PREMINGER: Or a magistrate.
20     THE COURT: We have wonderful magistrate
21 judges in the District. We really do.
22     MR. PREMINGER: --and say why they think
23 the prior ruling either doesn't apply to them or
24 was perhaps somehow we can correct if that's
25 fathomable.

Page 24

1     THE COURT: Well, I think I--look. In the
2 ideal world--and everyone agrees that this is a
3 motion that should be filed among the similarly
4 situated--
5     MR. PREMINGER: Mm-hmm.
6     THE COURT: --and then, of course, the
7 ruling, whatever it is, applies to all the
8 similarly situated. I mean that's--and that
9 probably would be the case in 90-plus percent of
10 the situations.
11     Now, there could be those small percent of
12 situations where really it's only two of the
13 similarly-situated that really want to fight
14 something out and, you know, the other three think
15 it's not worth fighting, or it's not really
16 appropriate to fight it or whatever. You know.
17     So, but wouldn't you tend to agree with me
18 it's probably going to be in most situations most
19 of the similarly-situated will be kind of in the
20 same--
21     MR. PREMINGER: I would at least hope that
22 it would, yes.
23     THE COURT: Okay.
24     MR. PREMINGER: Thank you, Your Honor.
25     THE COURT: All right. Mr. Hill, do you

Page 25

1 want to weigh in on this? Do you agree with or
2 disagree with anything that's been offered here so
3 far?
4     MR. HILL: Well, Your Honor, let me say
5 our position is you don't need to enter this
6 paragraph because the requirement, as you've
7 described earlier, exists in the local rules.
8 We're required to confirm amongst counsel before
9 any motion is filed and required to show that we've
10 done so. And I think in practice we've frequently
11 shown precisely what people have said, whether
12 they've taken a position or taken no position
13 supporting or opposing.
14     So as a practical matter, we would oppose
15 this just because it creates uncertainty about what
16 it means. And I think it's better for people to,
17 you know, decide up front. If you're joining a
18 motion or you support a motion, say so; if you
19 don't, then say so as opposed to sort of getting a
20 ruling on a motion and then people seeing, oh,
21 well, I can take advantage of this or resist based
22 on this. So it would just be much clearer if
23 everybody would put their cards up front, and we
24 could then all know who it applies to and how it
25 governs, and avoid satellite litigation over "now

Page 26

1  the court's ruled, what does its ruling mean for me
2  or for you, or whatever."
3  　　　　THE COURT: All right. Well, that's a
4  good point. I'm going to take another look at
5  that, but if something like this is going to stay
6  in, I think we'd have to have that amendment that
7  it be a--that the moving party have checked, you'd
8  all be similarly situated, and it be indicated
9  among the similarly-situated which ones were
10 joining in and not joining in, and circumstances.
11 I'll take another look at the local rule in that
12 regard.
13 　　　　Discovery 4-A, I'd just take out the
14 brackets there, except as to Georgina except for
15 quash. It would be just discovery as to Georgina
16 except for quash shall begin after Georgina's
17 motion to stay has been decided. Well, actually,
18 it's been decided, so that we really don't need--we
19 really don't need the rest of that. It would just
20 be, "Discovery should begin upon the entry of the
21 order."
22 　　　　I wanted to hear on this fact discovery
23 one here. "The fact discovery shall be completed
24 on all claims. The consolidated actions--," and
25 then it says, "--except Carabillo's affirmative

Page 27

1  claims on or before--(blah, blah, blah.)"
2  　　　　Now, this is apparently--this has been
3  requested, the exception here, by Carabillo,
4  obviously, but opposed by Ullico. And I wanted to
5  hear from Carabillo and Ullico why this exception
6  either should be made or shouldn't be made under
7  these circumstances.
8  　　　　MR. PREMINGER: David Preminger again,
9  Your Honor.
10 　　　　THE COURT: Welcome back.
11 　　　　MR. PREMINGER: This particular paragraph,
12 essentially there are two choices: that fact
13 discovery will be completed in six months or nine
14 months. The alternative for Mr. Carabillo is--and
15 this was what I requested--that even if Your Honor
16 adopts the nine-month schedule, I still want it to
17 be six months for Mr. Carabillo. And this takes us
18 into a number of other paragraphs in the discovery
19 section which probably are best addressed now.
20 　　　　I would still like Mr. Carabillo's
21 affirmative claims, the discovery on those claims
22 to be dealt with on a separate track than the
23 counterclaims. The reasons are fairly
24 straightforward. Mr. Carabillo has, in essence,
25 two claims: One is that he is entitled to benefits

Page 28

1  under the terms of the Plan, that he meets the
2  Plan's requirements for benefits. The other is a
3  Section 510 claim under ERISA, which is that he was
4  terminated in order to prevent him from attaining
5  benefits. None of the facts relevant to either of
6  those claims overlap with the facts that will be
7  necessary to prove or disprove the counterclaims.
8  　　　　Now, the defendants had maintained that
9  they fired Mr. Carabillo for cause, and therefore
10 whether or not there was cause is relevant. That's
11 not correct. The question in the Section 510 claim
12 is: Did they fire him to prevent him from
13 attaining benefits? Or did they fire him for some
14 other reason? The question is not did they fire
15 him for cause; it's what was their motivation. If
16 they didn't fire him to prevent him from attaining
17 benefits, if they fired him for some other reason,
18 if they fired him because they didn't like how he
19 dressed, my understanding of District of Columbia
20 law is it's employment at will: You can fire a
21 person for any reason you want to as long as it's
22 not a specifically prohibited reason. They don't
23 need to establish that they had cause to fire Mr.
24 Carabillo; they just need to establish that they
25 fired him for some reason other than to prevent him

Page 29

1  from attaining his benefit. There is no factual
2  overlap between his claims and the counterclaims.
3  　　　　For that reason, I don't want his
4  affirmative claims for which the discovery will be
5  fairly straightforward and fairly narrow, to get
6  bogged down in the discovery on the counterclaims,
7  which is going to require a rather massive factual
8  undertaking, factual discovery undertaking. And
9  who's going to get--there's this question of sides
10 and who's going to get how many depositions. I
11 think that's fine for the parties in the
12 counterclaims and their attorneys--I am not an
13 attorney, I'm a counterclaims--
14 to work out. I think for Mr. Carabillo's
15 affirmative claims simply the regular federal rules
16 should apply, the number of depositions needed
17 should apply, et cetera.
18 　　　　The reasons, ultimately, for this are Mr.
19 Carabillo's affirmative claims can move much more
20 quickly than the counterclaims. The last time we
21 were here, Mr. Trenga argued why the affirmative
22 claims and the counterclaims are interrelated, and
23 essentially he stated the law incorrectly. With
24 respect to the qualified pension plan, it is
25 subject to ERISA's anti-alienation provision.

