UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JAMES W. LUCE,                          )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )          Civil Action No. 1:05-cv-01996(RJL)
                                        )
ULLICO INC. PENSION PLAN AND            )
TRUST et al.                            )
                    Defendants.         )
_____)

## REPLY MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants the ULLICO Inc. Pension Plan and Trust, the ULLICO Inc. Employee

Benefit Plan Administration Committee and Marcellus Duckett, Peter Haley, Joseph L. Linehan,

James Paul and Mark E. Singleton in their capacities as members of the Committee (collectively

"ULLICO") have filed a Motion to Dismiss, in response to which Plaintiff James W. Luce

("Luce") has filed an opposition, in reply to which ULLICO submits the following Reply

Memorandum of Points and Authorities.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Luce argues that this case should go forward separate and apart from the Consolidated

Litigation on the grounds that:  (1) this Court did not directly order Luce to bring these claims in

the Consolidated Litigation; (2) this case is not a compulsory counterclaim in the Consolidated

Litigation because ULLICO's claims regarding the amendment at issue are now moot as to Luce

in light of the termination of benefits to Luce under that amendment; and (3) ULLICO is

judicially estopped from asserting that this action is a compulsory counterclaim in light of the

decision of the current Benefits Committee that it need not consider, in ruling on Luce's appeal

to them, whether the adoption of the plan amendment other than in accordance with the plan

documents, was a breach of fiduciary duty on the part of Luce and the other then-members of the

Benefits Committee that purported to pass that amendment without ULLICO Board approval.

Memorandum of Points and Authorities of James W. Luce in Opposition to the Defendants'

Motion to Dismiss (hereinafter "Opp.") at 1-2.

 None of these arguments have merit.  First, this Court's order is clear on its face, and the

entirety of the in-court exchanges with respect to that order, only partially recited by Luce, in

fact support the broad scope of that order.  Second, this Court has already stated that the validity

*vel non* of plan amendments adopted by the Benefits Committee is part of the "case or

controversy" of the Consolidated Litigation.  Indeed, Luce himself, through counsel, has

previously told this Court that ULLICO's termination of benefits under the amendment at issue

in this case dealt with  "some of the issues before you."  Opp. at 14 (quoting Opp. Exhibit 15 at

7).  Third, ULLICO's first-filed claims in the Consolidated Litigation that are based on the plan

amendment at issue in this action include not only the claim for declaratory relief that Luce

claims is moot but also claims for damages and disgorgement against Luce, which Luce does not

challenge as moot.  Lastly, there is no merit to the notion that ULLICO is "estopped" from

requiring Luce to comply with the compulsory counterclaim rules simply because in ruling on

Luce's appeal to the current Benefits Committee, the Benefits Committee stated that it needed to

decide only whether the amendment at issue here was validly adopted and need not reach the

issue of whether that adoption constituted a breach of fiduciary duty on the part of Luce.

 The central issues in this case—the validity of these amendments and whether Luce's

conduct defeats in whole or in part the pension benefits he would otherwise be entitled to

receive—remain central issues in the Consolidated Litigation.  Accordingly, ULLICO's Motion to Dismiss should be granted, and this action should be dismissed in its entirety.

Alternatively, the Plan Administration Committee and its individual members should be dismissed as defendants in this action.  Count I fails to state a claim against the Committee or its members for the $100 per day penalty claimed by Luce, and the Committee and its members are surplus parties to Counts II and III since any relief Luce may be entitled to under those counts can be had from the Plan itself.  Accordingly, at the very least, the Committee and its members should be dismissed as parties to this action.

## ARGUMENT

### I.    THIS ACTION SHOULD BE DISMISSED IN ITS ENTIRETY

#### A.    This Court Previously Ordered That All Claims Within the Scope of the Consolidated Litigation be Pursued in the Consolidated Litigation

Luce argues that this Court's Consolidation and Scheduling Order "did not require Luce to appeal the denial of benefits by the Qualified Plan in the consolidated cases."  Opp. at 22. Luce is wrong.  Consolidated pleadings in the *In re ULLICO Inc.* actions were first suggested by ULLICO's counsel, and ordered by the Court, at a Status Conference held on April 25, 2005.  At the Court's direction, the parties prepared a draft Consolidation and Scheduling Order, and submitted it to the Court on May 12, 2005.  At a Status Hearing held on May 16, 2005, the parties and the Court discussed the parties' proposed order and, *inter alia*, what claims could properly be included in the consolidated pleadings previously ordered by the Court.  On May 20, 2005, the Plan Administration Committee denied Luce's benefits appeal.  Opp. Ex. 14.  On June 3, 2005, the Court entered its Consolidation and Scheduling Order.  That Order provides in pertinent part as follows:

      a.   <u>Consolidated Complaint</u>.  Joseph Carabillo, Robert Georgine, John Grelle and James Luce (hereinafter "the former officers") shall file a Consolidated Complaint on or before 20 days after the date of the entry of this Order *in which they shall assert all claims within the scope of the Carabillo I, Luce I, and Carabillo II actions they intend to pursue*, including any claims they intend to pursue that have been asserted in the original and amended complaints and claims they have or would assert in reply to the original and amended counterclaims already filed in those actions.

