IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAMES W. LUCE,                        )
                                      )
                   Plaintiff,         )
                                      )
     v.                               )        CIVIL ACTION
                                      )
UNION LABOR LIFE AUXILIARY            )        03-1014-A
RETIREMENT BENEFITS PLAN, et al.,     )
                                      )
                   Defendant.         )
_____)

REPORTER'S TRANSCRIPT

MOTIONS HEARING

Friday, November 21, 2003

---

BEFORE:       THE HONORABLE T.S. ELLIS, III
              Presiding

APPEARANCES:  ROBERT SCULLY, ESQ.

                   For the Plaintiff

              ANTHONY J. TRENGA, ESQ.
              MATTHEW REINHARD, ESQ.

                   For the Defendant

---

MICHAEL A. RODRIQUEZ, RPR/CM/RMR
Official Court Reporter
USDC, Eastern District of Virginia
Alexandria Division

1                                    INDEX

2

3    RECAPITULATION BY THE COURT                              3

4

     COURT QUESTIONS / ARGUMENT BY THE DEFENDANT             4

5

6    ARGUMENT BY THE PLAINTIFF                               16

7

     ARGUMENT BY THE DEFENDANT                               22

8

9    RULING BY THE COURT                                     25

10

     FURTHER ARGUMENT BY THE PLAINTIFF                       29

11

12            (Court recessed)

13

                                 - - -

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
 1                        PROCEEDINGS

 2

 3             (Court called to order in Luce v. ULLARBP)

 4             THE CLERK:  Civil Action Number 03-1014-A,

 5   James W. Luce versus the Union Labor Life Auxiliary Retirement

 6   Benefits Plan, et al.

 7             Will counsel please note your appearances.

 8             THE COURT:  Who is here for the plaintiff?

 9             ATTORNEY SCULLY:  Good morning, your Honor.

10   Robert Scully for the plaintiff, James Luce.

11             THE COURT:  All right.  Good morning, Mr. Scully.

12             Mr. Trenga, you are here for the defendants.

13             ATTORNEY TRENGA:  The defendants and the

14   counterclaim plaintiffs.  And also with me is my cocounsel,

15   Matthew Reinhard.

16             THE COURT:  Who will argue today?

17             ATTORNEY TRENGA:  I will, your Honor.

18             THE COURT:  All right.

19                  RECAPITULATION BY THE COURT

20             THE COURT:  The last brief in this matter, I

21   think, came from the plaintiff.  In essence, this is a request

22   for the entry of a preliminary injunction to preclude the

23   defendants from prosecuting a counterclaim in a related D.C.

24   action.

25             You may be seated.  I am going to summarize,
</pre>

1  essentially.  And in any event, I think you filed the later,

2  brief, didn't you Mr. Scully?

3  　　　　　ATTORNEY SCULLY:  I did, your Honor.

4  　　　　　THE COURT:  I am going to hear from Mr. Trenga

5  first, anyway.  But you have the burden, so you will have the

6  last word.

7  　　　　　This action is an action for a certain payments

8  that the plaintiff alleges are due to him relating to his

9  employment.  There is a counterclaim in the District of

10  Columbia, in which the defendants, which are Benefits Plan,

11  they raise a number of claims against the plaintiff relating

12  to the Deferred Compensation Plan and to the Auxiliary

13  Retirement Benefits Plan.  Those are the claims.

14  　　　　　Mr. Trenga, let me begin with some questions, so

15  that I can clarify the procedural context.

16  　　　　　COURT QUESTIONS OF THE DEFENDANTS

17  　　　　　THE COURT:  First of all, the Carabillo action

18  was filed in the District of Columbia on July 18th; is that

19  right?

20  　　　　　ATTORNEY TRENGA:  Yes, your Honor.

21  　　　　　THE COURT:  And Mr. Carabillo, like Mr. Luce, the

22  plaintiff here, is a senior officer of the plan, or the union.

