1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

------------------------------:
                              :
JAMES W. LUCE,                :
         Plaintiff,           :
                              :
 -vs-                         :     C.A. No. 05-851-A
                              :
ULLICO, INC. PENSION PLAN AND :
TRUST, et al.,                :
         Defendants.          :
                              :
------------------------------:


HEARING ON MOTIONS

September 23, 2005

Before:  Claude M. Hilton, Judge


APPEARANCES:

Robert E. Scully, Jr., Counsel for the Plaintiff

Anthony J. Trenga and Brian Hill, Counsel for Defendants


Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626

2

1   THE CLERK: Civil action 05-851, James Luce versus
2 ULLICO Incorporated Pension Plan and Trust, et al.
3   MR. TRENGA: Good morning, Your Honor. Tony Trenga
4 on behalf of the defendants. And with me is my colleague,
5 Brian Hill.
6   THE COURT: Good morning.
7   MR. SCULLY: Good morning, Your Honor. Robert
8 Scully on behalf of plaintiff James W. Luce.
9   THE COURT: Mr. Scully. All right, this comes on
10 on your motion.
11   MR. TRENGA: Yes, Your Honor. Thank you. For the
12 record, my name is Tony Trenga. I am here on behalf of the
13 defendants.
14   We have filed a motion to dismiss this action in
15 deference to a consolidated litigation that is ongoing and
16 has been ongoing in the District of Columbia for two years
17 now. That litigation, as here, involves the same parties,
18 same issues.
19   Specifically, it involves the pension benefit
20 claims of Mr. Luce and three other former senior executives
21 of ULLICO on the one hand and claims of a breach of fiduciary
22 duty on the other which could defeat in whole or in part the
23 pension claims of Mr. Luce and the others.
24   The action had consolidated four actions, one of
25 which was originally filed in this court, which we refer to

1  as Luce I.  That action was transferred by this Court, Judge
2  Ellis presiding, in January of 2004 to the District of
3  Columbia.
4       And it is significant that in that action Mr. Luce
5  himself sought a ruling by this Court that ULLICO should not
6  proceed anywhere but here and, in urging that position on the
7  Court, recognized and argued that it made no sense to
8  separate these pension claims from the breach fiduciary duty
9  claims and that they all should be tried in one forum since
10 all the evidence would be interrelated.
11      The Court agreed with that position.  It disagreed
12 with Mr. Luce, however, that the action should initially be
13 consolidated here.  Which, frankly, was where we wanted it to
14 proceed.  But in any event, Judge Ellis, recognizing that it
15 would otherwise be a waste of judicial resources and possibly
16 cause inconsistent results, transferred Luce I to the
17 District of Columbia, leaving to that Court whether to
18 transfer all the litigation back to this Court.
19      We had filed a motion to transfer to do precisely
20 that before Judge Leon in the federal court in the District
21 of Columbia, which Mr. Luce opposed and which the Court
22 ultimately denied.
23      For that reason, the litigation has been proceeding
24 on a consolidated basis in the district for two years.
25      This Court dealt with how this dispute should be

```
 1   litigated two years ago, and there is no reason to revisit or
 2   rethink that decision.  It was clearly correct even as Mr.
 3   Luce through Mr. Scully recognized when it appeared here
 4   initially.  And since that ruling it has become even clearer
 5   that nothing should be allowed to proceed independently of
 6   the ongoing proceedings in the District.
 7           As I mentioned--
 8           THE COURT:  What stage are they in?  They have been
 9   proceeding for two years.  What has been going on there?
10           MR. TRENGA:  Well, there has been a number of new
11   actions filed and consolidated.  There has been motions to
12   dismiss filed by Mr. Luce and others, most of which have now
13   been resolved.
14           But we now have a discovery schedule and we are
15   involved in discovery.  There is a discovery schedule that
16   extends now until February of next year.  We are actively
17   producing documents.  In fact, we are producing in response
18   to requests by Mr. Luce thousands of documents that are
19   ongoing.  More are being produced.  In fact, documents that
20   duplicate requests for documents that we received this week
21   from Mr. Luce in this court.
22           There are depositions that are being requested.
23   Mr. Luce has just requested a 30(b)(6) deposition with five
24   pages of designated areas.
25           But I think the primary point is that all of the
```

5

1  issues here are necessarily going to be litigated there and,
2  in fact, are being litigated.
3      THE COURT: All right. Well, let me-- Mr. Scully,
4  why shouldn't it be transferred? It sounds reasonable to me.
5      MR. SCULLY: Well, for a couple reasons, Your
6  Honor. Number one, as you can tell from the fact that the
7  original case, which is not what we are here on today, was
8  transferred over 18 months ago, and we still have not had the
9  first deposition in the consolidated cases. Which also had
10 not been consolidated for two years. They were consolidated
11 by an order actually entered on June 1 of this year by Judge
12 Leon.
13     And Judge Leon was quite frank with us at each
14 status conference in which we appeared before him. Which I
15 gently, proddingly urged him that I would rather be in
16 Virginia on a pension benefits case for a retiree so that I
17 can get my client an adjudication of his retirement benefits
18 because we don't have the kind of criminal calendar here, we
19 may have the kind of criminal volume that they have, but it
20 gets moved faster. And he was quite honest in saying, I had
21 one civil trial last year, he said. I am stuck with Speedy
22 Trial obligations to try criminal cases. I am going to give
23 you a discovery schedule and I hope that we will get to trial
24 at some point.
25     Now, I brought this current dispute to his

