UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES W. LUCE | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: 05-1996-RJL |
| v. | : | |
| | : | |
| ULLICO INC. PENSION PLAN & TRUST, | : | |
| et al. | : | |
| | : | |
| | : | |

JAMES W. LUCE'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM GROOM LAW GROUP, CHARTERED

Plaintiff James W. Luce submits this memorandum in support of his motion to compel production of documents from Groom Law Group, Chartered (sometimes "Groom") made pursuant to Fed. R. Civ. P. 45(c)(2)(B).

INTRODUCTION

James W. Luce ("Luce") is a former Vice-President of ULLICO Inc. ("ULLICO"). On June 1, 2003, after decades of dedicated service, Luce retired and acquired a vested interest in retirement benefits payable by the ULLICO Inc. Pension Plan and Trust ("the Qualified Plan"). The Qualified Plan is an "employee pension benefit plan," an "employee benefit plan," and a "defined benefit plan," within the meaning of ERISA, 29 U.S.C. §§ 1002(2)(A), 1002(3), 1002(35). From July 1, 2003 until January 1, 2005, the Qualified Plan paid Luce his full plan benefits. However, in January 2005, despite numerous assurances from ULLICO officials and the Plan Administrator that ULLICO and its benefit plans would honor

their obligations to Luce, the Qualified Plan unilaterally reduced his monthly benefit from $7,349.62 to $5,879.70.

Luce appealed the January 2005 denial of his vested benefits under Article 9.3 of the Plan and Department of Labor Regulations. Shortly thereafter, Luce requested copies of the materials relevant to the denial of benefits as defined by the Department of Labor Regulations. On March 11, 2005 Theodore Green, then General Counsel to ULLICO, acting on behalf of the Employee Benefit Plan Administrative Committee ("Administrative Committee") as Plan Administrator, responded by producing just one document, a ULLICO corporate resolution.

Luce then requested a hearing on his appeal before the Administrative Committee, which was held on March 31, 2005. The Administrative Committee was represented at that hearing by counsel in the person of Joseph Semo and Howard Bard of the firm Feder Semo & Bard, P.C. After that hearing, but before the Administrative Committee rendered its written opinion, the Committee discharged the firm of Feder Semo & Bard, P.C. and engaged the Groom Law Group to represent it. *See* April 15, 2005 Engagement Letter, attached hereto as **Exhibit 1**. As the engagement letter (Exhibit 1) makes clear, Groom was engaged specifically to advise the Administrative Committee, acting as Plan administrator, regarding Luce's claim for benefits. In that capacity, Groom wrote an extensive opinion for the Administrative Committee denying Luce's Appeal dated May 20, 2005. In preparing the Opinion Groom had access to voluminous documents that it deemed "relevant" to the Committee's decision. It disclosed these documents to Luce only

2

after the Opinion was rendered.  Thus the Committee, with Groom's active

participation and advice, denied Luce any opportunity to respond to those

documents. Groom also specifically withheld all communications between the

Committee and its lawyers who served as Counsel to the Committee as well as all

minutes of the Committee deliberations that resulted in the ultimate decision to

deny Luce's appeal.[1]

   After the Administrative Committee denied Luce's appeal by final written

opinion on May 20, 2005, Luce filed this civil action challenging that decision.

### The Document Requests at Issue

   On March 7, 2006, Luce served a subpoena duces tecum on Groom by federal

express and electronic mail.  Thomas S. Gigot, a Groom partner, agreed to accept

service.  A copy of the subpoena is attached to this Memorandum as **Exhibit 2**.  The

subpoena commanded production of documents related to Luce's claim for benefits

by March 24, 2006. Specifically, the subpoena sought the following nine categories

of documents:

   1.    All documents (including emails) that constitute, refer, or relate to
advice rendered by you to the Administrative Committee in conjunction with James
W. Luce's claim for benefits under the plan or his appeal of the denial of that claim.

   2.    All documents (including emails) constituting, referring, or relating to
any notes, transcripts, summaries, or other records describing, referring, or relating
to your and/or the Administrative Committee's interviews with individuals in
connection with James W. Luce's claim for benefits under the Plan or his appeal of
the denial of that claim, including but not limited to interviews with any current or
former Officers or Directors of ULLICO Inc., and any other representative of
ULLICO Inc. or its affiliated or subsidiary companies.

---

[1] In their revised interrogatory responses the Plan and Administrative Committee state that there
are <u>no</u> minutes of any deliberations of the Committee on Luce's benefits claim.

