UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES W. LUCE, <br><br> Plaintiff, <br><br> v. <br><br> ULLICO INC. PENSION PLAN AND TRUST, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 1:05-cv-01996(RJL)

**DEFENDANTS' OPPOSITION TO PLAINTIFF JAMES W. LUCE'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE ULLICO INC. PENSION PLAN & TRUST AND THE ULLICO INC. EMPLOYEE BENEFIT PLAN ADMINISTRATIVE COMMITTEE**

Defendants the ULLICO Inc. Pension Plan and Trust ("the Qualified Plan"), the ULLICO Inc. Employee Benefit Plan Administration Committee ("the Committee") and Marcellus Ducket, Peter Haley, Joseph L. Linehan, James Paul and Mark E. Singleton in their capacities as members of the Committee ("the Committee Members") submit the following Opposition to Plaintiff James W. Luce's Motion to Compel Production of Documents from the ULLICO Inc. Pension Plan & Trust and the ULLICO Inc. Employee Benefit Plan Administrative Committee.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In his Motion to Compel, Luce ignores the Local Rules of this Court and misstates the law of ERISA in an attempt to get this Court to sanction a massive fishing expedition that would give him and similarly situated parties an improper advantage in this and related litigation. Luce's Motion to Compel should be denied because: Luce failed to fulfill his obligation to meet and confer regarding his objections to the privilege log; Luce cannot rely on the fiduciary

exception to gain access to litigation-related documents in this or any other related case; and

Luce has been provided discovery of all documents at issue in, and relevant to this case.

## FACTS

On July 18, 2003, ULLICO's former Chief Legal Officer Joseph Carabillo filed

*Carabillo I* in this Court. The *Carabillo I* Complaint contained three counts related to

ULLICO's decision to deny Carabillo retirement benefits. *Carabillo I* Compl. ¶¶ 16-23. Count I

alleged a violation of ERISA, and Counts II and III were common law claims for breach of

contract and wrongful termination. *Id.*

On August 8, 2003, James Luce filed *Luce I* in United States District Court for the

Eastern District of Virginia seeking recovery under ERISA of benefits from the Union Labor

Life Auxiliary Retirement Benefits Plan (the "Auxiliary Plan") and a Declaratory Judgment

regarding Luce's entitlement to future benefits under the Auxiliary Plan. On October 6, 2003,

Luce filed an Amended Complaint repeating his original claims regarding the Auxiliary Plan,

and adding counts related to the ULLICO Inc. Nonqualified Deferred Compensation Plan. *See*

*Luce I* Am. Compl. ¶¶ 62-101.

On October 17, 2003, ULLICO filed an Answer and Counterclaim in *Carabillo I* which

named Carabillo, Luce, ULLICO's former Chairman Robert Georgine, and ULLICO's former

Chief Financial Officer John Grelle as Counterclaim Defendants. On November 3, 2003,

ULLICO filed an Amended Answer and Counterclaim in *Carabillo I* which sought, among other

things, a declaratory judgment that Carabillo, Luce, Georgine and Grelle, acting in their capacity

as the ULLICO Inc. Benefits Committee, lacked authority to amend the Qualified Plan, and, that,

consequently, an amendment to the Qualified Plan adopted by the Benefits Committee on

October 20, 1999 purportedly changing the definition of "compensation" to include incentive

pay (and thereby significantly increasing the benefit amounts otherwise payable to the former officers) was void and unenforceable by the former officers and constituted a breach of their fiduciary duties to ULLICO Inc. *See Carabillo I* Am. Answer and Countercl. ¶¶ 68-71, 122-29.

Also on November 3, 2003, ULLICO filed its Answer and Counterclaim in *Luce I* which again asserted that the Benefits Committee lacked authority to adopt the October 20, 1999 amendment purportedly changing the definition of "compensation," that the amendment was adopted by the Benefits Committee in breach of Luce's fiduciary duties to ULLICO Inc., and that, as a result, Luce was not entitled to receive any benefits from the Auxiliary Plan based on the amendment. *See Luce I* Answer & Countercl. at 2, 15 ¶¶ 10-21.

On January 9, 2004, Judge Ellis of the United States District Court for the Eastern District of Virginia entered an order transferring *Luce I* to this Court.

On May 13, 2004, Carabillo filed *Carabillo II* in this Court. The *Carabillo II* Complaint asserted ERISA claims for, *inter alia*, benefits under the Qualified and Auxiliary Plans.

