# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| James W. Luce | ) |
| | ) |
| v. | ) |
| | ) |
| ULLICO Inc. Pension Plan | ) |
| and Trust, et al. | ) |
| | ) |

Case Number 1:05CV01996 (RJL)

_____)

**Groom Law Group, Chartered's Opposition to James W. Luce's
Motion to Compel the Production of Documents From Non-Party
Groom Law Group, Chartered.**

Groom Law Group, Chartered ("Groom"), by and through its undersigned counsel, submits this memorandum in opposition to the motion of plaintiff James W. Luce to compel the production of documents that are protected by the attorney-client privilege and the attorney work product doctrine.

## Facts

Luce's motion to compel the production of documents from Groom is one of two pending motions to compel document production. Luce's other motion to compel is directed to the ULLICO Inc. Pension Plan & Trust (the "Qualified Plan") and the ULLICO Inc. Employee Benefit Plan Administrative Committee (the "Administrative Committee"). The background concerning the various lawsuits that have been consolidated before this court is set forth in detail in Defendants' Opposition to Plaintiff James W. Luce's Motion to Compel the Production of Documents From the ULLICO

Inc. Pension Plan & Trust and the ULLICO Inc. Employee Benefit Plan Administrative

Committee at 2-7 (filed June 8, 2006) and will not be repeated here.  Suffice it to say that

by July 26, 2004, eight months before the Administrative Committee retained Groom to

serve as its independent counsel, the central question presented by the present lawsuit had

been raised in one form or another in *Carabillo I*, *Carabillo II*, *Luce I*, and ULLICO's

counterclaim in *Carabillo II*.  The central question is whether ULLICO's former Benefits

Committee, of which Luce was a member, had the authority to amend the Qualified Plan

and other ULLICO employee benefits plans to increase benefits payable under those

plans.

　　　　The present action arises out ULLICO's decision to reduce the pension Luce was

receiving from the Qualified Plan because a purported amendment increasing benefits,

adopted by ULLICO's Benefits Committee on July 24, 2001, was invalidly adopted.

Luce was notified of this decision by letter dated January 14, 2005.  By letter dated

February 1, 2005, Luce advised the Administrative Committee, as plan administrator of

the Qualified Plan, that he was appealing from this "adverse benefit determination" under

the Plan's administrative review procedures.  Luce's counsel submitted detailed

arguments in support of the appeal by letter dated March 30, 2005, and met with the

Committee on March 31, 2005.  On April 15, 2005, the Administrative Committee

retained Groom, a law firm specializing in employee benefit matters, to provide the

Committee with legal advice concerning Luce's appeal.  Plaintiff's Exhibit 1.  On May

20, 2005, the Administrative Committee issued its written decision on appeal, upholding

the benefit reduction on the grounds that the July 24, 2001 amendment to the Qualified

Plan had not been validly adopted because the Benefits Committee had no authority to amend the Plan.

By letters dated June 30 and July 13, 2005, Groom provided nearly 1,600 pages of documents relating to Luce's appeal in response to requests from Luce's counsel. Groom withheld some documents on the grounds that they were protected from disclosure by the attorney-client privilege and the work product doctrine.

On March 7, 2006, Luce served a subpoena duces tecum on Groom requesting nine categories of documents within Groom's possession or control relating to Luce's administrative appeal. Plaintiff's Exhibit 2. On March 21, 2006, Groom filed objections to the subpoena, principally relying on attorney-client privilege and the work product doctrine. Plaintiff's Exhibit 3.

On April 6 and 7, 2006, Luce's counsel, as well as counsel for the other parties to various of these consolidated actions, and counsel for the ULLICO defendants and counsel for Groom conducted a meet and confer discussion by conference call. In an effort to resolve the discovery dispute, the ULLICO defendants and Groom agreed to provide logs of documents withheld on privilege grounds that had been generated or considered after January 14, 2005 and before July 21, 2005, that is, from the time that Luce had submitted his administrative appeal through his filing of his complaint in the present action. In addition, Groom agreed to search for and produce any non-privileged documents that it had received in connection with Luce's appeal but were not considered in connection with that appeal. The parties agreed that the production of the privilege logs and of any additional documents would be made without prejudice to any party's

right to file discovery motions at a later time.  Groom provided a privilege log, along with additional non-privileged documents on May 16, 2006.  Luce filed his motion to compel against Groom on June 8, 2006, without any further effort to meet and confer in any effort to resolve this discovery dispute.[1]

## Argument

**I.**     **The documents in dispute are protected from disclosure by the attorney-client privilege, and neither the "fiduciary exception" to attorney-client privilege nor the Department of Labor's regulation defining the scope of documents relevant to a plan's handling of an appeal of a denial of benefits requires disclosure of such privileged documents.**

### A.     The fiduciary exception requires a showing of good cause before the court will order disclosure of otherwise privileged information.