50aae970-dc1d-4bd3-9604-47122298dbc4

Page 30

1  Pension benefits may not be alienated, attached.
2  They're sacrosanct except for two possibilities:
3  One is a qualified domestic relations order--which
4  obviously isn't applicable here--and the other is
5  if an ERISA fiduciary reaches his fiduciary duty,
6  and that breach damages the Plan, the Plan may
7  offset the damage against his pension benefits.
8       But there's one additional issue, and that
9  is the offset may not occur until such time as the
10 Plan has a judgment, which means they can't start
11 offsetting until they get a judgment on their
12 counterclaims. So that even if they were to
13 prevail on their ERISA fiduciary breach
14 counterclaims, Mr. Carabillo, assuming he's
15 successful on his affirmative claim, would be
16 entitled to all of the benefits, each monthly check
17 that he should have gotten, up to the date that
18 judgment is entered.
19      With respect to the auxiliary plan, which
20 is not qualified and therefore not subject to
21 ERISA's anti-alienation provision, it contains its
22 own anti-alienation provision, which is actually
23 stricter than ERISA's, and this plan was drafted by
24 Ullico. That plan specifically states it's to be
25 governed by Maryland law; Maryland trust law

Page 31

1  enforces such anti-alienation provision so that if
2  Mr. Carabillo prevails on his affirmative claims,
3  he will be entitled to his benefits from the
4  auxiliary plan, even if they establish breaches of
5  fiduciary duty.
6       Now, the defendants will contest this, no
7  doubt. But those are both legal issues. You don't
8  need any factual determinations with respect to
9  those. Mr. Carabillo left employment with Ullico
10 in the spring of 2003, having been told he was
11 going to start getting his pension benefits and
12 subsidized health insurance starting June 1, 2003.
13 Since that time he hasn't received a dime in
14 pension benefits; he's had to pay for his own
15 health insurance. I think he's entitled to move
16 his claims along as expeditiously as possible
17 without having them wrapped up in the
18 counterclaims, and that's the reason for all of the
19 separate requests I have made for Mr. Carabillo.
20      THE COURT: Now--hold on a second.
21      MR.        : I'm sorry.
22      THE COURT: To what end, though? I mean,
23 for example, you kind of set yourself into a
24 position where you can move for summary judgment,
25 separately and apart from the rest of the case,

Page 32

1  sooner--
2       MR. PREMINGER: That's correct.
3       THE COURT: --rather than later?
4       MR. PREMINGER: That's correct.
5       THE COURT: Is that why you want to do it
6  this way?
7       MR. PREMINGER: That's correct, because I
8  think Mr. Carabillo's affirmative claims can be
9  resolved on summary judgment.
10      THE COURT: And what would you say to the
11 argument that while that may be a well and good for
12 Mr. Carabillo, but that doesn't do a heck of a lot
13 for the efficiency of trying to manage this whole
14 operation. Why should we split off Carabillo in
15 summary judgment? He's supposed to have his
16 summary judgment motion, to the extent that there
17 are going to be summary judgment motions filed
18 incorporated within the rest, is one ball of wax,
19 so to speak.
20      MR. PREMINGER: But the reason I just gave
21 you, which is that Mr. Carabillo has been without
22 these benefits which he left em- --granted, Ullico
23 claims to have terminated him subsequent to the
24 time he put in his retirement papers, but he was
25 under the understanding he was leaving with a

Page 33

1  certain level of income and hasn't had it for two
2  years.
3       Also, ERISA was passed to protect
4  participants and beneficiaries. If he's entitled
5  to his benefits, he should be getting his benefits.
6  The Plan is not entitled to engage in self-help.
7  They're supposed to be paying benefits that are
8  owed. And as far as I am concerned, these
9  counterclaims, especially the ERISA counterclaims,
10 have been interjected here for no other purpose
11 than to put pressure on Mr. Carabillo in an attempt
12 to force him to in some way compromise his claims.
13 I don't think they should be allowed to get away
14 with that. These claims should be expedited. He
15 should be able to start receiving his benefits as
16 soon sa possible without regard to the
17 counterclaims.
18      THE COURT: All right. I see your point.
19      MR. PREMINGER: Thank you, Your Honor.
20      THE COURT: Let me hear from Carabillo. I
21 mean from Ullico.
22      MR. TRENGA: Let me speak to this one,
23 since it's a continuation of the point that we
24 raised at the last hearing. As the court may
25 remember from the pleadings, Mr. Carabillo is one

Page 34

1  of the central figures in the scandal that brought
2  Ullico to the brink of disaster. He was the chief
3  legal officer, and the claims are that Mr.
4  Carabillo breached his fiduciary duties over an
5  extended period of time on a whole range of issues,
6  both in his capacity as a fiduciary to the ERISA
7  plans, but also in his capacity as an officer to
8  the corporation.
9      Those breaches of duty are defenses both
10  to what Mr. Preminger refers to as the qualified
11  plan benefits and also the nonqualified plan
12  benefits, without getting into the merits of each
13  of those claims. We think there's ample legal
14  authority that, if this court were to find as we
15  have alleged--the breaches of duty on his part--it
16  would substantially cause either a complete
17  forfeiture or partial forfeiture of both the
18  qualified and the nonqualified plan benefits.
19      For that reason, it make absolutely no
20  sense to proceed as Mr. Preminger proposes. I
21  suspect every litigant would enjoy proceeding on
22  his affirmative claims free from its defenses.
23  This is even less justified since we're talking
24  about discovery that's going to apply not only to
25  Mr. Carabillo but the other defendants, and to try