Consolidation and Scheduling Order at 3 (emphasis added).

Contrary to Luce's contention here, nothing in this Court's order limits claims that may be filed as part of the Consolidated Complaint to claims previously filed in the Consolidated Litigation.  In fact, the order expressly requires Luce to plead "all claims within the scope of the *Carabillo I*, *Luce I*, and *Carabillo II* actions [he] intend[s] to pursue." *Id.*  Indeed, the only limitations in the Order on the content of consolidated pleadings is that they be "within the scope of the *Carabillo I*, *Luce I*, and *Carabillo II* actions" and "consistent with the Court's prior rulings on the motions to dismiss filed in *Carabillo I*." *Id.* at 3, 4.

Luce contends that this Court "ordered that the consolidated complaint should include only '. . . any claims [the former officers] intend to pursue that have been asserted in the original and amended complaints and claims they have or would assert in reply to the original and amended counterclaims already filed in those actions.'" Opp. at 22 (quoting in part Consolidation and Scheduling Order at 3).  The problem with Luce's argument is that it only partially quotes the Court's Order.

In the immediately preceding clause of the order that Luce quotes, the Court ordered Luce to "assert all claims within the scope of the *Carabillo I, Luce I,* and *Carabillo II* actions [he] intend[s] to pursue." Consolidation and Scheduling Order at 3.  The validity of amendments adopted by the Benefits Committee is clearly within the scope of both *Luce I* and *Carabillo I*.

*See Luce I* Am. Compl. ¶¶ 21-23, 63 and Count I WHEREFORE ¶ (a); *Carabillo I* Am. Answer & Countercl. ¶¶ 68-71, 122-26; *Luce I* Answer & Countercl. at 2, ¶¶ 10-21; *Id.* Exhibit A hereto at 27-28. The same issue of the validity of plan amendments adopted by the Benefits Committee in general, and the very amendment at issue here in particular, is also indisputably within the scope of ULLICO's Counterclaim in *Carabillo II.* *See Carabillo II* Answer & Countercl. ¶¶ 19, 30.

Luce asserts that in the letter denying his benefits claim "the Committee clearly stated that the fiduciary duty breach alleged in *Carabillo II* was completely irrelevant to the issue presented in the denial of benefits appeal." Opp. at 13. *See also id.* at 22, 28. Luce is incorrect. What the Committee said was that it did not need to reach the issues of whether Luce violated his fiduciary duties (which would entitle ULLICO to damages or disgorgement) in order to resolve the narrower issue of whether the Qualified Plan had been validly amended in accordance with its terms. *See* Opp. Exhibit 14 at 7 n.4. Of course, as Luce recognizes, his failure to "act in accordance with the documents and instruments governing the Plans" in connection with the amendments is one basis for ULLICO's breach of fiduciary duty claims. *See* Opp. at 9 (citing *Carabillo II* Answer & Countercl. ¶ 16). But the mere fact that the Committee chose to reach only the preliminary issue of whether the Plan was properly amended, without reaching the next issue of whether Luce breached his fiduciary duties in voting for the amendment, does not mean the issues are "completely irrelevant" to one another. In fact, they are closely related and connected. In apparent recognition of this fact, at the April 25, 2005 hearing, Luce's counsel characterized ULLICO's reduction of his benefit level as an effort to "decide some of the issues before you for itself." Opp. at 14 (quoting Opp. Exhibit 15 at 7).

Luce's Opposition also references this Court's September 30, 2004 and March 29, 2005 orders which dismissed some of ULLICO's claims for lack of subject matter jurisdiction. *See* Opp. at 1, 6-8. Those orders are of no assistance to Luce here. In fact, as Luce acknowledges, those orders expressly held that claims involving the validity of amendments to the Qualified Plan were "'within the scope of the litigation because they appear to bear upon whether the counterclaim defendants can properly claim the retirement benefits to which they believe they are entitled.'" Opp. at 8 (quoting March 29, 2005 Memorandum Opinion and Order at 3).

Accordingly, since the claim asserted by Luce here is a claim "within the scope of the *Carabillo I, Luce I,* and *Carabillo II* actions," this Court's Order unambiguously required it to be brought, if at all, in the Consolidated Complaint; and this Court should look no further. Since Luce violated that order by filing this complaint, this action should be dismissed.