23  　　　　　ATTORNEY TRENGA:  He is a former senior officer

24  of ULLICO, Inc., and the related subsidiary, the Union Labor

25  Life Insurance Company.

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

```
 1              THE COURT:  All right.

 2              ATTORNEY TRENGA:  He also served on the Benefits

 3    Committee, which was a fiduciary with respect to the plans.

 4              THE COURT:  So, Carabillo filed an action in the

 5    District of Columbia seeking his retirement benefits.

 6              ATTORNEY TRENGA:  Yes.

 7              THE COURT:  And that's essentially what Mr. Luce

 8    seeks here.

 9              ATTORNEY TRENGA:  Yes.

10              THE COURT:  Now, the defendants in the D.C.

11    action are identical to the defendants here.

12              ATTORNEY TRENGA:  The counterclaim defendant --

13    uhm -- (pause)

14              THE COURT:  Well, The defendant here --

15              ATTORNEY TRENGA:  Yes, at this point they are,

16    with the amended complaint that was filed here, that's

17    correct.

18              THE COURT:  It's the Union Labor Life Auxiliary

19    Retirement Benefits Plan, the Nonqualified Deferred

20    Compensation Plan for ULLICO, and the Union Labor Life

21    Insurance Company itself, and ULLICO, Inc.  Those are the

22    defendants, are they not?

23              ATTORNEY TRENGA:  Yes.

24              THE COURT:  And the counterclaim plaintiffs, you

25    added Mark Singleton is a plan administrator, and an
```

1    Auxiliary Retirement Benefits Plan.

2             ATTORNEY TRENGA:  Yes.

3             Your Honor, may I correct myself?  The defendants

4    in the Carabillo action are not the same as the defendants in

5    this action.  The defendant in the Carabillo action is solely

6    ULLICO, Inc.

7             THE COURT:  So it's Carabillo against ULLICO,

8    Inc., the company, for retirement benefits.

9             ATTORNEY TRENGA:  Yes.  We have joined as

10   counterclaim defendants a number of defendants that line up

11   with the defendants that are the defendants in this action.

12            THE COURT:  All right.

13            Now, just give me a brief capsule description of

14   the counterclaim, counterclaims in the Carabillo action, and

15   then tell me why you think they are the same as the

16   counterclaims that are going to be raised here.

17            ATTORNEY TRENGA:  Yes, your Honor.  There are 3

18   categories of counterclaims in the Carabillo action.  One

19   relates to benefits under what's called the Auxiliary Plan,

20   which is the top hat plan.

21            The second category is benefits under the

22   Deferred Compensation Plan, which is also a top hat plan.

23            And the third category is for disgorgement of

24   stock profits that were realized through redemptions of stock

25   under certain programs that were -- that took place roughly

1  during the period 2000 to 2001.

2          THE COURT:  What is the business of ULLICO?

3          ATTORNEY TRENGA:  It -- ULLICO, Inc., is a

4  holding company.  Its primary subsidiary is the Union Labor

5  Life Insurance Company, which is a -- both a life insurance

6  company and they have other casualty lines of insurance.

7          THE COURT:  And what is it that ULLICO and the

8  plans contend that Mr. Luce did and Mr. Carabillo did?

9          ATTORNEY TRENGA:  With respect to the stock

10  profits claim, disgorgement of stock profits claim, the claim

11  is that they engaged in transactions that were the result of

12  breach of fiduciary duty, either on behalf of themselves or

13  others, and they benefited unjustly from those stock

14  transactions, to benefit them either disproportionately

15  relative to other shareholders that were participating in the

16  redemption, or simply by way of insider stock transactions

17  that were tainted under the circumstances.

18          THE COURT:  And I take it in your counterclaim in

19  Washington, you've alleged that Carabillo quo did this, in at

20  least some of the counts, in concert with Luce.

21          ATTORNEY TRENGA:  We have not alleged a formal

22  concerted action claim, but we have alleged aiding and

23  abetting, and they certainly all participated in the same --

24  roughly the same programs during the same period of time.  And

25  the four senior officers in the company certainly coordinated

1  their efforts.

2          THE COURT:  Who were the other two, other than

3  Carabillo and Luce.

4          ATTORNEY TRENGA:  Robert Jorgine (phonetic), who

5  at the material times was the chairman of the board, president

6  and CEO -- he has held all three positions --

7          THE COURT:  And in your counterclaim in

8  Washington, you have added him?

9          ATTORNEY TRENGA:  Yes.

10          And also Mr. Grelly, who was the chief financial

11  officer.

12          THE COURT:  And you have added him.

13          ATTORNEY TRENGA:  Yes.

14          THE COURT:  So, am I correct that if you were

15  asked to distill this matter to its essence, it is that these

16  individuals want their retirement benefits after being either

17  fired or asked to leave, or whatever it is, and the company is

18  angry at them for self-interested dealings and breaches of

19  fiduciary duties that they did in connection with various

20  plans, and that they would assert those counterclaims against

21  each of these individuals in the event any of these

22  individuals sued for retirements benefits?

23          ATTORNEY TRENGA:  The linkage is not precisely

24  correct, your Honor.  We have -- ULLICO has claims against

25  each of these officers for improper stock profits arising out

1   of certain transactions.