6

1  attention as soon as it arose.  And this is a discrete
2  dispute.  If the Pension Administrator and the Qualified
3  Plan, who are the defendants in this case, had done what they
4  said they were going to do when they filed a claim against
5  Mr. Luce for a declaratory judgment in the District of
6  Columbia, which is seek the judgment of the United States
7  District Court for the District of Columbia as to whether Mr.
8  Luce was entitled to his Qualified Plan benefits, we would
9  not be here today.  But they didn't.
10          On January 14 of 2005 my client received a letter
11  from the Qualified Plan saying, you are not getting benefits
12  anymore at the rate we have been paying them because we have
13  decided that the Plan doesn't provide for them.
14          We then did what the Department of Labor
15  regulations require, which is to take an administrative
16  appeal of that denial of benefits just the way you would if
17  this was a disability benefits case or a denial of insurance
18  payments case or any other ERISA type plan interpretation
19  issue.
20          And that's what the Plan Administrator said.  He
21  said the only issue before me, this is in the May 20 of 2005
22  opinion from the Plan Administrative Committee, they said the
23  only issue is whether a document adopted by the Plan Benefits
24  Committee on July 24, 2001, purporting to amend the Plan to
25  increase the accrual rate to 2.45 percent was an effective

1  amendment to the Plan.
2      And they answered that question as follows:  For
3  the reasons set forth below, the Administrative Committee has
4  concluded that the purported 2004 -- excuse me, July 24, 2001
5  amendment to the Plan was not adopted in accordance with the
6  Plan's provision governing the amendment process and is,
7  therefore, of no force and effect.
8      Essentially adjudicating the declaratory judgment
9  proceedings with respect to Qualified Plan content that they
10 had previously sought to have adjudicated in the United
11 States District Court for the District of Columbia.
12     Now, we don't need an adjudication of that issue.
13 It is a thing decided, which has to be decided on an
14 appellate record now the way ERISA is written and the way the
15 regulations are written.
16     The only issue before this Court is whether that
17 decision of the Plan Administrative Committee is correct, is
18 committed to their discretion or is unreasonable, arbitrary
19 and capricious and must be set aside.  That's the issue.
20     We don't reach, because the committee did not
21 reach, any of the allegations about Mr. Luce's conduct other
22 than--  In fact, nothing about his conduct.  The Committee
23 opined that it doesn't matter that he was an executive
24 vice-president.  It doesn't matter that he may have had
25 fiduciary duties to the corporation.  It doesn't matter that

he may have been a fiduciary of the Plan. None of that matters because the Plan doesn't provide the benefits he seeks.

The issue in the District of Columbia always was-- Actually, the issue in the District of Columbia never was anything about the qualified plan until Carabillo II. Carabillo 1, the very first case that was filed, a counterclaim was filed against Mr. Luce, actually said, and this was the issue that was argued before Judge Ellis, look, this guy was one of the executives of ULLICO and there was all sorts of self-dealing in ULLICO.

In fact, the big complaint, which resulted in a Senate investigative hearing and articles in the press and everything else, had to do with stock redemption plans. It had nothing to do with the benefit plans.

And they said, because he participated in this self-dealing in stock at ULLICO, he can't get his benefits. That was Carabillo I. There was nothing about Plan benefits. Actually, there was a breach fiduciary duty to the corporation was what prevented him from getting benefits.

Judge Leon separated that out and said, that doesn't have anything to do with federal jurisdiction, that's a Maryland state law question. You know, some Court is going to have to apply Maryland corporate law to determine what these executives's duty was to their Maryland corporation.

1  And that's not within the core jurisdiction of a federal
2  court.
3           I will hear the ERISA claims. And he said, what I
4  will hear are the ERISA claims regarding breaches of
5  fiduciary duty involving the creation and operation and
6  amendment of the Plan. Not-- And I would like to quote, if
7  I could, from his opinion, in dismissing all of the corporate
8  governance claims for lack of subject matter jurisdiction.
9  He said, and I quote, Counts 6 and 7, which are the counts he
10 retained jurisdiction over, these are the ones he retained
11 jurisdiction over, are not claims for restitution of benefits
12 paid on the terms of the auxiliary and deferred compensation
13 plans. Instead, they seek declaratory relief. There is no
14 allegation under these counts that the counterclaim
15 defendants have wrongfully received benefits as a result of a
16 mistake of fact or law regarding the terms of the plans.
17 Moreover, none of the reasons alleged by ULLICO regarding the
18 counterclaimants' ineligibility for benefits bears any
19 relation to the interpretation of the terms of the plans.
20 Instead, these claims focus on whether the establishment and
21 amendment of the plans constitute breaches of fiduciary duty
22 to the corporation and thus would result in unjust enrichment
23 if benefits were paid.
24          In other words, he said, I am going to keep the
25 claim because I don't know what the law is as to whether if