3.    All documents (including emails) constituting, referring, or relating to communications from the Administrative Committee or the Plan to you regarding James W. Luce's claim for benefits under the Plan or his appeal of the denial of that claim.

4.    All documents (including emails) constituting, referring, or relating to communications between you and ULLICO Inc. on behalf of any of the defendants regarding James W. Luce's claim for benefits under the Plan or his appeal of the denial of that claim.

5.    All documents (including emails) constituting, referring, or relating to communications between you and Feder Semo & Bard, P.C. or any member or employee of that firm on behalf of any of the defendants regarding James W. Luce's claim for benefits under the Plan of his appeal of the denial of that claim.

6.    All documents (including emails) constituting, referring, or relating to any comments, criticism, or suggestions made by any Groom Law Group, Chartered lawyer regarding any portion of, or any draft of, the January 14, 2005 letter from Theodore T. Green to James W. Luce, the March 11, 2005 letter from Theodore T. Green to James W. Luce, or the May 20, 2005 letter opinion of the Administrative Committee.

7.    All documents (including emails) referring or relating to James W. Luce's requests for the administrative record and related documents, including but not limited to all communications between you and the Administrative Committee.

8.    Copies of all cases or other legal authority that you relied upon in advising the Administrative Committee regarding James W. Luce's claim for benefits under the Plan or his appeal of the denial of that claim.

9.    All time records indicating the dates on which you provided legal advice to the Administrative Committee regarding James W. Luce's claim for benefits under the Plan or his appeal of the denial of that claim.

On March 21, 2006, Groom objected to each request in the subpoena on the grounds that it "(1) seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (2) calls for the identification or disclosure of any information that is protected by the attorney-client privilege, the work-product doctrine, the joint interest privilege, or any other

applicable privilege or protection; and (3) calls for documents previously provided to [Luce]." See Groom Objections to Subpoena, attached to this Memorandum as **Exhibit 3**. Groom advised Luce through counsel that it would only produce a copy of the "Administrative Record," as defined by it. No privilege log was produced at that time.

On April 7th and 8th counsel for Luce conferred by conference call with Mr. Hanrahan of Groom Law Group and counsel for the Plan and Administrative Committee to address Luce's request for privilege logs from the Plan, the Committee and Groom. As a result of those meet and confer sessions, Groom served additional responsive documents and, on May 16, 2006, it provided a privilege log. A copy of the Groom Law Group privilege log is attached to this Memorandum as **Exhibit 4**.

The Administrative Committee charged with adjudicating Luce's Appeal was actually suing Luce in this Court at the time. It had prejudged the facts and the law at the direction of the ULLICO Inc. General Counsel and Board of Directors (Am. Compl. ¶¶ 82-87). The members of the Committee were not disinterested or neutral and, therefore, were not qualified to consider Luce's claim for benefits due to their blatant conflict of interest (Am. Compl. ¶¶ 61-63, 69-81). Consequently, the Administrative Committee's determination is not entitled to deferential review under the arbitrary and capricious standard usually applied in ERISA plan benefit appeals.

Luce, therefore, is clearly entitled to the documents covered by the subpoena to Groom, including document discovery going beyond the normal boundaries of the administrative record. Those documents and the other documents withheld based on groundless claims of privilege, will assist him in proving the Administrative Committee had a clear conflict of interest that led it to made an obviously erroneous decision on Luce's appeal.

## ARGUMENT

### 1.    The Documents are not Protected by the Attorney-Client Privilege.

In response to Luce's document requests, Groom has withheld two hundred and two (202) documents on the grounds that they are protected by the attorney client privilege. *See* Exhibit 4.

Under *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982), legal advice rendered to an ERISA plan administrator adjudicating a benefits claim is not protected by the attorney-client privilege from disclosure to plan beneficiaries such as Luce. The "exception" is really not an exception at all, but rather recognition that plan fiduciaries "exercise their authority not for themselves but for the benefit of their beneficiaries." *Id.* Legal advice rendered to a plan administrator regarding a plan's decisions about benefits is subject to the "fiduciary exception" at any time before the decision on benefits is final. *See Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 625 (E.D. Mo. 2000) (applying fiduciary exception to ERISA context); *see also Martin v. Valley*

*Nat'l Bank of Arizona*, 140 F.R.D. 291, 322 (S.D.N.Y. 1991) ("beneficiary is entitled to inspect opinions of counsel procured by the trustee to guide him in the administration of the trust").