On July 26, 2004, ULLICO filed its Answer and Counterclaim in *Carabillo II*. The *Carabillo II* Counterclaim named Carabillo, Georgine, Grelle and Luce as Counterclaim Defendants, and made claims that are mirror images of the claims in this case. Specifically, Count I of the *Carabillo II* Counterclaim sought, among other things, a judicial declaration that the July 24, 2001 amendment to the Qualified Plan that is at issue in this action was "invalid as to counterclaim defendants and that counterclaim defendants are not entitled to receive benefits thereunder" because "counterclaim defendants engaged in a settlor function without authority and breached their fiduciary duties to the Qualified Plan by purporting to enact the Amendment contrary to the terms of the Qualified Plan." *Carabillo II* Answer & Countercl. ¶¶ 19, 30.

621697.3

On January 14, 2005, ULLICO notified Luce that on a going-forward basis, his benefits under the Qualified Plan would be paid without regard to the 2.5% amendment. *Luce III* Am. Compl. ¶ 55.  On February 1, 2005, Luce appealed that decision to the Committee. *Id.* ¶ 57.  On May 20, 2005, the Committee denied Luce's appeal. *Id.* ¶ 65.

On June 3, 2005, this Court entered its Consolidation and Scheduling Order which directed Luce and the other former officers to file consolidated pleadings asserting "all claims within the scope of the *Carabillo I*, *Luce I* and *Carabillo II* actions they intend to pursue, including any claims they intend to pursue that have been asserted in the original and amended complaints and claims they have or would assert in reply to the original and amended counterclaims already filed in those actions." Consolidation and Scheduling Order at 3.

On June 23, 2005, pursuant to the Consolidation and Scheduling Order, Luce, Grelle, Georgine and Carabillo filed a Consolidated Complaint consisting of ERISA claims asserted by ULLICO's former officers, but did not include the claims Luce asserts here.

On July 13, 2005, also pursuant to the Consolidation and Scheduling Order, ULLICO filed a Consolidated Answer and Counterclaim where it again sought, *inter alia*, a judicial declaration the October 20, 1999 amendment purporting to change the definition of compensation and the July 24, 2001 amendment increasing the pension formula percentage factor for years of benefit service from 2% to 2.5% were invalid because the Benefits Committee lacked the authority to amend the Qualified Plan and its members breached their fiduciary duties in doing so, and that Luce and the other former officers were not entitled to receive benefits from either the Qualified Plan or the Auxiliary Plan as a consequence of the two amendments. *See* Consolidated Answer & Countercl. ¶¶ 70-74, 95-110, 133-142.

621697.3

On July 21, 2005, Luce filed this action in the Eastern District of Virginia seeking the benefit of the July 24, 2001 amendment increasing the pension formula percentage factor for years of benefit service from 2% to 2.5%. This action is the mirror image of Count I of ULLICO's Counterclaim in *Carabillo II* as well as Count I of ULLICO's Consolidated Answer and Counterclaim. Specifically, Luce asserted that the Benefits Committee possessed the authority to amend the plan, and that the amendment was therefore validly adopted. *See Luce III* Am. Compl. ¶¶ 158-160.

On September 23, 2005, Judge Hilton of the United States District Court for the Eastern District of Virginia transferred this action to this Court. On October 13, 2005, Luce filed an Amended Complaint in this Court.[1]

On March 3, 2006 , the Plan and the Committee were served with Luce's First Request for the Production of Documents, and on March 6, 2006, counsel to the Plan and the Committee, the Groom Law Group ("Groom") received service of a subpoena served by Luce in this action.

On March 21, 2006, Groom responded to Luce's subpoena, and on April 3, 2006, the Plan and the Committee responded to Luce's Request for the Production of Documents. In their respective responses, Defendants and Groom limited production of documents to the Administrative Record of Luce's appeal, and objected *inter alia*, to producing litigation related documents protected by the attorney-client privilege and/or as attorney work product.

On April 6, 2006, the parties conducted the first of two telephone conversations, ostensibly to meet and confer regarding Defendants' and Groom's respective responses to the Request for Production of Documents and the subpoena. Participating in the call were Luce's

---

[1] The Amended Complaint is substantially similar to Luce's original Complaint except that it adds the individual Committee members as Defendants.   A Motion  to Dismiss those individuals as Defendants is pending.

counsel, counsel representing Groom regarding the subpoena, counsel for the Plan and the Committee, and counsel representing Counterclaim Defendants, in a related action, and counsel for Mr. Carabillo on his affirmative claims in related litigation.