Luce argues that the documents that Groom has withheld on attorney-client privilege grounds are subject to disclosure under the "fiduciary exception" to attorney-client privilege.  Under the circumstances presented here, however, where a single plan participant is seeking privileged information for his sole benefit in an adversarial dispute with the plan fiduciaries, the fiduciary exception does not require that privileged material be disclosed.

---

[1] Luce's failure to engage in any further efforts to narrow this discovery dispute following the production of Groom's privilege log and the production of ULLICO's privilege log, as agreed in the April 6 and 7, 2006 conference calls, is a violation of Local Civil Rule 7(m), and is alone grounds for denying this motion.  To avoid repetition, Groom adopts the arguments on this point presented in ULLICO's opposition to the motion to compel.  Opposition at 7-9.

The fiduciary exception to attorney-client privilege under American law finds its origin in *Garner v. Wolfenbarger*, 430 F.2d 1093 (5th Cir. 1970).  *Garner* involved a class action by shareholders against a corporation and its officers and directors alleging securities laws violations and common law fraud.  The defendants asserted attorney-client privilege as a bar to discovery of communications between the officers and directors and their counsel.  The court recognized that corporate officers and directors stand in a fiduciary relationship to the shareholders and that their activities, including securing legal advise, is undertaken for the benefit of the shareholders.  Consequently, the mutuality of interest between shareholders and corporate managers favors disclosure to shareholders of otherwise privileged communications.  *Id.* at 1101-02.  However, the court recognized that not all disputes between shareholders and corporate managers warrant a wholesale disregard of attorney-client privilege.  Instead, each case must be judged in view of the nature of the dispute.  The court summarized its conclusions this way:

> The attorney-client privilege still has viability for the corporate client.  The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders.  But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interest as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Id.* at 1103-04.

The court then went on to list the factors to consider in determining whether the shareholders have met the burden of showing good cause.  Among these factors are the number of shareholders pursuing the claim; the percentage of stock the shareholders represent; the nature of the shareholders' claim; and whether the communication being

5

sought is of advice concerning the litigation itself.  An examination of these and other factors will inform a judgment as to whether the shareholders have demonstrated good cause to overcome the claim of privilege in a particular case.  *Id*. at 1104.

The Fifth Circuit's approach in *Garner* has been widely followed in shareholder actions against corporations and their managers.  *See Donovan v. Fitzsimmons*, 90 F.R.D. 583, 586 (N.D. Ill. 1981) (collecting cases); J. Gergacz, *The Attorney-Corporate Client Privilege* (1990), ¶ 6.02.  It has also been adopted in suits under ERISA brought by plan participants or the Department of Labor against plan fiduciaries.  The first such case was *Donovan v. Fitzsimmons*, a suit by the Department of Labor, acting as statutory representative of the plan participants, against various former pension plan fiduciaries charged with fiduciary breaches arising from a series of questionable investment transactions.  The Labor Department argued that plan fiduciaries and plan participants stand in a relationship analogous to that of corporate shareholders and corporate managers, and that in the proper circumstances, participants (and the Labor Department as their representative) should have access to otherwise privileged information upon a showing of good cause as prescribed by *Garner* and its corporate law progeny.  *Donovan*, 90 F.R.D. at 585-86.

The court agreed, and proceeded to determine whether good cause has been shown to overcome the claims of privilege.  Given the circumstances of the case, the court had little difficulty concluding that good cause had been demonstrated.  Among other things, the court noted that the action was brought to obtain restitution on behalf of all 500,000 potential beneficiaries under the plan; that it was clear that the action had not been

6

brought by "only a handful of disgruntled pensioners or a small minority of the Fund's participants;" and that "the documents sought do not contain recommendations regarding the Fund's litigation strategy in the instant case," but instead were needed to deal with a potential defense by the fiduciaries of reliance on counsel in entering into the disputed investment transactions.  *Id.* at 587.