Page 35

1  to parse this out in any fashion would just be a
2  complication that would advance nothing other than
3  to complicate an already complicated case.
4      We're talking about the discovery period
5  of either six months or nine months, depending on
6  which proposal. The most efficient way would be to
7  have a consolidated discovery plan applicable to
8  everyone. The court can then sort out at the
9  appropriate time the relevance or nonrelevance of
10  the facts and the legal positions of the parties,
11  particularly if, as Mr. Preminger suggests, the
12  court would need to adjudicate the basi- --adjudicate the
13  counterclaim that would cause a
14  forfeiture of qualified plan benefits to do that in
15  advance--I'm sorry--to adjudicate his entitlement
16  in advance of a defense that would, substantially,
17  forfeit those benefits would make no sense at all.
18      THE COURT: All right, I'm going to--I'm
19  going to rule for the nine-month approach here.
20  I'm not going to segregate out the Carabillo
21  affirmative claims, and we'll proceed in the
22  reconstruction of this on that assumption of a
23  nine-month period of discovery with no segregated
24  timetable for the Carabillo affirmative claims.
25      All right, now, let's see, there was one

Page 36

1  other area that I thought might need some tweaking
2  here. Well, this was on the Ullico counterclaims,
3  paragraph 2, page 8. There seemed to be a fair
4  amount of difference of opinion here on depositions
5  and number of depositions needed or whatever, so I
6  thought I'd give each side a chance to--it looks
7  like you've got Carabillo, Luce, and Ullico on one
8  side, Georgina and Pacific Life on another side for
9  one of the provisions.
10      And in another position here we've got
11  Georgina and Pacific Life on one side and Carabillo
12  and Ullico on another side. So I don't know,
13  frankly, how that--I need a scorecard. It's hard
14  to keep track of all these various positions, but,
15  if you'd like, just take a minute, each
16  representative, and just give me the benefit of
17  your thinking on this piece of the discovery puzzle
18  on Ullico's counterclaims. I don't particularly
19  care in what batting order you go in, it doesn't
20  matter to me.
21      MR. HILL: Your Honor, I think with
22  respect to--we're on page 8, G-1 and 2--I think
23  Your Honor's previous ruling should just carry
24  through here. We ought to have a single set of
25  depositions as opposed to some dedicated to

Page 37

1  affirmative claims and some dedicated to other
2  claims. I think it would be a nightmare at a
3  deposition to deal with an objection that it
4  doesn't or it does pertain to Mr. Carabillo's
5  affirmative claims. It would be easier to just
6  have a single set, and you can ask the witness
7  whatever questions you can ask him, and then they
8  don't have to come back for a separate deposition
9  on different issues.
10      THE COURT: All right, to just have one,
11  instead of having nine having two paragraphs, just
12  nine that have one paragraph.
13      MR. PREMINGER: My problem with that, Your
14  Honor, is that for some of the reasons I stated
15  before, there is no real factual overlap between
16  Mr. Carabillo's affirmative claims and the
17  counterclaim. And I don't want to have to give up
18  a number of depositions that I would be entitled to
19  under the rules--which I believe is up to 10--with
20  respect to his affirmative claim and have to have
21  that melded in and with five or six different
22  counterclaim defendants, including Mr. Carabillo,
23  who are all going to be wanting to do depositions
24  which relate strictly to the counterclaims, the
25  breach of fiduciary duty claims.

Page 38

1       THE COURT: Well, how would that inure to
2  your client's detriment if you're going to be able
3  to do enough depositions to amplify, you know, and
4  pursue your concerns, how are you being harmed by
5  having one set of depositions?
6       MR. PREMINGER: Because I believe that the
7  number included in the one set is too limited, and
8  also there's going to have to be some sort of a
9  decision among counterclaim defendants and for this
10 purpose Carabillo as an affirmative plaintiff, and
11 also, I assume, Mr. Luce as a plaintiff, as to
12 who's going to be deposed, what the subjects of
13 those depositions are going to be. I mean the
14 depositions are limited by federal rules to seven
15 hours, I believe. There are various--I don't know
16 how many I will need on Mr. Carabillo's affirmative
17 claim. It's going to depend on who was involved in
18 various things. But I think he needs to have
19 certain depositions which are his in order to try
20 and establish his affirmative claims.
21      And, you know, if the counterclaim
22 defendants qua counterclaim defendants want to
23 depose the same people for--with respect to the
24 counterclaims, I think they should be able to do
25 so.

Page 39

1       THE COURT: Well, why wouldn't it make
2  sense to, so to speak, pool the number of
3  depositions on one side and have a similar size
4  pool on the other side?
5       MR. PREMINGER: Well, it depends on what
6  Your Honor is referring to as "a side." There's
7  plaintiffs, and after the consolidated complaint
8  and answers are filed, there will be basically two
9  plaintiffs, as far as we know Mr. Carabillo and Mr.
10 Luce. There will be the Ullico defendants, which
11 are the only actual defendants. Then there are
12 going to be the counterclaim plaintiffs and the
13 counterclaim defendants.
14      THE COURT: And so--
15      MR. PREMINGER: And, yes, both Mr. Luce
16 and Mr. Carabillo are both plaintiffs and
17 counterclaim defendants, and the question is:
18 What's a side here?
19      THE COURT: I see. And the counterclaim
20 plaintiffs--all right.
21      MR. PREMINGER: The defendants and the
22 counterclaim plaintiffs are, essentially, the, you
23 know, overlap.
24      THE COURT: Over the counterclaim
25 plaintiffs again. The counterclaim plaintiffs--

Page 40

1       MR. PREMINGER: Yes, the counterclaim
2  plaintiffs are Ullico--if you're talking about both
3  lawsuits, it's Ullico, it's the Plans, it's
4  various--I guess Mr. Singleton is the administrator
5  of certain of the plans. And in the other action--actually,
6  I don't recall who are the counterclaim
7  plaintiffs in the first action.
8       MR. HILL: I can just tell the court that
9  there's 11 Ullico-related entities that are either
10 defendants, or plaintiffs, or counterclaim
11 plaintiffs. If I can make a suggestion, Your
12 Honor--
13      THE COURT: How about counterclaim
14 defendants?
15      MR. HILL: And then there are six
16 counterclaim defendants.
17      THE COURT: Six.
18      MR. HILL: The four former officers, Ann
19 O'Brien and Pacific Life.
20      THE COURT: What was the last name?
21      MR. HILL: Pacific Life.
22      THE COURT: Pacific. Well, why not give
23 the plaintiffs and the defendants and the
24 counterclaim plaintiffs and the counterclaim
25 defendants--that's four pools, right? Give each