### B. This Court's Comments at a Hearing Prior to the Entry of the Consolidation and Scheduling Order Do Not Negate the Plain Language of that Order

Luce next invites this Court to look behind the clear language of its order because "at the Status Conference Hearing on May 16, 2005"—held two weeks *before* the Order was entered— the Court purported "specifically told counsel for the Defendants that any party seeking to assert additional or supplemental claims beyond those already filed would have to seek leave of Court to do so." Opp. at 22. Luce is wrong again. Because the comments of the Court at the May 16, 2005 hearing are the basis of Luce's suggestion that the plain language of the Court's subsequently-entered order be ignored, they require review in some detail here. In short, the courtroom exchange quoted by Luce occurred at the beginning of a relatively long exchange between the Court and counsel concerning the scope of the Court's consolidation order, and at the end of that exchange, the Court refused to qualify the broad language that appears in the order. Indeed, in response to a position taken by one of Luce's co-defendants, the Court

specifically rejected the notion, promoted by Luce here, that under the Consolidation Order

claims within the scope of the Consolidated Litigation but not yet asserted need not be asserted

in the consolidated pleadings.

The issue was initially addressed by the Court in response to counsel for Luce's request

that the Court allow the former officers to file additional motions to dismiss in response to

ULLICO's consolidated counterclaims:

> MS. WAHLE:  No, we understand that, but if
> ULLICO has not committed to asserting just the same
> counterclaims that they're already asserted.  If
> they assert new counterclaims, then, obviously,
> we'll want to reserve our option to challenge the
> legal insufficiency of any new counterclaims.
> THE COURT:  Well, I would have thought
> they'd have to seek leave to file new counterclaims
> at this point.  I mean at least that's what I would
> have thought.  So—
> MS. WAHLE:  There's a provision in the
> proposed order that states, essentially, that the
> new consolidated complaint and the new consolidated
> answer and counterclaim are deemed to have leave to
> amend.  So I--perhaps we should ask ULLICO that--but I read
> this as meaning they want the
> flexibility to add new counterclaims, and if they
> don't, that's wonderful.
> THE COURT:  Yes.  What I thought we were
> doing here was basically taking what we have
> already and boiling it down into, you know, into a
> consolidated format, not like we're adding more
> things in.  That's a whole different deal, and
> while I'm not saying, ruling, that if there's an
> absolute prohibition on adding things in, it would
> seem to me that coming up with adding new claims
> and new counterclaims at this point would have to
> be done in virtually the same way we would do it
> under any scenario, which is you have to seek leave
> of the court,  The other side would be in a
> position to oppose or vice versa, and then I'd have
> to make a ruling.
> Now, again, I'd rather not be in a
> position where I have to make more rulings on these

things, because we've already got plenty of that going on in this case.  But it just seems to me at this point that the effort to consolidate is to consolidate when it's already extant, not to add more things in to either side.  Just take what we got and get it all under, so to speak, one roof.

MS. WAHLE:  And if that's the case, Your Honor, I think the counterclaim defendants have no intention of asserting additional arguments for insufficiency that they have not already.  But perhaps ULLICO, when they come up here, can address whether they intend to add any new claims.

Opp. Exhibit 16 at 14-16.

The Court then invited counsel for ULLICO to address the issue, and ULLICO's counsel indicated that although he expected there would be some "tweaking at the margins," ULLICO did not then anticipate filing any counterclaims that had not "been previously exposed" in the pending actions:

Mr. Hill, are you still in the batter's box here?  Come on up.

MR. HILL:  I think I'll be on deck most of the day today, Your Honor.  We don't presently intend to assert new theories that we haven't previous asserted.  There may be some tweaking at the margins in terms of, you know, precisely which defense is and so forth, but we're not expecting to truck in a whole set of new counterclaims at this point.

THE COURT:  You'd have to file for leave of the court to do it.

MR. HILL:  Yeah.  The one exception, I suppose, would be Luce 2, where as of yet there's been no answer.  So we could still, technically, amend under Rule 15 until that's answered.  But as far as the other three, at this point I don't think we anticipate pleading any new counterclaims that haven't been previously exposed.

*Id.* at 16-17.

More relevant to Luce's argument here, ULLICO's counsel then proceeded to clarify, however, that certain benefits claims that had not been previously-filed, in particular those of Counterclaim Defendant Robert Georgine, would now in fact be required to be filed under the Consolidation and Scheduling Order:

> [MR. HILL: ] If I may, I did have one question for the court in light of your ruling.
> THE COURT:  Go ahead.
> MR. HILL:  With respect to denying Mr. Georgine's motion to dismiss, we had proposed that Mr. Georgine also be required to file any further claims--
> THE COURT:  Under the motion to stay.
> MR. HILL:  I'm sorry, motion to stay, I beg your pardon.  That's what I meant to say, it just came out the wrong way.
> THE COURT:  Motion to stay.
> MR. HILL:  Since that motion has been denied, we would also request at this point that Mr. Georgine assert any affirmative claims for benefits that he intends to assert, and that's what we'd put in the proposed order as well.
> THE COURT:  Where did you put that?
> MR. HILL:  That's under--on page 3, paragraph 3-A.
> THE COURT:  3-A.  This footnote 4 thing here?
> MR. HILL:  Correct, Your Honor.
> THE COURT:  Well, yeah.  I mean I would--it seemed to me that if I deny the--once I denied the stay, this, you'd have to join in with everybody else, so to speak.
> MR. HILL:  Thank you.
> THE COURT:  To move things forward, so, yeah, that makes perfect sense.