2          We are not resisting -- we are not contending

3   that they are not entitled to the benefits under either of

4   these retirement plans, under the terms of these retirement

5   plans, purely by -- or simply by virtue of those tainted stock

6   transactions.  We have other defenses that are separate and

7   apart from those transactions to those claims for benefits.

8          THE COURT:  Well, I take it that you would also

9   tell the Court that if this case were to proceed, of course

10  there would be the counterclaims that you would -- well,

11  essentially similar to the Carabillo counterclaims; is that

12  right?

13         ATTORNEY TRENGA:  In this court?

14         THE COURT:  Yes.

15         ATTORNEY TRENGA:  With the exception of the stock

16  profits claims.

17         THE COURT:  So, you would say that -- and I think

18  Mr. Scully would agree -- that the same evidence, at least in

19  part, will be heard.

20         ATTORNEY TRENGA:  As to the benefits claims, yes,

21  your Honor.

22         And that's -- if I might just observe on this

23  point --

24         THE COURT:  Yes.

25         ATTORNEY TRENGA:  -- and that is the fallacy of

1  Luce's position with respect to the compulsory counterclaim.

2      In his reply, where most of his arguments are

3  made for the first time as to why this is a compulsory

4  counterclaim here, and he therefore is entitled to an

5  injunction with respect to the D.C. action, is based on the

6  false premise that the fiduciary duty breach claim that we are

7  asserting as a defense to the benefits claim is inseparable or

8  the same as the breach of fiduciary duty claim that forms the

9  basis for the stock profits claim.

10      That is not the case.  They are separate and

11  apart.  The claim for benefits and the defenses to the claim

12  for benefits can be adjudicated and go to judgment without

13  necessarily proving anything pertaining to the stock -- the

14  stock transactions that are the core of the stock profits

15  claim.

16      If I may give the Court a chronology of really

17  what's involved here.  The benefits claim as to the Auxiliary

18  Plan revolves around the validity of an amendment of that plan

19  that was passed by -- that was adopted by these former

20  officers in October of 1999.

21      The benefits or their entitlement to benefits, or

22  their lack of entitlement to benefits, will primarily revolve

23  around the validity of that amendment that they adopted in

24  their capacity as fiduciaries of that plan.

25      The plaintiffs do not claim in any respect that

1   they are entitled to benefits by virtue of the stock

2   transactions that relate to the disgorgement of stock profits

3   claims, nor are we defending their entitlement to benefits

4   under the Auxiliary Plan by virtue of the conduct with

5   reference to the stock transactions.

6        Likewise, with respect to the deferred

7   compensation plan, we are defending -- the plaintiffs are

8   seeking benefits under the terms of that plan.  We are

9   defending against the benefits they are seeking under that

10  plan, on the basis of their exploitation of a windfall

11  opportunity to manipulate investment decisions within that

12  plan, while they were fiduciaries of that plan, without

13  disclosing those activities, and the windfall investment

14  results that they were achieving under that plan, to either

15  the board or the shareholders.

16       That defense, again, has nothing to do with the

17  separate transactions -- actual transactions in stock and

18  redemptions of stock that occurred at different times.

19       So, again, you could proceed to judgment on the

20  benefits plan under the deferred comp.  You could adjudicate

21  the defense, without necessarily proving, as an element of our

22  defense, that these people engaged in these stock transactions

23  that give rise to our disgorgement claim for stock profits.

24       The stock profits claim relates to actual

25  sell-backs to the company of stock, in Luce's case in August

1   of 2000, and again in January of 2001, and again in January of

2   2002. With respect to the other defendants, it's on other

3   specific dates, but generally again within that time period,

4   primarily from May of 2000 through roughly June -- I'm sorry,

5   January or so, February or so, of 2001.

6           So, the notion that the ability of these

7   plaintiffs to recover, or our ability to defeat the recovery

8   under the retirement plans, that somehow is inextricably

9   linked to these stock transaction is simply not our claim, and

10  the Court really has only to go on the pleadings that appear

11  in this case.

12          If you look at the defenses and the claims, the

13  counterclaims that we have asserted in the case with respect

14  to the Auxiliary Plan and the Deferred Comp Plan, which are

15  the only two claims that Mr. Luce has brought here, there is

16  no mention, either by way of defense or affirmative recovery

17  on our part, any reference to these stock transactions that

18  Mr. Luce engaged in.

19          With respect to the claim in the District of

20  Columbia, we have framed the stock profits claim and our

21  entitlement to disgorgement of the profits from those claims,

22  without framing that claim in terms of anything that these

23  people did with respect to the benefits claims or the benefits

24  that they achieved under it.