1  you breach your fiduciary duties as a director of a
2  corporation that is the sponsor of a Benefits Plan, whether
3  that would disentitle you to payment of benefits under Top
4  Hat plans.
5       Keep in mind, what was before him in Carabillo I
6  were what is referred to as Top Hat ERISA plans.  They are
7  not governed by the fiduciary duty provisions of ERISA.  They
8  are for highly compensated individuals.  And the Congress
9  decided highly compensated individuals can look after
10 themselves.
11      And so, we don't have ERISA fiduciary duties with
12 respect to people who administer Top Hat plans.  That is what
13 was before him.  He thought, well, that's an open issue, I am
14 going to retain jurisdiction.
15      So, the Plan then filed a new counterclaim in
16 Carabillo II saying, we are going further, we are not
17 contending that Luce is disentitled to benefits just because
18 he breached fiduciary duty that he might have had as an
19 executive to the corporation that sponsored the plans.  We
20 now claim he is a fiduciary of the plans and he breached a
21 different ERISA based fiduciary duty as a fiduciary of the
22 Qualified Plan, and that's why he can't get benefits.
23      But the Plan in May said, we don't need to reach
24 that issue, that's moot because the Plan was never amended;
25 that is, he couldn't -- he didn't breach any fiduciary duty

```
 1  that had any consequence because what he allegedly tried to
 2  do, which is to adopt a Plan amendment, wasn't effective, it
 3  didn't work.
 4          And, therefore, there is no need for a declaratory
 5  judgment in the District of Columbia that he breached a
 6  fiduciary duty to the Plan by adopting an effective Plan
 7  amendment.  The whole premise of the claim in the District of
 8  Columbia is that the Plan is stuck with this amendment that
 9  somebody adopted that is now causing the Plan harm.  And,
10  therefore, Luce ought to not be able to recover.
11          In fact, what the Plan itself has said and the
12  administrative decision is there is no such content of this
13  Plan.  The 2001 amendment that purported to increase the
14  contribution rate from 2 percent of the qualified income
15  to two-and-a-half percent is "of no force and effect."
16          That's the only issue in this case, Your Honor.
17  It's a classic--  I mean, I understand that Mr. Trenga wants
18  to contend that this is all tied up in the District of
19  Columbia fiduciary duty litigation.  This is a Plan
20  participant saying, I want a hearing on my claim that I am
21  entitled to a benefit and being given the hearing in
22  accordance with the terms of the Plan and the ERISA
23  regulations and being told there is no such benefit in this
24  Plan.
25          We are not going to have a relitigation of D.C.
```

1  because the Court is not going to let us.  The Court knows
2  what the <u>Firestone</u> case says.  The question is, did this
3  decision maker have discretion and was that discretion
4  abused.  That's a very, very narrow issue, but I think I am
5  entitled to have a review of it by this Court on behalf of my
6  plaintiff claimant for retirement benefits.
7       That's what ERISA calls for, Your Honor.  And I
8  would invoke the statue I walked in under this morning,
9  justice delayed is justice denied.
10      THE COURT:  I understand your position, but I
11 believe this is part and parcel of what's going on over in
12 D.C.  And I believe this ought to be transferred over there.
13 I believe this is the exact issue that that Court is looking
14 at.
15      Hopefully now that you are to discovery, why this
16 claim will move right along and you can get it heard.  And
17 maybe they can give you a summary judgment, who knows.  I
18 don't know.
19      MR. SCULLY:  I want something to happen.
20      THE COURT:  I believe this is the exact issue
21 that's over in D.C. and--
22      MR. SCULLY:  Well, if I could ask then--
23      THE COURT:  I will transfer it to--
24      MR. SCULLY:  Transfer rather than dismiss, I think
25 would be the appropriate--

1         THE COURT: Yes, I will. I will transfer this to
2    the United States District Court for the District of
3    Columbia.
4         MR. SCULLY: Thank you, Your Honor. I appreciate
5    your hearing us.
6         MR. TRENGA: Your Honor, in light of the Court's
7    ruling, just one housekeeping matter. Would the Court also
8    in the transfer order vacate the scheduling order that this
9    Court issued in this case? Just so we don't have any issues
10   arising out of that. That raised some issues the last time
11   the case was transferred.
12        THE COURT: All right, I suppose that would be
13   appropriate, wouldn't it?
14        MR. SCULLY: I don't see that there is any point in
15   having a discovery order under our procedures that carries
16   over when the case goes to D.C.
17        THE COURT: I doubt they are going to follow it.
18        MR. SCULLY: I can assure you that's a speed
19   unknown to the District of Columbia, Your Honor.
20        THE COURT: All right, thank you-all.
     -------------------------------------------------
21                    HEARING CONCLUDED
22
23        I certify that the foregoing is a true and
     accurate transcription of my stenographic notes.
24
     _____
25        Norman B. Linnell, RPR, CM, VCE