Based on the information provided in the privilege log, it appears that most if not all of the documents withheld fall within the fiduciary exception to the attorney client privilege. The Groom Law Group, apparently at the behest of litigation counsel for the Plan, the Administrative Committee and ULLICO, are attempting to assert a non-existent attorney client privilege to prevent Luce from accessing all of the information and materials demonstrating the improper influence exerted by ULLICO on its employees who comprised the Administrative Committee.

The Department of Labor's ERISA regulations specifically grant Luce the right to "copies of all documents, records, and other information relevant to [his] claim for benefits," 29 C.F.R. § 52560.503-1(h)(2)(iii). The "relevant" documents are any documents, records or other information that "(i) was relied upon in making the benefit determination; (ii) was submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination; or (iii) demonstrates compliance with the administrative processes and safeguards required pursuant to Paragraph (b)(5) of this section in making the benefit determination," 29 C.F.R. § 52560.503-1(m)(8).

A.   **Communications between Committee members and Groom must be produced.**

The clearest category of documents subject to the fiduciary exception are the communications between members of the Administrative Committee and counsel advising it on the adjudication of a benefits claim.  The cases dealing with the fiduciary exception are unanimous on this issue.  *See In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997) (ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan); *Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star Company*, 543 F. Supp. 906, 909 (D.D.C. 1982) (When an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries …[who] have a right to a knowledge of the affairs and mechanics of the trust management.).

The Administrative Committee's consideration and denial of Luce's benefits claim is clearly a fiduciary/administrative function.  *See Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 620 (D. Kan. 2001) (denying benefits to a beneficiary is as much a part of the administration of a plan as conferring benefits to a beneficiary); *See Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 624-25 (E.D. Mo. 2000) (neither the attorney client privilege nor the work product doctrine prevents disclosure of the legal advice given to a plan administrator upon which the administrator relies when denying benefits).

Communications between Groom and James Paul, Joe Linehan, and any other Committee members, regarding administration of Luce's benefits claim, must be produced.

[*See*, Exhibit 4, Documents numbered 34, 37-38, 43, 54, 71-72, 108, 110, 114, 115, 135-137 and 179-195.]

B.    **Communications among Groom, prior counsel to the Plan and the Committee must be produced.**

Some of the documents listed on the privilege log appear to be communications between Groom attorneys and attorneys from Feder, Semo & Bard, the firm that preceded Groom as counsel to the Plan and Committee, or materials authored by Feder Semo & Bard during the course of their representation that subsequently were turned over to Groom when its engagement began.    These documents are no different than any other "relevant" documents.  If they reveal advice rendered by Feder Semo & Bard to the Plan, or the Committee regarding Luce's claim for benefits, or they otherwise were generated in the course of the benefit determination, they are not privileged and Luce is entitled to review the documents.

[*See*, Exhibit 4, Documents numbered 64, 68, and 121-122.]

C.    **Drafts of the Administrative Committee's Opinion denying Luce's claim for benefits must be produced.**

Luce is entitled to copies of all drafts of the final decision of the Administrative Committee, even if they contain advice of counsel.  *See Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 624 (E.D. Mo. 2000) (neither the attorney client privilege nor the work product doctrine prevents disclosure of the legal advice given

to a plan administrator upon which the administrator relies when denying benefits).  The Committee sought legal advice in connection with its determination of Luce's benefits claim.  That legal advice was provided to the Committee, in part, in the form of the various drafts of the written opinion denying Luce's claim.  All beneficiaries, including Luce, are entitled to know what the legal opinion was, in its oral and written forms, drafts or final.  *Id.* at 625, 13-14.  Moreover, as documents generated during the course of the benefits determination, Luce is expressly entitled to review drafts of the Committee's Opinion pursuant to Department of Labor Regulations.  *See* 29 C.F.R. § 52560.503-1(m)(8)(ii).

[*See*, Exhibit 4, Documents numbered 67, 86-91, 95-100, 102-103, 105-113, 116, 118-120 and 179-195.]

## 2.    The Documents are Not Protected from Discovery by the Attorney Work Product Doctrine.

Groom also asserts work-product protection for each and every document listed in the privilege log. *See* Exhibit 4.  Like the Defendants' claims of attorney client privilege, the assertion of work-product protection must fail.