During this call, it was established that the parties disagreed as to the scope of allowable discovery and the reach of the "fiduciary exception" to the attorney-client privilege and work product protection. Defendants' counsel repeatedly asked Mr. Luce's counsel to specifically identify documents outside the Administrative Record to which counsel believed Mr. Luce was entitled, or to otherwise clarify his claims regarding the scope of discovery and the reach of the fiduciary exception

In conjunction with "co-counsel," Luce's counsel refused to identify specific documents he believed were being withheld improperly, and refused to constrain the scope of the requests, asserting, at one point that Mr. Luce would be entitled to communications between ULLICO Inc.'s litigation counsel if such communications mentioned Luce's benefits appeal. Luce's counsel also repeatedly asserted, in opposition to an agreement among the parties to the contrary, that he was entitled to a log of any documents being withheld by ULLICO on privilege grounds, even if generated after the onset of the first of the Consolidated Actions.

By way of compromise, Defendants' counsel suggested that Groom and Defendants log documents withheld on privilege grounds created after January 14, 2005, the date of Ted Green's letter to Mr. Luce, and before July 21, 2005, the date Mr. Luce filed the Complaint in this action, and that Groom and Defendants search for documents during that time period not withheld on privilege grounds that were related to Mr. Luce's benefits appeal. Luce's Counsel requested time to consider the suggestion, and the parties agreed to talk again on April 7, 2006.

621697.3

On April 7, 2006, the parties again spoke by phone. The participants in the call were the same as on April 6, 2006, except counsel for Counterclaim Defendants was not on the call. During this call, the parties agreed to the suggestion made by Defendants' counsel on the prior call, with both sides reserving their existing rights to file their respective motions at a later time. Groom's counsel suggested that it be allowed to conduct a bifurcated paper and electronic production because Groom faced some difficulty in making a speedy production of electronic documents. Luce's counsel was amenable to this request.

On April 28, 2006 Defendants amended their objections and responses to Luce's Request for Production of Documents to reflect the agreement between the parties. Also on that date, Defendants produced to Luce a privilege log drafted to protect Defendants' rights given Luce's refusal to articulate his conception of the scope of the fiduciary exception. On May 2, 2006, Defendants made a supplemental production of documents per the parties' agreement.

Defendants' counsel was not contacted on this subject by Luce's counsel after the documents and logs were produced, and were not aware of any disagreements or objections harbored by the Luce until the filing of the instant motion.

## ARGUMENT

### I.      LUCE FAILED TO FULFILL HIS OBLIGATION TO MEET-AND-CONFER

Local Civil Rule 7(m) states in relevant part that, "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel . . . in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." As aforementioned, after Defendants created and served amended Responses to Luce's requests and produced supplemental documents, Defendants did not hear from Luce regarding these issues. Defendants received no

prior notice of Luce's motion, and no good-faith effort was made to narrow the areas of disagreement.

Although all parties reserved their rights to file necessary motions at a later date, the parties reached no agreement nor did Defendants agree or understand that the parties obligation to meet-and-confer had been extinguished. Indeed, if this were the case, then there was no need for the production of supplemental documents or privilege logs. If Luce believed that the parties were never going to fully meet his requests, and if Luce was negotiating in good faith, Luce should have rejected Defendants compromise suggestion and subsequently filed his motion. Instead, Luce engaged the parties in a farce designed to gain for himself "free" additional discovery despite his intention to file a motion to compel.

In contrast, Defendants acted in good faith, made a diligent search for additional documents and took additional time and incurred additional expense to produce documents and create a privilege log. Far from expecting the immediate filing of motions, Defendants drafted their privilege log to further discussion of the issues and to protect their rights in the event those discussions were unproductive.