Here, Luce has made no attempt to demonstrate good cause for breaching attorney-client privilege.  Nor can he.  Unlike *Garner* and *Donovan*, where the actions involved corporate or plan-wide claims of damage arising from fiduciary misconduct, this action has been brought for the sole benefit of Luce to obtain a higher pension for himself.[2]  Similarly, Luce has not and cannot show any particular need for the communications at issue.  Ultimately, the single question presented in this benefits claims case is whether the Administrative Committee correctly decided that the 2001 amendment purported adopted by the Benefits Committee had not been validly adopted because the Qualified Plan's governing document required that "[a]ny amendment shall be made pursuant to a resolution adopted by the Board of Directors of [ULLICO]."  The correctness of this conclusion can be assessed in light of the legal analysis set forth in the May 20, 2005 letter from the Administrative Committee to Luce's counsel.

_____

[2] Luce may argue that if he prevails in this action, it will benefit other plan participants by establishing the validity of the 2001 amendment increasing benefits for participants in active service after the amendment was purported adopted.  In fact, however, the only participants who might be benefited are Carabillo and Grelle.  Other participants who faced a reduction in benefits because the 2001 amendment was invalid have been protected by a subsequent, properly adopted amendment.

Communications between the Committee and its own counsel could not provide any meaningful information that would assist the court in reaching its own conclusion on the question.

Rather than attempting to show good cause to overcome the privilege claims, Luce relies on *Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star Company*, 543 F.Supp. 906 (D.D.C. 1982). *Washington Star* involved an action by plan participants against the fiduciaries of the plan for breach of fiduciary duty. The participants alleged that the fiduciaries had damaged the plan as a whole by adopting an illegal amendment allowing surplus assets in the plan to revert to the company sponsoring the plan. *Id.* Citing both *Garner* and *Donovan*, the court agreed that the plan participants should have access to communications between the fiduciaries and their counsel relating to the adoption of the amendment. *Id.* at 909. However, in a footnote, the court rejected the need for any good cause showing as required in those cases. As the court saw it, such a requirement "is properly limited to a corporate setting, in which the management of a sizable corporation clearly cannot 'pleas[e] all of its stockholder all of the time,' and management requires 'protection from those who might second-guess or even harass in matters purely of judgment.'" *Id.* at 909 n.5 (quoting *Garner*, 430 F.2d at 1101.) Rather, the court believed that in a trust relationship, "there exists no legitimate need for a trustee to shield his actions from those whom he is obligated to serve. . . . Moreover, no such showing of 'good cause' has ever, to our knowledge, been required under the common law of trusts." *Id.*

We respectfully submit that *Washington Star's* rejection of the good cause element of the fiduciary exception was wrong, and should not be followed. First, the court simply failed to appreciate that fiduciaries of employee benefit plans, just like corporate managers, face differing interests among various groups of plan participants, interests which in several circumstances can be directly adverse to other groups of participants. The Supreme Court itself recognized this in *Varity Corp. v. Howe*, 516 U.S. 489, 1078-79, where it observed that "a fiduciary obligation, *enforceable by beneficiaries seeking relief for themselves*, does not necessarily favor payment over nonpayment. The common law of trusts recognizes the need to preserve assets to satisfy future, as well as present, claims and requires a trustee to take impartial account of *the interest of all beneficiaries*." (Emphasis added.) Thus, circumstances arise, as in this case, where one or a group of plan participants seeks an increased share of plan assets for themselves, to the potential detriment of other groups of plan participants. In such a case, a plan fiduciary may be place in a directly adversarial posture with the complaining group because of the fiduciary's duty to protect the overall interests of the plan as a whole. *See, e.g., Johnson v. Georgia-Pacific Corporation*, 19 F.3d 1184 (7th Cir. 1994) (retired participants object to the use of surplus assets to increase benefits for active participants). In such situations, a fiduciary should be able to communicate with counsel in confidence to obtain advice concerning how the fiduciary can best discharge his duties to the plan as a whole, even though some course of action may be adverse to the narrower interests of some beneficiaries.