Page 41

1  pool the same number of depositions, and they can
2  split it up among themselves as any way they want
3  to split them up. So give each pool 15,
4  hypothetical. They can ask for leave for more, if
5  they need it, and then the parties in each pool,
6  you know, plaintiffs, counterclaim plaintiffs,
7  counterclaim defendants--I think defendants is just
8  Ullico itself. So they can split it up among
9  themselves.
10      MR. PREMINGER: I would have no objection
11 to that, Your Honor. I assume other parties would
12 want to speak as to the number, but if a certain
13 number of depositions would be specifically
14 allocated to the plaintiffs, that's fine with me.
15      THE COURT: And then with always that
16 safety valve--
17      MR. PREMINGER: Yes, I understand that.
18      THE COURT: --that if there's need for
19 leave for additional depositions, they can just
20 file for leave with the court for additional
21 depositions. Frankly, if the other side isn't
22 opposing it, this is public--
23      MR. PREMINGER: By agreement.
24      THE COURT: There's not going to be any
25 problem. I mean as a practical matter. Now, if

50aae970-dc1d-4bd3-9604-47122298dbc4

Page 42

1  the other side's opposing it and they have good
2  grounds to oppose it, then either this court or a
3  magistrate judge will have to make a decision. But
4  the practical reality is going be that if it's
5  unopposed on a couple more depositions, that could
6  be a problem.
7       So how'd that strike you, Mr. Hill?
8       MR. HILL: Your Honor, I would just say
9  this: The plaintiffs and the counterclaim
10 defendants, four people are in both categories.
11 And the counterclaim defendants and the
12 counterclaim plaintiffs are, essentially, all
13 Ullico entities, and they're all represented by my
14 firm. So this is what we had essentially proposed
15 was, you know, lump the four officers, Pacific Life
16 and Ann O'Brien, into one group, and lump all the
17 Ullico-affiliated entities into another group. And
18 the only hesitation I would have with the
19 suggestion Your Honor has just made is to the
20 extent it would limit subject matter of the
21 depositions, I think that's potentially
22 problematic.
23      For example, if Mr. Preminger wants to
24 take a deposition as a plaintiff, and there's
25 questions that in Mr. Preminger's view stray

Page 43

1  outside the issue of the affirmative claims, there
2  will be objections and fussing about whether or not
3  we have to bring this person back as a counterclaim
4  defendant, notice to deposition and so forth. So
5  that's why we suggested just two pools, and as far
6  as the number goes, I mean, you know, if you give
7  15 a side, that's 30 depositions in the nine-month
8  period. That's a lot of depositions. If you give
9  25 per side, that's 50 depositions in a nine-month
10 period.
11      I mean I'd be very surprised if the
12 parties exhaust those numbers. But if we did, we
13 could either agree to do more or, as Your Honor
14 suggested, come back to the court and show cause
15 for additional depositions. And so I think the
16 simplest method is, you know, just divide it up by
17 side, counsel can cooperate and, you know,
18 prioritize depositions. If Mr. Preminger is
19 worried that he's not going to get his in, he can
20 notice his first and be sure he gets his in fastest
21 that way.
22      So I think it's possible for the parties
23 to work it all out amongst themselves. What we're
24 most concerned about is getting into a deposition
25 and having someone say, "I'm sorry, that question

Page 44

1  can't be asked in this deposition," because we
2  think that would be tremendously inefficient.
3       THE COURT: I agree that would be
4  inefficient. You know, what do you think about
5  that idea that, you know, have two pools as opposed
6  to four pools?
7       MR. PREMINGER: But two pools runs me into
8  the same problem that I stated originally, which is
9  divvying up depositions among me, on behalf of Mr.
10 Carabillo's affirmative claims, and the
11 counterclaim defendant who have different interests
12 in depositions.
13      I mean Mr. Hill is basically suggesting
14 that we all go out and run out and prepare, you
15 know, notices of depositions so we make sure we get
16 the ones we want. That I don't think is very
17 efficient.
18      THE COURT: I'm not sure what you're
19 suggesting, but let's see what the other side has
20 to say. There's lots of brain power in this room
21 here.
22      MR. ERMAN: Your Honor, I think our
23 feeling on--since I'm speaking from Pacific Life
24 also--is just the different interest of all the
25 parties that's been underscored throughout this,

Page 45

1  that it's going to be a big pain for the parties
2  and possibly for the court if they have to come
3  before Your Honor and fight over who gets to notice
4  the last deposition, or somebody didn't get to
5  notice the deposition they wanted to. And I think
6  that was the main fear in our including this option
7  or Your Honor.
8       And one point of clarification--
9       THE COURT: Do you like the pool idea?
10 You don't like the pool idea?
11      MR. ERMAN: If there were enough
12 depositions, I think it possibly could work, but,
13 as Mr. Preminger noted, I'm a little leery of, if
14 we have too little, everybody running around and
15 it's a race to see who can notice the first 20
16 depositions, or 25 or however many there are.
17      And one point of clarification on who the
18 parties are, Your Honor. It's something that Mr.
19 Hill had flagged earlier in footnote 4. The reason
20 that that was included, Mr. Georgine did not file
21 an affirmative claim, and his position has been
22 that his claims, any claims that he has, that he
23 has to be brought here to be brought as
24 counterclaims to Ullico's--his responses to
25 Ullico's counterclaims, aside from any compulsory

Page 46

1  counterclaims, we believe that he shouldn't be
2  forced to bring any claims, and he certainly
3  shouldn't be forced to bring any claims before he
4  knows what Ullico's going to assert against him.
5  So I just wanted to clarify that.
6      MR. MERTEN: Your Honor, Glenn Merten for
7  Pacific Life. I would just like echo some of the
8  points that Mr. Erman made. Obviously, Pacific
9  Life's interest in this litigation is, number one,
10 very limited; and number two, very different than
11 the rest of the counterclaim defendants. Having
12 the two pools with a set number of depositions for
13 each, I mean I can envision--and Pacific Life
14 doesn't intend, doesn't expect to take extensive or
15 even any discovery--but to the extent that we
16 should feel it's necessary, I can envision a very
17 difficult time, you know, convincing the rest of
18 the counterclaim defendants that one of their
19 precious--that one of their previous few
20 depositions should be used up for the interests on
21 an issue that is solely relevant to Pacific Life.
22 And again, I think that would pre kind of a race to
23 the subpoena that I don't think the court had
24 envisioned when it suggested this--or that Ullico
25 had envisioned when it suggested this.