*Id.* at 17-18.

At the close of the hearing, Mr. Georgine's counsel suggested to the Court, as Luce does here, that the Consolidation and Scheduling Order as drafted was inconsistent with the Court's statements at the hearing.  In particular, Mr. Georgine's counsel asked the Court to rule that,

notwithstanding the express language of paragraph 3(a) of the Consolidation and Scheduling

Order, Mr. Georgine was not required to file benefits claims he had not previously filed.

>MR. ERMAN:  Your Honor, one last
clarification on 3-A.  It's my understanding that
Your Honor was saying that through 3-A no new
claims would have to be required to be brought, and
that you were just wanting everything filed,
refiled that has been filed.  So I just wanted to
clarify that Mr. Georgine did not have to bring any
affirmative claims that he was going to bring at
this time until after ULLICO reasserted their
counterclaims.
>THE COURT:  Right, well, they haven't
asserted their counterclaims yet, then there's
nothing he can do at this point, right?
>MR. ERMAN:  Right.  Mr. Georgine never
asserted any affirmative claims, and the way that
would read that they have, if you took the brackets
out, is that Mr. Georgine would be forced to bring
an affirmative claim that he's never brought before
seeing what claims that ULLICO has brought against
him.
>THE COURT:  Where are you looking at,
exactly?
>MR. ERMAN:  3-A.  It's the first sentence,
Joseph Carabillo, Robert Georgine--some of the
other counterclaim defendants have actually brought
affirmative claims, and so that's why they would be
included in there to reassert those affirmative
claims.  But we feel that Mr. Georgine shouldn't be
made to bring any affirmative claims that he hasn't
already asserted, especially without seeing what
claims ULLICO may bring.
>THE COURT:  If he hasn't asserted any
already, then what is there for him to be put in
here at this point?
>MR. ERMAN:  I agree.  I just wanted to
clarify that he wasn't being forced to bring that.
>THE COURT:  Well, it's only to the extent
he's already asserted them.
>MR. ERMAN:  Okay.  I just wanted--
>THE COURT:  The idea here is this is a
consolidation of what's already been done.
>MR. ERMAN:  Right.

> THE COURT:  So if he hasn't done it yet--
> MR. ERMAN:  Right.
> THE COURT:  --then there's nothing for him
> to be consolidating, so to speak.
> MR. ERMAN:  Okay.  Thank you.
> THE COURT:  Does that make sense?
> MR. ERMAN:  Yes.

*Id.* at 59-61.

The Court then focused on the purpose of the broader language of the order after hearing

from ULLICO's counsel:

> MR. HILL:  Your Honor, could I--
> THE COURT:  Mr. Hill, doesn't that make
> sense to you, too?
> MR. HILL:  Well, here's the reason why,
> Your Honor.  When Your Honor ruled on Mr.
> Georgine's motion to dismiss our counterclaim, Mr.
> Georgine chose not to file a reply, as he was
> required to do by the rules.  And at that point he
> would have been required to assert any
> counterclaims that he was going to assert in this
> action.  He instead filed a motion to stay.
> At this point, he's technically in default
> on the counterclaims.  And we think it would be
> appropriate if Mr. Georgine is going to bring any
> affirmative claims for benefits, and he's
> previously written ULLICO asserting that he will do
> so, that he do so as part of the consolidated
> complaint.
> Mr. Carabillo--
> THE COURT:  He's going to bring them
> anyway, you mean?
> MR. HILL:  Yeah.  I mean Mr. Carabillo,
> Mr. Grelle, and Mr. Luce have all previously made
> benefits claims in these actions.  We assume Mr.
> Georgine is going to do so, and we don't see any
> reason why he should wait to do so.  We ought to
> have all the benefits claimants in a single
> consolidated complaint, and that's the way we've
> styled the order, and that's what we'd like Mr.
> Georgine to do.

*Id.* at 61-62.