25          Now, in the reply that has been filed, Mr. Luce

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   tries to conflate all of this by contending that the breach of

2   fiduciary duty claims, wherever asserted, boil down to nothing

3   more than a claim that these executives received excessive

4   compensation.

5           That is not our theory. That's not in the

6   pleadings. And while it may be a common position that Mr.

7   Luce, and even the other defendants, would assert, that they

8   should be excused, or something that might otherwise be a

9   breach of fiduciary duty should be excused because they felt

10  that they were entitled to engage in self-dealing to increase

11  their compensation relative to what appear in other companies,

12  that doesn't turn these claims all into compulsory

13  counterclaims.

14          So, the primary point I want to make is that the

15  recasting of this issue as simply one of fiduciary duty that

16  serves as both a defense and the basis for the disgorgement

17  claim, is just a false premise.

18          THE COURT:  All right.  You outline in your

19  pleadings that courts typically use three devices to deal with

20  matters of there sort.  You say one is transfer, one is an

21  injunction, and refresh my recollection on what the third one

22  was.

23          (Pause)

24          ATTORNEY TRENGA:  Stay.

25          THE COURT:  Stay.  All right, now.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    ATTORNEY TRENGA:  It's not a useful concept in

2    this Court, your Honor, so it slipped my mind.

3    THE COURT:  Yes.  Well, it slipped mine, too.

4    So we can effectively put it to one side, because that's not

5    going to happen, I don't think.

6    Now, there is a motion to transfer pending before

7    Judge Leon in the District Court in D.C.

8    ATTORNEY TRENGA:  Yes, sir.

9    THE COURT:  And you say if that doesn't succeed,

10   you are going to seek to transfer this one there.

11   ATTORNEY TRENGA:  Yes.  That was our intention.

12   THE COURT:  Now, if -- and I take it you can

13   satisfy all the requirements of 1404(a), either way.

14   ATTORNEY TRENGA:  Yes.

15   THE COURT:  Why wouldn't it be -- why wouldn't

16   your position be stronger to transfer this one, since that one

17   was the first filed?

18   Now, the counterclaim in that one came after the

19   filing, but nevertheless that action was the first filed.

20   ATTORNEY TRENGA:  It was.  And that's why we

21   filed the motion to transfer there as the first filed action.

22   Frankly, your Honor, we were persuaded by the

23   ability to have a resolution of all these claims quicker in

24   this Court, coupled with the fact that three of the four

25   senior officers are residents of the State of Virginia.  So,

1   one would think they would not have a tremendous objection to

2   proceeding in the court where they reside.

3          But it was clearly the opportunity to have these

4   resolved here quicker.

5          THE COURT:  Well, would I be correct if I

6   summarize a part of what you said previously as:  This case

7   can proceed, including the counterclaims, and that case could

8   proceed, including the counterclaims, without affecting one

9   another?

10          ATTORNEY TRENGA:  That -- (pause) --

11          THE COURT:  Because if there is any res judicata

12   or any duplication, then there would have to be a transfer or

13   consolidation or stay, or carving out of one case and staying

14   a piece of it while it proceeded elsewhere.

15          ATTORNEY TRENGA:  They could very well proceed

16   together.  Let me -- let me just highlight one potential issue

17   that may complicate that.

18          It may very well be that all of these four

19   defendants are necessary or indispensable parties as to one or

20   both of the auxiliary -- one or both of the benefit plans

21   claims.

22          THE COURT:  Now, the other two individuals

23   haven't brought their own actions yet.

24          ATTORNEY TRENGA:  One now has.

25          THE COURT:  Where?

1    ATTORNEY TRENGA:  In D.C., as part of the

2    counterclaim.  Mr. Grelly has now filed a claim for benefits

3    in the District.  That happened --

4    THE COURT:  In the Carabillo action?

5    ATTORNEY TRENGA:  Yes.

6    And I say that these officers may be necessary

7    and indispensable parties because they all claim, through a

8    common instrument -- that is, the contract for both the

9    Auxiliary Plan and  the contract for the Deferred Compensation

10   Plan, the validity of which -- or aspects of which  -- the

11   validity of aspects of which are challenged by ULLICO, both in

12   this action and D.C.