Work product protection attaches to documents and tangible things prepared in anticipation of litigation or for trial by or for another party or that other party's representative.  Fed. R. Civ. P. 26(b)(3).  Roughly three-fourths of the documents withheld on work product grounds, were created prior to issuance of the Administrative Committee's Final Opinion.  The entire administrative appeal process was not concluded until May 20, 2005 yet, according to the Defendants,

these various communications between inside and outside counsel and members of the Administrative Committee regarding Luce's claim for benefits and dating back as far as April 2005 were prepared in anticipation of litigation!

A document that was created for the purpose of advising the Administrative Committee regarding performance of its fiduciary conduct, *ipso facto*, cannot have been created primarily in anticipation of litigation with Luce.  Groom's assertion of the work product doctrine is an attempt, obviously at the direction of litigation counsel for the Plan, the Committee and ULLICO Inc., to improperly narrow the obligation of disclosure owed to Luce as a plan beneficiary. This misguided strategy must fail.

Furthermore, Groom's assertion of work product protection *itself* renders the documents highly relevant and therefore eminently discoverable.  Luce is entitled to discovery of documents that contain evidence of the conflicts of interest of the Administrative Committee that rendered it an interested party. *See e.g. DeFelice v. American Int'l Life Assur. Co.*, 112 F.3d 61, 66 (2d. Cir. 1997) (holding that because the administrator had a conflict of interest, the plaintiff was entitled to discovery outside the administrative record); *Pulliam v. Cont'l Cas. Co.*, 29 Emp. Ben. Cas. (BNA) 2704, 2003 U.S. Dist. LEXIS 10010, *7 (D.D.C. Jan. 24, 2003) (granting plaintiff's motion to compel seeking responses to "discovery into the possibility that Continental was operating under a conflict of interest because the existence of a conflict of interest will affect the standard of review to be applied"); *Sheehan v. Metropolitan Life Ins. Co.*, No. 01-civ-9182, 2002 U.S. Dist. LEXIS 11789, *11

(S.D.N.Y. June 28, 2002) (holding that plaintiff is "entitled to present evidence outside the administrator's record on issues of plan administration and, if plaintiff is able to demonstrate a conflict of interest or other good cause, plaintiff will also be able to present evidence outside the record on the issue of [facts establishing his entitlement to benefits]"; *Parker v. Reliance Standard Life Ins. Co.*, 24 Emp. Ben. Cas. (BNA) 2564, 2000 U.S. Dist. LEXIS 784 (S.D.N.Y. 2000) (granting plaintiffs motion in limine to take discovery to supplement the administrative record because plaintiff had established good cause based on the plan administrator's conflict of interest in both making the eligibility determinations and paying any benefits under the plan).

The Administrative Committee sued Luce as a Counterclaim Defendant on July 26, 2004, in <u>Joseph A. Carabillo v. ULLICO Inc. Pension Plan and Trust, *et al*</u>. Civil Action No. 04-cv-776 (RJL) in the United States District Court for the District of Columbia, seeking to reduce Luce's Qualified Plan vested benefits.  [Document Number 24, at ¶¶ 12-30.]  The Administrative Committee alleged in that Counterclaim that a Plan amendment made by the Benefits Committee in July 2001, when Luce was a member, which increased the pension accrual rate under the Plan from 2% to 2.5% effective for certain ULLICO Inc. employees retiring on or after January 1, 2002, was "without authority" and "without disclosures to the [ULLICO] Board."  The Committee sought relief including damages, a declaratory judgment that the amendment was void, and a declaration that Luce was not entitled to benefits at the 2.5% contribution rate.  Counterclaim in <u>Joseph A.</u>

Carabillo v. ULLICO Inc. Pension Plan and Trust, *et al*. Civil Action No. 04-cv-776 (RJL), at ¶¶ 18-30. That Counterclaim was filed in response to the direct order of the ULLICO Inc. Board adopted July 22, 2003, directing ULLICO and the Plan to "suspend" Luce's benefits and file suit against Luce and others. *See* Minutes of the Meeting of the Board of Directors of ULLICO Inc. held July 22, 2003, attached to this memorandum as **Exhibit 5**. The Counterclaim was still pending when the Administrative Committee caved in to the Board of Directors of ULLICO Inc. and unilaterally granted itself, by self-help, the relief it had previously sought from this Court.