Defendants acted to protect themselves because Luce would not enter into a discussion regarding the limits of the fiduciary exception in light of the existing adversity between the parties. Consequently, Defendants created a protective privilege log in order to prevent Defendants from being "whipsawed" in the ongoing litigation should they produce documents under their conception of the fiduciary exception and discover that Luce disagreed. If that were

621697.3

to occur, Luce could, and likely would, then argue that production affected a subject matter waiver in this action and possibly in the related actions.[2]

Had Luce met his meet-and-confer obligation to discuss his issues with Defendants' privilege log prior to filing this motion, he may have discovered that many of them could have been ameliorated or extinguished provided the parties were to come to an agreement regarding either the scope of the fiduciary exception or protection for Defendants from an allegation of waiver should they produce certain documents on their log. Unfortunately, Luce has chosen, in violation of the Local Rules of this Court, to have the parties' issues resolved by fiat instead of agreement. For this reason, Luce's motion to compel should be denied, at least until such time as Luce has fulfilled his meet-and-confer obligation in good faith.

## II.    LUCE CANNOT USE THE FIDUCIARY EXCEPTION TO GET THE DISCOVERY HE SEEKS

Luce alleges that the fiduciary exception to the attorney-client privilege entitles him to discovery of all of the documents on Defendants' privilege log. *See* Mot. at 4-5 (citing *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982)). Defendants appreciate the general rule that under the fiduciary exception, advice rendered to an ERISA fiduciary "for the purpose of securing legal advice in connection with the administration and structure of the Plan" is not protected from the beneficiaries' seeking "knowledge of the affairs and mechanics of the trust management." *Id.* (internal citations

---

[2] This concern goes beyond mere speculation. Luce makes this exact argument in his Motion. See Mot. at 8. Luce argues that either the fiduciary exception applies or Defendants have waived attorney-client privilege simply because litigation counsel provided information to an employee of his client, ULLICO Inc. Without some agreement protecting ULLICO's rights in the broader litigation, Defendants could not make open-ended productions based on the fiduciary exception.

621697.3

omitted). Defendants also appreciate the rule adopted by some courts that the decision to award or deny benefits is an element of plan administration over which the fiduciary exception applies. *See, e.g., Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 620 (D. Kan. 2001).

Defendants do, however, take issue with Luce's conception of the scope of the exception. As demonstrated by Luce in his motion, and in phone conversations with Defendants' counsel, Luce (and Counterclaim Defendants) claim that the fiduciary exception entitles claimants to communications between litigation/trial counsel if they can remotely be construed as "related" to a benefits appeal.

This view has been explicitly rejected. *See United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999) (rejecting the broad construction of the exception championed by Luce on the grounds that it would "swallow the entirety of the attorney-client privilege for ERISA trustees"). As the Ninth Circuit explained, "any legal advice concerning an ERISA plan could be construed as relating, at least indirectly, to the administration of the plan. On this view, the fiduciary exception could easily extend . . . to communications between ERISA trustees and their trial counsel in a civil suit arising from a denied benefits claim . . . . This is not the law." *Id.*

In addition, privileged communications from litigation counsel to an employee of the company he represents cannot constitute a waiver of the privilege just because the employee is also an ERISA fiduciary. *See, e.g. Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D.D.C. 1995) ("when an employer seeks legal counsel solely in its role as employer regarding issues other than plan administration, the employer (not the beneficiaries) is the client and may legitimately assert the attorney-client privilege."). *See also Bell v. Pfizer, Inc.*, 2005 WL 1560488 at *7 (S.D.N.Y 2005) ("a trustee is obviously entitled to counsel once an adversarial situation has arisen questioning or challenging plan decisions that have been made.") (internal citations omitted).

621697.3

Thus, as in this case, privileged communications between litigation counsel and a company employee are not subject to the fiduciary exception based on the employee's role as a fiduciary if the communications are not connected with the administration of the beneficiary's benefits claim. Also, the attorney-client privilege extends to protect privileged communications between litigation counsel and the fiduciary concerning litigation of a civil action concerning a denied benefits claim, particularly as against an adverse litigant. *See Mett*, 178 F.3d at 1066 ("while the fiduciary exception does apply to advice on matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability.")

Here, parties have been involved in actual litigation since August 2003. As Luce is aware, the claims alleged in this action are clearly "within the scope of the *Carabillo I* [filed in July 2003], *Luce I* [filed in August 2005] and *Carabillo II* [filed in May 2004] actions." The authority of the Benefits Committee to amend the Qualified Plan is at issue in all three actions, and the validity of the July 24, 2001 2.5% Amendment was expressly challenged by ULLICO in the *Carabillo II* Counterclaim. *See Carabillo I* Am. Answer & Countercl. ¶¶ 68-71, 122-29; *Luce I* Answer & Countercl. at 2, 15 ¶¶ 10-21; *Carabillo II* Answer & Countercl. ¶¶ 19, 30.