Second, the court in *Washington Star* failed to appreciate that the potential for diversity of interests among beneficiaries of a private trust has prompted other courts, in proper circumstances, to reject a claim that any trust beneficiaries is entitled to otherwise privileged communications between the trustee and its counsel.  More than half of century ago, the court in *In re Prudence-Bonds Corporation*, 76 F.Supp. (E.D.N.Y. 1948), recognized that the corporate trustee of a trust indenture faced competing interests among difference classes of trust beneficiaries and therefore should be able to consult in confidence with counsel about the administration of the trust.  *Id.* at 646-47 (One group of bondholders not permitted to overcome trustee's claim of attorney-client privilege. "Where we have a corporate trustee, the rights involved are not alone the rights of a bondholder but of all parties to the Trust Agreement.  Thus the Debtor, the Corporate Trustee and the Bondholders have rights which must be protected."); s*ee The Riggs National Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 714 (Del. Chanc.) (in case involving private testamentary trust, court distinguishes *Prudence-Bonds* because in that case, "there runs through the opinion concern about the multiple rights of the various persons in the indenture trust arrangement.")

The other cases that Luce cites in support of his position on the fiduciary exception provide no additional reasons to reject the *Garner* good cause requirement. The court in *In re Long Island Lighting Co.,* 129 F.3d 268, 272 (2d Cir. 1997) had no occasion to consider whether to require a good cause showing in order to invoke the fiduciary exception because the communication at issue was not a communication by a fiduciary, but rather by a non-fiduciary plan settlor.  In *Lewis v. Unum Corporation*

10

*Severance Plan*, 203 F.R.D. 615, 620-21 (D. Kan. 2001), the court surveyed a number of

cases, including *Garner* and *Donovan*, to determine a "general" rule, but simply did not

consider whether the "good cause" requirement was part of the rule. Similarly, the court

in *Geissal v. Moore Corp.*, 192 F.R.D. 620, 624 (E.D. Mo. 2000), surveyed the case law

and derived a general rule without considering whether a good cause showing should be

required. Finally, in *Martin v. Valley Nat'l Bank of Arizona,* 140 F.R.D. 291, 326

(S.D.N.Y. 1991), the court simply followed *Washington Star's* lead.

In short, the only reasoned explanation for rejecting *Garner's* carefully crafted

good cause requirement is contained in a single footnote in *Washington Star*. As we have

shown, that reasoning was based on demonstrably flawed premises. Therefore, on this

motion, the court should require a showing of good cause to overcome the privilege. And

because Luce cannot make that showing, the motion should be denied.

### B.    The Department of Labor claims regulation does not provide any basis for overcoming the privilege claims.

Luce appears to argue that the Department of Labor's regulation governing the

handling of claims for benefits under ERISA plans provides an independent basis for

overcoming the attorney-client privilege claims. James W. Luce's Memorandum in

Support of Motion to Compel Production of Documents (Plf.'s Mem.") at 10. This

contention is without foundation.

The claims regulation contains two pertinent provisions. First, the regulation

requires a plan to provide to a participant, on request, "information relevant to [his] claim

for benefits." 29 C.F.R. § 52560.503-1(h)(2)(iii). Second, the regulation contains a

definition of the term "relevant." 29 C.F.R. § 52560.503-1(m)(8). But this definition of "relevant" information does nothing to illuminate how privileged documents should be handled. In fact, the regulation is completely silent on the question of privilege.

The Department's thinking on the subject can be discerned from the preamble to the final regulation, as well as other Department regulations that direct address the question of privilege. In the preamble, the Department responded to objections concerning a feature of the disclosure requirements, including objections that the proposed rule exceeded the Department's regulatory authority. The Department decided to change "its approach to the problem in order to reduce the potential burden on plans and avoid any suggestion of possible interference with the civil discovery processes in litigation." 65 Fed. Reg. 70251 (November 21, 2000). This alone demonstrates that the complete silence on the question of privilege in the text of the regulation cannot be taken as a wholesale effort to obliterate privilege claims.