Page 47

1      We would take the position that we have no
2  problem with the pooling arrangement. You know,
3  25, 15 per side, whatever number is appropriate.
4  But we would like each individual party in the
5  litigation to have the--to be permitted to notice
6  at least one or two deposition solely at their own
7  discretion so we don't run into the situation where
8  we're out, and then we have to come to the court.
9  And I understand Your Honor did address this with
10 your comments about, you know, we can seek leave to
11 file additional--take additional depositions. But
12 I think it would be easier if we kind of worked it
13 out up front rather than having to go through that
14 process.
15     THE COURT: All right. Well, I certainly
16 don't see any fighting that's going to take place
17 between the Ullico defendants and the counterclaim
18 plaintiffs.
19     MR. HILL: That seems unlikely, Your
20 Honor.
21     THE COURT: All right. So Ullico
22 plaintiffs--excuse me Ullico defendants and the
23 counterclaim plaintiffs, all right, they can have a
24 total of 20. all right? With leave to file for
25 more if need be.

Page 48

1      Now, as to the Carabillo/Luce plaintiffs,
2  all right, they can have a total of 12, but each
3  side is to have no less than the minimum of six.
4  So that guarantees each side getting six. This is
5  the plaintiffs only now, we're not at the
6  counterclaim defendants yet. All right.
7      Now, if they want to--if one wants to give
8  the other a couple and take less for themself,
9  that's fine. You can do it any way you want to do
10 it, but you got 12 to start with, plaintiffs, and
11 if you need more you can file leave for more, and
12 if you want to divvy them up ten/two or eight/four
13 you can get among yourselves and agree to do that,
14 too. How's that sound? Do you think you can live
15 with that?
16     All right, now let's to the counterclaim
17 defendants. We'll trick you here, but I think in
18 this case we've got about four officers, O'Brien
19 and Pacific Life, right? So that's six entities,
20 so to speak, under the situation here. So for this
21 group here I think we've got to be a little more
22 flexible. But I'm going to say 18 total, and no
23 one gets less than three unless he or she wants to
24 give up. If they want to use all three, they don't
25 have to give it up, but I realize that's 30 versus

Page 49

1  20, but I'm kind of optimistic that this can all be
2  done in even less than all of this. So that would
3  be 18 for the counterclaim defendants, toto, 12 for
4  the plaintiffs, total, 20 for the Ullico defendants
5  and the counterclaim plaintiffs, total. And
6  everyone has permission to seek more if they need
7  it.
8      MR. TRENGA: Yes, Your Honor, that's fine,
9  and I think that's a good place to start, as I will
10 echo what someone else observed. I would be
11 surprised if that's not enough depositions. The
12 only point I would like to make clear and get a
13 clarification if it is an issue is that we are not
14 going to be--an individual party, an individual
15 defendant is not going to be subjected to multiple
16 depositions by different plaintiffs or counterclaim
17 defendants. We don't want multiple notices for the
18 same party. If somebody--if one of them notices a
19 party, then that's their shot as to everybody.
20     THE COURT: It wouldn't make sense, unless
21 there's good reason. If there's good reason why,
22 and it can be shown, then they can seek leave of
23 the magistrate or me.
24     MR. TRENGA: right.
25     THE COURT: But they're going to have to

Page 50

1  show some reason for it.
2       MR. TRENGA: As would always be the case.
3       THE COURT: Right. But it could happen--
4       MR. TRENGA: Three will be deposition.
5       THE COURT: There could be a reason--who
6  knows what it is, I don't want to start spinning
7  off hypotheticals--
8       MR. TRENGA: Right.
9       THE COURT: --but, you know, again, absent
10 for cause good--you know, for good cause shown,
11 then to the absolute fullest extent possible, the
12 depositions of any given witness should be
13 participated in to the fullest extent possible by
14 all parties involved so that this can be done
15 efficiently.
16      You know, this is expensive enough as it
17 is. I mean I hate to even think what the meter
18 charge is already for this hearing.
19      MR. TRENGA: And likewise--
20      THE COURT: It's scary.
21      MR. TRENGA: And likewise, we would be
22 prohibited from multiply--doing multiple notices of
23 any other witness based on different party
24 defendants or party counterclaim plaintiffs.
25      THE COURT: Right. I think that makes

Page 51

1  sense. I think that makes sense, yes. And I don't
2  see anyone raising the hand and getting exercised,
3  so I'm going to think everyone thinks that makes
4  some sense.
5       And paragraph 6, well, of course, we
6  always--that's one of my favorite paragraphs. I
7  always like that paragraph. "Subject to the court,
8  the parties directly will be ready for trial on all
9  issues at a time to be designated by the court."
10 Okay, so you don't want to put that other stuff in
11 there--13 months from this, and 12 months from--20
12 months from this, and--no, we don't want any of
13 that. So why don't you take a whack at that
14 paragraph, someone.
15      And we don't even need a seven. So I
16 think that resolves all the issues except the one I
17 said I was going to think about. And I think what
18 makes sense here is on this motions paragraph 5-E,
19 page 5, paragraph "E", why don't you just take--Mr.
20 Scully, you're the one who likes this idea. Why
21 don't you modify it with what we talked about from
22 the local rules, check in with Mr. Hill on that and
23 see if you can come up with something you both
24 agree to as to that "E" paragraph there so that
25 everyone's getting checked in with on the up front

Page 52

1  part and all that. Maybe you can come up with a
2  modification that everyone can live with, and then
3  what I'd suggest is take all of these rulings and
4  incorporate and send me a new proposed, joint-proposed
5  consolidated scheduling order thing,
6  consistent with what we've talked about today,
7  everyone.
8       MR. HILL: Your Honor, may I make a brief--
9       THE COURT: Yes.
10      MR. HILL: As the person to whom this job
11 is going to fall--
12      THE COURT: At least from the Ullico side.
13      MR. HILL: Yeah, Ullico, I'm not certain
14 that I captures all of Your Honor's rulings on all
15 the areas of dispute or not. I wouldn't mind just
16 going through them very quickly with the court's
17 indulgence.
18      THE COURT: All right, so the first place
19 was in A, 3-A.
20      MR. HILL: Yes, we're going to be
21 following consolidated--
22      THE COURT: Consolidated. Everything's
23 consolidated.
24      MR. HILL: Mr. Georgine will participate.