The Court ultimately ruled, consistent with the language of the draft Consolidation and Scheduling Order proposed by ULLICO, that Mr. Georgine was required to plead in the Consolidated Complaint any claims he intended to bring against ULLICO whether or not they had been previously plead:

> THE COURT:  Well if he--is he going to do it anyway?
>
> MR. ERMAN:  Your Honor, Mr. Georgine may assert claims, but without know what claims will be compulsory in this action, I don't see why he would have to bring any claim that he has against ULLICO. And to touch on what he said about the default, I mean we filed a motion to stay.  We have a pending motion dismissed in Carabillo 2.  That's the reason why there's been no answer filed.  Your Honor has made or is about to make an order to go back and refile the affirmative claims, refile ULLICO's counterclaim.  We just believe that we shouldn't be made to be thrown into the pot of affirmative claims when we've never made them before.  We'll assert whatever counterclaims--
>
> THE COURT:  Now that the stay's--now that your stay's been denied, aren't you going to be filing them anyway?
>
> MR. ERMAN:  But they would be counterclaims, or responses to ULLICO's counterclaim.  There wouldn't be--there wouldn't need to be affirmative claims.  I mean we don't know whether it's going to be compulsory without looking at ULLICO's counterclaim, Your Honor.
>
> THE COURT: Okay.  Are you going to be making any claims against ULLICO?
>
> MR. ERMAN:  We possibly will.
>
> THE COURT:  Well, why won't you just do it all at once, then?  How's it going to harm you to do it all at once?  Everyone else has filed theirs, right?
>
> MR. ERMAN:  Well, two of the counterclaims defendants have filed affirmative claims.
>
> THE COURT:  Well, why can't you file yours?  Just work it all in at once, get it done.
>
> MR. ERMAN:  Your Honor, we could file

those, I mean as--

THE COURT:  How are you going to be harmed if you do it?

MR. ERMAN:  There may be claims that we don't want to bring, that aren't compulsory.  We don't know what is compulsory in this court without seeing what claims ULLICO's brought.

THE COURT:  Maybe I'm confused, or maybe you're confused, or maybe we're both confused.  I don't know what it is.

MR. ERMAN:  We just don't believe that we should be made--

THE COURT:  If you have any affirmative claims, just stick them in at the same time as this is all being done.  It's a consolidated complaint. Just stick them in there.

MR. ERMAN:  Okay.

*Id.* at 62-64.

The Court's ruling requiring Mr. Georgine to bring benefits claims he had not previously filed is dispositive of Luce's claim that he was not required to bring the claim he now brings here.  Thus, under both the plain language of the Court's Order and the totality of its comments at the hearing, it is clear that Luce was required to bring the claim he now brings here in the District of Columbia since it is "within the scope of the *Carabillo I*, *Luce I*, and *Carabillo II* actions."  Since Luce failed to obey that order, this action should be dismissed.

### C.    The Prior Rulings of the Eastern District Also Support Dismissal

Although we did not rely upon it in our opening brief, Luce also asserts that Judge Ellis' Order transferring *Luce I* to this Court somehow counsels against granting the motion to dismiss here because that order "did not direct and could not have required Luce to file a claim for benefits against the Qualified Plan, that did not yet exist, in the United States District Court for the District of Columbia" since "[t]he Qualified Plan and the Plan Administrative Committee were not parties to *Luce I*."  Opp. at 21.  We disagree.  While Luce is technically correct that the Qualified Plan and the Committee were not parties to *Luce I*, Luce ignores the fact that one of

the reasons underlying Judge Ellis' decision to transfer *Luce I* was that the issue of whether the

Benefits Committee had the authority to amend the Qualified Plan, and, consequently, whether

such amendments adopted by the Committee were therefore invalid as to Luce, were central

contentions in both *Luce I* and *Carabillo I*.  *See Luce I* Am. Compl. ¶¶ 21-23, 63 and Count I

WHEREFORE ¶ (a); *Carabillo I* Am. Answer and Countercl. ¶¶ 68-71, 122-26; *Luce I* Answer

& Countercl. at 2, ¶¶ 10-21.  Moreover, in making his prior ruling Judge Ellis expressly

recognized the judicial economy of consolidating the benefits claims of the former officers.  As

Judge Ellis put it:

> I think [the former officers] should all be consolidated in the
> District of Columbia, and tried there, all of them.  All four, if they
> think they are entitled to benefits, all four, if the defendants think
> they are not entitled to benefits, either for some reason having to
> do with the plan or, as Mr. Trenga argues, independently because
> they engaged in breaches of fiduciary duty and, therefore, are
> independently liable to the company for those tortious acts,
> independent, as he says, of any plan obligation to these defendants
> for their retirement.

Exhibit A hereto at 27-28.  This Court ultimately reached the same conclusion in entering the

Consolidation and Scheduling Order.

Luce also argues that the instant motion should be denied because it "has already been

denied by Judge Hilton of the Eastern District of Virginia."  Opp. at 1.  *See also* Opp. at 21.

While Luce is obviously correct that Judge Hilton transferred this action rather than dismissing it

as ULLICO had requested, it is apparent from the transcript of the argument before Judge Hilton

that he agreed with ULLICO that this action should have been brought in this Court as part of the

Consolidated Litigation.

> THE COURT: I understand your position, but I believe this
> is part and parcel of what's going on over in D.C.  And I believe
> this ought to be transferred over there.  I believe this is the exact
> issue that that Court is looking at.