13   So, while we have all four of these people before

14   the court in D.C., we at the current time only have one here,

15   which would complicate -- complicate the ramifications of a

16   possible injunction against us from proceeding in the

17   District.

18   THE COURT:  All right.  Let me hear briefly from

19   Mr. Scully as well.

20   ARGUMENT BY THE PLAINTIFF

21   ATTORNEY SCULLY:  Good morning, your Honor.

22   I think Mr. Trenga made a (sic) important

23   concession when he admitted that these cases, in his opinion,

24   could go forward separately, without affecting one another

25   from a res judicata standpoint.

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

1        I would couple that with the observation that he

2   contends there is absolutely no reference in the pleadings to

3   any claim relating to the stock profits.

4        I believe neither of those contentions is

5   accurate.  Let me start with the reference to nothing in the

6   pleadings about stock profits.

7        In fact, on three -- in three places in the

8   answer in this action, ULLICO contends that the claims for

9   benefits on Luce's part are subject to offsets based upon

10  claims by ULLICO.

11       Now, those claims are not asserted in this

12  action, but the defense of offset is clearly asserted in three

13  places in the answer.  And that offset can only be based on a

14  claim of breach of fiduciary duty, that was not asserted here,

15  but which is Count 4 in the counterclaim in the District of

16  Columbia, in which Mr. Luce has been joined as a counterclaim

17  defendant under Rule 13(h).

18       THE COURT:  You would point out that there will

19  be duplication if these matters are not consolidated or stayed

20  or something.

21       ATTORNEY SCULLY:  Absolutely, your Honor.

22       The best reference I think there is, is to take a

23  look at the letter that the general counsel of ULLICO sent to

24  my client in September of this year, in which, in response to

25  numerous requests for an explanation as to why he had not been

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

1  paid his deferred compensation -- keep in mind, deferred

2  compensation is compensation he earned, he was entitled to be

3  paid, that he agreed not to take, to defer until he retired.

4         And keep in mind again that he wasn't asked to

5  leave.  He wasn't fired.  He was allowed to retire from this

6  company on June the 1st, and then hired as a consultant, to

7  allow the new executives to have someone to teach them how to

8  run this company.

9         On September 11th, Mr. Green wrote and told my

10  client that he was not going to be paid his deferred

11  compensation, because:

12         The Deferred Compensation Plan raised many of the

13         same issues --

14  that's a quote --

15         -- many of the same issues relating to the

16         appropriateness of the stock purchase plans and the

17         pricing at which those stock pricing plans allowed

18         you and other senior executives to redeem your stock.

19         Now, before the lawyers arrived and before we all

20  started writing civil procedure motions, the parties simply

21  stated the facts.  And the facts are that this company has

22  decided not to pay Mr. Luce, in part because it believes that

23  the deemed investment methodology inside the Deferred

24  Compensation Plan, which allowed Mr. Luce to take his deferred

25  comp. and invest it in phantom stock in the company, is

1   indistinguishable from the claim that he was allowed to

2   purchase and sell stock and, thereby, quote, unjustly enrich

3   himself.

4          They are the same transactions.  In one case he

5   gets a stock certificate; in another he gets a phantom stock

6   right.  But the prices and the methods and the procedures are

7   identical.

8          Your Honor, there is no question but that this

9   case involves a (sic) executive compensation plan that is of a

10  piece, and you can't separate them out.  I understand that Mr.

11  Trenga wants to separate them out and contend they don't

12  relate to one another.  And maybe can you do that as a

13  pleading matter, but you can't do that as an evidentiary

14  matter in this Court.

15         That stuff is going to be in evidence, and the

16  Court is going to have to resolve those issues, and the Court

17  is going to have to see and hear the allegations of misconduct

18  in the entire context of how this company was run, and how the

19  executives were compensated, and how it was reported to the

20  Compensation Committee and to the board.

21         That's what this case is about.  There is no

22  other way to do it.  You can't chop it up and pretend that all

23  the evidence isn't going to be the same on the benefits claims

24  and the breach of fiduciary claims.

25         Moreover, the law that controls is the same,

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

1  because the benefits claims are top hat claims are they are

2  not governed by ERISA.  They are governed by state law.  So

3  the only breach of fiduciary --

4          THE COURT:  What state law?

5          ATTORNEY SCULLY:  It appears to be -- it's either

6  Maryland or the District of Columbia, depending on the plan.

7  One plan chooses Maryland law.  The other plan says it is

8  governed by District of Columbia law.  I think that the breach

9  of fiduciary claims are governed by Maryland law, because

10  ULLICO, Inc., is a Maryland corporation, and the internal law

11  of Maryland, I think, controls breach of fiduciary duty

12  claims.