The Administrative Committee and its counsel, Groom, now admit that they were actively engaged in preparations for the pending litigation of the same claims while they were purportedly engaging in neutral fact-finding and adjudication of Luce's benefit claim. Indeed, paradoxically, that seems to be the basis of the Groom's assertion of work product protection. Groom is simply wrong when it claims that the pendency of the declaratory judgment action somehow confers work product protection against discovery of the Svengali influence the ULLICO Inc. Board of Directors exerted over the Administrative Committee's adjudication of Luce's claims. Discovery into the Administrative Committee's obvious, undeniable and disqualifying conflict of interest is directly related to Luce's allegations and his demand for *de novo* review of the Committee's denial of his Appeal. *See DeFelice*, 112 F.3d at 66 (noting that the "Appeals Committee which reviewed [plaintiff's] claim was comprised entirely of [Company] employees – hardly a neutral decision

making body and holding that plaintiff could take discovery outside the
administrative record "where the fairness of the ERISA appeals process cannot be
established using only the record before the administrator").

Moreover, Luce has a substantial need for the withheld documents. They are
doubly relevant because they contain information on which the Administrative
Committee relied and also demonstrate the Administrative Committee's conflict of
interest. *See Xerox Corp. v. International Bus. Mach. Corp.*, 64 F.R.D. 367, 381
(S.D.N.Y. 1974) ("documents containing the work-product of attorneys which
contain the attorney's thoughts, impressions, views, strategy, conclusions, and other
similar information produced by the attorney in anticipation of litigation are to be
protected when feasible, but not at the expense of hiding non-privileged facts from
adversaries or the court").

A.    **Internal communications among Groom attorneys regarding advice to the
      Committee related to Luce's benefits claim or otherwise generated in the
      course of making the determination on Luce's benefits claim must be
      produced.**

The bulk of the documents listed on the privilege log appear to be internal
communications within Groom Law Group regarding Luce's benefits appeal. Groom
was retained to assist the Committee in deciding Luce's benefits appeal. *See*
Exhibit 1. All of the memoranda, notes, correspondence and other documents
generated by Groom attorneys working for the Committee were, therefore,
"generated in the course of making the determination" on Luce's claim for benefits.
All of those documents are "relevant" to Luce's benefits claim; he was entitled to

them during the course of his appeal and they were withheld from him.  *See* 29
C.F.R. § 52560.503-1(m)(8)(ii).  He is no less entitled to them now.

[*See*, **Exhibit 4, Documents numbered 8-22, 24-28, 30, 32-33, 35-36, 40-42, 46-47, 49-50, 55-57, 196-202.**]

**B.    Communications between litigation counsel and Groom generated in the course of making the benefits determination or considered in the course of the benefits determination must be produced.**

A few of the documents on Groom's privilege log are communications with
ULLICO litigation counsel, Tony Trenga, Brian A. Hill, *et al.* of Miller & Chevalier
Chartered.  To the extent that these communications reveal legal advice from
Trenga or Hill to the Committee regarding administration of Luce's claim for
benefits, the substance of those communications falls within the fiduciary exception
to the attorney client privilege. *See Washington-Baltimore Newspaper Guild, Local
35 v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982).  On the other hand,
to the extent that this correspondence reflects communications between ULLICO
and its litigation counsel at Miller & Chevalier regarding the administration of
Luce's benefits claim, which were disclosed to Groom or the Committee as part of
the Committee's review of Luce's claim for benefits, any claim of attorney client
privilege has been waived and Luce is entitled to discover the information.  *See
Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 620-21 (D. Kan. 2001).

[*See*, **Exhibit 4, Documents numbered 46, 48-49, 51-53, 56 and 58.**]

## CONCLUSION

For the reasons stated, this Court should enter an Order compelling Groom Law Group to produce documents numbered 8-22, 24-28, 30, 32-38, 40-43, 46-58, 64, 67-68, 71-72, 86-91, 95-100, 102-103, 105-116, 118-122, 135-137 and 179-202 listed on its privilege log by June 30, 2006.


Date:  June 8, 2006                    Respectfully Submitted,


_____/s/_____
Robert E. Scully, Jr.
REES, BROOME & DIAZ, P.C.
8133 Leesburg Pike, Ninth Floor
Vienna, Virginia 22182
(703) 790-1911
Fax No.  (703) 790-5249
Counsel for James W. Luce
D.C. Bar No. 340828


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Support of James W. Luce's Motion to Compel was mailed, postage prepaid to:

Thomas S. Gigot, Esquire
Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

this 8th day of June, 2006.

_____/s/_____
Robert E. Scully, Jr.


K:\12\12410\00003\PLDNGS\060531 Memo in Support of Motion to Compel Groom 05cv1996 ver 2.doc