Consequently, the parties in this case have been adverse since Luce filed his original Complaint in the Eastern District of Virginia on August 8, 2003, and, at least regarding privileged communication concerning then-extant litigation, the fiduciary exception does not apply. In contravention of the actual relationship between the parties, and in an attempt to gain improper access to privileged communications, Luce bases his position on the legal fiction that communications with litigation counsel concerning then-extant litigation (over which the

fiduciary exception does not apply) were really communications in anticipation of *this* litigation, which is an appeal from the denial of his administrative appeal to the Benefits Committee.

Luce clearly appreciates the relatedness of the issues in the broader litigation. Indeed, in a telling admission, Luce himself already has propounded discovery in the Consolidated Litigation on the issues whether the Benefits Committee possessed authority to amend the plan, whether the October 20, 1999 and July 24, 2001 amendments were validly adopted, and whether Luce's benefits appeal was properly denied. *See* Exhibit 1 hereto at Request Nos. 7, 24-26, 29-30. To be sure, the interconnected issues (and the chance to leverage one action against another to gain discovery in all) drive this strategy between Luce's counsel and Counterclaim Defendants' counsel to attempt to use the fiduciary exception to gain access to clearly privileged litigation advice.[3]

## III.    LUCE HAS BEEN PROVIDED DISCOVERY OF ALL DOCUMENTS AT ISSUE IN THIS CASE

Alternatively, Luce asserts that he is entitled to wide ranging discovery because it is mandated by 29 C.F.R. § 2560.503-1. *See* Mot. at 5-6. Under this regulation, Luce is entitled to "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). Relevant information consists of material "relied upon in making the benefit determination . . . submitted, considered, or generated in the course of making the benefit determination, without regard to whether such

---

[3] Further evidence of this strategy is the presence of counsel for Counterclaim Defendants and counsel for Mr. Carabillo on his affirmative claims on the parties' April 6 and 7 teleconferences. In addition, Mr. Carabillo's counsel on his affirmative claims recently used the same fiduciary exception argument during the parties' meet and confer to justify unrestrained discovery of documents related to the Consolidated Action.

document, record, or other information was relied upon in making the benefit determination," and material that "[d]emonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8).

As aforementioned, Luce has been given the Administrative Record in this case, and he has been given documents outside the Administrative Record related to his benefits appeal even if they were not relied on in deciding his appeal. The only materials Luce could conceivably be lacking are those that "demonstrate compliance with administrative processes and safeguards." Although Defendants have asked Luce to explain how the discovery received is deficient and to specify what material is missing from the produced material, Luce has consistently refused, instead insisting that he is entitled to limitless forays into Defendants' documents. The closest Luce has come to articulating a rationale under which he is entitled to additional discovery is his bare unsupported allegation of a conflict of interest which he argues entitles him to *de novo* review of his benefits determination and to additional discovery *See* Mot. at 4, 16. Luce's argument misstates the law.

The standard governing judicial review of a claimant's claim for benefits is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan grants discretionary authority to the administrator, a plan's decision is subject to an arbitrary and capricious standard of review. *Wagener v. SBC Pension Benefit Plan - Non Bargained Program*, 407 F.3d 395, 402 (D.C. Cir.

13

2005).[4] When the more deferential "arbitrary and capricious" standard of review applies,
judicial review is limited to the administrative record. *Block v. Pitney Bowes, Inc.,* 952 F.2d
1450, 1452 (D.C. Cir. 1992).

The ULLICO Inc. Pension Plan and Trust clearly gives the administrator discretionary
authority to determine eligibility for benefits:

> 8.4.   Committee Responsibilities.  The Committee shall be
> responsible for the implementation and general administration
> of the Plan and shall have the exclusive right to determine in
> its sole discretion any questions arising in connection with the
> implementation, application or administration of the Plan and
> its determination shall be conclusive and binding upon any
> and all Participants and Beneficiaries. . . .  In furtherance of
> such power, the Committee shall have all powers necessary to
> accomplish such purposes, including, but not limited to, the
> following:
>    . . .
>     (b)    to determine the amount of benefits and the
> rights of Participants and Beneficiaries to Plan benefits . . .