Similarly, where the Department has had reason to address the question of discovery of privileged information, it has taken care to preserve privileged information, as well as information protected under the work product doctrine. The Department's general regulations governing practice and procedure for administrative hearings provides a general rule regarding discovery: "the parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the proceeding . . ." 29 C.F.R. 18.14(a). The general regulations also take care to preserve the work product doctrine and its exceptions in language substantially the same as Fed. R. Civ. P. 26(b)(3). 29 C.F.R. 18.14(c).

Even more to the point, the Department has adopted a set of supplementary rules governing administrative hearings concerning the assessment of civil sanctions under ERISA § 502(i).  (Section 502(i) authorizes the Department to impose monetary sanctions on "parties in interest" to a plan who have engaged in "prohibited transactions," which generally involve the misuse of plan assets.)  These supplementary rules preserve the general regulations regarding hearings except as specifically modified by the supplementary rules.  29 C.F.R. § 2570.1.  Significantly, the supplementary regulation modifies the discovery rules contained in 29 U.S.C. § 18.14 by imposing a blanket requirement that the party seeking discovery make a specific showing of good cause with respect to *any* discovery request.  29 C.F.R. § 2570.7.

As these regulations show, the Department has taken care to preserve attorney-client privilege and the work product doctrine generally, and has even decided to impose a heightened discovery requirement in administrative proceedings specifically dealing with aspects of ERISA.  There is absolutely no reason to infer that the Department's claims regulation has silently cast aside these privilege protections.  *See E.E.O.C. v. Lutheran Social Services*, 186 F.3d 959, 965 (D.C. Cir. 1999) (administrative agency "has no expertise with respect to the attorney-client and work product privileges.  Indeed, expertise as to those privileges resides in the federal courts.").

## II.    The documents in dispute are protected by the attorney work product doctrine.

Fed. R. Civ. P. 26(b)(3) provides that "a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation

or for trial . . . only upon a showing that the party seeking discovery has substantial need of the materials . . . and that the party is unable to . . . obtain the substantial equivalent of the materials by other means." Luce argues first that the documents were not prepared in anticipation of litigation.[3]

In mid-April 2005, when the Administrative Committee retained Groom to assist it in connection with Luce's benefits appeal, the Committee and Luce were already engaged in two pieces of litigation in which a central issue was the validity of plan amendments purportedly adopted by the Benefits Committee, the same issue presented by Luce's administrative appeal with respect to the 2001 amendment to the Qualified Plan. Thus litigation over the question was not merely anticipated, it was pending at the time the documents were created. Moreover, during the time the Committee was considering Luce's appeal, it was a virtual certainty that if the Committee's decision was adverse to Luce, he would challenge the decision, either by seeking to amend his pleadings in the pending litigation or, as actually happened, by filing a new lawsuit focused on the Committee adverse benefits determination. Thus, at the time of the Committee's decision, Groom certainly had a reasonable basis for anticipating future litigation at the

_____

[3] As a preliminary matter, we note that the fiduciary exception to attorney-client privilege is inapplicable to documents protected under the work product doctrine. *E.g., Lugosch v. Congel,* 219 F.R.D. 220, 243 (N.D.N.Y. 2003) ("[T]he fiduciary exception is limited to invasion of the attorney-client privilege and is not extended to the work product doctrine.")

time it prepared the documents in question.  *In re Sealed Case*, 146 F.3d 881, 884 (D.C.

Cir. 1998) ("[T]he 'testing question' for the work product privilege . . . is whether in light

of the nature of the document and the factual situation in the particular case, the

document can fairly be said to have been prepared or obtained because of the prospect of

litigation.").  To meet this standard, a party "must at least have had a subjective belief

that litigation was a real possibility, and that belief must have been objectively

reasonable" in the circumstances.  *Id.*  It is difficult to imagine a set of circumstances in

which the anticipation of litigation was more objectively reasonable.

However, according to Luce, "[a] document that was created for the purpose of

advising the Administrative Committee regarding performance of its fiduciary conduct,

*ipso facto*, cannot have been created primarily in anticipation of litigation with Luce."