Page 53

1  The language that's in 3-A that Mr. Scully had
2  proposed dealing with master complaints, I assume
3  that that would be deleted.
4       THE COURT: Right, yes.
5       MR. HILL: Is this what Your Honor's
6  ruling?
7       THE COURT: To make it consistent with
8  consolidated.
9       MR. HILL: Okay. And then on page 5 with
10 respect to--
11      THE COURT: Hold on. Now, don't forget 4
12 here, page 4, that B there. That should be
13 consolidated.
14      MR. HILL: Correct.
15      THE COURT: Right, and that's all
16 consistent. Then we get to the response/reply in--
17      MR. HILL: And we--and we--
18      THE COURT: --C.
19      MR. HILL: And we decided that that was
20 going to be a consolidated reply.
21      THE COURT: Reply, yes, so it should be
22 consistent with that.
23      MR. HILL: Okay. And then paragraph D was
24 stricken. Paragraph E, Your Honor would like us to
25 rework.

Page 54

1    THE COURT: Hold on a second--
2    MR. HILL: Is that what you're--
3    THE COURT: --I just saw something. I
4  don't know if I mentioned this.
5    MR. HILL: Sure.
6    THE COURT: I think "C" would end after
7  the word "filed." I don't think the part at the
8  end there makes sense because that--the bracketed
9  that says "Georgine shall file his reply," that's
10 based on a premise that the ruling hasn't been
11 made. So that would seem to now be moot. That's
12 behind us now.
13   MR. HILL: Okay.
14   THE COURT: And I'll enter that order
15 today, and--it's going to be entered. Then "D"
16 would be out.
17   MR. HILL: "D" is out, and then "E"--
18   THE COURT: And "E" is Mr. Scully and you
19 were going to sort of work up the local rules and
20 modify a little bit so that to capture that notion
21 that it's--people check with one another up front.
22   MR. HILL: And then the language in the
23 last paragraph on page 5. "No further Rule 12
24 motion shall be filed." Should it stop there, or
25 should additional language, "unless new claims are

Page 55

1  filed," be included?
2    THE COURT: No. We don't want unless new
3  claims are filed because--because that's like
4  inviting it. I'd just leave it, "No further 12
5  motions shall be filed." I mean, obviously, if
6  there's some need for new claims to be filed at a
7  later time, and they get a sick leave of the court,
8  and then we'll deal with that at that point.
9    MR. HILL: Okay. And then on page 6 it
10 should end after, "Discovery shall begin upon entry
11 of the order"? Is that correct?
12   THE COURT: Right.
13   MR. HILL: Okay. And then 4-B on that
14 page, "Initial Disclosures." I don't know that
15 Your Honor spoke to this issue. Are you going to
16 excuse them from making initial disclosures, that
17 is, Ms. O'Brien and Pacific Life?
18   THE COURT: No. No one's being excused
19 for that. I didn't address that. Thank you for
20 catching that.
21   MR. HILL: And then fact discovery is fact
22 discovery is nine months, and it's on all claims.
23   THE COURT: Right. So that paragraph has
24 to be worked around the OD, and the nine months.
25   MR. HILL: And then on the bottom of page

Page 56

1  7, Your Honor, half of us had proposed limiting 50
2  interrogatories per party. I don't now if the
3  court addressed that issue.
4    THE COURT: It didn't, but that's, if
5  everyone agrees with that, that makes sense.
6  That's fine.
7    MR. HILL: Right. To, in fairness, not
8  everyone agrees. Three of us have asked for that,
9  and three of the parties have requested that the
10 normal rules apply. Under the normal rules, each
11 party would be able to propound 25, and since there
12 are 11 Ullico-related parties, you'd have as many
13 as 1600 interrogatories. So the idea here was to
14 limit that to the 50 per party.
15   THE COURT: I think that makes a lot of
16 sense. You can always seek more if you show a
17 reason.
18   MR. HILL: Okay.
19   THE COURT: If you have reason why you
20 need more, that's fine, you can--
21   MR. HILL: I think I understand Your
22 Honor's rulings on the number of depositions. At
23 the bottom of page 8 carrying over to page 9,
24 Ullico had requested that for the four former
25 officers they be allowed to depose them for three

Page 57

1  days each, and in recognition of the large number
2  of claims and the large number of facts, and I'm
3  wondering if the court was granting that request or
4  no?
5    THE COURT: Well, it sounded like it made
6  sense, but it doesn't say "consecutive" and,
7  frankly, it shouldn't say consecutive. I think you
8  may need to do it, you know, where there are not
9  three days in a row.
10   MR. HILL: Three nonconsecutive days?
11   THE COURT: Yeah, I think it makes--first
12 of all, I, you know, based on my own experience,
13 that's--three days is an awful lot. I'm hoping you
14 won't need three days.
15   MR. HILL: Well, certainly, Your Honor, if
16 we finish in a day or two, we will not needlessly
17 tarry.
18   THE COURT: But I don't--I really don't--I
19 don't feel, you know, three consecutive days,
20 that's like a Bataan Death March or something.
21   MR. HILL: Fair enough, Your Honor.
22   THE COURT: Let's not be wearing people
23 out on this unfairly. So if you're going to need
24 all three days, then give the guy or gal a break
25 and take a day off or something.

Page 58

1  MR. HILL: Okay. Very well, Your Honor.
2  And then on paragraph 6 Your Honor indicated that
3  you wanted us to be ready for trial on a date to be
4  determined, is that how you want that to read?
5  THE COURT: Well, usually what I do is I
6  set a pretrial conference.
7  MR. HILL: Okay.
8  THE COURT: So you can look at my standing
9  order, civil order, and just borrow language from
10 that.
11 MR. HILL: And did you want us to leave a
12 blank date in there for a pretrial conference?
13 THE COURT: Yeah, just to be determined by
14 the court.
15 MR. HILL: Okay. And then on the last
16 number--paragraph number 7, Your Honor had
17 suggested at the last hearing that you'd like to
18 set another status conference in October.
19 THE COURT: Yeah.
20 MR. HILL: Do you want us to include the
21 language in the--
22 THE COURT: But I wouldn't put that in
23 this order. I don't think it would be a new order.
24 I just set it on my own sometime in--probably, you
25 know, right now actually I could do that. Any