> Hopefully now that you are to discovery, why this claim
> will move right along and you can get it heard.  And maybe they
> can give you a summary judgment, who knows.  I don't know.
>      MR. SCULLY: I want something to happen.
>      THE COURT: I believe this is the exact issue that's over in
> D.C. . . .

Exhibit B hereto at 12.  Accordingly, ULLICO's Motion to Dismiss should be granted.

### D.    Luce's Claims Are Compulsory Counterclaims to ULLICO's Consolidated Counterclaim

Luce concedes that the "logical relationship" test of *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 625 (D.C. Cir. 1975) governs the compulsory counterclaim inquiry here, and further concedes, as he did in his prior briefing in the Eastern District, that "it may be argued that a logical relationship exists between the claim and counterclaim because both address the validity and consequences of invalidity of the 2.5% contribution rate amendment." Opp. at 24.  Luce insists, however, that "the degree of that logical relationship does not support a finding that Luce's claim should have been a compulsory counterclaim to the Consolidated Counterclaim." *Id.*  Luce advances several arguments in this regard, none of which have merit.

First, Luce agues that "[t]his action does not duplicate related litigation pending in this Court," because "[t]his appeal of a 'Plan interpretation' by the Qualified Plan Administrator is not part of the case or controversy pending before this Court."  Opp. at 1.  As an initial matter, Luce's argument ignores the fact that this Court has previously held that ULLICO's *Carabillo I* counterclaims contending that benefits could not be paid to Luce under the Auxiliary Plan because the Qualified Plan was not properly amended by the Benefits Committee "are part of the same 'case or controversy' as Carabillo's claims" for benefits under those same plans. *See* Opp. Exhibit 2 at 17.  Luce's argument likewise ignores Judge Hilton's ruling that this action "is part and parcel of what's going on over in D.C." and "is the exact issue that that Court is looking at." Exhibit B hereto at 12.

Moreover, Luce's argument rests on a hyper-technical view of the claims asserted by ULLICO before the Court. Luce attempts to elevate form over substance by arguing that since ULLICO is bringing a breach of fiduciary duty claim while he is bringing a benefits claim the claims are unrelated. ULLICO acknowledges that Luce claims an entitlement based on certain conduct –his amendment of the plan, while ULLICO asserts claims of tortious conduct and consequent damages and set-offs against Luce based on the same conduct. These claims are, as we said in our opening brief, "mirror images" of one another since they both involve the same central inquiry—namely whether the Benefits Committee had the authority to amend the Qualified Plan. If, as Luce contends, the Benefits Committee had the authority to amend the Qualified Plan, then the amendments would be validly adopted and Luce would be (barring some other breach of fiduciary duty or right of offset) entitled to benefits based on the amendments. However, if, as ULLICO contends, the Benefits Committee did not have the authority to amend the Qualified Plan, then the amendments would not be validly adopted, Luce would have breached his fiduciary duty to "act in accordance with the documents and instruments governing the Plans" by voting for the amendments, and Luce would not only not be entitled to benefits based on the amendments, but would also be liable to ULLICO for damages and disgorgement.

Second, Luce argues that the compulsory counterclaim rule does not apply because ULLICO's "self-help benefit reduction" "mooted the sole declaratory judgment and breach of fiduciary duty counterclaims related to the Qualified Plan." Opp. at 1-2. *See also id.* at 24. Luce is incorrect. Count I of ULLICO's operative Consolidated Counterclaim seeks relief related to the Qualified Plan amendments in the form of (1) a declaration that the October 20, 1999 and July 24, 2001 amendments to the Qualified Plan are invalid as to all four former officers, (2) damages, indemnification and set-offs for all losses sustained by the Qualified Plan,

and (3) disgorgement of all benefits received from the Qualified Plan in violation of the four former officers' fiduciary duties. Consolidated Countercl. ¶ 110, WHEREFORE ¶ 1. Count V seeks similar relief regarding the same amendments and the Auxiliary Plan. *Id.* ¶ 142, WHEREFORE ¶ 5.

While ULLICO has terminated Luce's benefits under the July 24, 2001 amendment, the validity of that amendment with respect to future benefits claimed by Luce, Carabillo and Grelle remains live and pending before the Court. In addition the Court will need to determine the validity of that amendment, ULLICO's determination notwithstanding, in adjudicating ULLICO's claims for the damages caused by the amendments and for disgorgement of benefits previously received in connection with the amendments, and, if so, in what amounts. Moreover, the validity of the October 20, 1999 amendment, whose validity present the same issues as the July 24, 2001 amendments, remains pending before the Court for the same three former officers. All of these requests for relief, which all involve the authority of the Benefits Committee to amend the Qualified Plan, remain live and pending before the Court. Accordingly, ULLICO's claims regarding the amendments in the Consolidated Litigation are not moot, and this action is a compulsory counterclaim to ULLICO's Consolidated Counterclaim.