13          THE COURT:  Well, under Claxton against Stentor

14  the forum court would apply -- or the court would apply the

15  choice of law rules of the forum, which in the Carabillo case

16  would be the D.C. forum and choice of law.

17          And what -- for a tort claim, what does D.C. say?

18  The place where the wrong occurred, or where the wrongful

19  action took place?

20          And that was D.C., I take it.

21          ATTORNEY SCULLY:  Well, I think D.C. law is the

22  same as Virginia on choice of law with respect to --

23          THE COURT:  Lex loci delicti.

24          ATTORNEY SCULLY:  No, I think with respect to

25  fiduciary duty of the -- duties of officers of corporations, I

1    believe it's the law of the place of incorporation. That's --

2    I'm no expert on D.C. choice of law, your Honor, but my belief

3    is that --

4        THE COURT: All right.

5        ATTORNEY SCULLY: -- that's the same in both

6    Virginia and D.C.

7        THE COURT: All right, go on.

8        ATTORNEY SCULLY: So, there are not three

9    separate claims. There is a claim. It must be tried

10   together. And all we want is for this Court to enjoin ULLICO

11   from pursuing Luce on Count 4 of the counterclaim that was

12   filed against him in the District of Columbia.

13       Luce is entitled to this forum under ERISA. He

14   brought a benefits claim. He brought -- for what he is

15   entitled to. And if this company wants to deny him those

16   benefits by asserting breach of fiduciary duty, it has to do

17   so in a counterclaim in this action.

18       I think it would be better to bring everybody to

19   Virginia and try it here. But Mr. Trenga says you can try

20   Luce here and try everybody else there. And if that's what he

21   wants to do, that's fine with me.

22       THE COURT: All right.

23       ATTORNEY SCULLY: But he can't -- Luce cannot be

24   made to defend himself in the District of Columbia, when he

25   filed a proper action here. And that Count 4 is a compulsory

1   counterclaim in this action.  And for that reason, we think

2   the Court ought to enter a preliminary injunction to enjoin

3   ULLICO from pursuing Mr. Luce there.

4           THE COURT:  All right.

5           Mr. Trenga?

6                  ARGUMENT BY THE DEFENDANT

7           ATTORNEY TRENGA:  We have not pled the stock

8   profits claim in this case.

9           THE COURT:  Not as a setoff?

10          ATTORNEY TRENGA:  No.  No.  We have -- it seems

11  to me you could only -- you could only -- you could only have

12  setoffs in this case with respect to matters pleaded.  We have

13  not done that.

14          We have asserted indemnification claims, and to

15  the extent those are adjudicated here --

16          THE COURT:  What is Mr. Scully referring to,

17  then, when he quotes certain parts of the complaint that talk

18  about --

19          What paragraphs did you refer to --

20          ATTORNEY TRENGA:  He has alleged --

21          THE COURT:  -- Mr. Scully?

22          ATTORNEY TRENGA:  He has alleged --

23          ATTORNEY SCULLY:  Your Honor, Paragraphs 45, 71

24  and 92.  These are answers --

25          ATTORNEY TRENGA:  I am familiar with those.

1      ATTORNEY SCULLY:  -- to my complaint.

2      ATTORNEY TRENGA:  These are answers to

3  allegations --

4      THE COURT:  Yes.

5      ATTORNEY TRENGA:  -- made in his complaint.

6      THE COURT:  Right.

7      ATTORNEY TRENGA:  And he has alleged that there

8  were certain amounts owing, and that ULLICO intends to set

9  those amounts off against any benefits --

10      THE COURT:  So that's a defense.

11      ATTORNEY TRENGA:  It's a defense, but as a

12  practical matter it seems to me you would not set off anything

13  that is not adjudicated in this case.

14      If we went to judgment in The District, and had a

15  money judgment against Mr. Luce as a result of the stock

16  profits claims there, then would be entitled to some set-off

17  or recoupment.

18      THE COURT:  Well, suppose, as would likely

19  happen, that we would get to the issue much quicker here than

20  in The District.

21      ATTORNEY TRENGA:  That's why we were suggesting

22  that we transfer them here.  You would go to judgment without

23  necessarily adjudicating that claim.

24      Let me just -- let me just observe what is going

25  on here, because I think this is essential to what Mr. Scully

1    is saying.

2              They are invoking the compulsory counterclaim

3    rule.  And again, I think it's clear that the transactions are

4    not the same.  The benefits claims do not arise out of the

5    stock transactions.  I don't think there is any dispute about

6    that.

7              The defenses to the benefits claims are not the

8    stock transactions.  So we don't have a commonality of

9    occurrences or transactions.