Consequently, because the Plan grants discretionary authority to the Committee (its Plan
Administrator), its decisions are subject to an arbitrary and capricious review, and the review of
its decision is limited to the Administrative Record.  However, facts related to the existence of a
conflict of interest, "must be weighed as . . . 'factor[s] in determining whether there is an abuse
of discretion,'" and, under those circumstances, a modified or heightened review can be
appropriate. *Wagener*, 407 F.3d at 402 (quoting *Firestone*, 489 U.S. at 115).  In "exceptional"
cases where a claimant makes a "sustainable allegation" of a conflict of interest, "limited
discovery is appropriate." *See Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 815 (7th Cir.

---

[4] In this Circuit, the difference between "arbitrary and capricious review" and "abuse of discretion"
review is "subtle." *See Block v. Pitney Bowes, Inc.*, 952 F.2d 1450,1454 (D.C. Cir. 1992) (Ginsburg, R).
For purpose of this brief, the terms will be used interchangeably.

621697.3

2006). *See also Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999) ("discovery may be appropriate to investigate a claim that the plan's administrator did not do what it said it did--that, for example, the application was thrown in the trash rather than evaluated on the merits."); *Pulliam v. Cont'l Cas. Co.*, 29 Employee Benefits Cas. (BNA) 2704, 2003 U.S. Dist. LEXIS 10010, *11-14 (limiting additional discovery to issues specifically related to the conflict at issue).

In this case, the question of whether and to what extent either heightened scrutiny or additional discovery is appropriate in this case can be quickly disposed of under settled law. Luce's allegations of a conflict of interests are comprised of bare allegations related to the Board's July 23, 2003 resolution to suspend Luce's benefits and the fact that the Committee is comprised of ULLICO employees. *See* Mot. at 16.  When the plan at issue is a qualified plan and where the funds are placed in trust and administered by an internal group of employees, the fact that the administrator is made up of employees is not a sufficient allegation of a conflict of interest. *See Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000) (stating that "the employer may establish a plan, ensure its liquidity, and create an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits" without creating a *Firestone* conflict).

Even if Luce could establish a conflict of interest sufficient to create heightened scrutiny, the majority rule holds that those cases are not evaluated *de novo*, but rather under a modified abuse of discretion review. *See Pinto*, 214 F.3d at 377-78.  Although the D.C. Circuit has not decided this issue, the Seventh Circuit has held that plaintiffs have to reach a "high bar" to get access to additional discovery. *Semien*, 436 F.3d at 815.  In these cases, the courts are instructed

621697.3

to "monitor discovery closely," and to "employ all available tools, including the imposition of Rule 11 sanctions against those who would abuse the discovery process." *Id.*

Finally, even if additional discovery is allowed, in these cases, courts are still limited to the Administrative Record when making its decision regarding the benefits decision. *See Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004); *Wilcox v. Std. Ins. Co.*, 340 F. Supp. 2d 1266, 1282 (N.D. Ala. 2004) (collecting cases).

In summary then, Luce has already been supplied with the Administrative Record and non-privileged documents outside the Administrative Record related to his benefits appeal. His appeal must be reviewed under either an arbitrary and capricious or an abuse of discretion standard, and he has not made an adequate showing of a conflict sufficient to entitle him to a heightened standard of review or to additional discovery. Even if he could show that this case merited heightened review, Luce is not entitled in any event to the *de novo* review he seeks. Moreover, any heightened scrutiny would not necessarily entitle him to additional discovery, and even if it did it would have to be limited in ways the Luce has refused to accept. Finally, even if he was able to meet the high bar of additional discovery, the Court is limited to considering the Administrative Record in the case, which Luce already has. Consequently Luce cannot claim that he is prejudiced by a denial of additional discovery. Moreover, Luce has not been able to specify what material he needs that he is being denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Production of Documents should be denied. To the extent the Court is concerned that the fiduciary exception might apply to some of the material at issue, Defendants are willing to submit the withheld documents for in camera inspection.

621697.3

Dated: June 8, 2006

MILLER & CHEVALIER CHARTERED

_____/s/_____
James A. Bensfield (DC Bar #189-084)
Anthony J. Trenga (DC Bar #218255)
Mark J. Rochon (DC Bar #376042)
Brian A. Hill (DC Bar #456086)
Matthew T. Reinhard (DC Bar #474941)
MILLER & CHEVALIER, CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Telephone: (202) 626-5800
Facsimile: (202) 628-0858
Email:  atrenga@milchev.com
Attorneys for the Defendants

621697.3