Plf.'s Mem. at 11.  Luce provides no authority for this assertion, but apparently reasons

that if one of the purposes for which a document was prepared is to guide a client in

making a decision about a contemplated course of action outside of litigation, the

document cannot have been prepared in anticipation of litigation.  The District of

Columbia Circuit has firmly rejected this idea.  In *Delaney, Migdail & Young, Chartered

v. I.R.S*, (D.C. Cir. 1987), the documents at issue consisted of memoranda prepared by

IRS attorneys of contemplated audit program based on statistical sampling.  The purpose

of the memoranda was to evaluate the potential legal challenges that might arise if the

audit program was adopted.  The plaintiffs argued that because there was no specific

claim in existence at the time the memoranda were being prepared, the documents could

not fairly be said to have been prepared in anticipation of litigation.  The court rejected

this argument, and instead focused on the nature of the documents and the purposes for which they were prepared. The court concluded that because the documents analyzed the types of claims that might be made against the program if it were adopted, the potential defenses, and the likely outcome of such claims, they fell squarely within the protection of the work product doctrine. *Id.* at 127.

Similarly, the Second Circuit has concluded that a document prepared to guide a client in making a business decision where the decision will turn on the likely outcome of litigation is protected work product. *U.S. v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998) (rejecting argument that document cannot qualify as work product if the document was not prepared to "assist in" litigation).

Here, the documents at issue were prepared to assist the Committee in evaluating the legal arguments supporting or undermining the validity of the 2001 amendment to the Qualified Plan, with an eye to producing a final decision that would certainly be tested in litigation if it was adverse to Luce. This is precisely the type of material protected by the work product doctrine. Moreover, failing to accord protection to the documents under the present circumstances would "impose[ ] an untenable choice" upon a plan fiduciary faced with a likelihood that its decision on a benefits appeal, if adverse to the claimant, would result in litigation. If the fiduciary "declines to make such analysis or scrimps on candor and completeness to avoid prejudicing its litigation prospects, it subjects itself . . to ill-informed decisionmaking." Or if it chooses to obtain an honest evaluation of the legal issues presented by the claim, it may be required to turn over documents to litigation adversaries and face the prospect of "serious prejudice to [its] prospects in the

16

litigation." *U.S. V. Adlman*, 134 F.3d at 1200.  Luce has presented no persuasive reason to reach such an untenable result.

Alternatively, Luce argues that if the documents are work product, he has a substantial need for them sufficient to override the doctrine's protection.  Plf.'s Mem. at 14.  Luce appears to contend that the documents at issue contain evidence demonstrating that the Administrative Committee had a conflict of interest at the time it decided the benefits appeal, and will demonstrate "the Svengali influence the ULLICO Inc. Board of Directors exerted over the Administrative Committee's adjudication of Luce's claims." *Id.* at 13.  These speculative assertions fall far short of the showing needed to overcome work product protection, even for "fact" work product.  To overcome the work product privilege, "the party seeking discovery must show both (1) a substantial need for the materials, *and* (2) an inability to obtain the substantial equivalent by other means without undue hardship." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 81 (D.D.C. 2003) (emphasis in original).  Luce has made no effort to explain why he cannot obtain evidence of this supposed conflict of interest and undue influence without inspecting documents that contain counsel's views concerning the legal issues presented by Luce's appeal.  Such "opinion" work product is "almost always protected." *Id.*  Luce has failed to make even a threshold showing to overcome the work product claims here.

**<u>Conclusion</u>**

Based on the foregoing, Groom respectfully submits that the motion to compel

production of documents should be denied.

Respectfully submitted,

June 29, 2006                                   _____/s/_____
                                               Thomas S. Gigot
                                               (D.C. Bar No. 384668)
                                               William F. Hanrahan
                                               (D.C. Bar No. 362425)
                                               Groom Law Group, Chartered
                                               1701 Pennsylvania Ave., N.W.
                                               Suite 1200
                                               Washington, D.C.  20006
                                               (202) 857-0620
                                               Fax:  (202) 659-4503

## Certificate of Service

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition to James W. Luce's Motion to Compel Production of Documents from the Groom Law Group was mailed, postage prepaid to:

> Robert E. Scully, Jr., Esq.
> Rees, Broome & Diaz, P.C.
> 8133 Leesburg Pike, Ninth Floor
> Vienna, Virginia 22182
>
> and
>
> Brian A. Hill, Esq.
> Miller & Chevalier Chartered
> 655 Fifteenth Street, N.W., Suite 900
> Washington, DC 20005-5701

this 29 day of June, 2006.

_____/s/_____
William F. Hanrahan

19