Page 59

1  reason not to--I can't think of any reason I've got
2  a status hearing in October. How does that strike
3  you all?
4  MR. HILL: That's fine with us, Your
5  Honor.
6  THE COURT: Well, how about October 14th
7  at 2:30, counsel? Anybody available?
8  MR.    : October 14th?
9  THE COURT: It's a Friday. I don't think
10 that's a holiday weekend. I don't hear any
11 opposition, so it's as good a day as any. So you
12 don't need to put that in the order. See if you
13 can send me an order in a week, within a week.
14 MR. HILL: I'll endeavor to do it before
15 then. Thank you, Your Honor.
16 THE COURT: I'll assume that. That's
17 good, too.
18 MR. ERMAN: Your Honor, one last
19 clarification on 3-A. It's my understanding that
20 Your Honor was saying that through 3-A no new
21 claims would have to be required to be brought, and
22 that you were just wanting everything filed,
23 refiled that has been filed. So I just wanted to
24 clarify that Mr. Georgine did not have to bring any
25 affirmative claims that he was going to bring at

Page 60

1  this time until after Ullico reasserted their
2  counterclaims.
3  THE COURT: Right, well, they haven't
4  asserted their counterclaims yet, then there's
5  nothing he can do at this point, right?
6  MR. ERMAN: Right. Mr. Georgine never
7  asserted any affirmative claims, and the way that
8  would read that they have, if you took the brackets
9  out, is that Mr. Georgine would be forced to bring
10 an affirmative claim that he's never brought before
11 seeing what claims that Ullico has brought against
12 him.
13 THE COURT: Where are you looking at,
14 exactly?
15 MR. ERMAN: 3-A. It's the first sentence,
16 Joseph Carabillo, Robert Georgine--some of the
17 other counterclaim defendants have actually brought
18 affirmative claims, and so that's why they would be
19 included in there to reassert those affirmative
20 claims. But we feel that Mr. Georgine shouldn't be
21 made to bring any affirmative claims that he hasn't
22 already asserted, especially without seeing what
23 claims Ullico may bring.
24 THE COURT: If he hasn't asserted any
25 already, then what is there for him to be put in

Page 61

1  here at this point?
2  MR. ERMAN: I agree. I just wanted to
3  clarify that he wasn't being forced to bring that.
4  THE COURT: Well, it's only to the extent
5  he's already asserted them.
6  MR. ERMAN: Okay. I just wanted--
7  THE COURT: The idea here is this is a
8  consolidation of what's already been done.
9  MR. ERMAN: Right.
10 THE COURT: So if he hasn't done it yet--
11 MR. ERMAN: Right.
12 THE COURT: --then there's nothing for him
13 to be consolidating, so to speak.
14 MR. ERMAN: Okay. Thank you.
15 THE COURT: Does that make sense?
16 MR. ERMAN: Yes.
17 MR. HILL: Your Honor, could I--
18 THE COURT: Mr. Hill, doesn't that make
19 sense to you, too?
20 MR. HILL: Well, here's the reason why,
21 Your Honor. When Your Honor ruled on Mr.
22 Georgine's motion to dismiss our counterclaim, Mr.
23 Georgine chose not to file a reply, as he was
24 required to do by the rules. And at that point he
25 would have been required to assert any

Page 62

1  counterclaims that he was going to assert in this
2  action. He instead filed a motion to stay.
3       At this point, he's technically in default
4  on the counterclaims. And we think it would be
5  appropriate if Mr. Georgine is going to bring any
6  affirmative claims for benefits, and he's
7  previously written Ullico asserting that he will do
8  so, that he do so as part of the consolidated
9  complaint.
10      Mr. Carabillo--
11      THE COURT: He's going to bring them
12 anyway, you mean?
13      MR. HILL: Yeah. I mean Mr. Carabillo,
14 Mr. Grelle, and Mr. Luce have all previously made
15 benefits claims in these actions. We assume Mr.
16 Georgine is going to do so, and we don't see any
17 reason why he should wait to do so. We ought to
18 have all the benefits claimants in a single
19 consolidated complaint, and that's the way we've
20 styled the order, and that's what we'd like Mr.
21 Georgine to do.
22      THE COURT: Well if he--is he going to do
23 it anyway?
24      MR. ERMAN: Your Honor, Mr. Georgine may
25 assert claims, but without know what claims will be

Page 63

1  compulsory in this action, I don't see why he would
2  have to bring any claim that he has against Ullico.
3  And to touch on what he said about the default, I
4  mean we filed a motion to stay. We have a pending
5  motion dismissed in Carabillo 2. That's the reason
6  why there's been no answer filed. Your Honor has
7  made or is about to make an order to go back and
8  refile the affirmative claims, refile Ullico's
9  counterclaim. We just believe that we shouldn't be
10 made to be thrown into the pot of affirmative
11 claims when we've never made them before. We'll
12 assert whatever counterclaims--
13      THE COURT: Now that the stay's--now that
14 your stay's been denied, aren't you going to be
15 filing them anyway?
16      MR. ERMAN: But they would be
17 counterclaims, or responses to Ullico's
18 counterclaim. There wouldn't be--there wouldn't
19 need to be affirmative claims. I mean we don't
20 know whether it's going to be compulsory without
21 looking at Ullico's counterclaim, Your Honor.
22      THE COURT: Okay. Are you going to be
23 making any claims against Ullico?
24      MR. ERMAN: We possibly will.
25      THE COURT: Well, why won't you just do it

Page 64

1  all at once, then? How's it going to harm you to
2  do it all at once? Everyone else has filed theirs,
3  right?
4       MR. ERMAN: Well, two of the counterclaims
5  defendants have filed affirmative claims.
6       THE COURT: Well, why can't you file
7  yours? Just work it all in at once, get it done.
8       MR. ERMAN: Your Honor, we could file
9  those, I mean as--
10      THE COURT: How are you going to be harmed
11 if you do it?
12      MR. ERMAN: There may be claims that we
13 don't want to bring, that aren't compulsory. We
14 don't know what is compulsory in this court without
15 seeing what claims Ullico's brought.
16      THE COURT: Maybe I'm confused, or maybe
17 you're confused, or maybe we're both confused. I
18 don't know what it is.
19      MR. ERMAN: We just don't believe that we
20 should be made--
21      THE COURT: If you have any affirmative
22 claims, just stick them in at the same time as this
23 is all being done. It's a consolidated complaint.
24 Just stick them in there.
25      MR. ERMAN: Okay.