Third, Luce contends that "the issues of fact and law" are not the same. Opp. at 24. However, as demonstrated above, a central issue common to both cases is whether the Benefits Committee had the authority to amend the Qualified Plan, and Judge Hilton has already found that this case "is part and parcel of what's going on over in D.C." and "is the exact issue that that Court is looking at," Exhibit B hereto at 12. Luce also argues that "the issues of fact and law raised by Luce's claim are heavily constrained." *Id.* at 25. Whatever is intended by that

statement, the issue of whether the Benefits Committee had the authority to amend the Qualified Plan is present in both actions and constitutes a common issue of fact and/or law.

Fourth, Luce contends that "the same evidence will not support or refute the Qualified Plan's claim against Luce for breach of fiduciary duty and Luce's claim that the Plan Administrator's interpretation was invalid" because "[t]he Qualified Plan's breach of fiduciary duty claim depends upon proof that Luce was engaged in self-dealing instead of acting in the interest of Plan participants when he voted to adopt the Plan amendment." Opp. at 26. Luce's argument overlooks the fact that, although there will indeed be evidence of self-dealing, there will also be evidence that Luce breached his fiduciary duty to "act in accordance with the documents and instruments governing the Plans" by voting for the amendments. *See* Consolidated Countercl. ¶¶ 96, 99. This latter aspect of ULLICO's breach of fiduciary duty claim will require precisely the same evidence as Luce's challenge of "the Plan Administrator's written Opinion that the putative amendment did not comply with the Plan's procedures for adopting amendments." Opp. at 26. Thus, substantially the same evidence will support or refute Luce's claims in this action as well as the Consolidated Counterclaim.

Fifth, Luce argues that "[n]o decided case shows support for the argument that a claim against a party in his capacity as an alleged ERISA Plan fiduciary would be *res judicata* in an action in which the same individual sought benefits as a Plan participant." Opp. at 25. However, in this Circuit it is not necessary to find that *res judicata* would "bar a subsequent suit on the claim absent the compulsory counterclaim rule." *Id.* Rather, the compulsory counterclaim rule is triggered whenever there is a "'logical relationship' between the two actions." *Columbia Plaza Corp.*, 525 F.2d at 625.

Sixth, Luce argues that "the Plan and Plan Administrator are judicially estopped from asserting that Luce's claim is a compulsory counterclaim." Opp. at 2. *See also id.* at 27-29. As an initial matter, the D.C. Circuit has repeatedly "conclude[d] that the judicial estoppel doctrine has no vitality in this jurisdiction." *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980). *See also Southern Pac. Transp. Co. v. Interstate Commerce Comm'n*, 69 F.3d 583, 591 n.3 (D.C. Cir. 1995) ("This court . . . has firmly disapproved of judicial estoppel in prior cases."); *United Mine Workers 1974 Pension v. Pittston Co.*, 984 F.2d 469, 477 (D.C. Cir. 1993) ("we have not previously embraced the doctrine of judicial estoppel in this circuit"). Moreover, this argument is based entirely on Luce's contention that "[t]he Plan Administrator's Opinion" "clearly stated that the Plan interpretation decision was completely unrelated to allegations of ERISA fiduciary misconduct." Opp. at 27. Since, as demonstrated above, this contention is incorrect, Luce's judicial estoppel argument is also without merit.

What should be clear is that, were this action to proceed separately from the Consolidated Litigation, it would be necessary for this Court to pass in both sets of actions on these same issues regarding whether the Benefits Committee had the authority to amend the Qualified Plan generally, and in connection with the July 24, 2004 amendment in particular, and whether Luce's conduct defeats his pension benefits, in whole or in part. Accordingly, because there is clearly a "'logical relationship' between the two actions," *Columbia Plaza Corp.*, 525 F.2d at 625, this action should be dismissed as a compulsory counterclaim to ULLICO's Consolidated Answer and Counterclaim.

## II.    THE AMENDED COMPLAINT SHOULD ALSO BE DISMISSED AS TO THE COMMITTEE AND COMMITTEE MEMBERS

### A.    Count I Fails to State a Claim Against the Committee or Its Members

In our opening brief we demonstrated that Count I fails to state a claim because, as courts have uniformly held, ERISA § 502(c) penalties do not apply to information required to be disclosed under ERISA § 503 because § 503 imposes duties on the plan, not the plan administrator.  In response Luce invites this Court to hold that those cases were wrongly decided, and that he may nonetheless recover $100 per day from the individual committee members for their alleged violation of ERISA regulations.  Opp. at 30-32.  In particular, Luce urges the Court to adopt the view that by imposing personal liability of $100 per day on the individual members of  Plan Administration Committee for their alleged violation of an ERISA regulation, the Court would be fashioning a remedy for an injury to Luce rather than imposing a penalty on the individual committee members for their alleged violation of regulations.  *Id.* at 32-33.  Luce's argument is nonsense.