10             What they are trying to do is to force -- is to

11   label the stock profits claim as a compulsory counterclaim,

12   not for the purposes of allowing an efficient adjudication

13   here, but for the purposes of barring those claims without any

14   adjudication.  Because we now know from Mr. Luce's reply that

15   their intention, if they were successful in having the Court

16   consider the stock profits claims to be compulsory

17   counterclaims, then the claim that under Virginia choice of

18   law rules, they would be barred from the statute of

19   limitations, even though under Maryland law -- which it sounds

20   as if he thinks would apply to these claims -- they don't even

21   accrue yet.  They don't accrue until May of 2003.

22             So you have the unusual situation of trying to

23   have labeled and barred a claim that has never been asserted

24   before.  This is not a case where there has been prior

25   litigation between the parties and there has been a failure to

1   assert a claim, and then there has been a subsequent

2   litigation.

3              They are trying to have labeled a claim that does

4   not arise out of the transactions that forms (sic) the basis

5   of their benefits claims, there has not been a claim that that

6   is so, that's presently pending in another jurisdiction for

7   the very first time, and have applied to it a law of this

8   jurisdiction, a statute of limitations, that no one would have

9   ever thought would apply to these stock profits claims.

10             THE COURT:  All right.

11             ATTORNEY TRENGA:  Let me also say that there are

12  a couple reasons why we would think it would be, at best,

13  premature to have an injunction issue, because I don't think

14  the Court can say with any confidence what the impact of that

15  would be at this point --

16             THE COURT:  I don't know that I need any more

17  argument --

18             ATTORNEY TRENGA:  Yes, your Honor.

19             THE COURT:  -- Mr. Trenga.

20             ATTORNEY TRENGA:  Thank you.

21                    RULING BY THE COURT

22             THE COURT:  The matter is before the Court on a

23  motion for a preliminary injunction.  And in such a motion,

24  the legal lens through which the Court should view the facts

25  is that provided by Blackwelder and its progeny.

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

1       The initial inquiry is whether the plaintiff has

2   demonstrated that there is a risk of immediate irreparable

3   harm.

4       And after that, the Court is required to assess

5   the harm if the injunction is entered, the harm to the

6   nonmovant; and then to balance those harms, that is, the risk

7   of harm to the movant if the injunction is not granted and the

8   risk of harm to the nonmovant if the injunction is granted.

9       If that balance of harms is decisively in favor

10  of the movant, then the movant need only show on the merits

11  that there is a substantial question for litigation.

12      On the other hand, if the balance of harms is not

13  decisively in favor of the plaintiff, or the movant, then the

14  movant must show a likelihood of success on the merits.

15      And then, of course, the Court should also

16  consider the public interest.

17      This claim -- or this request, rather, for a

18  preliminary injunction stumbles a bit on the first ground,

19  that is, immediate irreparable harm.

20      But what the parties' arguments today have made

21  unmistakably clear to me, and your briefs -- which by the way

22  were quite good and were helpful to the Court -- make clear,

23  is that there is some commonality going on here.

24      You all parse it very finely, Mr. Trenga more

25  finely than Mr. Scully thinks is appropriate, and I think you

1   both make pretty significant arguments.

2          At the moment, and somewhat ironically against

3   his interest, Mr. Scully persuades me that this is really

4   going to be ultimately much the same as the counterclaims in

5   Washington against Luce.

6          I adhere, as you might imagine, to an immutable

7   principle that we are not going to litigate cases that are

8   essentially similar in different jurisdictions. And I adhere

9   to the principle that if it is economically sensible,

10  especially judicial resources, that judges ought not to have

11  to hear essentially similar cases in different jurisdictions.

12         This clearly is a case where transfer and

13  consolidation ought to take place. So, while I will deny the

14  motion for a preliminary injunction, I will make clear the

15  following:  If Judge Leon, who has pending before him -- does

16  not grant the motion to transfer that case to here, which is

17  the first filed case -- and I don't see any compelling why he

18  should -- then I will consider transferring this case there.

19         Frankly, I think that's the best solution.  It is

20  the best solution because that is the first filed case,

21  because there is another counterclaim defendant in that case

22  that isn't present in this case, namely one of the other four

23  officers; and it may be that the fourth officer will

24  ultimately become a party in the case as well.

25         I think they should all be consolidated in the

1  District of Columbia, and tried there, all of them.  All four,

2  if they think they are entitled to benefits, all four, if the

3  defendants think they are not entitled to benefits, either for

4  some reason having to do with the plan or, as Mr. Trenga

5  argues, independently because they engaged in breaches of

6  fiduciary duty and, therefore, are independently liable to the

7  company for those tortious acts, independent, as he says, of

8  any plan obligation to these defendants for their retirement.