Page 65

1       THE COURT: All right? That way it's all
2  done, and then if they want to respond, they can
3  respond.
4       MR. SCULLY: May I raise one more issue,
5  Judge? I hate to do this.
6       THE COURT: Oh, you really don't hate to
7  it, you just--you just--you're just earning your
8  fees, I know what you're doing.
9       MR. SCULLY: I'm trying to anticipate a
10 problem that always seems to come up in these
11 multiparty cases in light of the federal rules
12 saying that depositions shall last not more than
13 seven hours.
14      THE COURT: Yeah. Well, you know what?
15 That's a pretty hard rule, too.
16      MR. SCULLY: And it's a real rule.
17      THE COURT: Yeah, and if you've ever been
18 deposed yourself for seven hours, you'd know how
19 hard a rule that is.
20      MR. SCULLY: I have been deposed--
21      THE COURT: Well, then you know how hard
22 the rule is.
23      MR. SCULLY: --two consecutive days by
24 Aubrey Daniels.
25      THE COURT: Oh, my goodness.

Page 66

1  MR. SCULLY: So I know exactly what you're
2  talking about.
3  THE COURT: It's hard.
4  MR. SCULLY: Judge, with this many parties
5  who are not only entitled to but also by the
6  federal rules required to cross-examine at each
7  person's deposition, we may well have what I have
8  seen as the problem of the filibuster, a very
9  popular word in town, where the person who notices
10 the deposition takes six hours of testimony, and
11 then says, "All right, defense counsel, and
12 counterclaiming counsel, and everybody else, here's
13 your hour." And I think we need to talk a little
14 bit now about how we're going to handle that.
15 THE COURT: Well, I don't know if I'm
16 going to put that kind of a--I don't know if I'm
17 going to want to style the order to deal with that
18 specific problem. And, frankly, with counsel of
19 the quality that we have in this case, this is
20 something you all should be working out in advance.
21 Obviously, there are common issues and
22 common pieces of information that the parties are
23 going to want to get out, and as soon as that gets
24 out, as soon as that's on the record, then the
25 other parties really need to just sort of spruce it

Page 67

1  up around the margin and, you know, tighten it up
2  as to specifics that relate to their own client.
3  And, I mean this is a veritable armada of
4  experience here. You all should have worked this
5  out.
6  Now--
7  MR. SCULLY: Well, I think we should, but
8  I've, unfortunately, seen situations in which very
9  able counsel have, for whatever reason--the
10 insanity of the process--are not able to, without a
11 little bit of adult supervision--and my suggestion
12 is perhaps on that one issue that is helping with
13 duration of depositions to have a magistrate
14 appointed to be available to take a phone call
15 saying, "Hey, grow up, you know." Give him an
16 extra hour he says he needs it on this subject.
17 THE COURT: I'll just say there's an
18 extremely high probability that there will be a
19 magistrate assigned to deal with discovery disputes
20 in this case. I think there's an extremely high
21 probability, because I'm looking at a 10-week trial
22 starting June 6th, and I've got a 10-week trial
23 starting this fall, both criminal, and I'm not
24 going to be very available, counsel, to resolve any
25 of these issues.

Page 68

1  MR. SCULLY: Your Honor, my experience has
2  been if there is a magistrate, he never gets
3  called. It's his existence that acts as the
4  disciplining device.
5  THE COURT: Good.
6  MR. SCULLY: And that's one of the reasons
7  I think it might be useful.
8  THE COURT: You are a product of the
9  Eastern District, Mr. Scully, I must say. All
10 right, is everybody else at least somewhat happy?
11 MR. TRENGA: May I address the court?
12 THE COURT: Oh, why not?
13 MR. TRENGA: And this is in the nature of
14 a housekeeping issue that we're responsible for.
15 As the court knows, the court rules on motions to
16 dismiss and declined supplemental jurisdiction on
17 some of the claims. And the court has made it
18 clear, I think, in earlier sessions as well as
19 today and int he order that is going to be entered
20 at some point that it's not going to revisit that
21 issue.
22 We, in the motion in our opposition to Mr.
23 Georgine's motion to stay, in a footnote we
24 suggested that the court might want to revisit that
25 issue before hearing the court's pronouncements how

Page 69

1  it is not inclined to revisit that issue, and we
2  accept that.
3  What has happened, though, is that Mr.
4  Georgine has filed in the Superior Court action a
5  paper opposing the lifting of that stay on the
6  grounds that there is pending before this court a
7  motion for reconsideration. I want to make the
8  record clear that we understand the court is not
9  going to reconsider that motion. To the extent we
10 have invited that reconsideration in the footnote
11 to our opposition to his motion to stay, we are
12 withdrawing that request.
13 THE COURT: Well, it might not hurt you
14 all to hear it, but motions for reconsideration are
15 awfully hard to get granted in this court, and I
16 think the Court of Appeals intends that to be the
17 case. I mean to get a motion for reconsideration
18 granted, the threshold is very high, and it's
19 awfully hard to get a motion in the first instance
20 because of all of the matters that the court is
21 wrestling with.
22 Now, there are limited circumstances where
23 reconsideration is appropriate, but, boy, it's a
24 high standard. And so--
25 MR. TRENGA: We recognize that. We just

Page 70

```
 1  simply want to clean up the record so we can
 2  proceed unimpeded in Superior Court on the claims
 3  where we need to proceed there.
 4       THE COURT:  Well, I'm ont getting in the
 5  middle of a Superior Court case.
 6       MR. TRENGA:  No, I understand.
 7       THE COURT:  I'll tell you that right now.
 8       MR. TRENGA:  No, I'm just--I'm not
 9  requesting that the court do that.
10       THE COURT:  If there's a motion for
11  reconsideration in front of me, I'll rule on it,
12  but I don't believe there's a motion for
13  reconsideration in front of me.
14       MR. TRENGA:  There is not.  There is not.
15       THE COURT:  And until such time as there
16  is one in front of me--I'll deal with it, but until
17  there is I'm not--I don't give advisory opinions,
18  I'll say that.  So, you know, but I'll give all of
19  you fair warning so that you don't waste a lot of
20  time, motions for reconsideration it's a very high
21  standard.
22       MR. TRENGA:  Thank you, Your Honor.
23       THE COURT:  Enough said.  Have a nice day,
24  counsel.
25       (Proceedings concluded at 4:07 p.m.)
```

50aae970-dc1d-4bd3-9604-47122298dbc4