If, as Luce contends, § 503 was meant to compensate a wronged beneficiary, one would think Congress would have allowed courts to select a remedy reflecting the actual injury to the beneficiary rather than selecting an arbitrary amount of $100 per day.  Similarly, if Congress' intent were remedial rather than penal, there would be no need for the Court to assess the $100 per day amount against the administrators personally (as Luce requests here) as it would make no difference to the beneficiary where the money came from.  Thus, it is much more likely "that the threat of personal liability was imposed primarily because of the effect it would have on a plan administrator -- inducing him to comply with the statute -- and only secondarily, if at all, out of a desire to make participants whole for the 'damages' they incurred as a result of the plan administrator's failure to fulfill the obligations ERISA imposes upon him." *Groves v. Modified*

*Retirement Plan for Hourly Paid Employees of the Johns Manville Corp.,* 803 F.2d 109, 117 (3d Cir. 1986).  Moreover, if a benefits claimant like Luce "believed that the remedy in § 502(c) was supposed to compensate him for injuries, he would likely have made some attempt to demonstrate the extent of those injuries."  *Id.*  Here, Luce's Amended Complaint does not in any way allege that Luce has been harmed at the rate of $100 per day.  Accordingly, because section 502(c) "authorizes penalties only for an administrator's refusal to comply with a request for information required to be furnished by 'this subchapter,' 29 U.S.C. § 1132(c), the sanctions imposed by that section may not be imposed for the violation of an agency regulation." *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996) (citing *Groves*, 803 F.2d at 118).

Luce cites *Stone v. Travelers Corp.*, 58 F.3d 434, 438-39 (9th Cir. 1995) for the proposition that that the $100 per day assessment is not a penalty.  However, a close reading of that case reveals that it is not on point here because *Stone* was addressing only whether the § 502(c) assessment was a "'penalty or forfeiture' within the meaning of the California statute of limitation," rather than whether a § 502(c) assessment could be made for a violation of ERISA regulations.  *Id.* at 438.  Moreover, the decision in *Stone* was "dictated" by a prior decision of the Ninth Circuit which had "held that the test under California law for whether a recovery was a 'penalty' was 'whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual.'" *Id.* (quoting *Rivera v. Anaya*, 726 F.2d 564, 567 (9th Cir. 1984)).  Applying that test, the Ninth Circuit in *Stone* then reached the seemingly obvious conclusion that, because the $100 per day was paid to the individual beneficiary rather than the state, it was not a "penalty or forfeiture" for the purposes of California's statute of limitation.  *Id.* at 438-39.  Accordingly, *Stone* is of little value here.  Furthermore, for what it is worth, other courts considering the same

issue as *Stone* under different state statutes of limitation have disagreed with *Stone*, and held that § 502(c) is more appropriately viewed as a "penalty." *See, e.g., Adams v. Cyprus Amax Mineral Co.*, 44 F. Supp. 2d 1126, 1140 (D. Colo. 1999) ("I regard the penalties under § 1132(c) as penal."); *Harless v. Research Inst. of Am.*, 1 F. Supp. 2d 235, 240 (S.D.N.Y. 1998) ("the Court finds that plaintiff's claim under § 1132(c) is more analogous to an action for civil statutory penalties than one for breach of contract.").

Indeed, notwithstanding *Stone*, courts have continued to hold as recently as May of this year that "a violation of ERISA's implementing regulations cannot support the imposition of sanctions under section 1132, regardless of whether the implementing regulations place the burden of disclosure on the plan or the plan administrator." *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 10647, *13 (S.D.N.Y. May 31, 2005). Accordingly, this Court should dismiss Count I for failure to state a claim against the Plan Administration Committee and its individual members.

### B.    Counts II and III Should be Dismissed as to the Committee or Its Members

Luce correctly acknowledges the split in the circuits regarding the propriety of naming plan administrators as defendants in benefits claims. Opp. at 34. Luce presents no rejoinder to the argument, however, that, since he has named the Plan as a defendant, there is no need for the administrator to be a defendant as well. Accordingly, since Luce can get whatever relief he may be entitled to from the Plan itself under ERISA § 502(d), the Court should dismiss the Plan Administration Committee and its members as surplus parties to this action.

22

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Dated: November 23, 2005

MILLER & CHEVALIER CHARTERED

_____/s/_____
James A. Bensfield (DC Bar #189-084)
Anthony J. Trenga (DC Bar #218255)
Mark J. Rochon (DC Bar #376042)
Brian A. Hill (DC Bar #456086)
Matthew T. Reinhard (DC Bar #474941)
MILLER & CHEVALIER, CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Telephone: (202) 626-5800
Facsimile: (202) 628-0858
Email:  atrenga@milchev.com
Attorneys for the Defendants