9           I don't know whether it's absolutely independent

10 or not.  But at the moment Mr. Scully sort of persuades me

11 that it is all one kettle of fish.  Now, that is not something

12 he ought to be entirely happy with, because what I am telling

13 him is that the matters are either going to be litigated here

14 or there on the one kettle of fish theory that he has

15 advanced, but they are not going to be -- nothing is going

16 to be stayed.

17           And my own view, which you can communicate to

18 Judge Leone, is that the motion is pending before him.  He is

19 the one who gets the first crack at the 1404(a).

20           He is not interesting in advice from me, but I

21 will offer it anyway:  It's the first action.  He ought to

22 keep it.  If he doesn't want to keep it, then send it here,

23 and I'll console date it with the one -- with this one, and we

24 will proceed.

25           So, that's the Court's disposition.  It's

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

1    probably not as analytically sensitive to all of the fine

2    points you all have raised, but I think it adequately takes

3    care of the real essence of the problem, which is that we've

4    got related cases in two jurisdictions.  It's unclear how much

5    overlapping evidence there is going to be, and we might as

6    well do them in one jurisdiction.

7            Of course, I don't know whether I would

8    consolidate the cases for all purposes.  There may be some

9    distinctions that I might learn about from counsel on the way

10   that might justify separate trials, or some separate

11   proceedings.  I don't know.

12           But at the moment, a stay or an injunction

13   precluding another court -- or precluding a party from

14   asserting a claim in another court seems to me to be the least

15   advisable way to proceed.

16           And at the moment it seems to me that these cases

17   ought to proceed in the same court, either here or there, and

18   consolidated either in whole or in part.

19           Now, let me give you each one last opportunity to

20   tell me why I have missed the point entirely.   Mr. Scully,

21   you are first.

22                FURTHER ARGUMENT BY THE PLAINTIFF

23           ATTORNEY SCULLY:  Well, your Honor, I think the

24   only point you have missed is the strong public policy, as you

25   articulated in one of your own cases with respect to an ERISA

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*

1  plaintiff being entitled to his home forum as his forum for,

2  choice of benefits.

3         And that is, in fact, the strong interest that

4  Mr. Luce has, and the substantial harm that he will face in

5  having this forum, his chosen home forum in an ERISA benefits

6  claim, denied to him, and have to go across the river, where

7  it will take him three years to get the relief that he and his

8  family depend upon to live.  This is his retirement, and he is

9  going to have to wait three years for it.  They have refused

10 to --

11        THE COURT:  All right --

12        ATTORNEY SCULLY:  -- pay him.

13        THE COURT:  -- tell Judge Leon that in opposition

14 to the motion to transfer, and see if he is sympathetic to

15 that.  My sense is he may expedite matters, if you ask him to.

16        And of course, remember the old adage, Mr.

17 Scully:  Be careful for what you ask for.  You have might get

18 it.

19        All right, Mr. Trenga, your chance to tell me how

20 I have missed it entirely.

21        ATTORNEY TRENGA:  I have nothing to add to the

22 Court's observations.  I think it's right, and that was the

23 premise of our motion.  It ought to go forward together,

24 either here or there.

25        THE COURT:  All right.  Well, I will enter an

1  order but it will be a terse order.  And you are free, of

2  course, to communicate to Judge Leon the essence of the

3  argument and the Court's bench ruling.

4          Again, I thank you for your briefs.  They were

5  interesting and informative; and so were your oral arguments.

6  Thank you.

7          ATTORNEY TRENGA:  Thank you, your Honor.

8          ATTORNEY SCULLY:  Thank you, your Honor.

9          (Court recessed in Luce v. ULLARBP)

10

11                              ---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, MICHAEL A. RODRIQUEZ, an Official Court Reporter for the United States District Court, in the Eastern District of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the motions hearing in the case of JAMES W. LUCE v. UNION LABOR LIFE AUXILIARY RETIREMENT BENEFITS PLAN, et al.

I further certify that I was authorized and did report by stenotype the proceedings in said motions hearing, and that the foregoing pages, numbered 1 to 32, inclusive, constitute the official transcript of said proceedings as taken from my machine shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this 25th day of November, 2003.

Michael A. Rodriquez, RPR/CM/RMR
Official Court Reporter

*MICHAEL A. RODRIQUEZ, RPR/CM/RMR*